IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J. DOE 1, *et al.*,<br>*Plaintiffs* v.<br><br>ELON MUSK, *et al.*,<br><br>*Defendants.* | Case No. 8:25-cv-00462-TDC |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUBMISSION REGARDING THE COURT'S MARCH 10, 2025 ORDER**

On March 13, 2025, Defendants submitted documents and additional legal arguments in response to this Court's March 10, 2025 Order that Defendants submit "specific orders or other decision documents" authorizing a number of key actions taken to *de facto* dismantle USAID. ECF No. 69; ECF No. 66. Plaintiffs respectfully submit this Response to point out gaps and discrepancies in the record and to briefly reply to Defendants' additional legal argument.

***First***, nothing that Defendants produced rebuts the central factual allegations Plaintiffs advance in this case—that Defendant Elon Musk and his DOGE subordinates have exercised and continue to exercise significant and unauthorized decision-making power at USAID and other agencies in violation of constitutional mandates. Indeed, several exhibits show no decision authorization of any kind, despite the plain language of the Court's Order. For instance:

- Exhibit 1 is a second-hand communication sharing lists of individuals being placed on administrative leave, and not the "specific order[] or other decision document[] signed by the authorizing government official" requested by the Court.

- Similarly, Exhibit 2 is a January 31, 2025 communication from Ken Jackson, Assistant to the Administrator for Management and Resources, "to inform" individuals that they were being placed on administrative leave; it is not a "specific order[] or other decision

1

- document[] signed by the authorizing government official." Nor is it at all clear that Mr. Jackson made the underlying decision—as opposed to simply communicating it—much less that he was authorized to do so.

- Far from showing any decision-making around shutting down USAID headquarters and removing signage beginning on January 31, 2025, Exhibit 3 is a *February 7* message from GSA regarding the building's reassignment. But, as the Court's Order recognizes, the weekend of February 1 was the weekend the agency was fed "into the wood chipper," and key DOGE operative, Gavin Kliger, informed USAID personnel of the office closure at least by February 3, 2025. *See* ECF No. 14 at ¶¶ 54-55; *see also* Sam Stein (@samstein) X (selection of tweets), Ex. 1 at J.R. 196 ("USAID tells staff to not show up at DC HQs today in the morning email as Elon says the agency has been shut down."). Defendants provide no documentation responsive to the court's request for "specific orders or other decision documents" related to the headquarters breach or its shuttering. Likewise, Exhibit 4 fails to identify decision documentation relating to the transfer of USAID headquarters to U.S. Customs and Border Patrol.

- Exhibit 5 does not purport to be any sort of decision-making documentation at all concerning taking the USAID website offline. It merely shows an email subject line acknowledging that "USAID.gov is offline" without indicating who took it offline, who ordered it to be taken offline, or even how the email sender felt about it being taken offline.

Moreover, certain exhibits raise factual discrepancies. Exhibits 6 and 7 contain memorandums under Pete Marocco's name dated February 2 and February 3, respectively. In those memorandums Mr. Marocco's title is listed as "Acting Deputy Administrator for Policy and Planning and Acting Deputy Administrator for Management and Resources," which was previously the title of Deputy Administrator.[1] But nowhere has Mr. Marocco ever claimed to hold any of these positions. Indeed, he has disclaimed holding such positions (presumably because he is not eligible under the Federal Vacancies Reform Act for positions requiring Senate appointment), instead making clear he has only "performed duties": "Since Thursday, January 30, 2025, I have performed the duties and

---

[1] *See USAID ADS Chapter 101: Agency and Functions* at 4, USAID (Aug. 07, 2024), available at https://web.archive.org/web/20241225210800/https://www.usaid.gov/sites/default/files/2024-08/101_080624.pdf (attached hereto as Ex. A); *Deputy Administrator (Management and Resources)*, Partnership for Public Service (accessed March 13, 2025) https://presidentialtransition.org/position_description/deputy-administrator-management-and-resources ("The title for this position was formerly known as Deputy Administrator.") (attached hereto as Ex. B.).

2

functions of Deputy Administrator of the United States Agency for International Development (USAID)." P. Marocco Decl. ¶ 2, Ex. 26 at J.R. 403. And Defendants' counsel emphasized that Mr. Marocco does not hold an official position, but has merely been delegated duties by the Acting Administrator. Tr. of Prelim. Inj. Hr'g at 95:8-10 ("[J]ust to be clear about this, Mr. Marocco does not hold the title of Acting Deputy Administrator, rather he is performing the duties").[2]

***Second***, Defendants' arguments that the Appointments Clause is only implicated when a person is improperly appointed to an office created by Congress is unavailing. While it is true that the standard Appointments Clause violation, such as that in the *Landry* case Defendants cite, involves the improper appointment to an actual office, it cannot be seriously disputed that the import of the Clause is also that *only* Congress can create new principal officers. *Trump v. United States*, 603 U.S. 593, 645 (Thomas, J. concurring) ("Although the Constitution contemplates that there will be 'other Officers of the United States' . . . it clearly requires that those offices 'shall be established by Law.'") (citing U.S. Const. Art. II, § 2, cl. 2)). Just because the Executive Branch has not before been bold enough to create a new principal officer position without Congressional approval does not mean doing so comports with the Constitution. Certainly it violates Appointments Clause's plain language as much for the Executive Branch to create new principal officers not-by-law and then to also improperly appoint principal officers to those positions as it does to improperly appoint officers to lawfully created positions. *Cf.* Office of Legal Counsel, Officers of the United States Within the Meaning of the Appointments Clause, 31 Op. O.L.C. 73, 117 (2007) ("[One] could not evade the Appointments Clause by, for example, the artifice of authorizing a contract for the supervision of the Justice Department, on the ground that no "office" of Attorney General would be created by law."). Further, Defendants do not deny that it would be

---

[2] Plaintiffs have previously submitted evidence that indicates DOGE's Gavin Kliger sent out RIF notices under Mr. Marocco's name with a similarly incorrect appellation. *See id.* at 18:5-20:7.

a fundamental Separation of Powers encroachment for an Executive Branch officer to wield the authority of a principal officer when neither Congress nor the Constitution has delegated such authority to the officer. Their position makes a mockery of the Appointments Clause and Separation of Powers.

Respectfully submitted,

*/s/ Tianna J. Mays*
Tianna J. Mays, [1112140221]
Norman L. Eisen, [9112170186]
**STATE DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Tianna@statedemocracydefenders.org

Mimi Marziani*
Rebecca (Beth) Stevens*
Joaquin Gonzalez*
**MARZIANI, STEVENS & GONZALEZ PLLC**
1533 Austin Highway, Suite 102-402 San Antonio, TX 78218
Tel: (210) 343-5604
mmarziani@msgpllc.com
bstevens@msgpllc.com
jgonzalez@msgpllc.com

*Attorneys for Plaintiffs*
**Admitted pro hac vice*

Dated: March 14, 2025