# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>

J. DOE 4, *et al.*,

                *Plaintiffs*,

     v.

ELON MUSK, *et al.*,

                *Defendants*.

</td><td>

Case No. 8:25-cv-00462-TDC

</td></tr>
</table>

# DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.       PLAINTIFFS FAIL TO MEET THEIR BURDEN OF JUSTIFYING
        EXPEDITED MERITS DISCOVERY ...................................................................... 5

       A.     The Court Should Not Order Discovery Before Resolving the
           Government's Motion to Dismiss............................................................... 5

       B.     There is No Motion for a Preliminary Injunction Pending. ..................................... 9

       C.     Plaintiffs' Claimed Need for Expedited Merits Discovery Lacks Merit and
           the Discovery is Unduly Burdensome. ............................................................... 11

           1.     Plaintiffs fail to establish any immediate need for expedited
                 discovery. ...................................................................................... 11

           2.     Plaintiffs' requests are irrelevant and unduly burdensome...................... 13

       D.     Plaintiffs Seek Substantial Expedition Beyond the Normal Discovery
           Schedule........................................................................................................... 21

II.      IF THIS COURT ORDERS EXPEDITED DISCOVERY, DEFENDANTS
        REQUEST A STAY OF THAT ORDER. ...................................................................... 22

CONCLUSION................................................................................................................... 23

## INTRODUCTION

On April 25, 2025, Plaintiffs, six pseudonymous current and former employees and contractors of the United States Agency for International Development ("USAID"), moved for expedited merits discovery. Defendants respectfully oppose this motion.

First, the Court should resolve Defendants' pending fully dispositive motion to dismiss, which raises significant jurisdictional and pleading defects concerning Plaintiffs' Amended Complaint, before determining whether any discovery is appropriate. Second, Plaintiffs do not seek expedited discovery in service of a pending preliminary injunction motion, which is the common basis for permitting such discovery. Indeed, Plaintiffs already have a preliminary injunction, which has been stayed by the Fourth Circuit during the pendency of the appeal. Plaintiffs' request for expedited merits discovery is nothing more than an attempted end-run around the Fourth Circuit's stay of the preliminary injunction.

Third, Plaintiffs fail to identify any emergency that would justify expedited merits discovery. Plaintiffs almost exclusively seek expedited discovery into a series of events that took place three months ago; but nowhere do they even attempt to explain why there is an urgent need to explore those past episodes now. Moreover, Plaintiffs' claimed need for exigency is the alleged inability to "vindicate their constitutional rights" if USAID is "dismantl[ed]." Mot. for Expedited Disc. & Mem. of Supp. at 1, ECF No. 106. But as explained in Defendants' motion to dismiss, Plaintiffs lack standing to vindicate such a generalized grievance. Mot. to Dismiss at 20, ECF No. 110-1. And if Plaintiffs are claiming employment and contract-related harms that are personal to them, the Fourth Circuit has already explained that those harms can be remedied by money damages.

Fourth, Plaintiffs' proposed discovery is irrelevant. Plaintiffs have raised two constitutional claims: (1) that Elon Musk's role as the "*de facto* leader of DOGE" violates the Appointments Clause; and (2) that the alleged Appointments Clause violation and the Defendants' reorganization of USAID violate separation of powers principles. Am. Compl. at 2, ECF No. 93. But these legal issues do not require factual development, and Plaintiffs fail to explain how the proposed discovery would materially advance either of these two claims.

Finally, Plaintiffs' proposed expedited discovery is burdensome and otherwise improper. Beyond the simple fact that irrelevant discovery is inherently unduly burdensome, Plaintiffs seek discovery before the parties' Rule 26(f) conference and while a motion to dismiss is pending— well in advance of a normal discovery schedule. And they seek to greatly expedite Defendants' response time to the proposed discovery—seeking responses to up to 14 document production requests and 10 interrogatories in seven days. In addition, Plaintiffs seek up to 6 depositions, and to complete all discovery for both parties, within 28 days. Not only is this proposed expedition unwarranted, it is unduly burdensome and prejudicial to Defendants. That burden is compounded by Plaintiffs request for discovery from the White House and the request for depositions of two high-level agency officials, which raises significant separation-of-powers concerns. The Court should deny Plaintiffs' request for expedited discovery.

## BACKGROUND

Plaintiffs, initially twenty-six current and former USAID employees and contractors, filed their original complaint on February 13, 2025, alleging that Elon Musk was the "*de facto* DOGE Administrator" who was exercising significant power in violation of the Appointments Clause and that Mr. Musk, the United States DOGE Service, and the "Department of Government Efficiency" violated separation of powers by "repeatedly subverting Congress." Compl. at 1, ECF No. 4.

Plaintiffs subsequently filed a motion for a preliminary injunction, ECF No. 17, which the Court granted in part on March 18. *J. Does 1-26 v. Musk*, ---F. Supp. 3d---, 2025 WL 840574 (D. Md. Mar. 18, 2025).

