# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

J. DOE 4, *et al.*, *individually and on behalf of all others similarly situated*,

        *Plaintiffs*,

    v.

ELON MUSK, *et al.*,

        *Defendants*.

Case No. 8:25-cv-00462-TDC

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 6

I.     THRESHOLD ISSUES PRECLUDE CONSIDERATION OF CLASS
CERTIFICATION ................................................................................................. 6

II.    THE PROPOSED CLASS DEFINITION IS OVERBROAD .......................... 7

III.   THE PROPOSED CLASS LACKS COMMONALITY AND TYPICALITY ................ 10

IV.   THE PROPOSED CLASS DOES NOT SATISFY RULE 23(b)(2)'s
REQUIREMENTS ............................................................................................... 20

V.    EVEN BEYOND THE REQUIREMENTS OF RULE 23, THIS COURT
SHOULD DENY CLASS CERTIFICATION ................................................... 24

CONCLUSION ................................................................................................................. 26

## INTRODUCTION

Plaintiffs, six pseudonymous current and former employees and contractors of the United States Agency for International Development ("USAID"), have moved for class certification over challenges to numerous discrete actions taken by different federal officials and agencies over the past five months. Plaintiffs' motion should be denied.

As an initial matter, the motion is premature given Defendants' pending fully dispositive motion to dismiss, which raises significant jurisdictional and pleading defects. Before resolving Plaintiffs' class certification motion, the Court should first determine whether it possesses jurisdiction over Plaintiffs' claims.

The motion also fails on the merits, for at least three reasons. First, Plaintiffs' proposed class is fatally overbroad: it sweeps in individuals who could not have plausibly suffered any injury; and it is ill-defined because it fails to reference any theory of harm, contravening binding Fourth Circuit precedent. *See Stafford v. Bojangles Rest., Inc.*, 123 F.4th 671 (4th Cir. 2024).

Second, Plaintiffs fail to satisfy the requirements of Rule 23(a) because they cannot establish commonality and typicality. As an initial matter, Plaintiffs' boilerplate declarations fail to meet their burden to establish commonality and typicality. And, more fundamentally, the problem with Plaintiffs' proposed class is that it encompasses all of USAID's diverse, international workforce in its entirety. That proposed class is united only in the fact that it would encompass all current and former USAID employees and contractors that all are alleged to have suffered identical harms as a result of Defendants' same constitutional violations. But "Rule 23 does not allow for [such] a 30,000 foot view of commonality . . ." *Stafford*, 123 F.4th at 680 (citation omitted). What is more, the inherently individualized nature of Plaintiffs' claimed harms—such as reputational

and dignitary harms—will necessarily implicate class member-specific defenses that doom any claim that Plaintiffs can satisfy Rule 23(a)'s commonality and typicality requirements.

Third, Plaintiffs' proposed class also fails to satisfy Rule 23(b)(2)'s requirements. The crux of Rule 23(b)(2) is that any injunctive and declaratory relief would apply in the same way across the entire proposed class. Plaintiffs fail to demonstrate that a single, final injunctive or declaratory order would remedy the claimed injuries of the class in a uniform way or even at all. Rule 23(b)(2) also is inapposite because Plaintiffs chiefly seek prospective injunctive relief for past injuries that are unlikely to recur.

Finally, even beyond the strictures of Rule 23, this Court should deny class certification because resolving this case on a class-wide basis is unnecessary. The interests of the proposed class—current and former USAID employees and contractors—are already being represented in other litigation; class certification here would create significant additional complexity and burdens on the parties and the Court, not only in this case, but also those others.

## BACKGROUND

Plaintiffs, initially twenty-six current and former USAID employees and contractors, filed their original complaint on February 13, 2025, alleging that Elon Musk was the "*de facto* DOGE Administrator" who was exercising significant power in violation of the Appointments Clause and that Mr. Musk, the United States DOGE Service, and a self-branded "Department of Government Efficiency" violated the separation of powers by "repeatedly subverting the Congress." Compl. at 1, ¶ 66, ECF No. 4. Plaintiffs subsequently filed a motion for a preliminary injunction, ECF No. 17, which the Court granted in part on March 18. *J. Does 1-26 v. Musk*, ---F. Supp. 3d---, 2025 WL 840574 (D. Md. Mar. 18, 2025).

Defendants immediately appealed and sought an expedited stay of the preliminary injunction. On March 28, the Fourth Circuit unanimously granted the stay pending a decision on the merits. *J. Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995 (4th Cir. Mar. 28, 2025). Two of the judges on the stay panel concluded that the record before the Court "does not support the . . . finding of a likelihood of constitutional violations" and that "plaintiffs [have not] showed irreparable harm under *Winter [v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)]." *Id.* at *4.

Three weeks after the Fourth Circuit's stay of the preliminary injunction, Plaintiffs filed an amended complaint. ECF No. 93 ("Am. Compl."). The Amended Complaint dismissed all but three of the original plaintiffs, added three additional current or former USAID employees or contractors, added class claims and additional factual allegations, and added additional defendants, including USAID, the Department of State and Secretary Marco Rubio, President Donald Trump, and certain other government officials named in their official capacity. *See generally id.*

On May 1, 2025—the same day Defendants moved to dismiss Plaintiffs' Amended Complaint, ECF No. 110—Plaintiffs moved for class certification. ECF No. 111.

