UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

J. DOES 4, 7, 22, 27, 28, and 29, *on behalf of themselves and all others similarly situated*,

    Plaintiffs,

v.

ELON MUSK, *in his official capacity*,
UNITED STATES DOGE SERVICE,
THE DEPARTMENT OF
GOVERNMENT EFFICIENCY,
UNITED STATES
DEPARTMENT OF STATE,
UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT,
DONALD J. TRUMP, *in his official capacity*,
MARCO RUBIO, *in his official capacity*,
PETER MAROCCO, *in his official capacity*,
JEREMY LEWIN, *in his official capacity*,
KENNETH JACKSON, *in his official capacity*, and
AMY GLEASON, *in her official capacity*,

    Defendants.

Civil Action No. 25-0462-TDC

## MEMORANDUM OPINION

Plaintiffs J. Does 4, 7, 22, 27, 28, and 29, who are currently or recently terminated employees and contractors of the United States Agency for International Development ("USAID"), have filed this putative class action on behalf of themselves and similarly situated individuals against Defendants Elon Musk, the United States DOGE Service, the Department of Government Efficiency ("DOGE"), the United States Department of State ("State"), USAID, President Donald J. Trump, and five other government officials with leadership positions at State, USAID, or DOGE for alleged violations of the United States Constitution arising from

Defendants' actions to effectuate the dismantling and shutdown of USAID. Plaintiffs have filed a Motion for Expedited Discovery, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion for Expedited Discovery will be DENIED.

## BACKGROUND

On February 15, 2025, Plaintiffs J. Does 1-26 filed the original Complaint in this case against Musk, the United States DOGE Service, and DOGE (collectively, "the Original Defendants"), alleging violations of the Appointments Clause of Article II of the United States Constitution, U.S. Const. art. II, § 2, cl. 2, and of the constitutional principle of the Separation of Powers, arising from actions taken to shut down USAID. On March 18, 2025, the Court granted in part and denied in part a Motion for a Preliminary Injunction. Prior factual background is set forth in the Court's Memorandum Opinion relating to that ruling, which is incorporated by reference. *Does 1–26 v. Musk*, No. 25-0462-TDC, 2025 WL 840574, at *1–9 (D. Md. Mar. 18, 2025) ("*Does I*"). Additional factual background and procedural history relevant to the present Motion are set forth below.

On March 28, 2025, the United States Court of Appeals for the Fourth Circuit entered an Order staying this Court's preliminary injunction in this case. *See Does 1–26 v. Musk*, No. 25-1273, 2025 WL 1020995, at *1 (4th Cir. Mar. 28, 2025) ("*Does II*"). On April 17, 2025, Plaintiffs, now consisting of J. Does 4, 7, 22, 27, 28, and 29, filed an Amended Complaint which asserts a class action, on behalf of all persons who worked for USAID as an employee or personal services contractor from January 20, 2025 to the present, against the Original Defendants as well as the following additional defendants: USAID; State; President Trump; Secretary of State Marco Rubio; Peter Marocco, an official who was previously delegated the duties of the USAID Deputy

Administrator; Jeremy Lewin, a former DOGE team lead at USAID who has been delegated the duties of the USAID Deputy Administrator for Policy and Programming and the USAID Chief Operating Officer; Kenneth Jackson, who has been delegated the duties of the USAID Deputy Administrator for Management and Resources; and Amy Gleason, the Acting Administrator of the U.S. DOGE Service.

As relevant to the present Motion, Plaintiffs allege in the Amended Complaint that on March 28, 2025, Defendants began taking further actions to effectuate the elimination of USAID. That day, Lewin sent an email to all USAID personnel entitled "USAID's Final Mission" which contained a memorandum entitled "USAID's Transition to the State Department" ("the Lewin Memorandum") providing notice that State "intends to assume responsibility for many of USAID's functions and its ongoing programming," and that State "will seek to retire USAID's independent operation, consistent with applicable law." Mot. Ex. 1 at 2–3, ECF No. 106-1. The Lewin Memorandum further states that as a result, "substantially all non-statutory positions at USAID will be eliminated," and all USAID personnel will receive a reduction-in-force notice via email which contains a separation date of either July 1, 2025 or September 2, 2025. *Id.* at 3. It further provides that by July 1, 2025, State "will have assumed responsibility for USAID's remaining programming," and by September 2, 2025, USAID's operations "will have been substantially transferred to [State] or otherwise wound down." *Id.*

