# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| J. DOE 4 et al., *individually and on behalf of all others similarly situated*,<br><br>     **Plaintiffs**,<br><br>     **v.**<br><br>ELON MUSK *et al.*,<br><br>     **Defendants**. | Case No.  8:25-cv-00462-TDC |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.      The Court Need Not Delay Ruling on Class Certification. ............................... 2

II.     The Proposed Class Definition is Proper. .......................................................... 3

        A.     The Class is Objectively Defined to Include Only Those Who Could Have Been Injured. ................................................................................. 3

        B.     The Class Contains *No* "Uninjured" Class Members ............................ 5

        C.     "Fail-Safe" Classes Tethered to Success on the Merits are Improper. ............ 7

III.    Plaintiffs Satisfy Rule 23(a)'s Commonality and Typicality Requirements. .................... 8

        A.     Plaintiffs' Claims Present Common Questions of Law and Fact Capable of Classwide Resolution. ............................................................... 8

              1.     Plaintiffs Allege a Common Course of Conduct, Tying Class Members' Claims Together. ........................................................ 9

              2.     Defendants Have Not Identified Individual Defenses Relevant to Commonality. ............................................................... 14

IV.    Plaintiffs Satisfy Rule 23(b)(2). ...................................................................... 15

V.     The Presence of Other Litigation Does Not Defeat Class Certification. ....................... 17

CONCLUSION ................................................................................................... 18

## INTRODUCTION

Defendants fail altogether to address the central task before the Court: to "select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (cleaned up); *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (noting that one primary purpose of class actions is to advance judicial economy and promote efficiency); Fed. R. Civ. P. 1 (Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Instead, Defendants focus on several erroneous legal and factual arguments. They end their brief arguing that a class action is "unnecessary" because there are other, non-class cases touching on some of the same issues. Defs.' Opp. to Mot. for Class Cert. ("Opp.") at 25, ECF No. 120. But less than two weeks ago, many of these same Defendants, represented by the Solicitor General, repeatedly assured the Supreme Court that a properly certified class action is the *only* fair and efficient way to litigate actions like these precisely *because* a class action *avoids* potentially inconsistent judgments and court orders, as it can bind all parties without need for a universal injunction.[1]

As Justice Frankfurter wrote nearly a century ago, "[l]itigation is the pursuit of practical ends, not a game of chess." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). The Government does not get to argue one day that *only* a class action works to properly litigate its alleged unconstitutional practices, and the next that a class action cannot *possibly* do so.

---

[1] *See* Transcript of Oral Argument at 52-53, *Trump v. CASA, Inc., et al.*, No. 24A884 (argued May 15, 2025) ("Our position is that Rule 23 is how these sorts of claims should be channeled."); *id.* at 67-68 ("[T]he represented class members are bound in the class action context, and that means if they lose, they're bound by that as well.").

A class action is plainly the method best suited to adjudicate these claims fairly and efficiently. Because Plaintiffs satisfy all requirements for certification of a Rule 23(b)(2) class, they respectfully request that the Court grant their motion.

## ARGUMENT

### I.    The Court Need Not Delay Ruling on Class Certification.

Defendants urge the Court to delay deciding class certification until it has resolved threshold jurisdictional questions. Plaintiffs agree that jurisdictional questions come first, but this presents no bar to the Court ruling on jurisdiction and class certification concurrently. *See e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 154 (D.D.C. 2019) (ruling on subject-matter jurisdiction and certifying a Rule 23(b)(2) class in the same order); *J.D. v. Azar*, 925 F.3d 1291, 1300 (D.C. Cir. 2019) (affirming district court's concurrent class certification and grant of preliminary injunction, which considered jurisdictional issues).

