UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J. DOE 4, *el al*.,<br><br>        Plaintiffs,<br><br>v.<br><br>ELON MUSK, *et al.*,<br><br>        Defendants. | Civil Action No. 25-462-TDC |

**BRIEF *AMICUS CURIAE* OF AMERICAN FOREIGN SERVICE ASSOCIATION (AFSA) IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTEREST OF *AMICUS CURIAE*

The American Foreign Service Association ("AFSA"), established in 1924, is both the professional association and exclusive representative for the U.S. Foreign Service. AFSA's close to 18,000 members include active-duty and retired members of the Foreign Service at the Department of State, the U.S. Agency for International Development ("USAID"), Foreign Commercial Service, Foreign Agricultural Service, Animal and Plant Health Inspection Service, and U.S. Agency for Global Media. AFSA represents nearly 80 percent of active-duty members of the Foreign Service, including hundreds of Foreign Service Limited ("FSL") Officers at USAID. AFSA speaks for its members individually, ensuring that the law is upheld and due process followed, but also, crucially, for the long-term health and vigor of the Foreign Service as an institution, certain in the conviction that a career Foreign Service, characterized by excellence, non-partisanship, and professionalism, is in America's national interest.

AFSA submits this brief to highlight the interests and particular legal status of its FSL members who are not subject to the channeling arguments Defendants have made with regard to contractors and employees with recourse to the U.S. Merit Systems Production Board ("MSPB") for review.

## INTRODUCTION

Nearly 500 Foreign Service Limited Officers serve in term-limited (often five-years) positions at USAID. Under the Defendants' unlawful plan to shut down USAID and merge some of its functions into the State Department, virtually all FSLs will be terminated on July 1, 2025.[1]

---

[1] All FSLs will be terminated on July 1, 2025, except for those few who previously accepted the "Deferred Resignation Program" offer and a few others who have been granted a compassionate extension due to pregnancy.

i

FSLs are thus directly and profoundly injured by the unconstitutional reorganization and elimination of USAID. As the Court wrote in its opinion granting a preliminary injunction, "[t]here is no statute that authorizes the Executive Branch to shut down USAID." Mem. Op., 41-42, ECF No. 73. (Mem. Op.") Because they have no valid defense on the merits to the elimination of USAID by executive fiat without statutory authority,[2] Defendants rely principally on "channeling" arguments—contesting this Court's jurisdiction to adjudicate constitutional challenges to their actions on the theory that they must be presented to the MSPB. While the channeling arguments lack merit in general, they are flatly inapplicable to FSLs in particular, as Defendants have recognized. Reply in Support of Defs.' Mot to Dismiss, 12-13, ECF No. 133. The second amended complaint filed in response to the Court's May 27, 2025, order identifies FSLs as named plaintiffs. *See* Second Am. Class Action Compl. for Declaratory & Injunctive Relief, 5-6, ECF No. 135 (identifying J. Doe 4 and J. Doe 28 as FSLs). And Defendants are wrong that the lack of MSPB review means that FSLs are not entitled to *any* judicial review of their injuries from unconstitutional action that results in termination. Not only would that be contrary to the general strong presumption of judicial review, it also conflicts with specific authority recognizing that FSLs have recourse in district court. Defendants point to no statute cutting off FSLs' constitutional claims, and their ineligibility for review in the channels that Congress provided for other kinds of claims, does not and could not implicitly cut off their right to challenge injurious but unconstitutional action. Past opinions by both the D.C. Circuit and the District Court for D.C. make clear that the FSLs may challenge these unlawful actions directly in this federal district court, and

---

[2] "Defendants do not advance any factual claim that Defendants' actions do not effectively constitute the elimination of USAID as an agency." *J. Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 677 (D. Md. 2025). Neither the president nor his subordinates have the power to eliminate USAID without authorization from Congress, which it has not given. "Congress has made clear through statute its express will . . . [that USAID] not be abolished or substantially reorganized without congressional approval." *Id.* 672.

2

that their claims may not be channeled to an administrative agency. Thus, the motion to dismiss should not be granted.

