## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

J. DOES 4, 7, 22, 27, 28, and 29, *on behalf of themselves and all others similarly situated,*

        Plaintiffs,

    v.

ELON MUSK, *in his official capacity,*
UNITED STATES DOGE SERVICE,
THE DEPARTMENT OF
GOVERNMENT EFFICIENCY,
UNITED STATES
DEPARTMENT OF STATE,
UNITED STATES AGENCY FOR
INTERNATIONAL DEVELOPMENT,
MARCO RUBIO, *in his official capacity,*
PETER MAROCCO, *in his official capacity,*
JEREMY LEWIN, *in his official capacity,*
KENNETH JACKSON, *in his official capacity,* and
AMY GLEASON, *in her official capacity,*

        Defendants.

Civil Action No. 25-0462-TDC

## MEMORANDUM OPINION

Plaintiffs J. Does 4, 7, 22, 27, 28, and 29, who are current or recently terminated employees and contractors of the United States Agency for International Development ("USAID"), have filed this putative class action on behalf of themselves and similarly situated individuals against Defendants Elon Musk, the United States DOGE Service, the Department of Government Efficiency ("DOGE"), the United States Department of State ("State"), USAID, and five government officials with leadership positions at State, USAID, or DOGE for alleged violations of the United States Constitution arising from Defendants' actions to effectuate the dismantling

and shutdown of USAID. Plaintiffs have filed a Motion for Class Certification, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Prior factual background is set forth in the Court's March 18, 2025 Memorandum Opinion relating to Plaintiff's Motion for a Preliminary Injunction and the Court's August 13, 2025 Memorandum Opinion relating to Defendants' Motion to Dismiss, which are incorporated by reference. *See Does 1–26 v. Musk* ("*Does I*"), 771 F. Supp. 3d 637, 649–79 (D. Md. 2025); Mot. Dismiss Mem. Op. ("MTD Mem. Op.") at 2–8, *J. Doe 4 v. Musk*, No. 25-cv-0462-TDC (D. Md. Aug. 13, 2025), ECF No. 150. Additional factual background relevant to the present Motion is set forth below.

Prior to January 2025, USAID had between 5,000 and 10,000 personnel. This figure includes multiple personnel classifications, including: (1) civil service employees; (2) foreign service ("FS") employees; (3) foreign service limited ("FSL") employees; (4) foreign service national employees; (5) personal services contractors ("PSCs"); and (6) cooperating country and third-country national PSCs. Foreign service national employees and cooperating and third-country national PSCs generally are not United States citizens and typically work for USAID in a foreign country.

Plaintiffs J. Does 4, 7, 22, 27, and 28 are all employees of USAID (collectively, the "Employee Plaintiffs") who fall under various personnel classifications. Specifically, J. Does 7 and 27 are civil service employees, J. Doe 22 is an FS employee, and J. Does 4 and 28 are FSL employees.

2

On March 28, 2025, Defendant Jeremy Lewin, the former DOGE Team Lead at USAID and the individual delegated the duties of the USAID Deputy Administrator for Policy and Programming and the USAID Chief Operating Officer, sent an email to all USAID personnel entitled "USAID's Final Mission" which included a memorandum entitled "USAID's Transition to the State Department" ("the Lewin Memorandum") providing notice that State "will seek to retire USAID's independent operation, consistent with applicable law," that as a result, "substantially all non-statutory positions at USAID will be eliminated," and that USAID personnel would receive a reduction-in-force ("RIF") notice via email with a separation date of either July 1, 2025 or September 2, 2025. Lewin Mem. at 3–4, Mot. Expedited Discovery Ex. 1, ECF No. 106-1. The Lewin Memorandum further provides that by July 1, 2025, State "will have assumed responsibility for USAID's remaining programming," and that by September 2, 2025, USAID's operations "will have been substantially transferred to [State] or otherwise wound down." *Id.* at 3. In accordance with the Lewin Memorandum, on either March 27 or 28, 2025, each Employee Plaintiff received an email notice from Lewin stating that the individual was either subject to a RIF or would be terminated, with an effective date of either July 1, 2025 or September 2, 2025.

Plaintiff J. Doe 29 was a PSC at USAID. J Doe 29's contract was for an initial two-year term that ended on February 23, 2025, but as was typical for PSC contracts at USAID, it was eligible for annual renewals for each of the five years after that term. J. Doe 29 has asserted in a declaration that "[i]n the course of ordinary business at USAID" all PSCs had their contracts renewed until completion "unless a contractor ha[d] engaged in improper behavior," and that "outside of extraordinary circumstances," J. Doe 29 is not aware of any USAID PSCs whose contracts were not renewed for their full terms. Mot. Class Certification Joint Record ("J.R.") 29, ECF No. 111-1. Consistent with this practice, in the fall of 2024, J. Doe 29's supervisor told J.

