**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| J. DOE 4, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 8:25-cv-00462-TDC |
| ELON MUSK, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR CERTIFICATION OF THIS COURT'S AUGUST 13, 2025 MEMORANDUM OPINION AND ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 2

ARGUMENT ................................................................................................................... 3

I.     THE COURT SHOULD CERTIFY ITS ORDER PARTIALLY DENYING DEFENDANTS' MOTION TO DISMISS FOR INTERLOCUTORY APPEAL ............ 3

     A.    This Court's Order Turns on Controlling Questions of Law and Their Immediate Resolution May Materially Advance the Ultimate Termination of This Litigation ................................................................ 4

     B.    There Is Substantial Ground for Difference of Opinion as to the Four Controlling Questions of Law Identified in This Motion ..................................... 7

          1.    Article III Standing ................................................................ 9

          2.    Subject-Matter Jurisdiction ................................................................ 11

          3.    Failure to State a Claim on the Merits ...................................................... 13

II.    THIS COURT SHOULD ALSO STAY PROCEEDINGS PENDING RESOLUTION OF THE INTERLOCUTORY APPEAL ................................................. 18

CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

**CASES**

*Al Maqaleh v. Gates*,
   620 F. Supp. 2d 51 (D.D.C. 2009) ............................................................................ 7

*Am. Foreign Serv. Ass'n v. Trump*,
   No. 1:25-cv-352, 2025 WL 2097574 (D.D.C. July 25, 2025) ....................................... 8, 12, 16

*Andrade v. Regnery*,
   824 F.2d 1253 (D.C. Cir. 1987) ............................................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................ 5–6, 16

*B.R. v. F.C.S.B.*,
   17 F.4th 485 (4th Cir. 2021) ..................................................................................... 5

*Burnap v. United States*,
   252 U.S. 512 (1920)............................................................................................... 13

*Butler v. DirectSAT USA, LLC*,
   307 F.R.D. 445 (D. Md. 2015)................................................................................... 4

*Cheney v. United States District Court*,
   542 U.S. 367 (2004)............................................................................................... 20

*Coal. For Equity & Excellence v. Md. Higher Educ. Comm'n*,
   Civ. No. CCB-06-2773, 2015 WL 4040425 (D. Md. June 29, 2015)........................................ 7

*Consumer Fin. Prot. Bureau v. Gordon*,
   819 F.3d 1179 (9th Cir. 2016) ................................................................................... 15

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ..................................................................................... 13

*Dalton v. Specter*,
   511 U.S. 462 (1994)............................................................................................. 3, 17

*Does 1-26 v. Musk*,
   No. 25-1273, 2025 WL 1020995 (4th Cir. Mar. 28, 2025)........................................ 7, 9, 14, 15

*Est. of Giron Alvarez v. Johns Hopkins Univ.*,
   Civ. No. TDC-15-0950, 2019 WL 1779339 (D. Md. Apr. 23, 2019)................................. 6, 13

*Feinberg v. T. Rowe Price Grp., Inc.*,
   Civ. No. JKB-17-0427, 2021 WL 2784614 (D. Md. July 2, 2021) .................................... 6

*Freytag v. Comm'r,*
    501 U.S. 868 (1991).................................................................................................. 13

*Gill v. Whitford,*
    585 U.S. 48 (2018).................................................................................................... 10

*Glob. Health Council v. Trump,*
    --- F.4th ---, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025)........................... 8, 17, 18

*Goodman v. Archbishop Curley High Sch., Inc.,*
    195 F. Supp. 3d 767 (D. Md. 2016) ........................................................................... 4

*In re Musk,*
    No. 25-5072, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025) ...................................... 20

*In re Trump,*
    781 F. App'x 1 (D.C. Cir. 2019)............................................................................... 20

*Jooce v. Food & Drug Admin.,*
    981 F.3d 26 (D.C. Cir. 2020).............................................................................. 9, 15

*Kennedy v. St. Joseph's Ministries, Inc.,*
    657 F.3d 189 (4th Cir. 2011) ................................................................................... 19

*Kennedy v. Villa St. Catherine, Inc.,*
    Civ. No. PWG-09-3021 (WDQ), 2010 WL 9009364 (D. Md. June 16, 2010) ......... 4

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936).................................................................................................. 19

*Landry v. Fed. Deposit Ins. Corp.,*
    204 F.3d 1125 (D.C. Cir. 2000)............................................................................... 13

*Lucia v. Sec. & Exch. Comm'n,*
    585 U.S. 237 (2018).................................................................................. 13, 14, 19

*Mamani v. Berzain,*
    825 F.3d 1304 (11th Cir. 2016) ................................................................................. 4

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009)................................................................................................ 1, 3

*Montesa v. Schwartz,*
    836 F.3d 176 (2d Cir. 2016)....................................................................................... 5

*Nat'l Treasury Emps. Union v. Vought,*
    149 F.4th 762 (D.C. Cir. 2025) ...................................................................... *passim*

*New Mexico v. Musk,*
    784 F. Supp. 3d 174 (D.D.C. 2025) ........................................................ 14

*Nuclear Regul. Comm'n v. Texas,*
    605 U.S. 665 (2025) ................................................................ 17, 18

*Reese v. BP Expl. (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) ........................................................ 4, 6, 14

*Sheppheard v. Morrisey,*
    143 F.4th 232 (4th Cir. 2025) ........................................................ 10

*Smith v. Murphy,*
    634 F. App'x 914 (4th Cir. 2015) ........................................................ 8

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ................................................................ 10