Defendants immediately appealed and sought an expedited stay of the preliminary injunction. On March 28, the Fourth Circuit granted the stay pending a decision on the merits. *J. Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995 (4th Cir. Mar. 28, 2025). The Fourth Circuit concluded that Defendants "have made a strong showing that the district court erred in finding plaintiffs were likely to succeed on the merits of both their Appointments Clause claim and their separation of powers claim." *Id.* at *3. The Fourth Circuit further held that Defendants "have shown that the district court erroneously concluded that plaintiffs showed irreparable harm under *Winter* [*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)]." *Id.* at *4. The Fourth Circuit concluded that Plaintiffs' "subjective fear of a lack of physical security, fear of nonpayment of expenses, fear their reputations will be harmed by negative comments of defendants about USAID employees and contractors and fear that their confidential information might be exposed" were "insufficient to show the required actual and imminent harm to establish irreparability," and that "to the extent these alleged harms are cognizable damages at all, most can be remedied by money damages." *Id.* at *4–5.

Three weeks after the Fourth Circuit's stay of the preliminary injunction, Plaintiffs filed an amended complaint. ECF No. 93. The amended complaint dismissed all but three of the original plaintiffs, added three additional current or former USAID employees or contractors, added class claims and additional factual allegations, and added additional defendants, including USAID, the Department of State and Secretary Marco Rubio, President Donald Trump, and certain other government officials named in their official capacity. *See generally id.*

On April 25, Plaintiffs filed the instant motion for expedited merits discovery. ECF No. 106. They seek up to 14 requests for production, up to 10 interrogatories, and up to 6 depositions. *Id.* at 12–15; ECF No.106-2. In addition, Plaintiffs request responses to their discovery requests within 7 days of a Court order granting the motion, and a 28-day discovery period for the completion of all discovery, including any discovery taken by Defendants. [Proposed] Order Granting Mot. for Expedited Disc., ECF No. 106-3. Plaintiffs contend that after the conclusion of this shortened discovery period, they "can promptly move for summary judgment." ECF No. 106 at 1.

## **LEGAL STANDARD**

As a general matter, discovery may not begin until the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f). *See* Fed. R. Civ. P. 26(d)(1). Rule 26(d) provides an exception that permits a court to order expedited discovery before the parties have engaged in the Rule 26(f) discovery conference. *Id.*; *see ClearOne Advantage, LLC v. Kersen*, CViv. No. JKB-23-03446, 2024 WL 278917, at *1 (D. Md. Jan. 25, 2024). "[E]xpedited discovery is not the norm," *Allen v. City of Graham*, No. 1:20CV997, 2021 WL 2037983, at *5 (M.D.N.C. May 21, 2021) (citation omitted), and should "only be granted in exceptional circumstances." *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021).

Courts in this circuit employ a reasonableness standard, "determining whether the request is supported by good cause, considering the totality of the circumstances." *ClearOne Advantage, LLC*, 2024 WL 278917, at *1 (citation omitted). Relevant factors include "(1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested expedited discovery; (3) the reasons the moving party is requesting expedited discovery; (4) the burden on the opponent to comply with the request for expedited discovery; (5) whether the information sought expeditiously

could be obtained more efficiently from some other source; (6) the extent to which the discovery process would be expedited; and (7) whether a motion to dismiss for failure to state a claim is pending." *Id.* (citation omitted). Courts in this circuit also consider whether "the moving party would suffer irreparable harm in the absence of early discovery." *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 225 (M.D.N.C. 2021) (citations omitted).

Plaintiffs bear the burden of demonstrating good cause. *Mullane*, 339 F.R.D. at 663. As discussed below, Plaintiffs have failed to meet their burden.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO MEET THEIR BURDEN OF JUSTIFYING EXPEDITED MERITS DISCOVERY

#### A. The Court Should Not Order Discovery Before Resolving the Government's Motion to Dismiss.

Before turning to its content, Plaintiffs' motion is premature. Courts in this Circuit typically wait to order discovery until resolving any motions to dismiss. *See, e.g., S.J. v. Lendlease (US) Pub. P'ship Holdings, Inc.*, No. 7:21-CV-188-D, 2022 WL 138689, at *1 (E.D.N.C. Jan. 13, 2022) (staying discovery pending resolution of defendant's Rule 12(b)(1) motion); *Sheehan v. United States*, Civ. A. No. 5:11CV170, 2012 WL 1142709, at *1–2 (N.D. W. Va. Apr. 4, 2012) (staying discovery pending resolution of government's Rule 12(b)(1) motion because "the possibility that the motion to dismiss will be granted and entirely eliminate the need for such discovery" outweighed any "harm produced by a stay of discovery"); *Wyems v. Lustbader*, Civ. Case No. WDQ-10-1629, 2012 WL 1819836, at *4 (D. Md. May 16, 2012) (explaining that "it is not uncommon for courts to stay discovery pending resolution of dispositive motions."); *Bragg v. United States*, Civ. A. No. 2:10cv683, 2010 WL 3835080, at *2 (S.D. W. Va. Sept. 29, 2010) (granting stay of discovery pending government's Rule 12(b)(1) motion to dismiss); *Wright v.*

*Sutton*, Civ. A. No. 1:08-1431, 2010 WL 11562059, at *1 (S.D.W. Va. July 2, 2010) (staying discovery pending Rule 12(b)(1) motion to dismiss). Indeed, "most important for the Court's reasonableness analysis is the pendency of defendants' motion to dismiss," because the discovery would come "well in advance of typical discovery," and could require defendants to unjustly "expend significant resources in responding to plaintiffs' discovery requests . . . where plaintiffs did not have a viable cause of action." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014) (citations omitted).