According to Plaintiffs, "USAID employed up to 10,000 staff, with approximately two-thirds posted at the Agency's more than 60 overseas missions." *Id.* at 4. Plaintiffs also allege that "USAID hires personnel under various hiring mechanisms, resulting in different employment classifications." *Id.* Plaintiffs indicate that USAID has at least eight different employment classifications, *id.* at 2 n.2, including but "not limited to Civil Service, Foreign Service, Foreign Service Limited, and Personal Services Contractors." *Id.* at 4. In their motion, Plaintiffs rely on a report by the USAID Office of the Inspector General. *Id.* at 2 n.2 (citing USAID, Office of Inspector Gen., *Strategic Workforce Planning, Audit Rep. No. 9-000-22-001-P* (May 25, 2022), https://oig.usaid.gov/sites/default/files/2022-06/9-000-22-001-P.pdf ("IG Report")). The IG

Report indicates that the only career personnel at USAID are those employees in the Civil Service and Foreign Service classifications, which accounts for "[a]pproximately one-third of USAID's staff . . ." IG Report at 2, 23. The other employee classifications are for either non-career, term-limited positions—such as Foreign Service Limited employees—or various types of contractor positions. *Id.* at 24. The IG Report further highlights that many USAID employees are foreign nationals. For example, Foreign Service National employees "comprise most of USAID's staff" and "are generally non-U.S. citizens hired by a USAID mission abroad." *Id.* at 17, 23.

Plaintiffs identify all six named Plaintiffs as Proposed Class Representatives. *See* ECF No. 111-2 ¶ 8. In support of their motion for class certification, Plaintiffs have submitted declarations asserting the following injuries mentioned in the Amended Complaint: (a) unauthorized access to or disclosure of their private data, (b) interruptions to the ordinary course of their employment, (c) reputational harm, and (d) other dignitary harm. ECF No. 111, Ex. 1 at J.R. 00005; Ex. 2 at J.R. 00010; Ex. 3 at J.R. 00015; Ex. 4 at J.R. 00020; Ex. 5 at J.R. 00025; Ex. 6 at J.R. 00030.

## LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (same). To fall within this exception, a plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes* ("*Wal-Mart*"), 564 U.S. 338, 350 (2011). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id.*; *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) (explaining that the defendant does not bear the burden of showing that the proposed class does not comply with Rule 23). Indeed, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have

been satisfied[.]'" *Wal-Mart*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351.

To meet this "affirmative" burden of compliance with Rule 23, a plaintiff must demonstrate the existence of each and every element required by Rule 23(a) that: (1) there are sufficiently numerous parties ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the named plaintiff are typical of those of the class ("typicality"); and (4) the named plaintiff will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Rule 23 also "contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,' often referred to as 'ascertainability.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id.* (cleaned up). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160.

In addition to the requirements of Rule 23(a), the proposed class must satisfy the requirements of Rule 23(b)(1), (2), or (3). *See Brown v. Nucor Corp.*, 785 F.3d 895, 931 (4th Cir. 2015). Here, where Plaintiffs seek certification of Rule 23(b)(2) class, they must establish that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class a as a whole[.]" Fed. R. Civ. P. 23(b)(2).

# ARGUMENT

## I. THRESHOLD ISSUES PRECLUDE CONSIDERATION OF CLASS CERTIFICATION

Courts must examine their jurisdiction at every stage of the litigation. *See SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017). A lawsuit may not proceed further unless a court has first assured itself of its subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (the "first and fundamental question" in every case "is that of jurisdiction"—a "requirement that . . . as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception") (citations omitted)).

Before this Court may consider whether Plaintiffs have proposed a class capable of certification, the Court must first determine that it has subject matter jurisdiction, including whether Plaintiffs have Article III standing. *See*, *e.g.*, *Amchem Prods.*, 521 U.S. at 613 ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act."); *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 420 (D.C. Cir. 2006) ("subject matter jurisdiction is a prerequisite to class certification."); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) ("The question of constitutional standing . . . is a prerequisite to Rule 23 class certification because it goes the court's jurisdiction."); *Coleman ex rel. Brunn v. District of Columbia*, 306 F.R.D. 68, 74 (D.D.C. 2015) ("Any analysis of class certification must begin with the issue of standing.") (internal citation omitted)).

As detailed in Defendants' motion to dismiss, Plaintiffs' Amended Complaint has serious jurisdictional defects which the Court should address under Rule 12(b)(1) before considering class certification. These fatal deficiencies include that Plaintiffs' employment and contract-related

claims are precluded from judicial review in this Court by Congress' channeling of those claims to other tribunals and that Plaintiffs have failed to meet their burden of alleging facts sufficient to establish Article III standing. ECF No. 110-1 at 6–21.

Thus, rather than undertaking class certification or any other proceedings, the Court should first rule on the issues raised in Defendants' motion to dismiss. Indeed, courts have commonly stayed class certification pending resolution of a motion to dismiss. *See Kang v. Dep't of Homeland Sec.*, Civ. Case No. 21-2944 (RJL), 2022 WL 4446385 at *2 (D.D.C. Sept. 23, 2022); *see also Fischer v. District of Columbia*, Case No. 24-cv-00044 (CRC), 2025 WL 894445, at *3 (D.D.C. Mar. 24, 2025); *see also Howard v. Gutierrez*, 474 F. Supp. 2d 41, 44 (D.D.C. 2007); *cf. Walters v. Transwestern Carey Winston, LLC*, Civ. No. WDQ-11-3074, 2012 WL 1553108, at *2 (D. Md. Apr. 30, 2012) (granting "[the defendant]'s unopposed motion to stay [the plaintiff]'s motion for class certification until after the Court's ruling on the motion to dismiss"). Similarly here, the Court should first resolve Defendants' motion to dismiss before class certification as that motion may be dispositive of the litigation.