As relief, Plaintiffs request that this Court enjoin Defendants from taking further actions to modify, reorganize, or eliminate USAID unless specifically authorized to do so by Congress; enjoin Musk and DOGE personnel from performing their duties at USAID; declare that the actions taken to modify, reorganize, or eliminate USAID violate the Separation of Powers and set aside

3

those actions; declare that Musk's actions at USAID violate the Appointments Clause; and declare as unlawful and set aside the actions taken by Musk and DOGE personnel at USAID.

On April 25, 2025, Plaintiffs filed the pending Motion for Expedited Discovery. On May 2, 2025, Defendants filed a memorandum in opposition to that Motion. Separately, on May 1, 2025, Plaintiffs filed a Motion for Class Certification, and Defendants filed a Motion to Dismiss the Amended Complaint, both of which are pending resolution.

## DISCUSSION

In the Motion for Expedited Discovery, Plaintiffs request that the Court direct the parties to engage in an immediate 28-day discovery period; specifically direct Defendants to respond to 10 interrogatories and 14 requests for production of documents within the first 7 days of the discovery period; and authorize Plaintiffs to conduct up to 6 depositions, including of Marocco and Lewin, former USAID Director of Security John Vorhees, and USAID DOGE team members Gavin Kliger and Luke Farritor. Plaintiffs state that conducting such expedited discovery is necessary because pursuant to the Lewin Memorandum, between July 1 and September 2, 2025, USAID "will be wound-down beyond repair" and that, as a result, Plaintiffs "will lose the ability to meaningfully achieve the injunctive relief they seek." Mot. at 1, ECF No. 106.

### I. Legal Standards

Federal Rule of Civil Procedure 26(d) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," unless a court order or the rules direct otherwise. Fed. R. Civ. P. 26(d)(1). Under the Local Rules of this Court, "[u]nless otherwise ordered by the Court," the parties do not need to confer pursuant to Rule 26(f), but "discovery shall not commence . . . until a scheduling order is entered" pursuant to Rule 16(b). D. Md. Local R. 104.4.

4

The Federal Rules of Civil Procedure do not specify a standard for assessing when to grant Motions for Expedited Discovery, and the Fourth Circuit has not established one. *See Courthouse News Serv. v. Harris*, No. ELH-22-548, 2022 WL 3577255, at *3 (D. Md. Aug. 18, 2022). However, judges in this District and in other federal district courts have employed "a standard based upon reasonableness or good cause" to assess such motions, which is based on "the totality of the circumstances" and specifically considers the following factors:

1. whether a motion for preliminary injunction is pending;
2. the breadth of the requested discovery;
3. the reasons the moving party is requesting expedited discovery;
4. the burden on the opponent to comply with the request for expedited discovery;
5. whether the information sought expeditiously could be obtained more efficiently from some other source;
6. the extent to which the discovery process would be expedited; and
7. whether a motion to dismiss for failure to state a claim is pending.

*Id.* at *4; *Abrego Garcia v. Noem*, No. 25-cv-0951-PX, 2025 WL 1113440, at *1 (D. Md. Apr. 15, 2025); *ClearOne Advantage, LLC v. Kersen*, No. JKB-23-03446, 2024 WL 278917, at *1 (D. Md. Jan. 25, 2024); *see also Mullane v. Almon*, 339 F.R.D. 659, 662–63 (N.D. Fla. 2021); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98–99 (D.D.C. 2014). Here, the parties agree that the Court should employ this standard in assessing Plaintiffs' Motion for Expedited Discovery.

**II.    Good Cause**

Upon consideration of the identified factors, the Court finds that Plaintiffs have not shown good cause for obtaining expedited discovery. The first factor weighs against expedited discovery because there is no motion for a preliminary injunction pending before the Court, and Plaintiffs acknowledge in their brief that their proposed discovery "is not intended to be used to prepare a preliminary injunction motion." Mot. at 7; *see Mullane*, 339 F.R.D. at 663 (stating that "expedited discovery is more likely to be appropriate when a plaintiff is seeking a preliminary injunction").