For the reasons previously set forth, *see* ECF No. 121 at 3-26, Plaintiffs have standing, this Court has subject matter jurisdiction, and Plaintiffs have pled cognizable constitutional claims against Defendants. Indeed, in an analogous case against Defendant Musk and DOGE, Judge Tanya Chutkan denied the Government's motion to dismiss, finding that the state plaintiffs had standing based on allegations that Defendant Musk and DOGE gained unauthorized access to private information, and other claims of injury analogous to those alleged here. *See New Mexico v. Musk*, --- F. Supp. 3d ----, No. 25-cv-429 (TSC), 2025 WL 1502747, at *9-11 (D.D.C. May 27, 2025) ("*New Mexico* Order"). After a thorough analysis, Judge Chutkan "reject[ed] Defendants' perverse reading of the Appointments Clause," *id*. at *14, and found that the state plaintiffs properly pled their Appointments Clause claim against Defendant Musk, relying heavily on credible allegations of his actions to dismantle USAID, *see, e.g.*, *id*. at *3 (describing his leading role in accessing USAID offices in early February without legal authorization); *4 (describing

Defendant Musk and DOGE's role in placing nearly the entire USAID workforce on administrative leave and canceling programs); *4 (describing how Defendant Musk threatened USAID personnel with action by U.S. Marshalls); and *10 (describing how Defendant Musk disrupted grants from USAID to public universities). Accordingly, this Court can easily dispense with Defendants' Motion to Dismiss and simultaneously rule on class certification.

## II.    The Proposed Class Definition is Proper.

### A.    The Class is Objectively Defined to Include Only Those Who Could Have Been Injured.

Properly certified classes are defined by reference to *objective* criteria. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). They include all those subjected to the alleged improper conduct who *could have been* injured by it, not just those *actually* injured. "[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown. Such a possibility or indeed inevitability does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (citations omitted); *see also Remsnyder v. MBA Mortg. Servs., Inc.*, No. CCB-19-492, 2023 WL 5750412, at *7 (D. Md. Sept. 6, 2023) ("[P]laintiffs need not prove the standing of all putative class members at this stage of the litigation, and the class definition should not be limited to absolutely require putative class members to have standing."). Indeed, in *Krakauer v. Dish Network LLC*, 925 F.3d 643, 657-58 (4th Cir. 2019), the Fourth Circuit rejected as a "red herring" the defendant's argument that the "class includes a large number of uninjured persons."

What a class definition *cannot* do is include people who *could not have been* injured. *Kohen*, 571 F.3d at 677 ("[I]f the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad."). For example, in a car defect

case, the class cannot include individuals who did not even own the vehicle model equipped with the allegedly defective part. Not only would this individuals not be injured by the alleged defect, they *could not have been*. Here, Plaintiffs' proposed class consists of employees and contractors who worked at USAID from January 25, 2025 to the present. It is defined by reference to the objective facts and includes only those who *could have been* harmed by Defendants' alleged misconduct. There is no possibility that the class includes persons who could not have been injured.

Defendants also appear to confuse the standards applicable to a Rule 23(b)(2), as here, and a Rule 23(b)(3) damages class. In a *damages* class, uninjured members cannot be allocated damages after liability is determined; there must be a mechanism for identifying them so they are not awarded damages and their inclusion does not alter the gross liability award. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016). In *Tyson*, as Chief Justice Roberts noted in his concurrence, "it [wa]s undisputed that hundreds of class members suffered no injury in this case." *Id.* at 463 (Roberts, C.J., concurring). Yet even that did not warrant *decertification* of the class so long as the court is "able to devise a means of distributing the aggregate award only to injured class members." *Id.* at 464.

Here, because the class seeks only Rule 23(b)(2) relief, Defendants' entire argument is categorically erroneous: there is *no* risk that *any* uninjured class members will be awarded damages or increase Defendants' total liability because this case is not about damages. Thus, the cases on which Defendants rely are irrelevant, as none involve requests for exclusively non-monetary relief under Rule 23(b)(2).[2] As the Ninth Circuit held in a case Defendants cite, such concerns simply

---

[2] *See Stafford v. Bojangles Rests., Inc.*, 123 F.4th 671 (4th Cir. 2024); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *Kohen*, 571 F.3d 672; *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).

"do[] not apply when a court is certifying a class seeking [only] injunctive or other equitable relief." *Olean Wholesale Grocery Coop.*, 31 F.4th at 682 n.32.[3]

      **B.**      <u>The Class Contains *No* "Uninjured" Class Members</u>

As a threshold matter, Defendants speculate that Plaintiffs' proposed class includes individuals who have not suffered any injury because it includes individuals still employed at USAID, those who have "chosen or will choose to" retire or resign, and those whose contracts have lapsed. Opp. at 8-9. But as noted above, even if *some* uninjured class members exist, that does not warrant denial of an otherwise properly defined class, especially here where it is a (b)(2) class, not a damages class under (b)(3).