Because the FSLs are not subject to the channeling arguments Defendants have made, their interests may potentially be distinct from other members of the proposed class. AFSA therefore urges the Court that, if it is inclined to accept Defendants' channeling arguments with regard to contractors and employees not covered by the Civil Service Reform Act remedies,[3] to either dismiss without certifying the class or certify the class without the FSLs, so that issue preclusion does not inadvertently harm FSLs' ability to pursue alternative relief, including under the Administrative Procedures Act, in a potential separate class action.

## BACKGROUND

Foreign Service Limited appointments are temporary, non-career appointments within the U.S. Foreign Service, usually lasting up to five years. *See* 22 U.S.C. § 3949. FSL appointments can be extended twice in two-year increments, for up to a maximum of nine years total. *See* USAID Automated Directive Systems ( "ADS") 414.3.2.3. FSL positions are typically filled by individuals with specialized skills or experience needed for specific projects or short-term needs within USAID. While some FLSs are posted overseas, most serve in specialist positions in Washington, D.C.

FSLs complete annual performance reviews, maintain annual achievement records, and are compensated on the Foreign Service ("FS") pay scale. FSLs' retirement benefits are similar to those of other members of the civil service, and FSLs participate in the Federal Employees Retirement System. Over time, the number of FSLs at USAID has expanded significantly, and as

---

[3] To be clear, AFSA also believes these arguments to be incorrect. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss, 8-24, ECF No.121.

of February 2025, the nearly 500 FSLs at USAID composed approximately 20% of all Foreign Service positions there. FSLs thus play a critical role in assisting USAID in carrying out its congressionally-mandated functions.

Like career Foreign Service Officers, FSLs may be subject to a formal Reduction in Force ("RIF"), pursuant to established USAID policies. *See* ADS 454.3.4. However, under 22 U.S.C. § 4011 [Foreign Service Act Section 612] FSLs may be terminated "at any time" by their relevant agency head (excepting terminations for misconduct, for which a separate Code section applies). *Id.* The ADS, is the published operations policies and procedures of USAID, provides that: "It is USAID policy to retain a time-limited employee for the duration of the specified term of the appointment, as long as their services can be advantageously used by USAID." ADS 450.3.1(a). The ADS also states that FSLs may be terminated "when the need no longer exists for the [FSLs'] services" and "for such other cause that promotes the efficiency of the service." *Id*. 450.3.2.2.

Under the Foreign Service Act, FSLs are unable to bring administrative grievances for most terminations. 22 U.S.C. § 4131(b)(3) provides that "grievance[s]" generally does not include "the termination of a limited appointment under section 4011 of this title."[4] As discussed further below, courts have interpreted this provisions to preclude term-limited Foreign Service employees including FSLs from seeking administrative relief, but have therefore allowed such employees to bring constitutional and other claims directly in the District Court, as is the case here.

### ARGUMENT

**1. The FSLs are Injured by the Shutdown and Dismantling of USAID**

Around February 23, 2025, many FSLs received a memorandum from Peter Marocco, the

---

[4] There is a tiny statutory exception to the general exclusions: 22 U.S.C. § 4010(a)(2)(A)(ii) – (B) allows for hearings before the FSGB only when an FSL is terminated for misconduct, which, as discussed further below, is not the case here.

Acting Deputy Administrator of USAID (the "RIF Memo"). The RIF Memo stated that FSLs would be subject to a RIF that was necessary to "restructure USAID's operations to better reflect Agency priorities and the foreign policy priorities of the United States." RIF Memo at 1. The memo stated that the RIF would be carried out "[i]n accordance with RIF procedures specified in ADS 454," which provides guidance for conducting a RIF of Foreign Service employees, including FSLs. But a little more than a month later, nearly 500 FSLs received a second letter (the "Termination Letter"), from Jeremy Lewin, a former DOGE official and Defendant in this case, who had by then become the Deputy Administrator and Chief Operations Officer at USAID. The Termination Letter informed all FSLs that they were to be fired on July 1, 2025 (regardless of the amount of time remaining on their appointment), and that their termination was based "solely on the exigencies of the Agency and in no way reflects inadequate or poor performance on [their] part." Termination Letter at 1. The letter further informed FSLs that "[t]he need for your position no longer exists." The Termination Letter also stated that it superseded any prior RIF notice, and that the firings were being carried out "in accordance with" the relevant sections of the Foreign Service Act and ADS 450. *Id.*