3

Doe 29 to expect a contract renewal in February 2025, and in December 2024, J. Doe 29 received emails stating that J. Doe 29 "would receive a new contract that would start" on February 23, 2025. *Id.* The last paycheck that J. Doe 29 received from USAID was for the time period from February 15 to February 23, 2025, and J. Doe 29 has received no work assignments or directions from supervisors since February 23, 2025.

## DISCUSSION

In their Motion for Class Certification, Plaintiffs seek certification of a class pursuant to Federal Rule of Civil Procedure 23(b)(2) ("the Proposed Class") consisting of the following persons:

> All persons who, between January 20, 2025 through the present (the "Class Period"), worked at any time as employees of USAID, including as personal services contractors; specifically excluded from this class are Defendants or any other person who, during the Class Period, acted as Administrator or Deputy Administrator of USAID.

Mot. Class Certification ("MCC") at 16, ECF No. 111. In support of the Motion, Plaintiffs assert that the Proposed Class is ascertainable, to the extent that is a requirement for classes certified pursuant to Rule 23(b)(2), and that all of the Rule 23 requirements for a class action have been satisfied, including the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and the Rule 23(b)(2) requirements that "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In their memorandum in opposition to the Motion, Defendants argue that class certification should be denied because (1) the Court lacks jurisdiction over this case; (2) the Proposed Class is overbroad; (3) the Proposed Class does not satisfy the Rule 23(a) requirements of commonality and typicality; (4) the Proposed Class does not satisfy the requirements of Rule

4

23(b)(2); and (5) even if all of the Rule 23 requirements are met, other cases arising out of the same factual circumstances and with related claims are pending before other United States District Courts.

## I.   Legal Standards

A class action allows representative parties to prosecute not only their own claims, but also the claims of other individuals which present similar issues. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). The use of a class action is primarily justified on the grounds of efficiency because it advances judicial economy to resolve common issues affecting all class members in a single action. *Id.* Because of the need to protect the rights of absent plaintiffs to assert different claims and of defendants to assert facts and defenses specific to individual class members, courts must conduct a "rigorous analysis" of whether a proposed class action meets the requirements of Rule 23 before certifying a class. *Id.*

For certain kinds of classes, the first of these prerequisites is that the class must exist and be "readily identifiable" or "ascertainable" by the court through "objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Numerous United States Courts of Appeals, however, have held that there is no ascertainability requirement for classes to be certified under Rule 23(b)(2). *See Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972), *abrogated on other grounds*, *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 478–79 & n.2 (1978); *see also Kadel v. Folwell*, 100 F.4th 122, 160–61 (4th Cir. 2024), *judgment vacated on other grounds*, No. 24-99, 2025 WL 1787687, at *1 (U.S. June 30, 2025). The Court agrees with the reasoning set forth by the various Courts of Appeals and therefore does not apply an ascertainabilty requirement. Notably, if there

5

were an ascertainability requirement for a Rule 23(b)(2) class, Defendants do not contest that it would be met here.

Any class action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy. To satisfy the numerosity requirement, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Commonality requires that a class have "questions of law or fact common to the class" which are capable of classwide resolution, such that the determination of the truth or falsity of the common issue "will resolve an issue that is central to the validity of each one of the claims in one stroke." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As for typicality, the named plaintiffs proposed as the class representatives must be "typical" of the class in that their claims and defenses "are typical of the claims or defenses of the class" so that the prosecution of the claim will "simultaneously tend to advance the interests of the absent class members." Fed. R. Civ. P. 23(a)(3); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006). Finally, as to adequacy, the named plaintiffs must "fairly and adequately protect the interests of the class" without a conflict of interest with the absent class members. Fed. R. Civ. P. 23(a)(4); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179–80 (4th Cir. 2010). The adequacy prerequisite also requires consideration of "the competency of class counsel." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

If the named plaintiffs satisfy each of these requirements under Rule 23(a), the court must still find that the proposed class action fits into one of the categories of class actions under Rule 23(b) in order to certify the class. Where Plaintiffs invoke Rule 23(b)(2), they must establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the

6

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Importantly, a decision on whether these prerequisites are satisfied is not a preliminary assessment of the underlying merits of the claim. See *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971))). Nevertheless, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*; *see EQT Prod. Co.*, 764 F.3d at 357 (holding that the party seeking class certification "must present evidence that the putative class complies with Rule 23").

Finally, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under" Rule 23. Fed. R. Civ. P. 23(c)(5). Subclasses must independently satisfy each of the requirements set out in Rule 23. *See Stafford v. Bojangles Rests., Inc.*, 123 F.4th 671, 683 (4th Cir. 2023). District courts may certify subclasses even without a request from the parties. *See id.* at 682.