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................ 9

*U.S. ex rel. Michaels v. Agape Senior Cmty., Inc.,*
    848 F.3d 330 (4th Cir. 2017) ........................................................ 4

*U.S. ex rel. Schnupp v. Blair Pharmacy,*
    Civ. No. ELH-17-2335, 2025 WL 1331906 (D. Md. May 7, 2025) ........................ 5

*United States v. Donziger,*
    38 F.4th 290 (2d Cir. 2022) ........................................................ 14

*Widakuswara v. Lake,*
    No. 25-5144, 2025 WL 1556440 (D.C. Cir. May 22, 2025) ........................ 8, 11–12

*Widakuswara v. Lake,*
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ........................ 8, 11

*Yamaha Motor Corp., USA, v. Calhoun,*
    516 U.S. 199 (1996) ................................................................ 8

**STATUTES**

28 U.S.C. § 1292 ................................................................ 1, 3, 11, 20

**OTHER AUTHORITIES**

16 Wright & Miller's Federal Practice & Procedure § 3930 (3d ed. 2008) ................ 3, 7

16 Wright & Miller's Federal Practice & Procedure § 3931 (3d ed. 2008) ................ 5

**INTRODUCTION**

Defendants respectfully request that, pursuant to 28 U.S.C. § 1292(b), this Court certify for interlocutory appeal its memorandum opinion and order denying in part Defendants' motion to dismiss. *See* Mem. Op., ECF No. 150; Order, ECF No. 151 ("Aug. 13 Order"). That opinion and order involve at least four "controlling question[s] of law as to which there is substantial ground for difference of opinion" and resolving them on immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Those questions include: (1) whether Plaintiffs have Article III standing to maintain this action, where they disclaim any relief related to their specific employment status or contracts but the only cognizable harms they assert involve employment- and contract-based injuries; (2) whether Plaintiffs' claims predicated on those employment and contract injuries fall outside the scope of this Court's subject-matter jurisdiction; (3) whether Plaintiffs' Complaint alleges a plausible Appointments Clause claim, where they do not identify any relevant ongoing position established by law and their allegations establish that any actions that could have injured them were authorized or ratified by a duly appointed Officer of the United States; and (4) whether Plaintiffs' Complaint alleges a plausible separation-of-powers claim, where their claim is premised on alleged statutory violations.

As the Supreme Court has noted, a "district court[] should not hesitate to certify an interlocutory appeal" when its ruling "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009). That is precisely the case here. This Court should certify the case for interlocutory appeal. And the Court should stay further proceedings while the case is on appeal as a matter of judicial and party economy, given that a favorable ruling for Defendants would obviate any need for further proceedings or discovery. The Court should grant Defendants' motion.

1

## BACKGROUND

Plaintiffs, unidentified current and former employees and contractors of USAID, allege that Defendants have "shut down and dismantle[d]" the United States Agency for International Development ("USAID") through a series of actions that cancelled government contracts, reduced the number of USAID employees and contractors, and closed USAID's headquarters. *See* Second Am. Class Action Compl., at 2, ECF No. 135 ("2d Am. Compl."). Plaintiffs contend that these actions violate the Appointments Clause and separation of powers. *See id.* ¶¶ 36–38. On March 18, 2025, this Court entered a preliminary injunction based on the allegations and record related to Plaintiffs' original Complaint. *See* ECF No. 75. The Fourth Circuit stayed that injunction pending appeal. *See* ECF No. 88. Plaintiffs amended their complaint on April 17, 2025, removing certain plaintiffs and adding defendants, including President Trump, and new factual allegations. *See* Am. Class Action Compl., ECF No. 93. Citing the amended complaint and its intent to move to dismiss it, the government requested that the Fourth Circuit hold the preliminary-injunction appeal in abeyance while this Court resolved competing motions. *See* Mot. to Vacate Briefing & Hold in Abeyance, or Alternatively, to Extend the Briefing Deadline, ECF No. 28, *J. Does 1–24 v. Musk*, No. 25-1273 (4th Cir. May 27, 2025). The Fourth Circuit granted the motion and held the appeal in abeyance "for the district court to resolve the motion to dismiss or otherwise issue any subsequent appealable order." *See* Order, ECF No. 33, *J. Does 1–26 v. Musk*, No. 25-1273 (4th Cir. June 9, 2025).

This Court denied Defendants' motion to dismiss the Amended Complaint on August 13, 2025. *See* Mem. Op. First, the Court held that Plaintiffs have standing based on "interruptions to the ordinary course of [Plaintiffs'] employment," including placement on administrative leave and termination pursuant to a reduction in force ("RIF"). *Id.* at 32–33. Second, the Court concluded that Plaintiffs' claims based on these employment injuries are not subject to mandatory statutory

frameworks that govern personnel disputes or contract claims against the Government, including the Civil Service Reform Act ("CSRA"), the Foreign Service Act ("FSA"), and the Contract Disputes Act ("CDA").  *See id.* at 12–28.  Third, the Court concluded that the Plaintiffs' allegations stated a claim on the merits.  The Court rejected Defendants' argument that, even accepting Plaintiffs' Appointments Clause allegations, each challenged decision was either authorized or ratified by a duly appointed official.  *See id.* at 40–43.  The Court likewise rejected Defendants' argument that Plaintiffs' Appointments Clause claim fails as a matter of law because Mr. Musk did not occupy a position with continuing responsibilities and established by law.  *Id.* at 40–41. The Court also rejected Defendants' argument that the separation-of-powers claim was merely a statutory claim under *Dalton v. Specter*, 511 U.S. 462, 473–74 (1994), because it was premised on alleged statutory violations.  *See* Mem. Op. at 45.