Rightly so: A party should not be able to engage in intrusive discovery to prove up a complaint that suffers from fatal defects if taken as true. *See Mullane*, 339 F.R.D. at 668 ("Requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim would wastefully force defendants 'to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action.'" (citation omitted)); *see id.* (explaining that "Federal courts have an obligation to minimize needless expenditures of the parties' time, money, and effort." (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 757 n.4 (1980))).

As explained in detail in Defendants' motion to dismiss, Plaintiffs' Amended Complaint has serious jurisdictional defects which the Court should address under Rule 12(b) before entertaining the possibility of discovery. These fatal deficiencies include that Plaintiffs' employment and contract-related claims are precluded from judicial review in this Court by Congress' channeling of those claims to other tribunals and that Plaintiffs have failed to meet their burden of alleging facts sufficient to establish Article III standing. ECF No. 110–1, at 6–21.

Defendants' motion to dismiss also raises significant issues about Plaintiffs' failure to state plausible constitutional claims. *Id.* at 21–34. For example, Plaintiffs acknowledge in their

Amended Complaint that the challenged reduction in force and alleged discontinuation of the remaining USAID functions are done at the direction of Secretary of State Marco Rubio and Jeremy Lewin, who is performing the duties of Acting Deputy Administrator for Policy and who has been assigned the functions of Chief Operating Officer. *Id.* at 22–24. Accordingly, even if Plaintiffs were correct that Mr. Musk was not properly appointed (an argument which, as explained in Defendants' motion to dismiss, is wrong), those actions have been ratified by officers whose appointments Plaintiffs do not challenge. This alone dooms Plaintiffs' Appointments Clause claim against Mr. Musk. *See Andrade v. Regnery*, 824 F.3d 1253 (D.C. Cir. 1987). Furthermore, Plaintiffs have pled themselves out of an Appointment Clause claim against Mr. Musk because they allege that he does *not* hold an office established by law, that at most he is exercising *de facto* rather than *de jure* power, and that he is a term-limited Special Government Employee who does not hold a continuing office. ECF No. 110–1, at 25–31. And Plaintiffs' separation of powers claim similarly fails for numerous reasons, as discussed in detail in Defendants' motion to dismiss. *Id.* at 31–34.

Courts must examine their jurisdiction at every stage of the litigation, *see SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017), including at the pleading stage, where "the plaintiff's burden is to allege a plausible set of facts establishing jurisdiction." *Grice v. Colvin*, 97 F. Supp. 3d 684, 697 (D. Md. 2015). A lawsuit may not proceed further unless a court has first assured itself of its subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (the "first and fundamental question" in every case "is that of jurisdiction"—a "requirement that . . . as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception").

Because there are substantial doubts as to the Court's jurisdiction, this Court should not order discovery until it has assured itself of its jurisdiction. *Flores v. Jaddou*, Civ. Case No. 1:23-cv-02004-JMC, 2023 WL 7282897, at *2 (D. Md. Nov. 3, 2023) (rejecting proposal to "permit this case to proceed, direct the parties to engage in discovery, and expend resources adjudicating potential discovery disputes and/or dispositive motions just for the Fourth Circuit to conclude that this Court had no subject matter jurisdiction to decide the merits of the case in the first place.").

Plaintiffs wholly ignore these significant jurisdictional defects in their Motion. They instead contend that Defendants' likelihood of success on their motion to dismiss is "remote[]" because the Court concluded that Plaintiffs were likely to prevail on their constitutional claims in the context of Plaintiffs' preliminary injunction motion, and Judge Gregory's Fourth Circuit's concurrence in granting Defendants' emergency motion to stay the preliminary injunction supports that conclusion. ECF No. 106 at 16.[1] Putting to one side the different standards between motions to dismiss and motions for a preliminary injunction, Plaintiffs completely ignore the Fourth Circuit majority's conclusion that "[t]he current evidence in the record indicates that Musk's actions did not involve the exercise of authority of an office granted by law but rather the implementation of Executive policies." *J. Does 1-26*, 2025 WL 1020995, at *4. And more fundamentally, as explained in Defendants' motion to dismiss, Plaintiffs have amended their complaint in significant ways that dramatically undermine any plausible claims on the merits. *See* ECF No. 110–1, at 21–34.[2]

---

[1] Plaintiffs note that the Court concluded in the preliminary injunction opinion that the Appointments Clause claims may proceed "even if the office at issue was not formally created by Congress or the Executive Branch." Mem. Op. at 30–31, ECF No. 73. As explained in Defendants' motion to dismiss, the cited cases do not support that proposition. ECF No. 110–1, at 26–27, 29.