## II.     THE PROPOSED CLASS DEFINITION IS OVERBROAD

Under Rule 23, a class must be defined clearly and with specificity. *Stafford*, 123 F.4th at 680–81 ("class definitions must be written with specificity."). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). Otherwise, an overbroad class definition "risk[s] including individuals who would not have a right to recovery but for the sweeping scope of the class certification itself." *Stafford*, 123 F.4th at 681. This is particularly true for Rule 23(b)(2) classes, where there is no right to opt-out. *See Thorn*, 445 F.3d at 330 n.25 ("Unlike Rule 23(b)(3), Rule 23(b)(2) neither requires that absent

class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action.") (citing Fed. R. Civ. P. 23(c)(2)(A))).

Having an inadequately defined or overbroad class often implicates multiple Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2). *See Stafford*, 123 F.4th at 681 ("[A] circular class definition [can] reveal the lack of a genuinely common issue of law or fact.") (quoting *In re White*, 64 F.4th 302, 314 (D.C. Cir. 2023)).

Here, Plaintiffs seek to certify a class defined as:

> All persons who, between January 20, 2025 through the present (the "Class Period"), worked at any time as employees of USAID, including as personal services contractors; specifically excluded from this class are Defendants or any other person who, during the Class Period, acted as Administrator or Deputy Administrator of USAID.

ECF No. 111 at 16. That class definition is fatally overbroad. For starters, Plaintiffs' class definition impermissibly consists of all USAID employees since January 20, 2025, including individuals who have not suffered any injury. *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("[I]f the [class] definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad."). Notably, Plaintiffs' class definition sweeps in USAID employees who—to list a few categories— (1) will remain employed with the agency or be reassigned to the State Department, (2) those who have chosen or will choose to voluntarily resign, and (3) those who have chosen or will choose to retire.[1] The definition even includes contractors whose contracts lapsed shortly after the beginning of the Class Period. This

---

[1] According to Plaintiffs, certain USAID employees were "placed on administrative leave because they had been identified as taking actions within [the agency] 'designed to circumvent the President's Executive Orders and the mandate from the American people.'" ECF No. 111 at 9 (citing Am. Compl. ¶¶ 65–66). Plaintiffs fail to explain how individuals who were placed on leave for disciplinary reasons are similarly situated to other class members.

is not merely a theoretical concern. As one of the Plaintiffs, J. Doe 29, makes clear in his declaration, his contract lapsed in February 2025 and was not renewed. ECF No. 111, Ex. 6 at J.R. 00029. Plaintiffs' proposed class is so broad that it also includes foreign nationals who work in USAID missions abroad and "comprise most of USAID's staff," IG Report at 17, but "do not possess rights under the U.S. Constitution." *E.g.*, *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020). For those reasons alone, this Court should deny class certification. *Stafford*, 123 F.4th at 680–81 (observing that "overly general" class definition "risked including individuals who would not have a right to recovery but for the sweeping scope of the class certification itself."); *see Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.24 (9th Cir. 2022) (en banc) ("[A] court must consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad."). After all, Rule 23 is merely a procedural means of aggregating similar claims.

Plaintiffs' proposed class definition is also impermissibly overbroad because it is "overly general" and "run[s] afoul of Rule 23's core tenets." *Stafford*, 123 F.4th at 680–81. The Fourth Circuit's decision in *Stafford* is illustrative. *Stafford* involved a putative class of a restaurant chain's shift managers who alleged various wage violations, including off-the-clock, unpaid work. As relevant here, the case proceeded under the following class definition: "All persons who worked as a shift manager at Bojangles in the state of North Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in this case." *Id*. at 677 (citation and emphasis omitted). The Fourth Circuit determined that class definition was "too broad and ill-defined to reach the thresholds of class certification." *Id*. at 681 (quoting *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 933 (5th Cir. 2023)). The Fourth Circuit emphasized that the shift managers' class definition was impermissibly overbroad because it was defined solely by the place of employment

and failed to articulate any theory of harm. *Id*. ("No reference is made to the type of off-the-clock work class members performed or whether a class member even performed off-the-clock work *at all*." (emphasis in original)). So too here. Although "class definitions must be written with specificity," *id*., here, the proposed class definition lumps in all USAID employees—from January 20, 2025, to the present—and unmoored to any specific claim of harm. Where the Fourth Circuit observed, "[s]imply being at a place of employment is, without more, unedifying," here, Plaintiffs' class definition suffers from the same defect in that the "sole defining characteristic is that" it contains all USAID employees within the Class Period. *Id*. As was the case in *Stafford*, here "[t]he sheer breadth of the class definition[] . . . bespeaks underlying flaws with the class[]' commonality . . . and typicality." *Id*.

## III.   THE PROPOSED CLASS LACKS COMMONALITY AND TYPICALITY

Rule 23(a)(2) requires questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 349–50 (citation omitted and emphasis added). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Rule 23(a)(2) "is easy to misread, since [a]ny competently crafted class complaint literally raises common questions." *Id*. at 349 (citation omitted). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted).

The commonality prong tends to merge with the requirement of typicality under Rule 23(a)(3). *See id.* at 350 n.5. That is because both "[t]he typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (citation omitted).