Considering the second, fourth, and sixth factors, Plaintiffs have limited the breadth of the proposed expedited discovery in that they primarily seek specific, discrete documents and interrogatory responses rather than categories of documents. However, the proposed discovery schedule of responses to documents requests and interrogatories within 7 days, and 6 depositions within 28 days, is accelerated. Regardless of whether, as Defendants argue, some of the proposed deponents fall within the category of high-ranking government officials who should not be deposed absent "exceptional circumstances justifying the deposition," *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013), the proposed depositions of multiple officials with significant roles in the operation of the government imposes a meaningful burden.

As to the third factor, pursuant to which requests for expedited discovery "should be narrowly tailored to the purpose warranting expeditious treatment," *Mullane*, 339 F.R.D. at 664, the requested discovery does not fully align with the expressed need for expedited discovery. According to Plaintiffs, they need expedited discovery because Defendants have stated the intention, as reflected in the Lewin Memorandum, to end USAID's operation as an independent agency between July 1 and September 2, 2025, and Plaintiffs need additional evidence to support a motion for summary judgment to be filed before those dates in order to prevent that final shutdown. However, many of Plaintiffs' expedited discovery requests, when considered alongside the information already available from other sources, would be unlikely to result in the production of evidence that would materially advance Plaintiffs' ability to succeed in thwarting such a shutdown.

Specifically, many of the document requests and interrogatories, including Document Request Nos. 1–6 and 11 and Interrogatory Nos. 1–4 and 6, as well as the depositions of Vorhees, Kliger, and Farritor, primarily relate to Plaintiffs' Appointments Clause claim, which centers on

whether Musk, in conjunction with DOGE personnel, took unauthorized actions in late January and early February 2025 relating to the dismantling of USAID. Mot. App. A at 5–7, ECF No. 106-2. However, as the Court found in its Memorandum Opinion on Plaintiffs' Motion for a Preliminary Injunction, the present record supports the conclusion that most of those actions were either authorized or ratified by a USAID official, based on the records produced by the Government in response to the Court's Order of March 10, 2025, and thus would not violate the Appointments Clause. *See Does I*, 2025 WL 840574, at *13. The Court found that two actions were likely taken at the direction of Musk—the orders to shut down USAID headquarters at the Ronald Reagan Building and to shut down the USAID website—based in part on the Government's failure to produce, in response to the March 10, 2025 Order, records of USAID officials authorizing those actions. *Id.* at *13–14. Thus, under the fifth factor, which addresses whether the information can be obtained from another source, the record already contains evidence on these points.

Even assuming that the expedited discovery requests would reveal new information that more firmly establishes that these actions, or any of the other early decisions, were taken by Musk without authorization, a conclusion that one or more of the early actions aimed at dismantling USAID violated the Appointments Clause would not provide a basis to prevent the proposed upcoming actions to terminate all remaining USAID personnel and to shut down the agency permanently, particularly where, as reflected by the Lewin Memorandum, such actions will apparently be taken or approved by Secretary Rubio and other USAID personnel rather than Musk or DOGE. Indeed, the Amended Complaint does not contain any allegations that demonstrate that Musk or other current DOGE personnel have made the decisions to take the actions described in

7

the Lewin Memorandum. Accordingly, Plaintiffs' discovery requests related to their Appointments Clause claim are not tailored to the need for expedited discovery.

As for the remaining requests, including Document Request Nos. 7–10 and Interrogatory Nos. 5 and 7, they generally seek information relevant to Plaintiffs' Separation of Powers claim, which would be the claim Plaintiffs would have to rely upon in arguing that Defendants cannot engage in the final shutdown of USAID as described in the Lewin Memorandum. In particular, the requested communications with Congress and the memorandum detailing the shutdown plan, specifically Document Request Nos. 7, 8, and 10, could add previously unavailable information to the record in a way that could be material to the question of whether Defendants' actions violate the Separation of Powers. Although the Lewin Memorandum's explicit statement of a plan to terminate all USAID personnel and dismantle the agency entirely by September 2025 appears to establish what Defendants are planning to do, the requests for information on reductions in USAID personnel and contracts could add details relevant to Plaintiffs' argument. Thus, overall, the third and fifth factors provide some support for expedited discovery relating to certain items, but not as to the full range of proposed expedited discovery.