More fundamentally, Defendants' "position is contradicted by the Advisory Committee's Note to Rule 23(b)(2), by numerous authorities, and by prominent commentators." *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 88 (M.D. Tenn. 2004) (rejecting the defendant's argument that "the proposed class definition is overbroad because it undoubtedly includes . . . class individuals who lack standing to pursue their own claims," which the court construed as "a challenge to the plaintiffs' ability to carry their burden under Rule 23(b)(2)"). As the Advisory Committee stated in its Note to the 1966 amendment of Rule 23: "Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." In a Rule 23(b)(2) case, "[a]ll the class members need not be aggrieved by or desire to challenge defendant's conduct . . . . What is necessary is that the challenged conduct or lack of

---

[3] Defendants note that the Supreme Court recently took up the question of uninjured class members, but omit that it expressly limited its review of the question to Rule 23(b)(3) classes. *See Lab'y Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1133, 1133-34 (2025) (petition "limited to…[w]hether a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury.").

conduct be premised on a ground that is applicable to the entire class." C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1775 (3d. ed.); *accord Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Furthermore, Defendants can neither focus myopically on any particular class member's employment status, nor—at this stage—nakedly allege that even someone who resigned during the relevant period is necessarily "uninjured."[4] Plaintiffs properly allege numerous injuries caused by common conduct that has injured, and continues to injure, class members regardless of any specific employment status or classification.[5]

Whether Plaintiffs can ultimately *prove* such injuries is not a class certification issue, but a merits issue that will ultimately be decided on the facts. *See* Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 23 ("[I]f the trial court can devise an effective way to resolve the individual injury issues and it turns out that some members of the class are not entitled to relief, that represents a failure on the merits for those class members, not the lack of a justiciable claim."). And as this Court has recognized, "the *possibility* that the plaintiffs would not prevail on the merits" is not a legitimate reason to deny class certification. *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 450 (D. Md. 2018) (Chuang, J.) (quoting *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010)).

To the extent that the Court concludes otherwise and finds that there are some class members who could not have been injured by Defendants' common course of conduct, it has the

---

[4] Indeed, it is entirely plausible that Defendants' conduct *caused* their retirement, resignation, or lapsing of their contracts.

[5] *See, e.g.,* Ex. 4, Decl. of J. Doe 4, ¶ 11, J.R. 00020; Ex. 1, Decl. of J. Doe 7, ¶ 11, J.R. 00005; Ex. 3, Decl. of J. Doe 22, ¶ 10, J.R. 00015; Ex. 2, Decl. of J. Doe 27, ¶ 11, J.R. 00010; Ex. 5, Decl. of J. Doe 28, ¶ 13, J.R. 00025; Ex. 6, Decl. of J. Doe 29, ¶ 10, J.R. 00030; Amend. Compl. ¶¶ 46, 62, 64, 88, 91, 108.

discretion to redefine the proposed class to carve those individuals out. *See Piotrowski v. Wells Fargo Bank, NA*, No. DKC 11-3758, 2015 WL 4602591, at *5 (D. Md. July 29, 2015) ("The court possesses the power to modify the class definition.") (citations omitted); *In re White*, 64 F.4th 302, 315 (D.C. Cir. 2023) ("Rule 23 charges district courts ultimately with 'defin[ing] the class.'" (quoting Rule 23(c)(1)(B)); 3 Newberg on Class Actions § 7:27 (5th ed.) ("[A]s courts in every circuit have held, when a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit" and "circuits have held that a court should alter the class definition in lieu of rejecting class certification, if possible.").

## C.    **"Fail-Safe" Classes Tethered to Success on the Merits are Improper.**

Defendants also argue that the class definition is "unmoored to any specific claim of harm." Opp. at 10. Yet they cite no requirement that a class definition specifically reference the harm alleged, because there is none. Instead, it is black letter law that only the *named* Plaintiffs need to provide factual allegations sufficient to show injury-in-fact, as they do here. *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (explaining that, at the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice").