The Termination Letter thus made explicit that the firing of the FSLs was purely the result of the Defendant's ongoing attempts to shut down and dismantle USAID, rather than any performance-related issues, any individualized programmatic assessment of USAID's needs, or assessment of how the FSLs could be advantageously used. Indeed, this mass termination in the face of the explicit USAID policy in ADS 450 to retain FSLs "for the duration of the specified term of the appointment, as long as their services can be advantageously used by USAID," ADS 450.3.1, underscores that it was the shutdown and dismantling of USAID at issue in this case, rather than any specific programmatic decisions, assessment of FSL work product, or

5

programmatic needs, that led to the impending mass termination of FSLs. When Defendants moved to destroy USAID, they sought to terminate all the FSLs working there as a critical part of their dismantling program. And since the Termination Letter, Defendants have posted positions for hiring with the State Department that bear striking resemblance (in some places functionally identical) to jobs formerly performed by FSLs, indicating that the shutdown of USAID is the only reason for the termination of FSLs in those positions, since they could no doubt still be "advantageously used" if USAID still existed. *See* ADS 450.3.1.

### 2. The FSLs are not Channeled and Therefore May Assert Their Claims in Federal Court

FSLs who have been injured by unlawful executive action can sue in this Court for redress pursuant to 28 U.S.C. § 1331. As the Supreme Court recently reaffirmed: "this Court has long recognized a basic presumption of judicial review of agency action. As a general matter, unless there is persuasive reason to believe that Congress intended to preclude judicial review, this Court will not preclude review." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. __, No. 23-1226, 2025 WL 1716136, at *6 (U.S. June 20, 2025) (cleaned up); *Patel v. Garland*, 596 U.S. 328, 345-46 (2022).

Under the Foreign Service Act, FSLs have tightly circumscribed rights to appeal their terminations to administrative bodies, including to the MSPB and the Foreign Service Grievance Board ("FSGB"). *See* 22 U.S.C. § 4131(b) – (b)(3) (providing that "grievance" does not include "the termination of a limited appointment under section 4011 of this title."); 22 U.S.C. § 4010(a)(2)(A)(ii) – (a)(2)(B) (allowing for hearings before the FSGB only when an FSL is terminated for misconduct). Aside from misconduct terminations, the statutory text thus precludes FSL from challenging their terminations in an administrative proceeding. *Accord United States Info. Agency v. Krc*, 905 F.2d 389, 394 (D.C. Cir. 1990) ("USIA") (allowing administrative

grievance for a term-limited appointee comparable to an FSL only for a pretextual termination that "was actually due to the appointee's misconduct."). Nothing in either statutory scheme suggests that Congress intended to channel the kind of constitutional question presented here to the MSPB in the first instance, much less to cut off judicial review for employees without access to the MSPB.

Federal District Court is the only avenue for FSLs to challenge unlawful agency action that results in their termination for any reasons besides misconduct (and no misconduct is alleged here). "[P]reclusion of district court jurisdiction 'could foreclose all meaningful judicial review.'" *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) (citation omitted). As in *Axon*, the separation of powers issue here has nothing to do with the employment disputes the MSPB regularly adjudicates and is far beyond its expertise. Moreover, MSPB would have no authority to redress the unlawful dismantling of USAID which is the cause of the FSLs' injuries. Consequently, there is no reason to believe that Congress intended to make MSPB the exclusive pathway to litigate such claims or to by implication extinguish any right to judicial review.

Longstanding precedent confirms that FSLs are not without recourse. As the D.C. Circuit has made clear in *USIA v. Krc*, term-limited appointees, including FSLs, may bring challenges directly in District Court to unlawful agency action taken against them that violates the United States Constitution; they need not—and cannot—proceed before an administrative body. *See Krc*, 905 F.2d at 400 (remanding to the District Court consideration of a term-limited appointee's challenges to his firing on constitutional grounds). As Judge Wald stated in *Krc*, the ability for term-limited employees such as FSLs to proceed in federal court is critical because "those constitutional claims may well be the *only* check on agency actions that determine a person's career fortunes. Courts have an obligation to listen to those claims clearly and to consider them carefully." *Id.* (emphasis in original). FSLs here face precisely the same situation as outlined by Judge Wald:

7

their careers may be ended *en masse* by unconstitutional action, and thus this Court provides the "*only* check" on this unlawful agency action. *Id.* FSLs cannot seek administrative relief, and instead must seek relief here for their unlawful termination.