## II.    Class Definition

Rule 23 requires that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). Under this requirement, "class definitions must be written with specificity" in that "the text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the

class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Stafford*, 123 F.4th at 681 (quoting *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187–88 (3d Cir. 2006)). Defendants challenge the first requirement and assert that the Proposed Class is defined too broadly. Notably, a district court can remedy an overly broad proposed class by refining the class definition, including by establishing subclasses. *See id.* at 682–83.

In asserting that the Proposed Class is overbroad, Defendants first argue that it includes individuals who were not injured by Defendants' actions, such as individuals who chose to resign or retire, or who may be reassigned to the State Department. Generally, however, there is no requirement that all class members be known to have been injured; it is sufficient if the class consists of individuals who could potentially have been injured by Defendants' conduct. *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824–25 (7th Cir. 2012) (stating that a class is defined too broadly when it "include[s] a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct"); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (quoting *Messner*, 669 F.3d at 824). Defendants acknowledge this standard by citing *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672 (7th Cir. 2009), which similarly states that a class definition is too broad when "it sweeps within it persons who *could not have been injured* by the defendant's conduct." *Id.* at 677 (emphasis added). At the same time, "[a]n appropriate class definition should provide proper detail to identify whether or not a prospective class member was injured." *Stafford*, 123 F.4th at 682.

Here, the Court does not find that the Proposed Class is overbroad on the grounds that it includes all personnel who worked for USAID at the time of the shutdown activities. While

employees or contractors who were subjected to a specific employment action, such as placement on administrative leave or termination, after the USAID shutdown was announced by Musk clearly suffered an injury, the Court does not agree that employees who resigned or retired after those activities began could not possibly have been injured, particularly where it is reasonable to infer that some such individuals took those actions out of fear of termination. Based on the explicit terms of the Lewin Memorandum, no employees are actually being reassigned to State; rather, they must undergo "a separate and independent hiring process" for "available roles at the State Department." Lewin Mem. at 3–4. Though Defendants also claim that certain individuals were placed on administrative leave or terminated during the Class Period for disciplinary reasons unrelated to the shutdown of USAID, where Plaintiffs have alleged facts that could support the conclusion that such individuals were disciplined because they opposed the initial shutdown activities, they could have been injured by the allegedly unconstitutional actions. Accordingly, the Court declines to exclude such individuals from the class without further factual development, including as to why they were terminated.

Defendants' reliance on *Stafford* is misplaced because that case related to a highly distinguishable circumstance in which the plaintiffs were seeking to certify under Rule 23(b)(3) a class of all individuals who worked as shift managers at various fast-food chain restaurants during the relevant time period based on an alleged broad policy of not paying such personnel for off-the-clock time, without regard to whether and how they actually worked off-the-clock. *Stafford*, 123 F. 4th at 676–77, 681. Notably, there was an insufficient basis upon which to conclude that there was a definable common policy across restaurants, such that the class may have included "many 'disparate plaintiffs with widely varying individual claims,'" which, among other problems, prevented an assessment of whether "common questions predominate[d] over individualized ones,

9

as required under Rule 23(b)(3)." *Id.* at 681–82 (quoting *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012)) (stating that, under the relevant facts, "[s]imply being at a place of employment is, without more, unedifying").

The present case, in contrast, involves claims of an explicit, overarching policy to eliminate and shut down USAID as an independent agency, which necessarily impacted all personnel in that everyone would eventually lose their positions at that agency. Thus, under these highly unusual circumstances, working at USAID would, in fact, place someone in the category of those who were or would likely be injured by the total shutdown of USAID, such that defining the class according to that characteristic "provide[s] proper detail to identify whether or not a prospective class member was injured." *Id.* at 682. Moreover, because Plaintiffs proceed under Rule 23(b)(2), this case is more akin to *Carolina Youth Action Project v. Wilson*, 60 F.4th 770 (4th Cir. 2023), in which the United States Court of Appeals for the Fourth Circuit upheld the certification of a class of "[a]ll elementary and secondary students in South Carolina" challenging the constitutionality of laws criminalizing disorderly conduct and related misconduct by school students, even though the "vast majority" of such students would not actually be subjected to actions to enforce the identified state laws. *Id.* at 775, 777, 779. Where Plaintiffs are proceeding under Rule 23(b)(2), the concern in *Stafford* that the lack of more precise parameters prevents a fair determination of predominance is inapplicable, as that requirement applies only to Rule 23(b)(3) classes. *See* Fed. R. Civ. P. 23(b)(3).