## ARGUMENT

### I. THE COURT SHOULD CERTIFY ITS ORDER PARTIALLY DENYING DEFENDANTS' MOTION TO DISMISS FOR INTERLOCUTORY APPEAL

This Court may certify an order for interlocutory appeal if it involves (1) "a controlling question of law"; (2) there is a "substantial ground for difference of opinion" on that question; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Supreme Court has explained that "district courts should not hesitate to certify an interlocutory appeal" under that standard when an order involves an issue of "special consequence."  *Mohawk Indus., Inc.*, 558 U.S. at 111.  And in determining whether to grant § 1292(b) certification, the court should weigh, among other things, the "difficulty and general importance of the question presented" and "the significance of the gains from reversal."  16 Wright & Miller's Federal Practice & Procedure § 3930 (3d ed. 2008).

3

For the reasons explained below, this Court's August 13 Order easily meets the standard for § 1292(b) certification. But even if that were a close question, this case presents exactly the kind of extraordinary circumstance that warrants immediate appellate review. It presents a challenge to core Article II functions: decisions on how best to organize and administer the nation's foreign aid programs. The August 13 Order, if allowed to stand, would also potentially unlock discovery into a former close, personal advisor to the President and a component of the Executive Office of the President, creating significant separation of powers concerns and potentially resulting in burdensome discovery disputes that may be avoided through a swift resolution of the issues on appeal. Interlocutory review is undeniably warranted under these circumstances.

## A.     This Court's Order Turns on Controlling Questions of Law and Their Immediate Resolution May Materially Advance the Ultimate Termination of This Litigation

As the Fourth Circuit has recognized, orders "presenting 'a pure question of law,' i.e., 'an abstract legal issue that the court of appeals can decide quickly and cleanly[,]'" are appropriate for interlocutory review. *U.S. ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)). A question of law is "controlling" if its "resolution would be completely dispositive of the litigation, either as a legal or practical matter." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015). Immediate appeals of such orders may also "materially advance the ultimate termination of the litigation" by resolving the entire case, even if "other possible outcomes exist." *Kennedy v. Villa St. Catherine, Inc.*, Civ. No. PWG-09-3021 (WDQ), 2010 WL 9009364, at *4 (D. Md. June 16, 2010). Where immediate appellate review might not resolve the entire case, certification may still be warranted if an immediate appeal could "eliminate complex issues" or otherwise substantially shorten the litigation. *Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 773 (D. Md. 2016); *see Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)

4

(interlocutory appeal would materially advance resolution of litigation where reversal by appellate court would dismiss one defendant and resolve multiple claims against all defendants, even though it would not resolve the entire case).

The Memorandum Opinion and Order presents four such questions:  (1) whether Plaintiffs have Article III standing to sue; (2) whether Plaintiffs' claims fall outside of this Court's subject-matter jurisdiction because they are subject to mandatory channeling; (3) whether Plaintiffs Appointments Clause theory is valid where they have not identified any continuing office established by law, and where it is undisputed that the contested personnel actions and grant terminations that harmed them were all taken or ratified by officials whose appointments they do not contest; and (4) whether Plaintiffs' claim that Defendants violated the statute establishing USAID by "dismantling" it states a valid separation-of-powers claim.

All four are controlling questions of law.  The first two—standing and subject-matter jurisdiction—are "obviously suited for interlocutory appeal."  16 Fed. Prac. & Proc. § 3931; *see B.R. v. F.C.S.B.*, 17 F.4th 485, 491 (4th Cir. 2021) (granting § 1292(b) review of jurisdictional question); *Montesa v. Schwartz*, 836 F.3d 176, 194 (2d Cir. 2016) (reviewing on § 1292(b) interlocutory appeal whether plaintiffs had standing to bring an Establishment Clause claim).  And the latter two likewise present pure questions of law: the correct meaning of the Appointments Clause and the correct standard to apply to a separation-of-powers claim alleging that the Executive Branch has "dismantled" a federal agency by reducing its size and transferring some of its functions.  *See U.S. ex rel. Schnupp v. Blair Pharmacy*, Civ. No. ELH-17-2335, 2025 WL 1331906, at *13 (D. Md. May 7, 2025) ("controlling question of law" eligible for § 1292(b) certification includes "the meaning of a statutory or constitutional provision"); *cf. Ashcroft v.*

*Iqbal*, 556 U.S. 662, 674 (2009) ("[e]valuating the sufficiency of a complaint is not a 'fact-based' question of law" but an "'abstract' legal question[]").

Immediate appeal of these issues, moreover, may materially advance the termination of this litigation. Resolving either of the first two jurisdictional questions in the government's favor would end this case. Reversal of this Court's order based on the Appointments Clause or separation-of-powers would at least resolve a major component of the litigation and could obviate or drastically limit the need for any discovery, and reversal on both grounds would result in dismissal of all live claims. *See* Pls.' Request for Leave to File a Mot. for Partial Summ. J. 1–2, ECF No. 159 (Plaintiffs' letter explaining that "no discovery is necessary as to the Separation of Powers claim"). At true minimum, immediate appeal on these issues would clarify the standard this Court must apply to those claims and the elements Plaintiffs must meet to succeed on the merits.