[2] Plaintiffs' wrongly claim that Defendants' opposition to expedited discovery is at odds with their previous request that the preliminary injunction be consolidated with a decision on the merits, ECF No. 106 at 15–16. The Court denied Defendants' request for consolidation and subsequently

Finally, Plaintiffs' reliance on the district court's decision in *New Mexico v. Musk*, ---F. Supp. 3d---, 2025 WL 783192 (D.D.C. Mar. 12, 2025), *stay granted sub nom In re Musk*, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025), ECF No. 106 at 16, is exceedingly peculiar, because that matter is virtually dispositive in the other direction. What Plaintiffs fail to acknowledge is that the D.C. Circuit *stayed* the district court's order in that case and did so because the government has "shown a likelihood of success on their argument that the district court was required to decide their motion to dismiss before allowing discovery." *In re Musk*, No. 25-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025). Regardless, unlike in this case, the *New Mexico* plaintiffs sought expedited discovery in support of a forthcoming preliminary injunction motion, and that posture (again, absent here) was the main justification for Judge Chutkan's decision. If anything, the *New Mexico* case cuts definitively against Plaintiffs' motion for expedited discovery.

**B.  There is No Motion for a Preliminary Injunction Pending.**

Courts in this district have held that expedited discovery is "particularly appropriate where a preliminary injunction is sought." *Brightview Grp., LP v. Teeters*, Civ. No. SAG-19-2774, 2019 WL 11660174, at *1 (D. Md. Nov. 6, 2019) (quoting *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, Civ. A. No. WMN-09-CV-2499, 2009 WL 3746690, at *1 (D. Md. Nov. 2, 2009)). But as Plaintiffs acknowledge, they are not seeking discovery in support of a preliminary injunction motion, ECF No. 106 at 7 (admitting that the "proposed discovery is not intended to be used to prepare for a preliminary injunction motion"), because there is no preliminary injunction motion pending.

---

permitted Defendants to file a motion to dismiss. The Court should thus first resolve the motion to dismiss before permitting discovery.

Indeed, *none* of the cases Plaintiffs cite support their novel request for expedited merits discovery in aid of an unscheduled and indeterminate motion for summary judgment. *Id. See Abrego Garcia v. Noem*, ---F.R.D.---, 2025 WL 1113440, at *3 (D. Md. Apr. 15, 2025) (granting expedited discovery to determine compliance with preliminary injunction); *Does 1-9 v. Dep't of Just.*, Nos. 25-cv-325 (JMC), 25-cv-328 (JMC), 2025 WL 894120, at *1, *4 (D.D.C. Mar. 22, 2025) (denying "full-blown merits discovery, particularly with a pending motion to dismiss that raises jurisdictional concerns" pending and instead permitting narrow jurisdictional discovery concerning the motion to dismiss and the then-pending motion for a preliminary injunction (citation omitted)); *Evapco, Inc. v. Mech. Prods. Sw., LLC*, Civ. Case No. SAG-22-3375, 2023 WL 361131, at *1 (D. Md. Jan. 23, 2023) (granting expedited discovery in support of preliminary injunction); *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844–45 (D.D.C. 1996) (granting expedited discovery where the court consolidated the plaintiffs' motion for a preliminary injunction with a decision on the merits and there was no motion to dismiss pending); *ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11cv88, 2011 WL 2560110, at *5 (E.D. Va. June 27, 2011) (denying plaintiff's request for expedited discovery and noting that "[m]otions for expedited discovery are routinely considered either during a court's consideration of motions for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument."); *NAPCO, Inc.*, 555 F. Supp. 3d at 225 (denying motion for expedited discovery where Plaintiffs failed to show irreparable harm in the absence of early discovery); *Williams v. The Estates, LLC*, No. 1:19CV1076, 2019 WL 13148707, at *2 (M.D.N.C. Nov. 5, 2019) (denying motion for expedited discovery where no motion for a temporary restraining order or motion for a preliminary injunction was pending).

Here, Plaintiffs are not seeking discovery to determine compliance with or support for the stayed preliminary injunction motion and are not seeking jurisdictional discovery in response to Defendants' motion to dismiss. The absence of any legal support for their novel claim is telling. In short, this factor also weighs convincingly against expedited discovery.

### C. Plaintiffs' Claimed Need for Expedited Merits Discovery Lacks Merit and the Discovery is Unduly Burdensome.

#### 1. Plaintiffs fail to establish any immediate need for expedited discovery.

Plaintiffs claim that they need expedited merits discovery because USAID will be dismantled by September 1, 2025, at which point they "will lose the ability to meaningfully achieve the injunctive relief they seek and thus will no longer be able to vindicate their constitutional rights." ECF No. 106 at 1.[3] This argument is flawed at every turn.