Plaintiffs contend that the "proposed Class satisfies Rule 23's commonality requirement because its members have suffered the same legal wrongs based on the same unconstitutional course of conduct by Defendants." ECF No. 111 at 17. In a similar vein, Plaintiffs assert that "[t]ypicality, like the other Rule 23(a) factors, is not a close call here" because "[t]he same course of conduct that injured the Plaintiffs injured all members of the proposed Class." *Id.* at 20. Plaintiffs' assertions about satisfying commonality and typicality lack merit.

First, Plaintiffs essentially advance the same theory of commonality that the Supreme Court rejected in *Wal-Mart*. There, the Supreme Court made clear that, at a minimum, a class does not satisfy Rule 23's requirements unless all class members have suffered the *same injury*. In *Wal-Mart*, the Court held that a class of workers alleging employment discrimination did not satisfy Rule 23(a)'s commonality requirement because class members would have been subject to the discretionary hiring decisions of different supervisors, for potentially different reasons, at different times, without some unifying feature. *See* 564 U.S. at 355–57.

Specifically, Plaintiffs suggest six putatively common questions of fact and law that concern "the common, class-wide injuries." *Id.* at 18. But those questions simply articulate Plaintiffs' legal theory or the scope of remedies, which the Supreme Court has held are insufficient to establish commonality. *Wal-Mart*, 564 U.S. at 349 (holding that questions such as "[i]s that an unlawful employment practice?" and "[w]hat remedies should we get?" are "not sufficient to

obtain class certification."); *id.* at 350 (explaining that commonality "does not mean merely that they have all suffered a violation of the same provision of law."). Tellingly, Plaintiffs' theory of commonality betrays the fact that "they are at a loss for a more specific thread to tie [their] claims together." *In re White*, 64 F.4th at 314.

Even by their own terms, moreover, Plaintiffs' identified questions lack commonality. Take Plaintiffs' first proposed common question—whether Mr. Musk "unlawfully acted as an 'Officer' pursuant to the Appointments Clause of the U.S. Constitution in his exercise of significant decisionmaking authority concerning USAID[.]" ECF No. 111 at 18. As Plaintiffs' class certification motion acknowledges, they challenge several different actions allegedly taken by Mr. Musk that definitionally may impact different USAID employees and contractors differently, if at all. *Id.* at 7–13. And as this Court correctly recognized in its preliminary injunction decision, each of those challenged actions must be reviewed individually to determine whether, even if Mr. Musk were otherwise subject to the Appointments Clause, his actions have been ratified by a duly appointed Officer. *J. Does 1-26*, 2025 WL 840574, at \*13–14. In other words, this broad question implicates individualized defenses and is not capable of being resolved "in one stroke." *Wal-Mart*, 564 U.S. at 350; *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 687 (D. Md. 2017) ("Whether [the defendant]'s calling of class members constituted knowing and willful TCPA violations is not a common issue across the class because resolution of that question for a particular class member likely depends on the circumstances surrounding the individual class member's consent, or lack of consent, to receive autodialed calls from [the defendant], whether the class member revoked consent, and whether [the defendant] complied with those instructions.").

The same is true of Plaintiffs' alleged common questions regarding remedy. Plaintiffs pose the question, "[i]f indeed Defendant Musk exceeded his constitutional authority, [what is] the proper remedy to sufficiently root out the taint of improper decision making[?]" ECF No. 111 at 18. There is no *common answer* because Plaintiffs purport to challenge several different actions. *See Wal-Mart*, 564 U.S. at 350. Moreover, no single remedy would redress any of Plaintiffs' alleged injuries. Take, for example, Plaintiffs' alleged reputational and other dignitary harms. The nature of those injuries necessarily requires individualized inquiries to determine proper remedies. *See Taig v. Currey*, Case No. 9:21-CV-80391-RLR, 2022 WL 18539319, at *4 (S.D. Fla. June 28, 2022) (explaining that a plaintiff cannot show commonality and typicality in the context of reputational harm because "the means of *proving* each plaintiff's damages cannot differ significantly. The problem [here] is that Mr. Taig's claims, in all likelihood, differ *significantly* both as to causation and damages." (emphasis in original)). Indeed, as the Fourth Circuit recognized in this case, any claim of emotional distress requires a showing of a physical manifestation or medical treatment, *J. Does 1-26*, 2025 WL 1020995, at *5, a showing that is inherently individualized. Such "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350 (citation omitted).

And, intertwined with the previous discussion regarding overbreadth of the class definition, the fact that Plaintiffs' proposed class includes uninjured class members necessarily destroys commonality. *See Stafford*, 123 F.4th at 681 ("The sheer breadth of the class definitions here bespeaks underlying flaws with the classes' commonality . . . and typicality."). Where *Wal-Mart* stands for the proposition that variation in the *type* of injury suffered by class members generally precludes satisfying commonality, it follows that variation in the *existence* of an injury should

preclude doing so as well. In other words, a class containing both types of members lacks the necessary commonality under Rule 23(a). *See Stafford*, 123 F.4th at 681 (observing that a class that "risked including individuals who would not have a right to recovery" would be "too overinclusive to ensure commonality."). That having an Article III injury is a jurisdictional requirement makes the difference between injured and uninjured class members even more stark. *Cf. Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing.").[2]

Second, Plaintiffs' inability to demonstrate commonality and typicality is compounded by the sheer multitude of proposed class members. By their own telling, Plaintiffs' proposed class "has thousands of geographically dispersed members . . ." ECF No. 111 at 16; *see also id.* at 4 ("USAID employed up to 10,000 staff, with approximately two-third posted at the Agency's more than 60 overseas missions."). Further complicating matters, as Plaintiffs acknowledge, USAID personnel span at least eight different classifications, including Civil Service employees, Foreign Service employees, Personal Service Contractors, and even classifications that are held by foreign nationals. *Id.* at 2 n.2; IG Report at 17, 24. Consequently, the lack of commonality and typicality is readily apparent. *See, e.g., Wal-Mart*, 564 U.S. at 359 (explaining that the plaintiffs could not show commonality because they "held a multitude of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states . . .") (citation omitted).