Finally, the seventh factor, whether there is a pending motion to dismiss, weighs against expedited discovery because Defendants have already filed such a motion. *See In re Musk*, No. 25-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025) (staying an expedited discovery order because the Government was likely to succeed on their argument that a pending motion to dismiss must be decided before discovery); *Guttenberg*, 26 F. Supp. 3d at 99 (denying expedited discovery in part because of a pending motion to dismiss, which was the "most important" consideration). Notably, Defendants' Motion to Dismiss appears to raise, at a minimum, colorable arguments that where Plaintiffs are USAID employees and contractors, their claims against USAID, its officials,

and related agencies and their officials may be precluded from judicial review by the Civil Service Reform Act of 1978, Pub. L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) ("CSRA"), and the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101–7109 ("CDA"), which are arguments that have not yet been litigated in this case and that other courts have adopted in similar cases. *See, e.g., Maryland v. United States Dep't of Agric.*, Nos. 25-1248, 25-1338, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025) (finding that the federal government was "likely to succeed in showing the district court lacked jurisdiction" over claims related to the termination of thousands of probationary federal employees because the CSRA provides the exclusive means for review of personnel actions against federal employees); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *1–3 (D.C. Cir. May 3, 2025) (finding that a district court likely lacked jurisdiction over claims by employees and contractors of the United States Agency for Global Media, including claims based on the Separation of Powers, related to the shutdown of that agency because such claims were precluded by the CSRA and the CDA, among other statutes); *Am. Foreign Serv. Ass'n v. Trump*, No. 25-cv-352 (CJN), 2025 WL 573762, at *11 (D.D.C. Feb. 21, 2025) (finding that the court likely lacked jurisdiction over claims brought by the union representing USAID employees against the agency relating to its shutdown because such claims were precluded by the CSRA, among other statutes). Where there is at least a possibility that these claims may be dismissed, this factor weighs significantly against permitting expedited discovery.

The fact that the Court has previously found a likelihood of success on the merits of the claims against the Original Defendants, *Does I*, 2025 WL 840574, at *18, *26, does not alter this conclusion. On the Motion for a Preliminary Injunction, the Original Defendants, consisting of Musk, the U.S. DOGE Service, and DOGE, did not advance the argument that Plaintiffs' claims were precluded from judicial review, presumably because they are not the employers of, or in a

contractual relationship with, Plaintiffs. Nevertheless, Defendants' appeal of the preliminary injunction, and thus of this Court's determination on the likelihood of success on the merits, remains pending before the Fourth Circuit. Furthermore, even if the claims against the Original Defendants and Gleason remain viable, whether because they are not Plaintiffs' employers or contracting agencies or otherwise, and discovery on those claims will necessarily proceed, the only claims that could arguably prevent the shutdown of USAID are those against USAID, related agencies, and their officials. *See Does II*, 2025 WL 1020995, at *4 (noting that where Plaintiffs had failed to name USAID or the Executive as a defendant in the original Complaint, the court did not find a likelihood of success on the Separation of Powers claim); *Does I*, 2025 WL 840574, at *31 (noting that restrictions on the Original Defendants would not prevent USAID itself from engaging in activities relating to the dismantling of the agency). Because those claims could potentially be dismissed pursuant to Defendants' Motion, this factor weighs significantly against expedited discovery.

Where multiple factors presently weigh against expedited discovery, and particularly where the Motion to Dismiss remains pending, the Court finds that Plaintiffs have not shown the good cause necessary for the Court to grant the Motion. The Motion will therefore be denied without prejudice, subject to possible renewal at later points in the case.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Expedited Discovery will be DENIED WITHOUT PREJUDICE. A separate Order shall issue.

Date:  May 27, 2025



THEODORE D. CHUANG
United States District Judge