Again, Defendants' reliance on *Stafford*, 123 F.4th 671, is unfounded. That case concerned a Rule 23(b)(3) damages class involving allegations of off-the-clock work at a fast-food chain. In *Stafford*, the proposed class was deemed defective because it was "unclear . . . that the many types of claims plaintiffs advance can be united by a common question of liability" and because the plaintiffs failed to identify "specific documentation or concrete evidence narrowing the broad theoretical policy by which [the restaurant chain] allegedly mandated all different forms of off-the-clock work and time-shaving." *Id.* at 680. Here, however, class members' claims all stem from the same allegedly unconstitutional acts. *See* Dkt. 93 (Am. Compl.) ¶¶ 59-60; 120-21. Unlike in

*Stafford* where the plaintiffs were accused of "creat[ing] a laundry list of factually diverse claims and then assert[ing] that these claims, in turn, prove the existence of a uniform company policy," *Stafford*, 123 F.4th at 680, here, Defendants' unconstitutional decision to delete an agency, and agency-wide actions implementing that decision, give rise to all class members' claims.

Plaintiffs do not propose a "fail-safe" class, where the class "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *EQT Prod.*, 764 F.3d at 360 & n.9 (cleaned up). As the Court has observed, a fail-safe class is improper because "[e]ither the class members win or, by virtue of losing, they are not in the class, and therefore, not bound by the judgment." *Richards v. NewRez LLC*, No. ELH-20-1282, 2021 WL 1060286, at *29 (D. Md. Mar. 18, 2021) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)).

Here, "class membership does not depend on a finding of liability." *Bezek v. First Nat'l Bank of Pa.*, No. SAG-17-2902, 2023 WL 8622604, at *4 (D. Md. Dec. 13, 2023). The class definition appropriately encompasses all USAID employees from a date certain, which is congruent with Plaintiffs' allegations of agency-wide acts with agency-wide effects, and the only questions are whether those acts violate the Constitution. Thus, Defendants' attempt "to inject required elements of the plaintiffs' claims into the class definition" is improper. *Remsnyder*, 2023 WL 5750412, at *7.

## III.    Plaintiffs Satisfy Rule 23(a)'s Commonality and Typicality Requirements.

### A.    Plaintiffs' Claims Present Common Questions of Law and Fact Capable of Classwide Resolution.

Defendants devote the bulk of their opposition to Rule 23(a)(2)'s commonality requirement, raising a slew of arguments that have little or no bearing on whether Plaintiffs have identified a common question of law or fact. *See* Opp. at 10-20.  In their opening brief, Plaintiffs

unambiguously did so, demonstrating that at the heart of this case are two questions: whether Defendants Musk and DOGE have acted in violation of the Appointments Clause, and whether all Defendants have and are violating Separation of Powers in dismantling a congressionally created independent agency. The answer to those two questions—whether it is yes or no—will be binary, apply equally to all class members, and undoubtedly "drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citations omitted). Put differently, a class's "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Here, Plaintiffs' and all class members' claims are premised on the same two contentions, the determination of which is central to—and, indeed, will fully resolve—the claims of each class member in one stroke. Nothing more is required.[6]

### 1.    Plaintiffs Allege a Common Course of Conduct, Tying Class Members' Claims Together.

Defendants stake their arguments as to commonality on *Dukes*, contending that Plaintiffs' harms are as disparate and disconnected as the class members in that case. Defendants are wrong. *Dukes*, "one of the most expansive class actions ever," 564 U.S. at 342, involved a sprawling proposed class of 1.5 million employees, who sought damages and injunctive relief for alleged sex discrimination based on Wal-Mart's alleged failure to cabin the pay and promotion discretion of Wal-Mart's thousands of store managers at hundreds of stores across the country, *see id.* at 343-45. *Dukes* bears no resemblance to this case, which involves a series of specific, agency-wide

---

[6] Defendants repeatedly refer to Rule 23(a)'s typicality requirement, but make no independent argument directed at typicality. This is because they cannot. Typicality is satisfied where, as here, the defendant "pursued the same course of conduct as to all class members." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 149 (D. Md. 2022).

actions by Defendants to dismantle USAID over a defined period of time (mere months), by a discrete and explicitly identified set of individuals. The legality of those actions can be adjudicated in "one stroke." *Id.* at 350. Unlike in *Dukes*, where there was no express corporate policy tying together Plaintiffs' claims of discrimination, Defendants here have repeatedly announced their plans to completely dismantle USAID, including as recently as the March 28, 2025 "Final Mission" email sent by Defendant Jeremy Lewin to the entirety of USAID. *See generally* Am. Compl. ¶¶ 59-127.