Similar to Judge Wald's opinion in *Krc* examining term-limited appointees at USIA fired under 22 U.S.C. §4011, in *Fausto v. Gearan*, Judge Sullivan considered the termination of a Peace Corps Officer who held a limited appointment comparable to that of an FSL. No. 93–1863 (EGS), 1997 WL 540809, *1 (D.D.C. 1997). Like the FSLs in this case, Fausto was terminated pursuant to 22 U.S.C. § 4011, the same provision purportedly used here. *Fausto*, 1997 WL 540809, at *1-2. In that case, Judge Sullivan held unequivocally that Fausto has "no administrative right to appeal a decision made pursuant to 22 U.S.C. § 4011," *Id.* *8, but that the flip side of this preclusion was a right to seek relief directly before the District Court. *Id.* *8 ("[t]he Agency's termination of Mr. Fausto's appointment therefore constitutes final agency action and is reviewable in this Court under the provisions in the Administrative Procedure Act. ("APA")"). Judge Sullivan further emphasized that "under the APA, federal courts have the power to review whether an agency's actions have violated the agency's own regulations." *Id.* *9*, citing *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988).

While *Fausto* concerned the APA rather than the Constitution, the same logic applies here: Just as Fausto could bring an APA challenge to his termination in District Court without being channeled to an administrative hearing (because the statute precluded him from going to an administrative body), so too FSLs can challenge their unconstitutional terminations directly in District Court without being channeled to the MSPB. The FSL claims for violations of the Appointments clause and for the *ultra vires* actions in the unlawful dismantling of USAID should thus be heard directly by this Court. Both *Krc* and *Fausto* stand for the common-sense principle

that because FSLs cannot be channeled to the MSPB or FSGB for these claims, including constitutional violations, they have a right to be heard directly in District Court. In this case, as Judge Wald recognized in *Krc*, when the FSLs have nowhere else to go to challenge unconstitutional actions that harm them, the District Court is the "*only* check" on unconstitutional executive action. *Krc*, 905 F.2d at 400.[5]

The ability of FSLs to challenge their unlawful termination further strengthens the Foreign Service in two ways: first, FSLs often perform essential specialized functions, and as recognized by USAID's policies, should be retained for the duration of their terms if they can be used advantageously. Second, the United States Foreign Service functions more effectively and efficiently when it follows the law, making better decisions for its own personnel, and setting an example to other countries of how a professionalized and law-abiding Foreign Service efficiently functions to serve the interests of its people. The ability of FSLs to bring lawsuits challenging unconstitutional action strengthens the Foreign Service, and a stronger Foreign Service makes for a stronger United States.

3. **The Defendants' Restructuring and Elimination of USAID as an Agency is *Ultra Vires* and Contrary to Law**

As this Court accurately summarized at the preliminary injunction stage, the Defendants efforts to "effectively eliminate USAID as an independent agency," Mem. Op. 37, were and are unlawful. Since that time, the rulings of other Courts—and the positions taken by the United States Government—have only further strengthened Plaintiffs' position. For instance, in *New York v. McMahon*, the government, "acknowledged . . . that the Department [of Education] cannot be shut

---

[5] Should the Court conclude that the FSLs are the only portion of the putative class which may proceed in District Court directly, Amicus urges that the Court certify the FSL subclass and allow Plaintiffs leave to amend the complaint to add the APA claims for the sake of judicial economy and fairness.

down without Congress's approval." Nos. 25-10601-MJJ, 25-10677-MJJ, 2025 WL 1463009, *1 (D. Mass May 22, 2025). The same is true here: USAID cannot be shut down without Congress's approval. The Constitution does not grant the President the power to abolish independent agencies created by Congress willy-nilly. Presidential action that is contrary to statute cannot be justified by the president's constitutional duty of "faithful execution." The president has no inherent constitutional authority to structure the executive branch as he chooses. Rather, it is Congress that creates the offices and agencies through which the president exercises power.