As for Defendants' argument that the Proposed Class is overbroad because it includes PSCs such as J. Doe 29, the Court finds that such personnel are properly part of the same class because, as for the Employee Plaintiffs, the general policy of shutting down USAID necessarily injures all PSCs in that their contracts to work for USAID will not continue. Although the means of

10

termination may be different in that PSCs were not subject to RIFs, the loss of the opportunity to work is the same. J. Doe 29 effectively reported that he was terminated by recounting that his contract was not renewed as of February 23, 2025 even though such contracts had, as a matter of "ordinary business at USAID," always been renewed absent "extraordinary circumstances." J.R. 29. Notably, Defendants have not argued that there are any PSCs who will be retained upon the final shutdown of USAID. Because the general policy of shutting down USAID and "retir[ing] USAID's independent operation," Lewin Mem. at 3, has the same impact on PSCs and the Employee Plaintiffs, and the question of whether that policy violates the Appointments Clause and the Separation of Powers would be answered the same way for both PSCs and the Employee Plaintiffs, the Court finds that PSCs may properly be included in the Proposed Class.

The Court, however, recognizes that there are some potential differences among class members that may warrant the use of subclasses to the extent that Plaintiffs seek injunctive relief beyond a broadly applicable injunction barring the shutdown of USAID. *See Stafford*, 123 F.4th at 682 (noting that subclasses may be appropriate to address any "concern that members have 'divergent interests'" (quoting 1 McLaughlin on Class Action § 4:45 (21st ed. 2024))). In *Carolina Youth Action Project*, the Fourth Circuit upheld the certification of not only an overarching class of all South Carolina elementary and secondary school students which was then granted a broad injunction against the enforcement of the challenged laws deemed to be unconstitutional, but also subclasses consisting of those class members who had existing records relating to the application of each of the challenged disciplinary laws, ostensibly because the plaintiffs also sought and received more specific injunctions barring the retention of those records that were applicable only to the subclasses. *Carolina Youth Action Project*, 60 F.4th at 777, 779–81. Similarly, if Plaintiffs continue to seek to pursue more specific forms of injunctive relief beyond the broad injunction,

11

subclasses may be warranted because such remedies may not be applicable to all class members in the same way, such as because of the different circumstances under which federal employees and PSCs were terminated and the different policies and requirements applicable to their personnel classifications.

At this stage, however, Plaintiffs have not requested additional forms of relief with sufficient specificity that they can be fairly analyzed as to the issue of subclasses. Although Plaintiffs' statement of requested relief clearly seeks a broad injunction barring Defendants from taking action to "eliminate USAID" without specific congressional authorization, Second Am. Compl. ¶ 141, ECF No. 135, the requests to "set aside" certain actions that violated the Appointments Clause or the Separation of Powers lacks sufficient particularity to allow the Court to ascertain what specific actions, if any, Plaintiffs are seeking to have "set side," particularly where Plaintiffs elsewhere have asserted that they are not challenging individual employment actions and have disavowed that they necessarily have a right to remain employed, or to a finding that their contracts were improperly terminated, if they prevail on their claims. *Id.*; Opp'n Mot. Dismiss at 20–21, 24–25, ECF No. 121. In turn, the Court cannot presently assess whether any such additional injunction against specific actions would apply only to federal employees, PSCs, or any other potential subclass. Without further clarity on this issue, the Court will not, on its own, create subclasses at this stage. The Court notes, however, that to the extent that Plaintiffs are still seeking specific injunctive relief beyond the broad injunction referenced above, they must provide clarification to the Court of their specific requests and allow for consideration of whether subclasses are necessary before any such relief can be considered.

Finally, although the Court will certify a class covering both employees and PSCs, the Court will narrow the Proposed Class in two ways. First, Defendants correctly argue that the class

12

is overbroad in that it should not include USAID employees who are foreign citizens working outside of the United States, because Plaintiffs raise only constitutional claims, and these foreign nationals abroad "do not possess rights under the U.S. Constitution." Opp'n MCC at 9, ECF No. 120 (quoting *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020)). The United States Supreme Court "has not allowed foreign citizens outside the United States or . . . U.S. territory to assert rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.* ("*AID*"), 140 S. Ct. 2082, 2086 (2020). In *AID*, the Court held that foreign organizations operating abroad that received U.S. government funding to combat HIV/AIDs could not assert claims that the conditions on the funding violated the First Amendment. *Id.* at 2085–86, 2089. Although Plaintiffs seek to distinguish the claims of foreign national USAID employees stationed abroad as based on "structural" protections of the Constitution, Reply at 14 n.12, ECF No. 132, *AID* draws no such distinction. *AID*, 140 S. Ct. at 2086. Moreover, while *Boumediene v. Bush*, 553 U.S. 723 (2008), held that foreign nationals detained at the United States Naval Station at Guantanamo Bay, Cuba could seek to enforce the Separation of Powers under the Constitution because that principle "protects persons as well as citizens," *id.* at 739, 743, 771, *AID* specifically noted that *Boumediene* involved foreign nationals who were effectively on U.S. territory. *AID*, 140 S. Ct. at 2086. Where Plaintiffs have identified no authority for an exception to the rule stated in *AID*, which applied even to entities with a direct relationship with the U.S. government such as grant recipients, the Court finds that the Proposed Class is overbroad in its inclusion of USAID's foreign national employees working abroad.