"[M]aterial advancement of a case through interlocutory appeal is more likely to occur at earlier stages in the litigation, when resolving a question on interlocutory appeal can obviate the need for a lengthy or costly discovery process." *Feinberg v. T. Rowe Price Grp., Inc.*, Civ. No. JKB-17-0427, 2021 WL 2784614, at *4 (D. Md. July 2, 2021). This case remains at those earlier stages, where the fact discovery period has only just commenced and neither party has yet served discovery. *See Est. of Giron Alvarez v. Johns Hopkins Univ.*, Civ. No. TDC-15-0950, 2019 WL 1779339, at *2 (D. Md. Apr. 23, 2019) (finding material-advancement prong met "although the period for fact discovery has ended" because "expert discovery is ongoing, discovery issues remain," "discovery motions remain to be resolved," and "the parties have signaled that extensive pre-trial dispositive motions will be filed"). Immediate appellate review may substantially limit the scope of this action and any potential discovery disputes. *See Reese*, 643 F.3d at 688.

The unusually bifurcated appellate proceedings militate in favor of interlocutory appellate review as well.  The Fourth Circuit placed the appeal of this Court's preliminary injunction in abeyance to allow this Court "to resolve the motion to dismiss or otherwise issue any subsequent appealable order."  *See* Order, *J. Does 1–24 v. Musk*, No. 25-1273 (4th Cir. June 9, 2025). Permitting an interlocutory appeal would enable the Fourth Circuit to consider the legal issues presented by Plaintiffs' operative complaint, as its abeyance order envisioned, and would generate crucial guidance on the correct standards to apply to the extent the case continues.

**B.    There Is Substantial Ground for Difference of Opinion as to the Four Controlling Questions of Law Identified in This Motion**

Each of the four controlling legal questions identified here also satisfies § 1292(b)'s requirement that a substantial ground for difference of opinion exists.  "The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." *Coal. For Equity & Excellence v. Md. Higher Educ. Comm'n*, Civ. No. CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015) (quoting 16 Fed. Prac. & Proc. § 3930).[1]  This case challenges ongoing efforts to restructure the Nation's foreign aid programs, which Plaintiffs broadly challenge as violating the Appointments Clause and the separation of powers.  Plaintiffs, moreover, ask this Court to require "vast and detailed actions related to the operation of USAID, an Executive agency." *Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995, at *6 (4th Cir. Mar. 28, 2025) (Quattlebaum, J., concurring) ("*Stay Op.*"); *see also* 2d Am. Compl. at ¶ 141(a) (seeking Court order to "set aside"

---

[1] *See also Coal. For Equity & Excellence*, 2015 WL 4040425, at *6 (granting § 1292(b) certification in light of the "context of this extraordinarily important case"); *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) (alien detainees in an active war zone overseas sought to invoke the Suspension Clause by petitioning for writ of habeas corpus; granting § 1292(b) certification given "the novelty of the issues" about which "courts could reasonably differ").

undefined number of executive actions related to USAID). No party disputes the importance of those issues and the need to resolve them expeditiously.

Even leaving aside the importance of the questions presented by this case, the Court need not guess whether fair-minded jurists might disagree as to the applicable controlling law. The August 13 Order conflicts with multiple district and appellate courts on at least two of the four questions identified in this motion. *See Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 774–76 (D.C. Cir. 2025) ("*NTEU*") (concluding that Congress deprived district courts of subject-matter jurisdiction in challenge to alleged dismantling of another federal agency and that purported separation-of-powers claim was a statutory claim subject to Administrative Procedure Act and *ultra vires* conditions); *Glob. Health Council v. Trump*, --- F.4th ---, 2025 WL 2480618, at *12 (D.C. Cir. Aug. 28, 2025) (USAID grantees' purported separation-of-powers claim was a statutory claim); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2–3 (D.C. Cir. May 3, 2025) (per curiam) (granting stay of preliminary injunction in part because the CSRA, FSA, and the CDA likely covered challenges to personnel actions as part of alleged effort to "dismantl[e] an entire federal agency"); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1556440, at *1 (D.C. Cir. May 22, 2025) (en banc) (denying reconsideration in relevant part); *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-352, 2025 WL 2097574, at *12–15 (D.D.C. July 25, 2025) ("*AFSA*") (concluding district court lacked subject matter jurisdiction over claims by USAID employees and contractors), *appeal filed*, No. 25-5290 (D.C. Cir. Aug. 11, 2025). These decisions by themselves confirm that § 1292(b) certification is warranted here.[2]

---

[2] The requirements for § 1292(b) certification have been met for *all* the legal issues identified in this brief. But even if they were not, so long as this Court identifies *any* issue that satisfies the § 1292(b) requirements, "the appellate court may address any issue fairly included within the certified order." *Yamaha Motor Corp., USA, v. Calhoun*, 516 U.S. 199, 205 (1996); *see also Smith v. Murphy*, 634 F. App'x 914, 915 (4th Cir. 2015).

### 1.    Article III Standing

The Court concluded that Plaintiffs have standing based on "interruptions to the ordinary course of their employment."  Mem. Op. at 32 (citation omitted).  But neither Plaintiffs' claims nor their requested remedies are properly tailored to that injury.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (standing must be demonstrated for each pressed claim and for each form or relief sought).  Interlocutory review is appropriate to resolve whether Plaintiffs have Article III standing to bring the claims they chose to assert.