First, even on its own terms, Plaintiffs' motion fails to establish any exigency. The motion itself concedes the bulk of allegations are "largely publicly known." *Id.* at 10. More important, the motion overwhelmingly seeks discovery concerning events that took place between "January 20, 2025 and February 3, 2025." *Id.* at 9. But Plaintiffs do not even attempt to explain why there is an urgent need for discovery into a series of events from three months ago. Nor could they, in light of their Amended Complaint. As stressed in the motion to dismiss, even Plaintiffs concede that USAID is currently being overseen and directed by agency officials who are lawfully serving in their roles. ECF No. 110–1, at 22–24. Put otherwise, if Plaintiffs are concerned with possible actions taking place this summer, those actions are being taken by undisputedly proper agency

---

[3] Plaintiffs' claimed need for expedition is at odds with their recent consent to an enlargement of the government's deadline to file its opening brief in the Fourth Circuit by 44 days. *See Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 387 (E.D. Wis. 2009) (denying motion for expedited discovery for, among other reasons, that plaintiff's claimed urgency "border on the incredulous given their stipulation" to an extension of time to respond to the complaint).

officials. Plaintiffs may well object that these acts violate some external legal limit; but those purely legal arguments do not turn on discovery, let alone justify a need for expedited discovery.

Second, and perhaps more fundamental, Plaintiffs cannot demand expedition to protect their "constitutional rights" because they assert no particularized harm to their constitutional interests. ECF No. 106 at 1. The only basis Plaintiffs offer as to why immediate discovery is necessary is their assertion that Defendants are supposedly violating broad "government-structuring provisions." *Id.* at 10 (citation omitted). That is not a particularized interest. Plaintiffs lack standing to rely on that harm—both as to jurisdiction and as a basis for expedited discovery—because it amounts to a "generalized interest" in the "independence of each branch of Government" shared by "all citizens." *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 220, 226–27 (1974).

Third, the only possible harms Plaintiffs could assert that are particular to them are personnel and contract-based harms, which are not irreparable—and thus not grounds for departing from ordinary procedure. As the Fourth Circuit explained in granting a stay of the preliminary injunction in this case "to the extent [Plaintiffs'] alleged harms are cognizable damages at all, most can be remedied by money damages." *J. Does 1-26*, 2025 WL 1020995, at *5; *see Parker v. Case Farms, LLC*, Civ. Case No. 1:20-cv-00011-MR-WCM, 2020 WL 12991080, at *2 (W.D.N.C. Feb. 25, 2020) (denying expedited discovery where plaintiff could not show "that his alleged damages cannot be adequately remedied by a monetary judgment."). Because these harms can be remedied, there is no reason to expedite discovery to resolve them. Regardless, Plaintiffs' personnel and contract-based claims are subject to preclusion for the reasons discussed in Defendants' motion to dismiss. ECF No. 110–1, at 7–16.

Finally, Plaintiffs do not overcome this hurdle with their claim that expedited merits discovery is appropriate because of "the combined factors of (a) Plaintiffs' pending PI motion on appeal, and (b) Plaintiffs intent to use this discovery to seek urgent injunctive relief." ECF No. 106 at 7. Plaintiffs fail to explain why discovery is necessary to support a preliminary injunction motion that has already been granted and stayed pending appeal. Nor do they justify why expedited discovery is necessary in support of a forthcoming motion for summary judgment (which, in any event, has not even been permitted yet by the Court).

### 2. Plaintiffs' requests are irrelevant and unduly burdensome.

In addition, Plaintiffs' expedited discovery requests—up to 14 document production requests, 11 interrogatories and 6 depositions—all to be responded to in substantially less than 30 days, are unduly burdensome for multiple reasons. First, "[d]iscovery directed at irrelevant matters imposes a per se undue burden on the responding party." *Hellen v. Am. Fam. Ins. Co.*, Civ. A. No. 1:22-cv-02717-REB-SBP, 2024 WL 98383, at *4 (D. Colo. Jan. 9, 2024), *overruling objections*, 2024 WL 3634939 (D. Colo. Feb. 21, 2024). Here, Plaintiffs' discovery requests have little, if anything, to do with their underlying claims.

**a.** Begin with Plaintiffs' written discovery requests. An illustrative example is Plaintiffs' interrogatory number 1, which requests the identification of all "DOGE personnel with systems access" to 12 different USAID data systems, including "the level of access for each person for each data system." ECF No. 106-2 at 6. Plaintiffs do not even try to cabin this request to databases where Plaintiffs' information is maintained. What's more, the identity and level of access of "DOGE personnel" would tell Plaintiffs and the Court nothing about whether such access was legally authorized, let alone how, if at all, Plaintiffs' information may have been used. And

Plaintiffs fail to explain how a claim of unauthorized access is relevant to either of their two constitutional claims.