Put another way, Plaintiffs' proposed class includes career USAID personnel, consisting of Civil Service employees based in the United States and Foreign Service employees based

---

[2] The Supreme Court recently granted certiorari on the issue of whether a class may be certified that contains some members who lack an Article III injury. *See Laboratory Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1133 (U.S. Jan. 24, 2025).

overseas. They then seek to add to the class by mixing in U.S. Personal Service Contractors and other non-career personnel. And, if that is not enough, Plaintiffs further lump in USAID's foreign-national workers. That does not work. *See Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) ("As our discussion of commonality and predominance make clear, this class is a hodgepodge of factually as well as legally different plaintiffs."), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). "These diverse circumstances and theories . . . undermine Plaintiffs' efforts to establish commonality at the outset." *In re Navy Chaplaincy*, 306 F.R.D. 33, 48 (D.D.C. 2014); *see Ginwright*, 280 F. Supp. 3d at 687 ("Thus, where the proposed class has been so broadly defined as to draw no distinctions between the type of calling system used and whether class members consented to receive calls or later revoked such consent, the Court cannot find that the commonality requirement has been established."). Claims of injuries related to "interruptions to the ordinary course of their employment" likely differ between class members depending on whether they are based in the United States or overseas. Am. Compl. ¶ 27. For example, where Plaintiffs allude to "lost access to critical security systems and basic utilities," *id.*, such circumstances would present different issues for certain class members in "dangerous locations around the world," ECF No. 17-1 at 21, than for class members located in the United States. *See also J. Does 1-26*, 2025 WL 840574 at *8 ("For example, J. Doe 22, a USAID employee stationed in a high-risk area in Central America who has been placed on administrative leave, has lost the ability to have electricity, cell phone, and internet bills paid because of the shutdown of USAID's payment system.").

Similarly, the nature of Plaintiffs' data access and disclosure injuries likely vary depending on a class member's employment classification at USAID. A putative class member who is a career employee with a security clearance might face different injuries than a contractor who has only

limited access to USAID systems. And, again, reputational and other dignitary harms are already highly individualized in nature but could further differ depending on other individual circumstances presented here, such as whether a class member is a U.S. citizen or a foreign national. *Cf. Taig*, 2022 WL 18539319, at *5 ("the reputational harm Mr. Taig alleges could differ significantly from his putative class peers . . . The means of proving those claims would necessarily differ from plaintiff to plaintiff."). Thus, Plaintiffs' proposed class—substantially made up of USAID's entire workforce—is overinclusive and, consequently, lacks commonality among putative class members. *See In re White*, 64 F.4th at 314 ("[A] circular class definition could reveal the lack of a genuinely common issue of law or fact. . . . because [Plaintiffs] are at a loss for a more specific thread to tie claims together.").

Third, the record in this case demonstrates that Plaintiffs' proposed class members are not all similarly situated. Take, for example, Plaintiffs' alleged employment and contractual injuries. Plaintiffs argue that these harms flowed from Defendants' "dismantling" of USAID. But even on Plaintiffs' theory, this alleged dismantling occurred over the course of three "phases." *See* ECF No. 111 at 7–13. Different groups of employees were placed on administrative leave or given termination notices at different times. *Id.* And different governmental decisionmakers were involved in different categories of decisions, as this Court has acknowledged. *See J. Does 1-26*, 2025 WL 840573 at *13. Plaintiffs improperly collapse all these potential distinctions into a single, catch-all class of everyone who was employed or who had personal service contracts with USAID.

Fourth, the fact that different defenses may apply to different putative class members shows a lack of commonality and typicality. *See Thorn*, 445 F.3d at 324 (affirming denial of class certification where the plaintiff did not show that a particular defense "can be resolved on a class-wide basis"); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 437–38 (4th Cir. 2003) (abuse of

discretion in class certification where case involved contentions requiring "individualized inquiry"); *Broussard*, 155 F.3d at 337–43 (abuse of discretion to certify a class where "the defendant's affirmative defenses . . . may depend on facts peculiar to each plaintiff's case" (citation omitted)). Here, Congress—through various provisions—has channeled Plaintiffs' claims into different administrative schemes. *See generally Am. Foreign Serv. Ass'n v. Trump*, ---F. Supp. 3d---, 2025 WL 573762 (D.D.C. Feb. 21, 2025). J. Doe 7 and J. Doe 27 claim that they are civil service employees of USAID whose claims are subject to the review provisions of the Civil Service Reform Act ("CSRA"). J. Doe 22, claims to be a foreign service officer, and J. Does 4 and 28, claim to be Foreign Service Limited Appointees, who are subject to the Foreign Service Act ("FSA"). Likewise, J. Doe 29,[3] purportedly a U.S. Personal Service Contractor, is subject to the Contract Disputes Act ("CDA"). And finally, as for the claims of foreign national class members (*i.e.*, USAID's Foreign Service National employees)—for which there is no representative Plaintiff—those claims also present unique threshold issues. *See, e.g., All. for Open Soc'y Int'l, Inc.*, 591 U.S. at 433 ("foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution."). And this is on top of the individualized defenses discussed above concerning alleged reputational and dignitary harm. Thus, as courts have recognized, variations with respect to what defenses Defendants can raise, make this case ill-suited for class certification under Rule 23(a) for lack of commonality.