Plaintiffs' harms all flow from Defendants' actions, which have been public, and which tie all class members' claims together. The question to be answered—once, for all class members—is whether that conduct was legal or not. Indeed, "[w]here the injuries complained of by named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied." *Parker v. Asbestos Processing, LLC*, No. 11-cv-01800-JFA, 2015 WL 127930, at *7 (D.S.C. Jan. 8, 2015) (citations omitted).

Against this central common question, Defendants attempt to manufacture complexity where there is none. For example, Defendants key in on one common question—whether Defendant Musk unlawfully acted as an "officer"—asserting that his actions affected individual USAID personnel differently, thus implicating "individual defenses." Opp. at 12. This misapprehends the Court's task in assessing commonality. It is unnecessary to consider, for example, the location or employment status of individual class members to determine whether *Defendant Musk* acted in accordance with the law in each of his challenged actions.[7] The entire inquiry on that issue focuses on his actions. Indeed, Judge Chutkan, analyzing similar

---

[7] *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 687 (D. Md. 2017), cited by Defendants (at 12), is inapposite. Liability in that case turned on class member consent to receive auto-dialed calls. The legality of Defendants' actions here has nothing to do with any class member's actions.

Appointments Clause claims against Defendant Musk, had no trouble identifying and answering the determinative question of "officer" status without such individualized inquiries. She rejected the Government's formalistic arguments that Defendant Musk does not occupy an "office" established by law and lacks a title that confers formal authority. *New Mexico* Order at *12-16.[8] And, Judge Chutkan aptly considered categories of allegedly unlawful decisions in coming to this legal conclusion, demonstrating that there is no barrier to this Court doing the same. *See id.* at *14-15 (crediting allegations that "Musk decides the continued existence of federal agencies, the employment terms for millions of federal employees, and federal funds allocated by grants, contracts, and loans" to determine significance of his decision-making).

Defendants' response to the common nature of these questions is to emphasize irrelevant differences between class members, such as whether they are based in the United States or in "dangerous locations," and whether they are career personnel or contractors. Opp. at 14-15. But whether a specific class member is a direct employee or contractor, or even where they are located, does not alter the answer to the question of whether Defendants' actions violated the Constitution. Defendants make a conclusory assertion that class members are not "similarly situated" because Plaintiffs identified three phases in USAID's dismantling, Opp. at 16, but make no attempt to connect that fact to Rule 23(a)(2), or explain why the Court is not competent to analyze phases of Defendants' conduct. Moreover, none of this has anything to do with individual class members. Defendants either did or did not have the authority to act as they did during *all* of those time periods. Moreover, Defendants did not distinguish among class members when they, for instance,

---

[8] "Essentially, Defendants argue, so long as the Executive acts without Congressional authority, the court cannot review its conduct. Under this reasoning, the President could authorize an individual to act as a Prime Minister who vetoes, amends, or adopts legislation enacted by Congress, as an Ultimate Justice who unilaterally overrules any decision by the Supreme Court, as a King who exercises preeminent authority over the entire nation. . . ." *Id.* at *13.

shut down USAID headquarters, accessed personnel files, canceled contracts and programs en masse, or started large-scale terminations. Instead, to borrow Defendant Musk's memorable phrase, they treated USAID as a single "ball of worms." Am. Compl. ¶ 88. With respect to the common, overarching questions factual and legal questions here, there simply are *no* relevant differences.[9]

Defendants' related complaint about the "sheer multitude" of class members is also misplaced. Opp. at 14. Classes routinely encompass hundreds of thousands or even millions of individuals (*e.g.*, consumer classes), making the size of this class modest. Plaintiffs' opening brief listed a small sampling of classes involving government policies certified under Rule 23(b)(2). *See* ECF No. 111 at 23. Rather than address those cases, Defendants cite inapposite damages classes like *Dukes*,[10] as well as *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996), which concerned an attempt to settle the personal injury damages claims of tens of thousands of individuals injured by exposure to asbestos. Again, Plaintiffs here do not seek certification of damages claims at all, much less complex and necessarily individualized personal injury claims.