The District Court in *McMahon* was similarly clear that "no evidence [exists] that the RIF has actually made the Department [of Education] more efficient." 2025 WL 1463009, *1. So too here. The attempted shutdown of USAID has not made the agency more efficient; it instead has eliminated the U.S. government's ability to effectively manage and monitor Congressionally mandated foreign assistance programs.[6] Division by zero is not efficiency, even when both the numerator and denominator are headed to zero. Similarly, in *Am. Fed'n of Gov't Employees v. Trump*, the Ninth Circuit upheld the District Court's injunction against mass firings across a variety of federal agencies, stating that: "Neither the Constitution nor any federal statute grants the President the authority to direct the kind of large-scale reorganization of the federal government at issue." No. 25-3293, 2025 WL 1541714, *5 (9th Cir. 2025). That likewise supports the merits arguments made by the Plaintiffs in this case: no legislation supports the largescale reorganization and destruction of an executive agency as contemplated here. Indeed, the Office of Legal Counsel itself has long affirmed precisely the same rule: "In general, the President may not transfer the

---

[6] *See* Office of Inspector General, U.S. Agency for International Development, *Oversight of USAID-Funded Humanitarian Assistance Programming Impacted by Staffing Reductions and Pause on Foreign Assistance* (February 10, 2025), available at https://oig.usaid.gov/sites/default/files/2025-02/USAID%20OIG%20-%20Oversight%20of%20USAID-Funded%20Humanitarian%20Assistance%20Programming%20021025.pdf

10

functions of an agency statutorily created within one Cabinet department to another Cabinet department without an act of Congress." 26 U.S. Op. Off. Legal Counsel 22, 2002 WL 34191507, *1 (March 20, 2002).

The shutdown of USAID and the concomitant termination of all FSLs is thus, as Plaintiffs argue, *ultra vires* and contrary to the Constitution.

### 4. In the Alternative, if the Court Grants the Motion to Dismiss, It Should Exclude FSLs from Any Class Certification

Lastly, if the Court is inclined to dismiss the Plaintiffs claims' (an outcome AFSA emphatically does *not* support), then we urge the Court to do so *without* certifying the FSLs as members of the class. While a ruling for the Plaintiffs in this case on the pure constitutional issues would provide relief to the FSLs, a ruling against them could inadvertently extinguish other meritorious claims that the FSLs may bring, including for violations of the APA, and for the failure of USAID to follow its own published manual, the ADS, regarding terminations. *See, e.g.*, *Fausto*, 1997 WL 540809, at * 9 ("under the APA, federal courts have the power to review whether an agency's actions have violated the agency's own regulations." citing *Webster*, 486 U.S. at 602 n.7); *see also New York v. McMahon*, 25-1495, Slip Op. at 15-17 (1st Cir. 2025) (upholding an APA claim for unlawful restructuring)). Dismissal after certification of the FSLs as members of the class in this instance[7] could thus have the unintended and harmful effect of precluding the FSLs from bringing other related meritorious claims in separate litigation. Therefore, if the Court is inclined to grant the motions to dismiss, AFSA respectfully requests that it not certify the class at all or, if the Court does certify a class, not include the FSLs within the class it certifies.

---

[7] There are also potential procedural issues with such a dismissal after certification that Amicus does not address here.

**CONCLUSION**

For the foregoing reasons, Amicus respectfully request this Court to deny the Defendants' motion to dismiss or, in the alternative, dismiss without certifying the class to include the FSLs.

This 30th day of June, 2025.          _____/s/_____
                                      Aaron S.J. Zelinsky (Bar. No. 31541)
                                      ZUCKERMAN SPAEDER LLP
                                      100 East Pratt Street, Suite 2440
                                      Baltimore, MD 21202
                                      Tel: (410) 332-0444
                                      Fax: (410) 659-0436
                                      azelinsky@zuckerman.com


                                      *Attorney for Amicus Curiae*