Second, the Court will modify the Proposed Class to better align with the identified timeline relating to the shutdown of USAID, for which, as alleged in the Second Amended Complaint, activities commenced on or about January 27, 2025.

13

Accordingly, based on the above analysis, the Court will modify Plaintiffs' Proposed Class

to consist of the following individuals ("the Modified Class"):

> All persons who, between January 27, 2025 through the present (the "Class
> Period"), worked at any time for USAID as an employee or personal services
> contractor and was either a United States citizen or was working in the United
> States. Specifically excluded from this class are Defendants or any other person
> who, during the Class Period, acted as Administrator or Deputy Administrator of
> USAID.

## III.   Rule 23(a)

Although Plaintiffs argue that the Proposed Class satisfies all four requirements of Rule

23(a), Defendants dispute the elements of commonality and typicality. The Court finds that all

four requirements have been established for the Modified Class.

### A.   Numerosity

This uncontested requirement is easily satisfied based on the facts that Defendants have

stated that they plan to eliminate "[s]ubstantially all non-statutory positions at USAID"; that they

are subjecting "USAID personnel globally," which includes between 5,000 and 10,000 individuals,

to a consolidated RIF, Lewin Mem. at 3; and that at least 800 PSCs at USAID have received

termination notices. Even excluding foreign national employees working abroad, the number of

class members is sufficient to establish numerosity. *See Brady v. Thurston Motor Lines*, 726 F.2d

136, 145 (4th Cir. 1984) (stating that 74 members is "well within the range appropriate for class

certification").

### B.   Commonality

The commonality element is also satisfied. The commonality requirement can be satisfied

when there is "even a single common question" of law or fact shared by the named plaintiffs and

the members of the putative class that is "capable of classwide resolution," the disposition of which

"will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

14

*Mart*, 564 U.S. at 350, 359. As to the Appointments Clause claim, questions of law and fact common to members of the Modified Class include: (1) whether Musk made the initial decision to dismantle USAID; (2) whether the decision to dismantle USAID is an exercise of significant authority that only a duly appointed Officer of the United States can take under the Appointments Clause, *see Lucia v. SEC*, 585 U.S. 237, 245 (2018); (3) whether Musk acted as the *de facto* Administrator of DOGE during the Class Period; and (4) if Musk acted as the *de facto* Administrator of DOGE, whether that position is a "continuing" one for the purposes of the Appointments Clause, *id.*

As to the Separation of Powers claim, the common questions of law and fact include: (1) whether Defendants' stated intent to "retire USAID's independent operation," Lewin Mem. at 3, along with its related actions including the closure of USAID headquarters and taking down of the USAID website, the termination of 75 percent of USAID's PSC workforce, the imminent RIFs applying to substantially all USAID personnel, and the decommissioning of USAID assets have collectively eliminated USAID as an independent agency; and (2) whether such elimination of USAID as an independent agency violates the constitutional principle of the Separation of Powers under the framework set forth in Justice Robert Jackson's concurrence in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), *see Medellin v. Texas*, 552 U.S. 491, 524 (2008). The answers to each of these questions do not vary by class member, and each speaks to core elements of the respective claims. Accordingly, the Modified Class satisfies the commonality element.

None of Defendants' arguments provide a basis to alter this conclusion. First, Defendants assert that Plaintiffs' theory of commonality is indistinguishable from the one rejected by the Supreme Court in *Wal-Mart*. In *Wal-Mart*, the Court held that the plaintiffs had failed to demonstrate commonality based on its finding that 120 affidavits submitted by Wal-Mart