**a.**  As to the Appointments Clause claim, the Court has recognized that all contract terminations, administrative leave decisions, and RIFs were either approved or ratified by a duly appointed USAID official.  *See* ECF No. 73 at 26–27; *see also Stay Op.*, 2025 WL 1020995, at *3 (noting that "the terminations of contracts, the administrative leave decisions and the reductions in force were either approved or ratified by USAID officials").  Regardless of who first took these actions, any Appointments Clause violation has been remedied by "a properly appointed official's ratification of an allegedly improper official's prior action."  *Jooce v. Food & Drug Admin.*, 981 F.3d 26, 30 (D.C. Cir. 2020); *see Stay Op.*, 2025 WL 1020995, at *3 (explaining that "those actions provide no basis for" this Court's preliminary injunction "in connection with plaintiffs' Appointments Clause claim because those individuals possessed the requisite authority").  And Plaintiffs do not even allege that their employment-related injuries were caused by the only two actions the Court found supported the Appointments Clause claim—the closure of USAID headquarters and removal of the USAID website.  *See* Mem. Op. at 41.

This Court's contrary decision relied on the need to draw reasonable inferences in Plaintiffs' favor.  *See* Mem. Op. at 35–36.  But the operative complaint itself affirmatively alleges that duly appointed officials were responsible for the personnel actions the Court relied on, all of

which post-date February 3, 2025. *Id.*; *see* 2d Am. Compl. ¶¶ 72–73 (conceding that Secretary Rubio and Marocco were delegated authority over USAID by February 3, 2025).

Even if the specific (i.e., non-class) Plaintiffs had identified employment or contract actions allegedly in violation of the Appointments Clause, the remedy sought must still relate to that injury. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury"); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (named plaintiff in class action must show that they personally have Article III standing). And there is substantial grounds for disagreement that the declaratory and injunctive remedies Plaintiffs seek about USAID operations generally—which as this Court noted do not include reinstatement of employment or contracts, *see* Mem. Op. at 27, 28, 37–38—are tailored to any Article III injury the representative plaintiffs possess.

     **b.**   Plaintiffs' separation-of-powers claim faces similar legal defects as to standing. Plaintiffs have not asserted that the separation of powers requires their continued employment, rather than (at most) the agency's general continuation. To the contrary, the Court acknowledged that the "injunctive and declaratory relief sought would not necessarily require" any action to redress plaintiffs' alleged injury, such as their reinstatement. *Id.* at 27. Consequently, Plaintiffs have not shown that remedying any separation of powers violation would redress their alleged injuries. *See Sheppheard v. Morrisey*, 143 F.4th 232, 243 (4th Cir. 2025) ("The redressability requirement of standing ensures that the" relief requested "would remedy the plaintiff's injury.")

The breadth of Plaintiffs' requested remedies underscores their lack of standing to raise this claim. Plaintiffs seek declaratory and injunctive relief addressed to USAID's alleged closure, but nowhere do they ask the Court to reinstate their employment or otherwise specifically redress their alleged injuries. *See* 2d Am. Compl. ¶ 141(a) (seeking an order regarding actions "to

unlawfully modify, reorganize, or eliminate USAID or its bureaus, departments, offices, or subdivisions"). This Court acknowledged this fact, highlighting that Plaintiffs' claims "flow not from any specific employment action, but from the decision to dismantle and abolish USAID entirely," and noting that they "seek no damages and do not even specifically request injunctive relief to allow them to retain or recover their positions." Mem. Op. 15–16; *see also id.* at 37–38 (Plaintiffs did not include "a request for specific relief relating to the placements on administrative leave and the RIFs"); *id.* at 17 ("Plaintiffs . . . seek relief in the form of barring actions to abolish a federal agency, without seeking specific relief on any particular adverse employment action, prohibited personnel practice, or even broad RIF decision."); *id.* at 19 ("Plaintiffs contest the dismantling of USAID, rather than any particular employment actions[.]"). But Plaintiffs alleged no other cognizable injury, much less one that would entitle them to seek such broad relief.

At minimum, there is "substantial ground for difference of opinion" as to whether Plaintiffs have standing to bring this lawsuit. 28 U.S.C. § 1292(b)

## 2.    Subject-Matter Jurisdiction

There is also substantial ground for difference of opinion about whether Plaintiffs' claims are subject to mandatory statutory frameworks that deprive this Court of subject-matter jurisdiction, including the CSRA, FSA, and CDA. Indeed, jurists on other courts have already taken the view advanced by Defendants in this case and rejected by this Court. The D.C. Circuit recently held that Congress deprived district courts of jurisdiction over similar claims challenging the alleged dismantling of another federal agency. *See NTEU*, 149 F.4th at 774–76; *see also Widakuswara*, 2025 WL 1288817, at *2–3 (per curiam) (granting stay of preliminary injunction in part because CSRA, FSA, and CDA likely covered challenges to personnel actions as part of alleged effort to "dismantl[e] an entire federal agency"); *Widakuswara*, 2025 WL 1556440, at *1 (en banc) (denying reconsideration in relevant part). And another district court reached this same

11

conclusion in two cases by employee and contractor unions challenging the alleged closure of USAID. *AFSA*, 2025 WL 2097574, at *7.

In *NTEU*, the D.C. Circuit addressed similar allegations to those Plaintiffs press here. There, two plaintiff organizations representing employees of the Consumer Financial Protection Bureau ("CFPB") challenged actions they described as pursuant to a decision to "'shut down' the Bureau." *NTEU*, 149 F.4th at 770. As here, those "actions included terminating employees, canceling contracts," and "moving to smaller headquarters." *Id.* The D.C. Circuit concluded that all the "injuries alleged by" the plaintiff organizations "flow from their members' loss of employment," and were therefore governed by the "specialized-review scheme" of the CSRA. *Id.* at 774. That scheme "ousts the district courts of their [subject-matter] jurisdiction." *Id.* The district court reached this same conclusion in *AFSA*. *See* 2025 WL 2097574, at *12–15.