Similarly, Plaintiffs' interrogatory number 5 requests USAID staffing numbers "disaggregated by hiring mechanism" at various points in time and Plaintiffs' interrogatory number 7 requests "the total number of USAID contracts in existence on January 19, 2025, as compared to the total number of contracts in existence on the date this interrogatory is responded to." *Id.* at 7. Whatever the staffing or contract levels may have been or will be at USAID has no bearing on whether Mr. Musk violated the Appointments Clause or whether Defendants have engaged in a separation of powers violation.

Some of Plaintiffs' interrogatories are problematic for another reason—they are directed to the White House. For example, Plaintiffs' interrogatory number 6 requests "every individual who has served as DOGE Administrator or as the functional head of DOGE" (whatever that may mean), as well as the identification of "all individuals with authority to hire or terminate employment of DOGE personnel since January 20, 2025." *Id*. The DOGE Administrator is within the Executive Office of the President and reports to the White House Chief of Staff. *Establishing & Implementing the President's "Department of Government Efficiency"*, Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025). But litigation against the Executive—including the President, who is a named defendant here—is different from garden variety litigation. The separation of powers "should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004) (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)). Among other things, what this means is that before a litigant demands materials of the White House, it must "satisf[y] his burden of showing the propriety of the requests"—*e.g.*, that there is a compelling "need" for such material, that "other

avenues" are unavailable to obtain relevant material, and that no alternatives are "available." *Id.* at 388, 390; *see e.g.*, *Lardner v. U.S. Dep't of Just.*, No. 03-0180, 2005 WL 758267, at *9 (D.D.C. Mar. 31, 2005) ("[A] court must screen a request for presidential documents to ensure that the discovery is essential to the proceedings"). Moreover, it is not the Executive who "shall bear the burden" of showing that a discovery request is too broad; there is an effective presumption against such discovery, which falls to a plaintiff to shoulder with particularity. *Cheney*, 542 U.S. at 388. Plaintiffs have not come close to shouldering this burden, to say nothing of doing so in a manner that would justify the heightened burdens of *expedited* White House discovery.

**b.** Plaintiffs' request for depositions are even more unwarranted. "[D]epositions impose a heavier burden than written discovery." *New Mexico*, 2025 WL 783192, at *6 (denying request for depositions in the context of expedited discovery and permitting willingness to re-raise request only if "Defendants fail to adequately respond to Plaintiffs' written discovery"). But even on their own terms, Plaintiffs' proposed depositions are improper. For example, Plaintiffs seek the deposition of John Vorhees, who served as USAID Director of Security, who they claim has "information likely to be relevant to Plaintiffs' claims" because he "resisted DOGE efforts, as to who took what actions and under what authority during [the February 1, 2025] weekend in which large parts of the agency were effectively [being] dismantled." ECF No. 106 at 13. But the Fourth Circuit has already rejected the claim that Plaintiffs' subjective fear that their confidential information might be exposed is cognizable, holding that it "is remote and speculative" and "insufficient to show the required actual and imminent harm to establish irreparability." *J. Does 1-26*, 2025 WL 1020995, at *5. What's more, Plaintiffs fail to explain why they need *expedited* discovery for an action that took place nearly three months ago.

The same is true of Gavin Kliger and Luke Farritor, whom Plaintiffs allege were "present on February 1, 2025," and who, with respect to Mr. Kliger, "demanded and received unrestricted access to USAID's financial, personnel, and administrative data systems." ECF No. 106 at 13–14. Plaintiffs fail to explain why these past actions require an immediate deposition or how these actions relate to Plaintiffs' claim concerning "Defendants' rapid dismantling of USAID," which is the sole basis for their requested expedited discovery. *Id.* at 1. Similarly, if Plaintiffs contend that Mr. Farritor has "continued to play a role dismantling USAID by restricting payment systems and helping prepare and disseminate termination and leave notices," *id.* at 14, this simply highlights that Plaintiffs are improperly seeking discovery into personnel and contract matters that this Court lacks jurisdiction to adjudicate due to congressional channeling.

Finally, Plaintiffs seek the deposition of Jeremy Lewin and Peter Marocco, the current and former officials performing the duties of Deputy Administrators of USAID, respectively. *See id.* at 14–15. But as high-level current and former agency officials, any depositions should be a matter of last—not first—resort (and certainly not the basis for expedited discovery).

"[A] district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *In re USA,* 624 F.3d 1368, 1376 (11th Cir. 2010). Instead, as the Supreme Court and lower courts have recognized, compelling the testimony of high-ranking current and former government officials is justified only in "extraordinary instances." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *accord*, *e.g.*, *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013); *In re USA*, 624 F.3d at 1376; *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007); *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985); *In re United States*, 542 F. App'x 944, 948 (Fed. Cir. 2013). That strict limitation on the compelled testimony of high-ranking officials is necessary

because such orders raise significant "separation of powers concerns." *In re USA*, 624 F.3d at 1372; *see Arlington Heights*, 429 U.S. at 268 & n.18. As the Supreme Court has emphasized, administrative decisionmaking and judicial processes are "collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *United States v. Morgan*, 313 U.S. 409, 422 (1941). "Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected." *Id.* (internal citation omitted). Accordingly, "there is a presumption against deposing high-ranking government officials" regarding official actions, *Kelley v. FBI*, Civ. A. No. 13-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (citing *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970)). As an application of that presumption, which is sometimes termed the "apex doctrine," "high ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases); *see Lederman*, 731 F.3d at 203 ("We now hold that, to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.").