Finally, Plaintiffs fail to satisfy their affirmative obligation to show commonality and typicality. Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies

---

[3] Notably, J. Doe 29 is not typical of the class. The Amended Complaint alleges that Defendants have violated the Appointments Clause and separation of powers by, *inter alia*, terminating employees and cancelling contracts. *E.g.*, Am. Compl. ¶ 46. But J. Doe 29's contract simply lapsed in February 2025 and was not renewed. ECF No. 111, Ex. 6 at J.R. 00029.

each requirement of Rule 23," otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *see EQT Prod.*, 764 F.3d at 357 ("[T]he party must present evidence that the putative class complies with Rule 23."). Here, Plaintiffs fail to provide any evidence of commonality or typicality. Although each individual Plaintiff has submitted a largely boilerplate declaration asserting that they suffered the injuries mentioned in the Amended Complaint, those declarations are inadequate because their verbatim assertions are vague and conclusory. For instance, each declaration baldly states, "as referenced in the Amended Class Action Complaint" (a) "the DOGE Defendants gained unauthorized access to my private data" (b) "there have been numerous interruptions to the ordinary course of my employment" (c) "I have suffered reputational harm" and (d) "other dignitary harm." ECF No. 111, Ex. 1 at J.R. 00005; Ex. 2 at J.R. 00010; Ex. 3 at J.R. 00015; Ex. 4 at J.R. 00020; Ex. 5 at J.R. 00025; Ex. 6 at J.R. 00030. Accordingly, a lack of meaningful evidence of commonality, as here, obstructs courts from satisfying their "obligation to 'examine whether differences between class members impede the discovery of common answers.'" *Stafford*, 123 F.4th at 680 (quoting *Brown*, 785 F.3d at 909).

Thus, where Plaintiffs need to show that they "have suffered the same injury," as opposed to "a violation of the same provision of law," their declarations fail to show that each has suffered the same types of data injuries, interruptions to their employment, and reputational and dignitary harms. *See Wal-Mart*, 564 U.S. at 350 (citation omitted); *cf. Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 193–94 (D.D.C. 2024) ("Rule 23 does not set forth a mere pleading standard. . . . Class certification, in other words, demands more of a plaintiff than is required to survive a motion to dismiss under Rule 12(b)(1) or 12(b)(6)." (citation omitted)). Starting with Plaintiffs' allegations of reputational and other dignitary harms, it is unclear whether their allegations of "reputational harm" and "other dignitary harm" overlap, but in any event, as mentioned, assessing such harms

is an inherently individualized inquiry. *See Taig*, 2022 WL 18539319, at *5 ("Evidence of Mr. Taig's reputational harm will not prove reputational harm for any other member of the class."). Moreover, where a theory of reputational injury could be economic or stigmatic in nature, "[i]t is not clear, however, which kind of injury Plaintiffs assert in this case" because Plaintiffs offer only vague and conclusory assertions of such harm. *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 18-2115 (JEB), 2019 WL 689987, at *4 (D.D.C. Feb. 19, 2019).

Similarly, Plaintiffs' vague allegations that Defendants caused "interruptions to the ordinary course of their employment" fare no better. Am. Compl. ¶¶ 4–9. While Plaintiffs expressly disclaim "any individual employment claims and/or any claims arising under any individual contract with USAID," *id.* ¶ 24, they provide no further information as to what "interruptions" to which they are referring. Nor do Plaintiffs explain whether they are complaining of the same interruptions to their employment that Defendants allegedly caused. To the extent that Plaintiffs could claim that Defendants' decision to "shutdown" the USAID headquarters building constitutes one such "interruption," ECF No. 111 at 25, they do not explain how that would plausibly harm the proposed class members who are based in foreign countries.

The same goes for Plaintiffs' allegation that Defendants injured them by accessing and disclosing their private data. None of the declarations elaborates what data Defendants allegedly accessed or how they allegedly disclosed it (let alone whether Plaintiffs' data was accessed, when, and how, if at all, it was used), making it impossible to draw any meaningful comparison between class members. *Cf. Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 208 (E.D. Va. 2015) ("commonality . . . focus[es] on the characteristics of the class members in comparison to each other.").

What is more, none of Plaintiffs' declarations even attempts to draw any connection between their asserted injuries and the alleged constitutional violations at issue. *See generally* ECF No. 110-1 at 17–20. For example, Plaintiffs fail to explain why Mr. Musk's alleged violation of the Appointments Clause has resulted in any reputational or dignitary harm. Plaintiffs contend that Mr. Musk has made disparaging comments about USAID on the social media platform X such as that USAID is "evil" and is a "criminal organization." *J. Does 1-26*, 2025 WL 840574, at *28 (citation omitted). But, putting to one side whether such broad statements of opinion by a senior White House official—not directed to any particular Plaintiff—are actionable to begin with, Plaintiffs fail to tie them to the alleged Appointments Clause violation. "Put simply, [P]laintiffs' conclusory assertions that commonality has been met do not satisfy their burden here." *Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374, 2008 WL 4951352, at *2 (E.D. Va. Nov. 12, 2008).