Because Plaintiffs do not seek damages, Defendants' next objection to commonality—purported differences in Plaintiffs' specific injuries, repeated throughout their opposition—also fails. *See* Opp. at 13, 15-16, 18-19. First, as set out above, the common question to be decided is whether Defendants' conduct was unlawful; it does not matter that those actions may have (inevitably) affected class members in different ways. *See Connor v. Md. Dep't of Health*, No.

---

[9] In any event, it is well established that "[m]inor differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *Sanchez v. McAleenan*, No. GJH-19-1728, 2020 WL 5849491, at \*4 (D. Md. Sept. 30, 2020) (citation omitted).
[10] *Dukes* was "one of the most expansive class actions ever," with a proposed class of 1.5 *million* members, 564 U.S. at 342, a far cry from the 5,000-10,000 members in the class proposed here.

MJM-24-1423, 2025 WL 1167846, at *11 (D. Md. Apr. 22, 2025) (finding commonality satisfied despite variations in "specific personal harms and risks of harm" among class members challenging deficient oversight and enforcement in nursing homes, collecting authorities). Second, class members' entitlement to individualized *damages* is not at issue at all. Defendants twice cite *Taig v. Currey*, No. 21-CV-80391-RLR, 2022 WL 18539319 (S.D. Fla. June 28, 2022), where the court found typicality (not commonality) lacking because the means of proving *damages* would necessarily vary among class members. *See id.* at *4. But that is not the question in a Rule 23(b)(2) case. Instead, the question is whether "the relief they seek would apply uniformly to benefit the entire class." *Connor*, 2025 WL 1167846, at *11 (citation omitted). Here, the requested injunction—declaring the legality or illegality of Defendants' actions and unwinding them where appropriate—will benefit (or not) all class members, and is an appropriate remedy, as discussed below.

Finally, Defendants' misplaced focus on the incidental differences between class members leads them to spend several pages demanding that Plaintiffs spell out the details of their injuries. *See* Opp. at 17-20. Plaintiffs have met their burden to show that it is Defendants' conduct that presents common questions of law and fact. The Court has already recognized this evidence. *See, e.g.*, *Does 1-26 v. Musk*, --- F. Supp. 3d ----, No. 25-0462-TDC, 2025 WL 840574, at *11, *14 (D. Md. Mar. 18, 2025). Plaintiffs have shown that Defendants' conduct caused data breaches, employment interruptions, and other harms across the agency. Indeed, Defendants have already told the Court that Plaintiffs' constitutional claims "do not require factual development." ECF No. 113, at 2; *id.* at 10 (noting that Plaintiffs' allegations are "largely publicly known"). Because Plaintiffs are not seeking damages, and because the specific *circumstances* of their harms do not

affect the resolution of the common questions they have identified, nor the remedy they seek, Defendants' insistence on additional details for details' sake should be rejected.

### 2.    Defendants Have Not Identified Individual Defenses Relevant to Commonality.

Defendants also point to purported "different defenses" in an attempt to defeat commonality. Defendants do not, however, show that such defenses "threaten to dominate the litigation," which is required to defeat class certification. *In re Marriott Int'l*, 341 F.R.D. at 149 (citations omitted).[11] In fact, Defendants instead argue that Plaintiffs' claims should be channeled into other forums, which is a jurisdictional argument, not a defense, and an argument that this Court can decide on a common basis.[12] Indeed, the Parties have briefed that issue as it relates to the Government's pending motion to dismiss without reference to individual class members. *See* ECF No. 121 (Pls.' Opp. to Mot. to Dismiss). The only actual defense the Government raises is ratification in response to the Appointments Clause claim. Opp. at 12. But that, too, has no connection to the circumstances of individual class members, and can be answered at once given Defendants' contention that "every alleged exercise of significant authority" was "actually approved by USAID officials either before or shortly after the action occurred." *Does 1-26*, 2025 WL 840574, at *13.