15

employees describing sex discrimination at various stores nationwide and the testimony of an expert sociological witness did not constitute "significant proof that [an employer] operated under a general policy of discrimination." *Wal-Mart*, 564 U.S. at 353–54, 358. Here, by contrast, Plaintiffs have specifically alleged and identified evidence of a general policy, initiated by Musk, to eliminate USAID as an independent agency. Such evidence includes not only the accounts of the events of the weekend of February 1-2, 2025, but also the February 23, 2025 notice that all USAID direct hire personnel, with few exceptions, were placed on administrative leave globally. The policy is most particularly demonstrated by the Lewin Memorandum, which explicitly asserts that State "will seek to retire USAID's independent operation, consistent with applicable law," and that as a result "substantially all non-statutory positions at USAID will be eliminated," and all USAID personnel will receive a RIF notice via email which contains a separation date of either July 1, 2025 or September 2, 2025. Lewin Mem. at 2–3. Plaintiffs have also submitted declarations supporting the conclusion that the execution of this general policy impacts the class as a whole, in that the named Employee Plaintiffs have attested that they each received a notice pursuant to the Lewin Memorandum notifying them that their employment with USAID would be terminated on one of the referenced dates, and J. Doe 29, a PSC, has stated that he did not receive a contract renewal despite being told multiple times prior to the commencement of the shutdown that the contract would be renewed in February 2025. Thus, unlike in *Wal-Mart*, where the plaintiffs failed to offer proof of a general policy applicable to the class as a whole, *see* 564 U.S. at 353, here, Plaintiffs have offered evidence that Defendants have taken agency-wide action at USAID that commonly impacts the entire Modified Class.

Defendants further argue that the Proposed Class contains uninjured class members, which "necessarily destroys commonality." Opp'n MCC at 13. On this point, Defendants' argument

sounds in standing, but arguments relating to absent class members' lack of standing do not have "anything to do with class certification." *Carolina Youth Action Project*, 60 F.4th at 779. As discussed above in relation to the class definition, *see supra* part II, *Carolina Youth Action Project* establishes that the presence of injured class members does not prevent class certification. *See Carolina Youth Action Project*, 60 F.4th at 779 (holding that "'if a class representative has standing' to seek equitable relief, 'the case is justiciable and the proponent of the class suit need not demonstrate that each class member has standing' to obtain class certification" (quoting 1 Newberg and Rubenstein on Class Actions § 2.3 & n.15 (6th ed. 2022)). Here, where the Court has already concluded that the named Plaintiffs have satisfied the injury-in-fact requirement and have standing to sue, *see* MTD Mem. Op. at 30–38, Defendants' argument that the presence of uninjured class members bars class certification fails. *See Carolina Youth Action Project*, 60 F.4th at 779.

Finally, Defendants also argue that the Proposed Class does not satisfy the commonality element due to factual differences among the putative class members in (1) their personnel classifications at USAID; (2) when they were put on administrative leave or terminated by USAID; and (3) the legal defenses that may apply to their claims. Defendants, however, have not identified how these factual differences affect the determination of the common factual and legal questions identified above. As to the Appointments Clause claim, Plaintiffs assert that Musk directed the shutdown of USAID, and thus that the putative class members were impacted by the various actions that flowed from that decision. Similarly, as to the Separation of Powers claim, Plaintiffs assert that Defendants collective, agency-wide efforts to eliminate USAID as an independent agency violated that constitutional principle, not that any single administrative leave or termination notice was itself such a violation. Thus, whether a putative class member is a civil service

17

employee, FS employee, or PSC, or has a separation date from USAID of July 1, 2025 or September 2, 2025, does not alter the Court's analysis of Plaintiffs' claims. Where the common questions of law or fact discussed above are not answered differently based on the identified factual differences, those differences do not thwart a finding of commonality. *See J.O.P. v. U.S. Dep't of Homeland Security*, 338 F.R.D. 33, 55 (D. Md. 2020) (noting that where "the purported differences among proposed class members are not determinative of the legal issues that Plaintiffs present in the case," such differences do not preclude commonality).

Lastly, the unique defenses that Defendants assert in relation to particular personnel classifications or other categories do not defeat commonality where the Court has already resolved those arguments and concluded that it has jurisdiction over claims asserted by members of each personnel classification. *See* MTD Mem. Op. at 9–30; *see also supra* part II (excluding foreign national employees working in foreign countries from the Modified Class). Particularly where Plaintiffs need only identify a single common question of law or fact to satisfy the commonality requirement, *see Wal-Mart*, 564 U.S. at 359, and where they have done so as to each claim, the commonality requirement is satisfied.

## C. Typicality

Next, the typicality element is satisfied. Typicality requires that the plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by" proof of the plaintiff's own individual claim. *Deiter*, 436 F.3d at 466–67. The claims do not have to be factually or legally "identical," but the class members' claims should be "fairly encompassed" by those of the class representative. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998); *see also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (holding that typicality is satisfied if the named plaintiff's claims are "reasonably

18

coextensive" with those of absent class members). Ordinarily, denial of class certification based on a lack of typicality stems from a variation in claims between the class representative and the putative class members that "strikes at the heart of the respective causes of action[.]" *Deiter*, 436 F.3d at 467.