This Court concluded that Plaintiffs' claims fell within its jurisdiction, in part, because this case "relates not to employees' specific employment conditions . . . but to the abolition of an entire federal agency." Mem. Op. at 20 (distinguishing earlier, preliminary injunction opinion in *AFSA* case). But both *NTEU* and *AFSA* directly addressed and rejected that basis for subject-matter jurisdiction, demonstrating that substantial ground for difference of opinion exists as to the question. *See NTEU*, 149 F.4th at 775–76; *AFSA*, 2025 WL 2097574, at *12 (rejecting argument that case was "not a channel-able employment dispute because plaintiffs are instead challenging the dismantling of a federal agency, of which the en masse termination of employees is but one part"). As in *AFSA*, Plaintiffs "lack standing to challenge any other 'part' of USAID's dismantling" other than their employment and contract injuries. *AFSA*, 2025 WL 2097574, at *12.

To be sure, this Court cited a case from the Ninth Circuit and several district court cases that concluded that challenges to large-scale RIFs and alleged dismantling of a federal agency

should not be channeled under the relevant statutes. *See* Mem. Op. at 15–16. Any such disagreement only underscores that this issue is suitable for interlocutory review. *See Est. of Giron Alvarez*, 2019 WL 1779339, at *1 (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).

### 3. Failure to State a Claim on the Merits

Finally, there are substantial grounds for disagreement with this Court's conclusion that Plaintiffs' Appointments Clause and separation-of-powers theories are legally sound. These questions independently warrant certification for interlocutory review.

**a.** As to the Appointments Clause claim, reasonable jurists could disagree on the appropriate standard for identifying a "'continuing' position established by law" that is vested with "significant authority pursuant to the laws of the United States." *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 245 (2018). As Defendants have consistently maintained, the "threshold trigger" for an Appointments Clause claim is a governmental position that is "established by Law." *Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d 1125, 1133 (D.C. Cir. 2000). Once that position is identified, the question becomes whether the authority imbued in that position is significant by reference to the position's duties and power as reflected in that position's organic law. *See, e.g.*, *Lucia*, 585 U.S. at 248–49 (analyzing whether administrative law judges are officers solely by reference to their duties set forth in statute and regulation); *Freytag v. Comm'r*, 501 U.S. 868, 881 (1991); *Landry*, 204 F.3d at 1133; *see also Burnap v. United States*, 252 U.S. 512, 516 (1920) ("Whether [a federal official] is an officer or an employé is determined by the manner in which Congress has specifically provided for the creation of the several positions, their duties and appointment thereto."). And even where that position is imbued with significant authority, the office must be a continuing position that is not personal to a particular individual. *See Lucia*, 585 U.S. at 245; *United States v. Donziger*, 38 F.4th 290, 297 (2d Cir. 2022).

Plaintiffs' legal theory simply does not account for these elements. Plaintiffs essentially concede that Mr. Musk never held any office with formal legal authority by stating that he served "as the *de facto* DOGE Administrator." 2d Am. Compl. ¶ 10. This Court itself acknowledged that Congress "did not establish" any such position and the role was not "that of an Officer." ECF No. 73 at 25. Nor do Plaintiffs maintain that Mr. Musk's position—whatever its scope—would exist outside of his unique, personal role. Mr. Musk simply worked as a special government employee for a specific purpose. That is the end of the Appointments Clause claim.

To be sure, the Court did not accept these arguments. And the Court noted that another district court considering an Appointments Clause claim against Mr. Musk did not either. Mem. Op. at 41 (citing *New Mexico v. Musk*, 784 F. Supp. 3d 174, 199–203 (D.D.C. 2025)). But courts have repeatedly recognized that "novel legal issues" such as this one "on which fair-minded jurists might reach contradictory conclusions" "may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688. Certification is particularly appropriate here, given the importance of the subject matter, both parties' desire for expedited resolution of the legal issues presented, and the Fourth Circuit's disagreement with this Court's preliminary analysis of the merits of Plaintiffs' Appointments Clause claim. *See Stay Op.*, 2025 WL 1020995, at *4 (noting that while Mr. Musk's role was "not conventional, unconventional does not necessarily equal unconstitutional").

Separately, there is also substantial ground for difference of opinion on whether Plaintiffs can maintain an Appointments Clause claim when any action that plausibly injured them was properly approved or ratified by an official with uncontested authority. As this Court recognized, "the Appointments Clause is not violated when a duly appointed Officer authorizes or ratifies an exercise of significant authority that was otherwise initiated or first approved by a non-Officer."

ECF No. 73 at 26 (citing *Andrade v. Regnery*, 824 F.2d 1253, 1257 (D.C. Cir. 1987); *Jooce*, 981 F.3d at 28; *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1190–91 (9th Cir. 2016)).  Yet everyone agrees that, after February 3, 2025, decisions related to USAID's operation were being made by individuals who had been properly delegated relevant authority.  *See* 2d Am. Compl. ¶¶ 72–73, 131; *cf. Stay Op.*, 2025 WL 1020995, at *3.  Incidents occurring after February 3, then, cannot form the basis of their Appointments Clause claims.[3]

This Court concluded that later events could be used to support Plaintiffs' Appointments Clause claim, but at minimum reasonable minds could differ on that.  The events the Court cited include a memorandum Mr. Lewin drafted for Secretary Rubio's review recommending termination of certain contracts and grants, a social media statement from Mr. Musk that ambiguously referred to actions "we" had taken, and the fact that certain RIF notices transmitted by "a DOGE team member" included an allegedly erroneous title for Mr. Marocco.  Mem. Op. at 42–43.  But even if individuals purportedly affiliated with the "DOGE" project "announc[ed]" or "process[ed] decisions relating to the shutdown of USAID," *id.* at 42, Plaintiffs nowhere allege that Secretary Rubio or Mr. Marocco did not formally approve the relevant actions, *see generally* 2d Am. Compl. ¶¶ 99, 112; *see also Stay Op.*, 2025 WL 1020995, at *3.