Three separate rationales underlie these protections: "(1) to protect the integrity and independence of the government's decision-making process, . . . (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion, . . . and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants[.]" *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (internal

citations omitted); *see also In re United States (Reno)*, 197 F.3d 310, 313–14 (8th Cir. 1999); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Morgan*, 313 U.S. at 422. "[H]igh-ranking" encompasses more than cabinet-level officials, *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 320 (D.N.J. 2009), and both Mr. Lewin and Mr. Marocco are (or were) high-level officials subject to the apex doctrine. *See, e.g., In re United States (Reno)*, 197 F.3d at 314 (applying apex doctrine to Deputy Attorney General); *In re Fed. Deposit Ins. Corp.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (applying apex doctrine to three members of the Board of the FDIC); *U.S. Bd. of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) (applying apex doctrine to members of the Board of Parol); *Church of Scientology of Bos. v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990) (applying apex doctrine to Director of Exempt Organizations Technical Division, National Office of the I.R.S. who occupied a "Senior Executive, Level 4 position and is responsible for the management" of the Division); *Sensient Colors*, 649 F. Supp. 2d at 321 (applying apex doctrine to EPA Regional Administrator for Region 2, who "reports directly to the EPA Administrator, who in turn reports directly to the President of the United States."); *cf. United States v. U.S. Dist. Ct. for N. Mariana Islands*, 694 F.3d 1051, 1059–62 (9th Cir. 2012) (issuing writ of mandamus to quash order requiring the Assistant Attorney General for the Department of Justice's Tax Division to appear at a settlement conference).

In sum, a long line of authority holds that when a party in civil litigation seeks discovery from a senior Executive Branch official, the district court must hold the plaintiff to a heightened standard of necessity and relevance. And at true minimum, that heightened standard can be met only after a plaintiff has *first* exhausted alternative sources of non-privileged discovery and—having done so—*then* demonstrates that the requests are limited to personal knowledge that cannot

otherwise be obtained. *See Simplex*, 766 F.2d at 586–87; *see also Lederman*, 731 F.3d at 203; *Alexander*, 186 F.R.D. at 4.

The fact that Mr. Marocco is no longer a high-level official at USAID does not alter the analysis. Courts have recognized that the *Morgan* doctrine "is no less applicable to former officials than to current officials," even though any immediate "interference with official duties is absent." *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, Case No. 1:15-mc-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015) (quoting *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010)); *see also United States v. Wal-Mart Stores*, No. Civ. A. PJM-01-CV-152, 2002 WL 562301, at *3-4 (D. Md. Mar. 29, 2002).[4] There is no serious question under Fourth Circuit precedent or of any other circuit that Mr. Marocco was protected by the *Morgan* doctrine from unwarranted deposition while he was still the Acting Deputy Director. The happenstance that he is no longer serving in that position does not change the outcome. *In re United States*, 542 F. App'x at 949 ("[T]he process-inquiry rationale [for prohibiting depositions of high-ranking officials except under exceptional circumstances] hardly becomes inapplicable upon an official's departure from his office[.]"), *accord In re U.S. Dep't of Educ.*, 25 F.4th at 705; *Galan-Alvarez*, 2015 WL 5602342, at *4 ("'indiscriminate depositions of high-ranking government officials would . . . likely discourage' people 'from accepting positions as public servants' irrespective of whether those deposed were current or former officials" (quoting *Wal-Mart*, 2002 WL 562301, at *3)). The concerns underlying the *Morgan* doctrine remain even after a high-ranking official leaves office:

---

[4] *See also In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022) ("[f]ormer United States Secretary of Education Elisabeth DeVos"); *see also Lederman*, 731 F.3d at 203-04 (former deputy mayor); *Raymond v. City of N.Y.*, Civ. A. No. 15 Civ. 6885 (LTS) (SLC), 2020 WL 1067482, at *4 (S.D.N.Y. Mar. 5, 2020) (former police commissioners).

If the *Morgan* doctrine "is to have any meaning, the protections must continue upon the official's departure from public service." *Wal-Mart*, 2002 WL 562301, at *3.

For this reason, Plaintiffs' request for apex depositions is particularly inappropriate in the context of expedited pre-answer discovery. In this context, Plaintiffs of course can make no showing that they have thoroughly exhausted other means of discovery before making this extraordinary request, and Plaintiffs offer no basis to take the deposition of such senior officials before all discovery in the ordinary course is completed and a showing is made that *only* those officials can provide specific, essential information. Plaintiffs have not even attempted to make such a showing.