In sum, Plaintiffs fail to satisfy Rule 23(a)'s commonality and typicality requirements.

## IV.   THE PROPOSED CLASS DOES NOT SATISFY RULE 23(b)(2)'s REQUIREMENTS

A class may be maintained under Federal Rule of Civil Procedure 23(b)(2) only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The key to a (b)(2) class is that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted). In other words, Rule 23(b)(2) is not satisfied when each class member "would be entitled to a different injunction or declaratory judgment." *Id.* (emphasis omitted).

As discussed above, Plaintiffs have not established any common injury suffered as a result of Defendants' alleged actions. But even if Plaintiffs could satisfy Rule 23(a)'s requirements, they fail to meet Rule 23(b)(2)'s requirement to show that a single injunction or declaratory judgment against Defendants would adequately remedy their alleged injuries uniformly across the class. *See Ginwright*, 280 F. Supp. 3d at 690 ("Because appropriate injunctive relief would require individualized assessments of whether particular class members are entitled to an order barring additional calls to them, certification under Rule 23(b)(2) is not warranted."); *see also Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020) ("[W]e must determine if that relief is proper for each and every member of the group . . .").

Notably, Plaintiffs largely fail to explain how they satisfy Rule 23(b)(2). They contend that "given Defendants' concerted and ongoing actions . . . , and Plaintiffs' singular entreaty to stop and reverse Defendants' unconstitutional actions, the proposed Class satisfies the requirements of Rule 23(b)(2)." ECF No. 111 at 27. That contention is wholly conclusory. *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593-JWL, 2011 WL 1303367, at *14 (D. Kan. Apr. 6, 2011) ("In their submissions, plaintiffs, in somewhat conclusory fashion, assert that the proposed class 'clearly satisfies' the requirements of Rule 23(b)(2). But plaintiffs do not come to grips with the 'more restrictive' aspect of Rule 23(b)(2) in any respect."). Moreover, they do not address at all the possibility that an individual class member—particularly in a proposed class as large as this one— could "be entitled to a different injunction or declaratory judgment against the defendant[,]" which Rule 23(b)(2) forbids. *Wal-Mart*, 564 U.S. at 360 (emphasis omitted). The Court could deny class certification on this basis alone. *Cf. In re Navy Chaplaincy*, 306 F.R.D. at 56 ("Plaintiffs have not shown that the proposed class is maintainable under Rule 23(b)(2).").

In any event, Plaintiffs fail to show how their requested class-wide relief would remedy their own alleged injuries, much less those of the entire proposed class. To recap, Plaintiffs' alleged injuries are "(1) unauthorized access to or disclosure of their private data[,]" "(2) interruptions to the ordinary course of their employment, (3) reputational harm, and (4) other dignitary harm." Am. Compl. ¶¶ 4–9, 27. In turn, Plaintiffs request the following class-wide relief relating to their separation of powers claim:

> (1) a declaration that the Defendants' actions to modify, reorganize, and eliminate USAID . . . are unlawful; (2) an injunction to set aside those actions; and (3) an injunction prohibiting Defendants from taking further actions that constitute unlawful dismantling of USAID unless and until specifically authorized to do so by Congress.

ECF No. 111 at 24. As for their Appointments Clause claim, Plaintiffs request the following relief:

> (1) declare that Defendant Musk's activities at USAID violate the Constitution; (2) declare unlawful and set aside any actions taken at USAID by Defendant Musk, his DOGE subordinates, and any person working on behalf or at the direction of Defendant Musk or DOGE; and (3) enjoin Defendant Musk and his DOGE subordinates from performing their significant and wide-ranging duties at USAID absent appointment.

*Id.* at 26.

Critically, not only are Plaintiffs' allegations of injury entirely generic, their proposed injunction is similarly vague, which flunks the Rule 23(b)(2) inquiry. That is because these proposed injunctions—"prohibiting Defendants from taking further actions that constitute unlawful dismantling of USAID *unless and until specifically authorized to do so by Congress*" and "enjoin[ing] Defendant Musk and his DOGE subordinates from performing their significant and wide-ranging duties at USAID absent *appointment*"—are essentially obey-the-law injunctions. *Id.* at 24, 26 (emphases added); *see*, *e.g.*, *Mielo v. Bob Evans Farms, Inc.*, Civ. A. No. 14-1036, 2015 WL 1299815, at *12 (W.D. Pa. Mar. 23, 2015) (finding class could not be certified under Rule 23(b)(2) because "[t]he injunction Plaintiff seeks is little more than 'obey the law.'");

*Britton v. Car Toys, Inc.*, Civ. A. No. 05-cv-726-WYD-PAC, 2006 WL 3487686, at *10 (D. Colo. Nov. 30, 2006) (denying Rule 23(b)(2) certification where requested relief enjoined defendants' future violations of Title VII because "generally, injunctions requiring a Defendant to obey the law are [too] vague to satisfy the requirements of Fed. R. Civ. P. 65."). "[O]bey-the-law injunctions run afoul of the traditional equitable principle – codified in Federal Rule of Civil Procedure 65(d) - that an injunction 'state its terms specifically[ ] and . . . describe in reasonable detail . . . the act or acts restrained or required.'" *Bone v. Univ. of N.C. Health Care Sys.*, 678 F. Supp. 3d 660, 708–09 (M.D.N.C. 2023) (citations omitted). Here, Plaintiffs' vague "obey-the-law" injunction to remedy vague class-wide injuries plainly fails to satisfy Rule 23(b)(2). *See Ginwright*, 280 F. Supp. 3d at 690 ("A claim for an injunction that simply orders a defendant to comply with the TCPA and follow the law is not a proper for class certification under Rule 23(b)(2).").