---

[11] Defendants again mistakenly cite irrelevant Rule 23(b)(3) authority, pointing to *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 324 (4th Cir. 2006), which focused its discussion of individual defenses on predominance, which is not part of the Rule 23(b)(2) inquiry. *Id.* at 327.

[12] It is also not a relevant defense that foreign nationals do not possess constitutional rights, Opp. at 17, because Plaintiffs do not seek to vindicate the *individual* constitutional rights of class members, but rather to enforce a *structural* protection.

- 14 -

**IV.**    **Plaintiffs Satisfy Rule 23(b)(2).**

Defendants' argument that Plaintiffs fail to satisfy Rule 23(b)(2)'s requirements rests entirely on their argument that Plaintiffs have not satisfied the commonality requirement of Rule 23(a). But, as explained above, Plaintiffs established that they satisfy Rule 23(a) commonality.

Plaintiffs allege that Defendants' systematic and unconstitutional campaign to destroy USAID injured all class members, and they seek the same declaratory and corresponding injunctive relief to stop and reverse this unlawful effort. The declaratory and injunctive relief they seek would provide a remedy to all members of the class—because they were all injured by the same misconduct by Defendants—and are therefore "indivisible" in nature. *Dukes*, 564 U.S. at 360 (citations omitted); *see Planned Parenthood of Md., Inc. v. Azar*, No. CCB-20-00361, 2020 WL 3893241, at *7 (D. Md. July 10, 2020) ("Declaring the [Defendants' actions] invalid and preventing the defendants from requiring [] implementation — would provide the same relief to all class members.") (cleaned up). There are no claims for different injunctions or declaratory judgments for different members of the class, nor claims for individualized awards of money damages. Thus, Defendants' argument that an individual class member could be entitled to a different injunction or declaratory judgment has no merit. Opp. at 21.

Defendants are also wrong that Plaintiffs seek a vague "obey-the-law" injunction. The general rule against certification of Rule 23(b)(2) classes seeking only "obey-the-law" injunctions is rooted in "the traditional equitable principle—codified in Federal Rule of Civil Procedure 65(d)—that an injunction 'state its terms specifically[ ] and . . . describe in reasonable detail . . . the act or acts restrained or required.'" *Connor*, 2025 WL 1167846, at *13 (quoting *Bone v. Univ. of N.C. Health Care Sys.*, 678 F. Supp. 3d 660, 708 (M.D.N.C. 2023)). Here, Plaintiffs do not seek a vague directive from the Court simply ordering Defendants to "obey the Constitution." The injunction Plaintiffs seek—requiring Defendants to undo specifically-identified actions they took

to dismantle USAID and to cease any further such actions without the authorization of Congress—is specific and narrowly-tailored to remedy the injuries caused by Defendants' unconstitutional conduct. *Cf. New Mexico* Order at *10 ("If the court finds that Defendants' past actions lack lawful authority and enjoins any future unlawful conduct, including interference with States' funding and access to their data, their injuries will be redressed.") (citations omitted). Indeed, this Court has already issued a preliminary injunction ordering Defendants to cease further actions to terminate USAID staff or contracts, to place employees on administrative leave, to create or enforce stop-work orders, and to shut down physical locations or technology systems. ECF No. 75. This injunction "describe[d] in reasonable detail . . . the act or acts restrained or required." *Connor*, 2025 WL 1167846, at *13; *see* ECF No. 73 at 66 (explaining that the preliminary injunction "provide[d] an objective standard that can be fairly understood and applied"). Here, Plaintiffs seek similar specific prospective injunctive relief the Court already preliminarily ordered, ECF No. 111 at 24-27.