Here, Defendants offer no argument against typicality separate from their argument against commonality. For the reasons discussed in relation to the commonality requirement, none of the cited differences between the named Plaintiffs' claims and the putative class members' claims "strikes at the heart of" the common aspects of the Appointments Clause or Separation of Powers claims. *Id.*; *see supra* part III.B. Specifically, as discussed above, each of the Employee Plaintiffs received termination notices from Lewin in connection with the Lewin Memorandum. While Plaintiff J. Doe 29's contract was not formally terminated but was allowed to lapse at the end of its initial two-year term even though such contracts were previously renewed annually "in the course of ordinary business at USAID," J.R. 29, J. Doe 29 has still been affected by the general policy of shutting down USAID in the same way that the other named Plaintiffs and putative class members have been impacted because J. Doe 29 can no longer work for USAID. *See supra* part II.

The named Plaintiffs are thus typical of the overall class because they all allege the same claims and injuries: that Musk directed the shutdown of USAID in violation of the Appointments Clause, that Defendants have since acted to eliminate USAID as an independent agency in violation of the Separation of Powers, and that, as result of those actions, they have been or will be separated from their personnel roles at the agency. Accordingly, the efforts of any particular named Plaintiff to advance that individual's claims by proving that Musk did in fact direct the shutdown of USAID, or that Defendants have indeed effectively eliminated the agency's

19

independent operations, will "simultaneously tend to advance the interests of the absent class members." *Deiter*, 436 F.3d at 466. Because Plaintiffs' claims "fairly encompass[]" those of the class members, typicality is satisfied. *Broussard*, 155 F.3d at 344.

### D.     Adequacy

Lastly, the named plaintiffs must "fairly and adequately protect the interests of the class" without a conflict of interest with the absent class members. Fed. R. Civ. P. 23(a)(4); *Ward*, 595 F.3d at 179–80. Even if there is a conflict of interest, it will not defeat the adequacy requirement when "all class members 'share common objectives[,] the same factual and legal positions, and . . . the same interest in establishing the liability of' the defendants.'" *Ward*, 595 F.3d at 180 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003)). Here, Defendants do not assert that there is any conflict of interest between the named Plaintiffs and the rest of the Modified Class.

The adequacy prerequisite also requires consideration of "the competency of class counsel." *Gen. Tel. Co. of Sw.*, 457 U.S. at 158 n.13. Plaintiffs' attorneys have introduced evidence of their expertise and experience, and Defendants have not contested their competence. The Court therefore finds that the adequacy requirement is satisfied. *See Lloyd v. Gen. Motors Corp.*, 266 F.R.D. 98, 104 (D. Md. 2010) (finding that class counsel was adequate where "[c]lass counsel are highly experienced and have the intellectual and financial resources necessary to prosecute a sophisticated class action").

### IV.     Rule 23(b)

If the named plaintiffs satisfy each of the requirements under Rule 23(a), the Court must still find that the proposed class action fits into one of the categories of class actions under Rule 23(b) in order to certify the class. Plaintiffs seek to certify their class under Rule 23(b)(2), which

allows class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

Here, the Court finds that the requirements of Rule 23(b)(2) are satisfied. As to whether Defendants "acted or refused to act on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2), where the Appointments Clause claim is based in part on the allegation that Musk directed the shutdown of USAID, and where the Separation of Powers claim similarly arises out of Defendants' overall plan, as expressed in the Lewin Memorandum, to "retire USAID's independent operation," Lewin Mem. at 2–3, Defendants have "act[ed] on grounds that apply generally to" the Modified Class, which consists of USAID personnel who stood to lose their positions through the shutdown of the agency. Fed. R. Civ. P. 23(b)(2). Specifically, Defendants' actions to dismantle USAID, which, Plaintiffs allege, trace back to Musk's initial decision to do so, have centered on actions to sideline and then eliminate the entirety of USAID's workforce. *See Does I*, 771 F. Supp. 3d at 669–70; *see also* Lewin Mem. at 2–3 (stating that Defendants will eliminate "substantially all non-statutory positions at USAID" as part of "USAID's Final

Mission"). Defendants' actions of shutting down USAID thus necessarily impact all class members.

Furthermore, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As to the Appointments Clause claim, the typical remedy after a final determination on the merits is to void the decision made by the unauthorized official, which in this instance would be Musk's initial decision to eliminate USAID. *See Lucia*, 585 U.S. at 251. Similarly, if Plaintiffs succeed on the merits of their Separation of Powers claim, the most appropriate form of relief would be an injunction preventing Defendants from effectuating the plan described in the Lewin Memorandum to "retire USAID's independent operation." Lewin Mem. at 3. Musk's decision and the elimination of USAID as an independent agency are necessarily agency-wide actions and thus can be undone "only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). As noted with respect to the commonality requirement, *see supra* part III.B, the decision and plan to eliminate USAID effectively constitute a policy applicable to the class as a whole, and courts have held that the requirements of Rule 23(b)(2) are satisfied when classes seek injunctions against such policies. *See Parsons*, 754 F.3d at 688.