Because Plaintiffs affirmatively allege that at different times Rubio, Marocco, and Lewin were delegated authority to take USAID decisions, it matters not that the Fourth Circuit's stay opinion involved the "likelihood of success" standard applicable to preliminary injunctions, while this Court must accept as true Plaintiffs' factual allegations.  Mem. Op. at 43.  Taking Plaintiffs'

---

[3] And as explained below, any alleged action prior to February 3 fails to cognizably injure Plaintiffs, was itself undisputedly approved or ratified by an official with uncontested authority, was mooted by subsequent events, or presented some combination of the three.

delegation allegations as true here proves there was no Appointments Clause violation.  *See Iqbal*, 556 U.S. at 674–75.

As to the events that occurred prior to February 3, the only allegations either Plaintiffs or the Court have identified as being taken without USAID approval or ratification are "the closure of USAID headquarters and the removal of the USAID website."  Mem. Op. at 41.  But Plaintiffs have never explained how those two specific decisions could plausibly have caused the employment injuries that are the jurisdictional predicate of their claim.  *See AFSA*, 2025 WL 2097574, at *12 (explaining that "plaintiffs' only Article III injuries stem wholly from the government's actions with respect to their members' employment status" and thus they "lack standing to challenge any other 'part' of USAID's dismantling").  At minimum, the *AFSA* court's different treatment of that issue warrants interlocutory review.

Even if all that were incorrect, and Plaintiffs could nevertheless rely on other pre-February 3 personnel actions and contract terminations to state an Appointments Clause claim, there is no dispute that any such violation has been fully remedied by later USAID RIF decisions—which, as explained above, were undisputedly overseen by duly appointed officials.  Plaintiffs detail how "Secretary Rubio announced" contract terminations and how Mr. Lewin, who was then "assigned the duties and functions of USAID Chief Operating Officer" and "USAID Deputy Administrator for Policy and Programming," announced the RIF actions about which Plaintiffs now complain.  *See* 2d Am. Compl. ¶¶ 116–119.  Any prior personnel actions or contract terminations were plainly ratified by these authorized decisions.

**b.**    This Court's resolution of Plaintiffs' separation-of-powers claim also warrants immediate, interlocutory review to resolve the applicable standard.  The Court—both in its preliminary-injunction decision and in its denial of Defendants' motion to dismiss—rejected

16

Defendants' arguments that Plaintiffs bring only a statutory claim. *See* ECF No. 73 at 52–53; Mem. Op. at 46; *see* Defs.' Mot. to Dismiss at 31–32, ECF No. 110 (citing *Dalton v. Spector*, 511 U.S. 462 (1994)); Defs.' Mem. Of Law in Opp'n to Pls.' Mot. for a Prelim. Inj. At 22–23, ECF No. 28.

Two D.C. Circuit panels have since reached precisely the opposite conclusion. *NTEU*, 149 F.4th at 791–93; *Glob. Health Council*, 2025 WL 2480618, at *6–9; *see Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025). The *NTEU* plaintiffs challenged the "putative decision to shut down the CFPB," contending that such actions "would violate statutes that establish the Bureau and require it to perform various tasks." 149 F.4th at 791. Like Plaintiffs here, the *NTEU* plaintiffs argued that this shutdown would "also violate the separation of powers" because "the Executive Branch cannot amend statutes unilaterally or usurp legislative authority conferred upon Congress." *Id.*; *see* 2d. Am. Compl. ¶ 137 (stating that "Defendants' collective actions to dismantle USAID" violates the separation of powers because it is "a congressionally created independent agency that is provided for with direct appropriations that have specific conditions"); Pls.' Opp'n to Defs.' Mot. to Dismiss at 34, ECF No. 121 (arguing that "Plaintiffs challenge the dismantling of USAID" as a violation of the separation of powers because it would "abolish[] its legal status as an independent establishment"). Applying *Dalton*, the *NTEU* court concluded that this is a statutory claim. 149 F.4th at 792–93. Just as here, the "assertedly constitutional claim" the *NTEU* plaintiffs pressed began "with the premise that shutting down [a federal agency] would violate the statutes that create the agency and require it to perform various mandatory tasks." *Id.* at 793. "This supposed separation-of-powers violation," the D.C. Circuit concluded, "turns entirely on whether CFPB officials violated the governing statutes." *Id.* *Global Health Council* reached the same conclusion regarding claims that the government violated "separation-of powers principles by

17

impounding funds" appropriated to USAID for grants.  2025 WL 2480618, at *5–6.  Both decisions also found *Youngstown* "inapposite."  *Id.* at *7; *see NTEU*, 149 F.4th at 793–94.