**c.** Plaintiffs' requested discovery fails for an even more fundamental reason: Discovery is not needed to support either of their legal theories. As for Plaintiffs' separation of powers claim, they object to certain actions—*e.g.*, reductions in force, contract terminations—that they claim unlawfully "dismantle" USAID, contrary to the agency's organic statute and congressional will. Whatever the merit of that assertion, it is a fundamentally *legal* claim, which turns not on any set of contested facts, but instead on whether the public actions at issue taken by concededly proper officers are consistent with a federal statute. There is no need for discovery to review *that*—and Plaintiffs do not even try to argue otherwise.

Likewise, Plaintiffs' Amended Complaint now concedes that USAID is being overseen and directed by properly serving officers. *See* ECF No. 93 ¶¶ 72–73, 116, 118–24. By this Court's own account, that defeats any need for discovery here. So long as a "duly appointed Officer" authorizes or ratifies the action, there is no constitutional defect. *J. Does 1-26*, 2025 WL 840574, at *13. So much so here: Plaintiffs do not explain why any factual development is needed given this dynamic, let alone expedited discovery. Nor could they: Appointments Clause analysis turns

on the exercise of an office vested with formal authority; that is a purely legal inquiry, which does not involve any consideration of facts.

### D. Plaintiffs Seek Substantial Expedition Beyond the Normal Discovery Schedule.

Plaintiffs' requested expedited merits discovery comes both well in advance of the normal discovery schedule and seeks one-fourth the response time permitted in the federal rules, which further weighs against expedition. Indeed, Plaintiffs do not appear to address this factor at all in their motion, let alone explain why this factor weighs in favor of expedited discovery.

"[C]ourts should consider the difference—measured in temporal units, such as days—a party would obtain discovery materials pursuant to an expedited schedule versus the normal discovery process." *Mullane*, 339 F.R.D. at 668. And "courts have an obligation to protect defendants from unfairly expedited discovery." *Edgenet*, 259 F.R.D. at 388. Here, Plaintiffs seek significant expedition in comparison to the normal discovery process, resulting in a substantial burden to Defendants.

Defendants just filed a motion to dismiss yesterday, which is not fully briefed, and the parties have not had the Rule 26(f) conference to discuss merits discovery and a pre-trial schedule, exchanged initial disclosures, or negotiated a protective order—a likely prerequisite to any production of information in this case. Indeed, Plaintiffs recently filed an Amended Complaint on April 17, 2025, ECF No. 93, and the sixty-day deadline for the new Defendants to appear, including USAID, the State Department, and President Trump has not come close to running. *See* Fed. R. Civ. P. 12(a)(2). Nevertheless, Plaintiffs seek to launch into immediate merits discovery, well in advance of normal discovery, and seek discovery responses within seven days of an order permitting discovery—cutting the Defendants' response time by three weeks. ECF No. 106-3; *see* Fed. R. Civ. P. 33(b)(2) (providing 30 days to respond to interrogatories); Fed. R. Civ. P.

34(b)(2)(A) (providing 30 days to respond to document production requests). And they seek at least 5 depositions, 11 document production requests and 7 interrogatories, while purporting to reserve the right to seek additional discovery, within a proposed 28-day discovery period. Notably, this is on top of any discovery Defendants may take within Plaintiffs' proposed 28-day discovery period.

Even where courts permit expedited discovery, they allow substantially more time than what Plaintiffs request here, often for much narrower requests. *See, e.g., Does 1-9*, 2025 WL 894120, at *9 (permitting 23 days to respond to "two narrow interrogatories" and "two targeted requests for production."); *New Mexico*, 2025 WL 783192, at *6 (extending the time for compliance with expedited discovery from "seven days to twenty-one days"); *cf. Edgenet*, 259 F.R.D. at 388 (denying expedited discovery where plaintiffs sought initial discovery responses in seven days of service with completion of discovery within 21 days). Accordingly, Plaintiffs' substantial acceleration of the normal discovery schedule, and the resulting prejudice to Defendants, weighs against expedition.

## II.    IF THIS COURT ORDERS EXPEDITED DISCOVERY, DEFENDANTS REQUEST A STAY OF THAT ORDER.

If the Court orders expedited discovery notwithstanding all the above, the Government respectfully requests a stay of that order for at least fourteen days, so that it may consider seeking emergency appellate relief.

**<u>CONCLUSION</u>**

For all the above reasons—because the Court must assure itself of its jurisdiction before proceeding further and there is no irreparable harm or other pressing need warranting expedited discovery, no motion for a preliminary injunction is pending, and expedited discovery would impose an unwarranted burden on Defendants—the Court should deny Plaintiffs' Motion for Expedited Discovery.

Dated: May 2, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

 _/s/Joshua E. Gardner_
JOSHUA E. GARDNER (FL Bar No. 302820)
*By Special Appearance*
Special Counsel

GARRY D. HARTLIEB (IL Bar No. 6322571)
CHRISTOPHER M. LYNCH
(DC Bar No. 1049152)
JACOB S. SILER (DC Bar No. 1003383)
JAMES WEN (NY Bar No. 5422126)
*By Special Appearance*
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-7583
Email: joshua.e.gardner@usdoj.gov

*Attorneys for Defendants*

23