Moreover, putting aside Plaintiffs' vague allegations and requests for relief, Plaintiffs' asserted injuries appear to have largely already occurred. *E.g.*, ECF No. 111, Ex. 4 at J.R. 00020 ("[A]s referenced in the Amended Class Action Complaint . . . , I have suffered reputational harm."). As a class-wide remedy, Plaintiffs principally request injunctive relief to remedy their alleged past harms. But "[b]ecause the requested injunction would only 'redress past harms' and not 'prevent future injury,' class certification [i]s improper under Rule 23(b)(2)." *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1358 (11th Cir. 2021) (citing *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170 (11th Cir. 2019)). In other words, "to maintain an action for injunctive relief, a plaintiff cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future." *Berni*, 964 F.3d at 147 (internal citation omitted). It is, therefore, unclear how Plaintiffs' requested injunctions would remedy their alleged data access

injuries, the "interruptions to the ordinary course of their employment," or their reputational or other dignitary harms. Am. Compl. ¶¶ 4–9.

In sum, Plaintiffs cannot meet satisfy Rule 23(b)(2). Their injuries are not redressable by class-wide injunctive or declaratory relief. Where redressability is lacking, Rule 23(b)(2)'s core requirement—that a single injunction must remedy the entire class's harm—cannot be met.

## V. EVEN BEYOND THE REQUIREMENTS OF RULE 23, THIS COURT SHOULD DENY CLASS CERTIFICATION

"The question of whether to allow a suit to proceed as a class action is one primarily for the determination of the trial judge," *Bermudez v. U.S. Dep't of Agric.*, 490 F.2d 718, 725 (D.C. Cir. 1973) (citation omitted), who has "broad discretion in deciding whether to permit a case to proceed as a class action," *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994). "It is not uncommon for courts to deny class certification on the basis that certification is not needed 'when the particular facts and circumstances of the case warrant doing so.'" *Gomez v. Trump*, 485 F. Supp. 3d 145, 204 (D.D.C. 2020) (quoting *Mills v. District of Columbia*, 266 F.R.D. 20, 22 (D.D.C. 2010)).

Even if Plaintiffs could satisfy all of Rule 23's the requirements—which they do not—this Court should still deny class certification. Plaintiffs contend that "there can be no question that class certification is the most fair and efficient way to adjudicate these claims." ECF No. 111 at 1. Plaintiffs further assert that Defendants and the courts would also benefit from class certification because they "will avoid the cost and risk of defending duplicative litigation and facing potentially inconsistent rulings, and the federal courts will avoid a multiplicity of cases all litigating the same issues." *Id*. at 2. Plaintiffs' arguments lack merit.

Plaintiffs' claims here are on behalf of a putative class of all USAID employees and PSCs after January 20, 2025, arising from Defendants' alleged actions to terminate employment, cancel

PSC contracts, and otherwise "dismantle" USAID. Am. Compl. ¶ 22. But identical claims based on the same facts are already pending in other courts, including those brought by unions representing USAID employees and an association asserting the interests of PSCs. *See* Compl. ¶¶ 41–42, 47–48, *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-352 (D.D.C. filed Feb. 6, 2025), ECF No. 1 (asserting interests of members of two unions of employees at USAID for harms from alleged dismantling of agency); Compl. ¶¶ 4, 24–26, *Personal Servs. Contractor Ass'n v. Trump*, No. 1:25-cv-469 (D.D.C. filed Feb. 18, 2025), ECF No. 1 (membership organization asserting the interests of PSC members). Class certification is, therefore, unnecessary because other cases are already comprehensively representing the interests of USAID personnel. Plaintiffs even acknowledge one of these cases in their instant motion. *E.g.* ECF No. 111 at 11 (citing *Am. Foreign Serv. Ass'n v. Trump*, ---F. Supp. 3d---, 2025 WL 573762 (D.D.C. Feb. 21, 2025)). Granting Plaintiffs' request for class certification here would only result in duplicative litigation and potentially result in inconsistent judgments and court orders. And it is unclear why proposed class counsel are in a superior position to litigate these issues and interact with absent class members over, for example, the American Foreign Service Association or the Personal Services Contractor Association, particularly where class members have no right to opt out. *See* Fed. R. Civ. P. 23(c)(2)(A). Simply put, the circumstances of this case militate against class certification.

## CONCLUSION

This Court should deny Plaintiffs' motion for class certification.

Dated: May 15, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

JOSHUA E. GARDNER (FL Bar No. 302820)
*By Special Appearance*
Special Counsel

 /s/ *James J. Wen*
JAMES J. WEN (NY Bar No. 5422126)
GARRY D. HARTLIEB (IL Bar No. 6322571)
CHRISTOPHER M. LYNCH
(DC Bar No. 1049152)
JACOB S. SILER (DC Bar No. 1003383)
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 532-4142
Email: james.j.wen@usdoj.gov

*Attorneys for Defendants*