This brings us to Defendants' final argument:  that class certification under Rule 23(b)(2) is inappropriate because Plaintiffs seek injunctive relief to redress only past harms and not future injuries. Opp. at 23-24. This is simply false. Plaintiffs' Complaint is replete with descriptions of impending harm, including the implementation of what Defendant Jeremy Lewin characterized as USAID's "final mission" to wind-down USAID beyond repair between July 1 and September 1, 2025. Am. Compl. ¶¶ 120-124. In support of this argument, Defendants rely on *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353 (11th Cir. 2021). Opp. at 23. But the court in *Mack* explicitly distinguished its holding—which dealt only with the plaintiff's standing to bring a declaratory judgment claim—from the requirements of Rule 23(b)(2), citing *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1172-75 (11th Cir. 2019). *See Mack*, 994 F.3d at

1358. In *AA Suncoast*, a group of healthcare providers brought a class action against an insurance company over an allegedly illegal claims-handling process, and sought certification of both a damages class under Rule 23(b)(3) and an injunctive class under Rule 23(b)(2). *AA Suncoast*, 938 F.3d at 1173. The Eleventh Circuit reversed the district court's certification of an injunctive relief class, rejecting what it called a "damages-to-injunction strategy" that tried to disguise a damages class action as one for injunctive relief. *AA Suncoast*, 938 F.3d at 1175, 1180.

Here, Plaintiffs are not attempting anything like the "ploy" the plaintiffs attempted in *AA Suncoast*. This case is definitively not "about damages." 938 F.3d at 1180. It is about the Court's power to order Defendants to undo actions they have taken to destroy USAID without any constitutional authority to do so and to refrain from such actions in the future. Thus, the issue is not about past harms versus future harms, but about whether Plaintiffs' claims for injunctive relief can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing to seek *retrospective* injunctive relief requires a showing that "the injury will be redressed by a favorable decision") (cleaned up). On top of that, courts have regularly certified classes under Rule 23(b)(2) seeking only retrospective injunctive relief. *See, e.g.*, *Maryland v. United States Dep't of Agric.*, No. JKB-25-0748, 2025 WL 973159, at *36 (D. Md. Apr. 1, 2025) (discussing reinstatement of employees). Indeed, the Supreme Court has specifically approved retrospective injunctive relief for a violation of the Appointments Clause. *See Lucia v. Sec. & Exch. Comm'n,* 585 U.S. 237, 251–52 (2018) (holding the "appropriate" remedy for an adjudication tainted with an appointments violation is a new "hearing before a properly appointed" official) (citation omitted).

## V.    **The Presence of Other Litigation Does Not Defeat Class Certification.**

Defendants argue that class certification is unnecessary because similar claims based on these facts are pending in other courts and that "it is unclear why proposed class counsel are in a

superior position to litigate these issues." Opp. at 25. Notably, the Government recently argued to the Supreme Court that class actions are, in fact, the superior procedural tool for challenging the constitutionality of executive actions and seeking injunctive relief. *See Trump v. CASA, Inc.*, No. 24A, 2025 WL 817770, at *38 (U.S. Mar. 1, 2025) ("Affected individuals could instead seek class certification and, if appropriate, seek class-wide preliminary relief . . . that approach, unlike the issuance of nationwide injunctions, complies with Article III and respects limits on courts' equitable authority. That procedure also avoids the asymmetric stakes of nationwide injunctions: A class judgment binds the whole class, but one plaintiff's loss in seeking nationwide relief does not stop others from trying again."). Moreover, because of the representative nature of class actions, the rule against claim-splitting does not apply. *See*, *e.g.*, *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 429 n.16 (6th Cir. 2012) ("A class action, of course, is one of the recognized exceptions to the rule against claim-splitting.") (cleaned up).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant Plaintiffs' motion for class certification.

Dated: May 29, 2025                    Respectfully submitted,

*/s/ Norman L. Eisen*
Norman L. Eisen [9112170186]
Tianna J. Mays [1112140221]
**STATE DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Tianna@statedemocracydefenders.org

Mimi Marziani*
Rebecca (Beth) Stevens*
Joaquin Gonzalez*
**MARZIANI, STEVENS & GONZALEZ PLLC**
1533 Austin Highway

Suite 102-402
San Antonio, TX 78218
Tel: (210) 343-5604

Richard M. Heimann*
Nicole M. Rubin (30711)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000

*Admitted pro hac vice*