Defendants' arguments relating to Rule 23(b)(2) focus significantly on the terms of the proposed classwide relief that Plaintiffs reference in the presently operative Second Amended Complaint. However, the appropriate focus of the Rule 23(b)(2) inquiry is on the availability of some type of final injunctive relief that will benefit the entire class, not on the propriety of any particular aspect of Plaintiffs' requested injunctive relief. *Cf. Berry v. Schulman*, 807 F.3d 600, 611 (4th Cir. 2015) (noting that Rule 23(b)(2) "applies so long as '*final injunctive relief* . . . is

22

appropriate respecting the class as a whole'" and rejecting the argument that plaintiffs' failure to seek injunctive relief in their original complaint "independently preclude[s] certification under Rule 23(b)(2)" (quoting Fed. R. Civ. P. 23(b)(2))). Thus, Defendants' arguments relating to Plaintiffs' more specific requests for relief do not bar class certification so long as there is some form of final injunctive relief that satisfies the requirements of Rule 23(b)(2).

Here, while additional forms of relief may be appropriate to remedy the injuries to certain groups of class members, an issue that may be addressed at a later stage of the case, *see supra* part II, an overarching injunction to undo the decision to shut down USAID and to ensure the existence of USAID as an agency is a prerequisite to the possibility of any other injunctive relief, and the Modified Class can seek such an injunction benefiting all class members. Where Defendants have acted against the entire class by shutting down USAID, and there is "final injunctive relief" that can be ordered with respect to "the class as a whole," the Court finds that the requirements of Rule 23(b)(2) have been satisfied. Fed. R. Civ. P. 23(b)(2).

## V.     Remaining Arguments

Defendants assert that regardless of whether all the requirements for class certification have been met, the Court should still deny class certification because "identical claims based on the same facts" brought by associational organizations purporting to represent the interests of USAID employees and PSCs "are already pending in other courts," thus rendering class certification in the present case unnecessary. Opp'n MCC at 25. In resolving Defendants' Motion to Dismiss, the Court already rejected an analogous argument that this case should be dismissed under the doctrine of claim splitting because of the same related litigation. MTD Mem. Op. at 38–39. Moreover, where Defendants have not offered any authority to support the proposition that a court should

23

deny class certification on this basis even when all the requirements for certification have been met, the Court declines to do so here.

Finally, Defendants also argue that the Court cannot rule on the issue of class certification until it has assessed the jurisdictional arguments that Defendants raised in their Motion to Dismiss. Where the Court has already ruled in favor of Plaintiffs on those arguments in resolving the Motion to Dismiss, this argument is now moot. *Id.* at 9–30.

## CONCLUSION

Because all of the Rule 23(a) and 23(b)(2) requirements have been met, and for the foregoing reasons, Plaintiffs' Motion for Class Certification will be GRANTED IN PART and DENIED IN PART in that the Motion will be granted in that the Court will certify the Modified Class, as specified below, and the Motion will be otherwise denied without prejudice to additional requests to certify subclasses or additional issues to be decided on a classwide basis.

Specifically, pursuant to Rule 23(c)(1)(B), the Court will certify the following issues to be decided on a classwide basis as to the Appointments Clause claim:

1. Whether Musk made the initial decision to dismantle USAID;

2. Whether the decision to dismantle USAID is an exercise of significant authority that only a duly appointed Officer of the United States can take under the Appointments Clause;

3. Whether Musk acted as the *de facto* Administrator of DOGE during the Class Period; and

4. If Musk acted as the *de facto* Administrator of DOGE, whether that position is a continuing one for the purposes of the Appointments Clause.

The Court will also certify the following issues to be decided on a classwide basis as to the Separation of Powers claim:

1. Whether Defendants' stated plan to "retire USAID's independent operation," Lewin Mem. at 3, along with its related actions including but not limited to the closure of USAID headquarters, the RIFs and terminations of USAID personnel and PSCs, and the

24

decommissioning of USAID assets, have collectively eliminated USAID as an independent agency; and

2. Whether such elimination of USAID as an independent agency violates the constitutional principle of the Separation of Powers under the framework set forth in Justice Robert Jackson's concurrence in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).

A separate Order shall issue.

Date:  August 18, 2025

THEODORE D. CHUANG
United States District Judge