So Plaintiffs' claim is that Defendants' conduct was *ultra vires* under a statute, which is "essentially a Hail Mary pass."  *NTEU*, 149 F.4th at 791 (quoting *Nuclear Regul. Comm'n*, 605 U.S. at 145).  This is doubly true where, as here, there is a statute limiting judicial review like the CSRA.  *See Nuclear Regul. Comm'n*, 605 U.S. at 145.  In such cases, an *ultra vires* claim can only survive if Defendants acted "in excess of its delegated powers and contrary to *a specific prohibition* in a statute."  *Id.* (cleaned up) (emphasis added).

Plaintiffs may disagree with these decisions, but they cannot distinguish their claim from that addressed in *NTEU*.  Indeed, this Court cited the *NTEU* district court's now-vacated decision in support of its August 13 Order.  *See* Mem. Op. at 44.  Given this additional authority, there are clearly substantial grounds for difference of opinion on this legal question.

## II.    THIS COURT SHOULD ALSO STAY PROCEEDINGS, PENDING RESOLUTION OF THE INTERLOCUTORY APPEAL

Defendants also respectfully request that discovery in this case be stayed pending completion of proceedings related to any interlocutory appeal.  Given the controlling nature of the legal issues discussed above—and the possibility that the Fourth Circuit's consideration of them will narrow or terminate this litigation entirely—allowing discovery to proceed in the interim would threaten significant waste of the parties' (and the Court's) time and resources.  A stay is particularly warranted here given the separation of powers concerns implicated by Plaintiffs' stated intent to seek discovery from the White House and a former senior presidential advisor.

In any event, the Parties have acknowledged that discovery is unnecessary for the separation of powers claims.  As Defendants have maintained, the same is true for the Appointments Clause claim.  Whether Mr. Musk or anyone else held a "continuing position

established by law" vested with authority "pursuant to the laws of the United States" is a pure question of law that does not require any factual development. *Lucia*, 585 U.S. at 245. To maintain discovery while the request for or ultimate appeal is pending would undermine the very premise of the appeal.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "Especially in cases of extraordinary public moment," the opposing party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 256.

Assuming that interlocutory review is permitted, judicial economy would plainly be served by awaiting the Fourth Circuit's resolution of the controlling questions of law identified above. Resolution of one or more in Defendants' favor could terminate this litigation entirely and obviate the need for the Court to resolve any discovery disputes that may arise. Even if the Fourth Circuit's resolution did not entirely terminate the litigation in this Court, however, it would at least provide significant guidance on the appropriate standard of review on the merits of Plaintiffs' two claims and the reasons why their allegations state a plausible claim for relief under that standard.

Allowing discovery and other case management deadlines to proceed during any interlocutory review could mire the parties in unnecessary and burdensome discovery—exactly the circumstances that § 1292(b) review is designed to address. An interlocutory appeal is appropriate where termination of the litigation could avoid "(possibly) costly discovery." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 196 (4th Cir. 2011). And here, Plaintiffs propose discovery that cuts to core Executive Branch functions, including a deposition of a former close

19

advisor to the President and other high-ranking officials. *See generally* Pls.' Request for Modification of Scheduling Order at 2, ECF No. 158 (expressing intent to depose "at least" seven current or former executive branch personnel, including Mr. Musk). "[T]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Cheney v. United States District Court*, 542 U.S. 367, 385 (2004). These principles caused the D.C. Circuit to pause discovery in a related case while the Courts considered threshold legal issues. *See* Order, *In re Musk*, No. 25-5072, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025).

Staying proceedings for the moderate time necessary to obtain interlocutory review would avoid disputes about the scope of discovery that may ultimately be unnecessary. *See In re Trump*, 781 F. App'x 1, 2 (D.C. Cir. 2019) (district court orders "squarely meet the criteria" under § 1292(b) where "important and open threshold questions of pure law" can be "resolved conclusively through an expedited interlocutory appeal" thereby "avoiding unnecessary burdens on the President . . . including the timing and scope of discovery"). The Fourth Circuit stayed district court proceedings under similar circumstances in *Trump v. International Refugee Assistance Project*, No. 19-350 (4th Cir. Sept. 11, 2019), and this Court should follow that approach here.

By contrast, Plaintiffs would not suffer any meaningful prejudice from staying discovery pending completion of § 1292(b) proceedings. It is far from clear that resolution of their claims would be achieved more quickly by permitting discovery under the district court's current legal framework, which the Government contends is erroneous, while a § 1292(b) appeal is pending, rather than expeditiously resolving that appeal and then allowing discovery to commence in the event that there are any live claims left to litigate for which discovery would be appropriate. All

the deadlines Plaintiffs have cited that would mark the supposed final dismantling of USAID, moreover, have already passed. *See* Mot. for Expedited Disc. & Mem. In Supp. at 4, ECF No. 106 (citing July 1, 2025, and September 2, 2025, as dates by which "[s]ubstantially all non-statutory positions at USAID will be eliminated"). Plaintiffs provide no reason why they need relief before any immediately impending deadline, as reflected by the fact that they never sought preliminary injunctive relief as to their amended allegations.

## CONCLUSION

For the foregoing reasons, this Court should certify its August 13, 2025 Memorandum Opinion and Order for interlocutory review and stay discovery pending completion of any § 1292(b) proceedings.

Dated: October 2, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

*/s/ Jacob S. Siler*
GARRY D. HARTLIEB (IL Bar. No. 6322571)
CHRISTOPHER M. LYNCH
(DC Bar No. 1049152)
JACOB S. SILER (DC Bar No. 1003383)
JAMES J. WEN (NY Bar No. 5422126)
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-4556
Email: jacob.s.siler@usdoj.gov

*Attorneys for Defendants*

21