# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

J. DOE 4 et al., *individually and on behalf of all others similarly situated*,

**Plaintiffs,**

**v.**

ELON MUSK *et al.*,

**Defendants**.

Case No. 8:25-cv-00462-TDC

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION OF THIS COURT'S AUGUST 13, 2025 MEMORANDUM OPINION AND ORDER FOR INTERLOCUTORY APPEAL AND STAY OF DISCOVERY

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     LEGAL STANDARDS ....................................................................................... 3

     A.     Controlling Question of Law ................................................................. 5

     B.     Substantial Ground for Difference of Opinion ..................................... 5

     C.     Materially Advancing the Ultimate Termination of the Litigation....................... 6

III.    ARGUMENT ...................................................................................................... 7

     A.     Defendants Do Not Satisfy the Statutory Factors for Interlocutory Appeal .......... 7

           1.     Interlocutory Appeal Is Not Warranted as to Plaintiffs' Standing to Sue............ 7

           2.     Interlocutory Appeal Is Not Warranted as to Subject Matter Jurisdiction.......... 11

           3.     Interlocutory Appeal Is Not Warranted as to the Appointments Clause............. 13

           4.     Interlocutory Appeal Is Not Warranted as to Separation of Powers........ 15

     B.     A Stay of Discovery Is Not Warranted ............................................... 17

IV.    CONCLUSION................................................................................................. 18

# I.    <u>INTRODUCTION</u>

Plaintiffs submit this brief in opposition to Defendants' motion for certification of interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and for a stay of discovery. Interlocutory orders, including this Court's order denying Defendants' motion to dismiss, generally are not immediately appealable. The final judgment rule exists for good reason: piecemeal appeals are inefficient and interrupt the normal course of litigation. The exception to this rule, governed by § 1292(b), therefore permits interlocutory appeals only in exceptional situations. That high bar is not met here. The order on the motion to dismiss does not present dispositive questions of pure law, subject to substantial dispute, that would materially advance the termination of the litigation.

The Court's analysis of Plaintiffs' standing does not present either a pure question of law or one subject to substantial dispute. Rather—as with virtually all motions to dismiss—the Court's ruling largely turns upon the application of law to the particular allegations in this case. Defendants have identified no disputed legal standard that would warrant premature appellate review.

Similarly, although some courts have analyzed subject matter jurisdiction differently in other contexts, the Court's channeling analysis found that neither the CSRA,[1] the FSA,[2] nor the CDA[3] precludes the Appointments Clause or separation of powers claims on the facts and claims of *this* case. The Court came to this conclusion even without conducting the fact-bound inquiry of whether the CSRA continues to provide a functional adjudicatory scheme, as the Fourth Circuit Court of Appeals recently directed. Moreover, a holding that *some* Plaintiffs' separation-of-powers claims are subject to channeling would not even dispose of *all* the claims for *all* the

---

[1]  Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978).
[2]  Foreign Service Act of 1980 ("FSA"), 22 U.S.C. §§ 3901–4226.
[3]  Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101–7109.

Plaintiffs here.  Subject matter jurisdiction therefore does not present a pure controlling question of law, subject to substantial dispute, that would materially advance the ultimate termination of this litigation.

Nor is the substance of Plaintiffs' Appointments Clause claim reducible to pure questions of law.  Although Defendants attempt to reframe the issue as the "meaning" of constitutional text, they do not identify any disputed legal standard; what they actually take issue with is the Court's *application of settled law* to the unusual facts of Elon Musk's role in this Administration.  Absent evidence of substantial dispute on a controlling question of law, that does not support certification.

Finally, though there is disagreement as to whether the elimination of USAID presents a statutory or separation of powers constitutional claim, resolution of that dispute in Plaintiffs' favor would not materially advance the termination of litigation.  Even if Plaintiffs' separation of powers claim were dismissed, Plaintiffs' Appointments Clause challenge would still require extensive discovery into actions taken both before and after February 3, 2025, and from all of the individuals and agencies currently contemplated.

Faced with the fact that much of the litigation will proceed based upon routine and fact-bound rulings, Defendants' opening brief glazes over the extraordinary nature of an interlocutory appeal.  It does not address that certification under § 1292(b) is intended to be an extraordinary remedy, that courts are cautioned to use it sparingly, or that its requirements are to be strictly construed.  Nor does it acknowledge that the decision to certify an interlocutory appeal is committed to the sound discretion of the district court.

Although some of the issues addressed in the Court's ruling are weighty and complex, "[i]nterlocutory appeal should not be sought to provide early review of difficult rulings in hard cases."  *Clark v. Bank of America, N.A.*, No. CIV. SAG-18-3672, 2020 WL 3868990, at *2 (D.

- 2 -

Md. July 9, 2020). And it certainly should not be used as a roadblock to discovery proceeding in cases where, as here, the legal questions presented for certification are intensely fact-bound.

Plaintiffs respectfully request that the Court deny Defendants' motion.

## II.    LEGAL STANDARDS

"Interlocutory appeals, governed by 28 U.S.C. § 1292(b), are an exception to the grant of jurisdiction to appellate courts to hear appeals only from 'final decisions' of district courts." *United States ex rel. Schnupp v. Blair Pharmacy*, No. CIV. ELH-17-2335, 2025 WL 1331906, at *10 (D. Md. May 7, 2025) (citing *Johnson v. Jones*, 515 U.S. 304, 309 (1995)). It is "'the exception, not the rule.'" *Id.* (quoting *Coal. For Equity & Excellence In Md. Higher Educ. v. Md. Higher Educ. Comm'n*, No. CIV. CCB-06-2773, 2015 WL 4040425, at *2 (D. Md. June 29, 2015)). The "rule" is the final judgment rule, which has been a cornerstone of the federal courts "'[f]rom the very foundation of our judicial system.'" *Microsoft Corp. v. Baker*, 582 U.S. 23, 36 (2017) (quoting *McLish v. Roff*, 141 U.S. 661, 665–66 (1891)). The final judgment rule "preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Id.* at 36–37; *accord Johnson*, 515 U.S. at 309; *Britt v. DeJoy*, 45 F.4th 790, 792–93 (4th Cir. 2022).

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court

>unless the district judge or the Court of Appeals or a judge thereof
>shall so order.

28 U.S.C. § 1292(b) (emphasis in original). "As reflected in 28 U.S.C. § 1292(b), a trial judge may certify an interlocutory order for appeal if the party seeking the appeal shows that (1) the desired appeal 'involves a controlling question of law'; (2) 'there is substantial ground for difference of opinion'; and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Blair Pharmacy*, 2025 WL 1331906, at *10 (quoting *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011)).

Certification of a § 1292(b) interlocutory appeal is "intended to be an extraordinary remedy," to be "'used sparingly.'" *United States ex rel. Fitzer v. Allergan, Inc.*, No. CIV. SAG-17-00668, 2022 WL 9974736, at *1 (D. Md. Oct. 17, 2022) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)); *see also* S. Rep. No. 85-2434 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 5255, 5259 (providing that appeals under § 1292(b) would "be used only in exceptional cases"). Indeed, "[p]iecemeal interlocutory appeals should be 'avoided.'" *Doe v. Dewees*, No. CIV. TDC-18-2014, 2022 WL 2195187, at *1 (D. Md. June 17, 2022) (Chuang, J.) (quoting *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993)).

The decision whether to certify an interlocutory appeal is "firmly in the district court's discretion." *Randolph v. ADT Sec. Servs., Inc.*, No. CIV.A DKC-09-1790, 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012); *accord Feinberg v. T. Rowe Price Grp., Inc.*, No. CIV. JKB-17-0427, 2021 WL 2784614, at *2 (D. Md. July 2, 2021). "Unless *all* of the statutory criteria are satisfied, however, 'the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b).'" *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)) (emphasis in original). And the statute's requirements "must be strictly construed." *United States ex rel.*

*Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles*, 881 F.2d at 127). "In other words, district courts are permitted, not required, to certify an interlocutory appeal in certain extraordinary situations." *Bezek v. First Nat'l Bank of Pa.*, No. CIV. SAG-17-2902, 2023 WL 2571508, at *2 (D. Md. Mar. 20, 2023).

### A.    Controlling Question of Law

Under the first factor, a controlling question of law exists when a case "present[s] 'a pure question of law,' i.e., 'an abstract legal issue that the court of appeals can decide quickly and cleanly' . . . 'without having to delve beyond the surface of the record in order to determine the facts.'" *Agape*, 848 F.3d at 340–41 (first quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016); then quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). "By contrast, § 1292(b) review is not appropriate where, for example, the question presented 'turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case.'" *Id.* (quoting *McFarlin*, 381 F.3d at 1259). In other words, a district court should *not* certify a "question[ ] of law heavily freighted with the necessity for factual assessment." *Butler*, 307 F.R.D. at 452 (citation omitted).

### B.    Substantial Ground for Difference of Opinion

Under the second factor, "'the threshold for establishing the substantial ground for difference of opinion with respect to a controlling question of law required for certification pursuant to § 1292(b) is a high one.'" *Blair Pharmacy*, 2025 WL 1331906, at *13 (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19–20 (D.D.C. 2002)) (cleaned up). Districts courts may find substantial grounds for difference of opinion where "there is a 'dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits,' or 'where a court's challenged decision conflicts with the decisions of several other courts.'" *Id.* at *12 (quoting *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 97–98 (D.D.C.

- 5 -

2003)).  But "lack of unanimity among courts and lack of relevant authority do not suffice."  *Id.*; *see also Va. ex rel. Integra Rec, LLC v. Countrywide Sec. Corp.*, No. CIV. 14-706, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015) ("A mere lack of unanimity, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists.").  And "[s]imply because 'settled law might be applied differently does not establish a substantial ground for difference of opinion.'"  *Butler*, 307 F.R.D. at 454–55 (quoting *McDaniel v. Mehfoud*, 708 F. Supp. 754, 756 (E.D. Va. 1989)).  "Similarly, a party's disagreement with the decision of the district court, no matter how strong, does not create substantial grounds."  *Dewees*, 2022 WL 2195187, at *2 (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).

### C.    Materially Advancing the Ultimate Termination of the Litigation

District courts consider three factors to determine whether certification will materially advance the ultimate termination of the litigation: "whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly."  *Coal. for Equity*, 2015 WL 4040425, at *6 (quoting *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013)) (cleaned up).  This factor is not satisfied "[w]here litigation is likely to continue in a significant way regardless of the resolution of an interlocutory appeal."  *Dewees*, 2022 WL 2195187, at *2.  "Courts often decline to grant interlocutory appeals when a trial would still be required regardless of the appeal."  *Feinberg*, 2021 WL 2784614, at *4; *see also Clark Const. Grp., Inc. v. Allglass Sys., Inc.*, No. CIV.A. DKC-2002-1590, 2005 WL 736606, at *4 (D. Md. Mar. 30, 2005) (finding defendants did not satisfy the material advancement inquiry because "a favorable ruling for Defendants on appeal would not eliminate the need for a trial").

III.    **ARGUMENT**

A.    **Defendants Do Not Satisfy the Statutory Factors for Interlocutory Appeal**

Certification of interlocutory appeal is not the default.  Defendants attempt to suggest that certification under § 1292(b) is nearly automatic any time the parties dispute significant questions of law.  But as noted above, the party seeking appeal must demonstrate that "(1) the desired appeal involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Blair Pharmacy*, 2025 WL 1331906, at *10 (cleaned up).  It is the Government's burden to satisfy *all* of the three factors to warrant certification.  *See Butler*, 307 F.R.D. at 455. "Failing to meet even one of the statutory requirements will defeat a litigant's request for an interlocutory appeal." *Ekstrom v. Cong. Bank*, No. CIV. ELH-20-1501, 2021 WL 119000, at *2 (D. Md. Jan. 13, 2021) (citation omitted).

Defendants cannot meet the requirements for any of the four grounds upon which it unsuccessfully sought to dismiss the litigation: standing, subject matter jurisdiction, and failure to state a claim under the Appointments Clause and separation of powers principles.  Accordingly, the Court should deny Defendants' motion.

1.    **Interlocutory Appeal Is Not Warranted as to Plaintiffs' Standing to Sue**

Defendants are unable to satisfy either the first or the second factor for certification as to standing because nothing about the Court's standing analysis suggests a pure or controversial question of law suited to interlocutory appeal.  Plaintiffs suffered injury in fact when they "either were placed on administrative leave, received a RIF notice, or both," ECF No. 150 ("Mem. Op.") at 33; Defendants "do not seriously dispute" that these injuries were traceable to their actions to eliminate USAID in violation of the Appointments Clause and separation of powers principles, *id.*

at 34; and those injuries would be redressed by the relief sought because "an order halting the elimination of USAID as an agency pursuant to either the Separation of Powers claim or the Appointments Clause claim would certainly remove a significant obstacle to Plaintiffs' regaining some form of employment at USAID or other relief," *id.* at 38 (cleaned up) (citation omitted). These legal doctrines are well settled, and their application in this case was neither novel nor difficult.

Moreover, neither this Court nor a reviewing court can definitively decide whether *these* Plaintiffs have standing in *this* case without delving into factual disputes, such as the Executive Branch's conduct in dissolving USAID, who made the pertinent decisions to dissolve the Agency, or whether any improper actions were properly ratified by a duly appointed USAID official. Defendants essentially concede as much by initially framing the standing question as "whether Plaintiffs have Article III standing to maintain this action, *where they disclaim any relief related to their specific employment status or contracts but the only cognizable harms they assert involve employment- and contract-based injuries*." ECF No. 166-1 ("Mot.") at 1 (emphasis added). This statement is riddled with factual questions specific to this litigation. As one court in this district aptly explained, "the framing of the question confuses the issues since the question of what constitutes a [cognizable harm] is open to interpretation" and therefore "it may be the case what constitutes a mere [cognizable harm] would be inappropriate for interlocutory appeal because it might cause the appellate court to 'delve beyond the surface of the record in order to determine the facts.'" *Bradley v. DentalPlans.com*, No. CIV. BAH-20-1094, 2024 WL 5158791, at *6 (D. Md. Dec. 18, 2024) (quoting *Agape*, 848 F.3d at 341) (alterations added). Similarly, the Government's attempt to identify disputed issues based upon the purported ratification of employment actions for specific plaintiffs, Mot. at 9–10, raises a host of plaintiff- and fact-specific

questions ill-suited to interlocutory review. *See Butler*, 307 F.R.D. at 452 (certifying factual questions "'inflict[s] upon courts of appeals an unaccustomed and illsuited role as factfinders'") (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, at *5 (4th Cir. 1989) (unpublished table decision)) (alteration added). And, as this Court recognized, the record includes facts that could establish additional findings of injury, such as risks to personal security, that would require even more fact-intensive analyses. *See* Mem. Op. at 33–34 ("The Court notes that to the extent it may consider the additional facts presented, they even more clearly demonstrate an injury in fact.").

Faced with this straightforward analysis, the Government attempts to flip the burden and suggest that questions of standing should automatically merit certification. For example, the government misleadingly cites Wright & Miller's note that standing is among the "*categories of rulings that may be* obviously suited for interlocutory appeal" by omitting the emphasized conditional language. C. Wright & A. Miller, 16 Fed. Prac. & Proc. Civ. § 3931 (3d ed.) (emphasis added); *see* Mot. at 5. So too do they omit Wright & Miller's specific caution immediately thereafter: "Of course not every ruling regarding even such fundamental matters is worthy of appeal; *the rules that bar routine interlocutory appeal continue to hold sway*," including, for example, routine findings that certain plaintiffs have standing to sue. 16 Fed. Prac. & Proc. Civ. § 3931 & n.27 (discussing *Abortion Rts. Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 365–67 (S.D.N.Y. 1982)) (emphasis added). Here, where the standing analysis is both routine and not a particularly close call, the Government fails to identify any question of controlling law.

The Government similarly fails to present substantial grounds—or any grounds, for that matter—for difference of opinion as to the law governing Article III standing, thereby failing to satisfy the second factor as well. The Government instead presents its own disagreements with the Court's application of this settled doctrine. Defendants "may ardently disagree with the

- 9 -

Court's interpretation and adjudication, but such disagreement does not entitle [them] to another bite at the proverbial apple." *Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 529 (D. Md. 2016); *see also Hatch v. Demayo*, No. CIV. 16-925, 2018 WL 4688390, at *2 (M.D.N.C. Sept. 29, 2018) ("While it is clear that Defendants disagree with the Court's application of standing law to the allegations in this case, a party's disagreement with the Court is not enough to support certification."). Indeed, "[a]n issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Butler*, 307 F.R.D. at 454 (citation omitted). Defendants have not identified any court that disagrees with the legal principles applied by the Court in this case.

Finally, even if Defendants satisfied the first two factors for certification of interlocutory appeal, which they do not, they still fail to demonstrate that interlocutory appeal would materially advance the ultimate termination of this litigation. The Court found the *Lujan* factors—the undisputed governing precedent—easily met even *without* reference to matters outside the pleadings. And as the Court repeatedly explained "to the extent it could consider the additional facts submitted to date, they even more definitively establish" Plaintiffs' standing. Mem. Op. at 36 (traceability); *accord id.* at 33–34 (injury in fact). Thus, any purported defect in the Court's pleadings-based standing analysis could be cured by amendment, which renders it unsuitable for interlocutory appeal. *See Hayes v. Sotera Def. Sols., Inc.*, No. CIV. JCC-IDD-15-1130, 2015 WL 9273953, at *2 (E.D. Va. Dec. 17, 2015) (concluding that interlocutory appeal would "simply prolong the present litigation rather than hasten the litigation toward its ultimate termination" because "any dismissal under Rule 12(b)(6) resulting from this appeal would be without prejudice and with leave to amend the complaint"); *accord In re Health Diagnostic Lab'y, Inc.*, No. CIV. KRH-15-32919, 2017 WL 2129849, at *5 (E.D. Va. May 16, 2017) (interlocutory appeal "would

unnecessarily prolong the present litigation" rather than materially advancing its termination because reversal on appeal "would only lead to a dismissal without prejudice and with leave to amend").

Accordingly, the Government has failed to demonstrate that Plaintiffs' standing to sue is a question suitable for certification under § 1292(b).

### 2.    Interlocutory Appeal Is Not Warranted as to Subject Matter Jurisdiction

Defendants purport to identify a second controlling question of law as to subject matter jurisdiction, specifically "whether Plaintiffs' claims . . . fall outside the scope of this Court's subject-matter jurisdiction," Mot. at 1, but fail to meet the high bar for § 1292(b) certification. *First*, whether Plaintiffs' claims are subject to mandatory channeling is itself a question that requires the Court to delve into the facts of the case, as demonstrated by the Court's 21-page analysis of channeling issues for each of the three employment types included in the Class (Civil Service Employees, Foreign Service Employees, and Personal Service Contractors). *See* Mem. Op. at 9–30. Indeed, the Fourth Circuit expressly understands the mandatory channeling inquiry to be a fact-specific determination. *See Nat'l Ass'n of Immgr. Judges v. Owen*, 139 F.4th 293, 306–08 (4th Cir. 2025) ("*NAIJ*") (acknowledging that the inquiry "turns on a factual record . . . best addressed by the district court in the first instance" and remanding "to the district court to conduct a factual inquiry whether the CSRA continues to provide a functional adjudicatory scheme"); *see* Mem. Op. at 13. Similarly, to determine whether the Contract Disputes Act, 41 U.S.C. § 7102, or the Tucker Act, 28 U.S.C. § 1491(a)(1), deprives the Court of jurisdiction, "the Court 'must look beyond the form of the pleadings to the *substance of the claim.*'" *Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 103 (D. Md. 2025) (quoting *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1124 (Fed. Cir. 2007)) (emphasis

- 11 -

added).  In other words, this subject matter jurisdiction question is a fundamentally fact-bound inquiry, and not a "pure question of law."

*Second*, although Defendants identify some recent cases where courts in the D.C. Circuit held that the CSRA, FSA, or CDA stripped a court of jurisdiction to handle a case involving recent executive branch agency action, *see* Mot. at 11–12, this mere "lack of unanimity" regarding legally and factually distinct cases "do[es] not suffice" to meet the "high" threshold required to show a substantial ground for difference of opinion.  *Blair Pharmacy*, 2025 WL 1331906, at *12–13 (citation omitted).  The Court already considered, at length, the similarities and dissimilarities between this case and several contemporaneous cases, including ones cited by Defendants.  *See* Mem. Op. at 15–29 (distinguishing, *inter alia*, *Widakuswara v. Lake*, No. CIV. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025); *Am. Foreign Serv. Ass'n v. Trump*, 768 F. Supp. 3d 6 (D.D.C. 2025)).  Indeed, the Court concluded that those cases did not conflict with holding that Plaintiffs' challenges, which do not seek "specific relief on any particular adverse employment action, prohibited personnel practice, or even broad RIF decision," are appropriate for district court review.  Mem. Op. at 17.

Additionally, Defendants fail to note that the Fourth Circuit has already strongly signaled that issues related to the independence of the Merit Systems Protection Board ("MSPB") separately negate any congressional intent to strip district courts of jurisdiction.  In *NAIJ*, 139 F.4th 293, the Fourth Circuit vacated and remanded a district court's dismissal of claims brought by immigration judges.  Although the Fourth Circuit found that the factors at step two of the test established by *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), weighed in favor of jurisdiction-stripping, it called into question the "constitutionality of the removal protections enshrined in the CSRA" given that "[t]he Special Counsel and several members of the MSPB have been terminated by the

President and the Government has questioned the constitutionality of the removal protections enshrined in the CSRA." *NAIJ*, 139 F.4th at 304–08.

*Third*, Defendants cannot show that certification on this issue would materially advance the ultimate termination of this litigation. Because the Court here focused its jurisdiction-stripping analysis on step two of the *Thunder Basin* test, concluding that "all three *Thunder Basin* factors weigh in Plaintiffs' favor," it did not need to reach the question of the MSPB's current status. Mem. Op. at 20. Accordingly, even if the Court certified this question, any interlocutory appeal would at most remand for consideration of whether, at the first step of *Thunder Basin*, the CSRA still strips courts of jurisdiction to hear *any* disputes brought by federal employees. Moreover, because Defendants have never identified a colorable argument for why the constitutional claims of Foreign Service Limited Plaintiffs could be channeled, *see* Mem. Op. at 21–22, Defendants cannot explain how even the prospect of eliminating some categories of Plaintiffs would ultimately terminate the litigation. *Cf. Dewees*, 2022 WL 2195187, at *2 ("Where litigation is likely to continue in a significant way regardless of the resolution of an interlocutory appeal, the appeal does not materially advance the termination of the case.").

Therefore, Defendants have not met their burden to demonstrate a controlling question of law, subject to reasonable disagreement, whose resolution would materially advance the litigation, regarding subject matter jurisdiction. It is thus not suitable for § 1292(b) certification.

### 3.    Interlocutory Appeal Is Not Warranted as to the Appointments Clause

Defendants cannot identify, and largely do not even attempt to identify, a controlling question of law or one upon which a substantial difference of opinion exists as to the Appointments Clause. Defendants correctly identify the two issues—whether Musk occupied a continuing position established by law vested with significant authority, and whether and to what extent

actions undertaken by Musk and DOGE were ratified by duly appointed officials—but they do not identify a single legal standard that the Court erroneously adopted. Nor have they identified any case that provides a substantial difference of opinion as to those standards.

Defendants' purported contrary authority is limited to the Fourth Circuit's decision to stay the preliminary injunction in this case. *See Does 1-26 v. Musk*, No. 25-1273, 2025 WL 1020995, at *3–4 (4th Cir. Mar. 28, 2025) (Quattlebaum, J., concurring). But the Fourth Circuit's analysis centered on factual matters. In assessing whether Plaintiffs established a likelihood of success at the preliminary injunction stage, the panel repeatedly invoked the current record evidence, and acknowledged that discovery might prove "unconstitutional conduct as the case progresses." *See id.* (discussing "evidence cited by plaintiffs," "record evidence," and "the evidence before us"). The Fourth Circuit explicitly cautioned: "none of this is to say that plaintiffs will not be able to develop evidence of unconstitutional conduct as the case progresses." *Id.* at *4. Defendants' statement that the question of Musk's role in the Administration and in dissolving USAID "is a pure question of law" misses the mark. *See* Mot. at 18–19.

The Government, now faced with litigation, doth protest that Musk has or had no official role in connection with DOGE. *See, e.g.*, Mot. at 4 (describing Musk as a "former close, personal advisor to the President and a component of the Executive Office of the President"); ECF No. 110-1 at 28 (describing Musk as one of the President's "senior advisors"); ECF No. 28-1 at 1 (describing Musk as a "a non-career Special Government Employee" and "Senior Advisor to the President"). But this Court and others have previously found more than sufficient evidence—even at preliminary stages of the proceedings—to determine that Musk was acting as the head of DOGE, *see Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 650–51 (D. Md. 2025), and took "a leading role" in the takeover and dismantling of DOGE, Mem. Op. at 41–42; *see also New Mexico v. Musk*, 784 F.

- 14 -

Supp. 3d 174, 198–205 (D.D.C. 2025).  At minimum, therefore, the case requires "additional factual development through discovery . . . to assess the scope and breadth of the alleged Appointments Clause violation, including by determining the identity of the actual decisionmakers for any exercises of significant authority."  Mem. Op. at 43.  That is hardly a pure question of law.

At bottom, Defendants simply disagree with the Court's Appointments Clause analysis and believe that an appellate panel might come out a different way.  Such a belief—particularly when the only other court to confront the same question has come out the same way as here, *see New Mexico*, 784 F. Supp. 3d at 198–205—does not suffice to justify certification for interlocutory appeal.  *See Dewees*, 2022 WL 2195187, at *2 ("[A] party's disagreement with the decision of the district court, no matter how strong, does not create substantial grounds.").

Defendants have therefore failed to identify either a controlling question of pure law or one subject to substantial dispute, and consequently do not satisfy their burden under § 1292(b).

### 4.    Interlocutory Appeal Is Not Warranted as to Separation of Powers

Certification of Plaintiffs' separation of powers claim for interlocutory appeal is also inappropriate.  Defendants barely address either the first or third factors for certification.  *See* Mot. at 5–6 (spending half a sentence on the first factor and one and one half sentences on the third factor).  Rather, they rest solely on the argument that two D.C. Circuit cases, *National Treasury Emps. Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025) (*"NTEU"*), and *Global Health Council v. Trump*, No. 25-5097, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025), create a substantial ground for difference of opinion.  *See* Mot. at 16–18.  However, this case is unlike *NTEU* and *Global Health*, where the "Executive has invoked no . . . freestanding Article II power."  *NTEU*, 149 F.4th at 794; *see Glob. Health*, 2025 WL 2480618, at *7.  Here, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), Defendants have expressly invoked the Executive's inherent Article II

- 15 -

powers. *See* ECF No. 28-1 at 23–24 (invoking "President's Article II authority" to review "foreign aid"); ECF No. 110-1 at 32 (same).

Further, failure to meet the third element, material advancement, is fatal to Defendants' § 1292(b) motion as to the separation of powers question. Piecemeal certification of this question would do little to advance the litigation. Defendants identify no document requests, interrogatories, or depositions that would be averted; instead, the primary result would be the court of appeals having to take up complicated merits questions piece-by-piece, rather than all at once as intended by the final judgment rule. That is precisely contrary to the efficiency-minded purpose of § 1292(b). *See, e.g.*, 16 Fed. Prac. & Proc. Civ. § 3930 (3d ed.) ("The disadvantages of immediate appeal increase with *the probabilities that lengthy appellate consideration will be required*, that the order will be affirmed, that continued district-court proceedings without appeal might moot the issue, *that reversal would not substantially alter the course of district-court proceedings, or that the parties will not be relieved of any significant burden by reversal.*") (emphasis added). Defendants' brief, conclusory assertion that certification of the separation of powers could "resolve a major component of the litigation and could obviate or drastically limit the need for any discovery," Mot. at 6, fails to establish the third element.

This litigation certainly arises out of an extraordinary context—the Executive Branch's unilateral dissolution of a congressionally created, independent agency—and presents weighty issues. But that alone does not suffice to establish Defendants' entitlement to interlocutory review. And Defendants cannot satisfy their burden given their complete failure to address—no less, satisfy—the third factor. *See, e.g.*, *Clark*, 2020 WL 3868990, at *4 (denying certification where the defendant's "'arguments . . . re[ly] on the assumption that it will succeed on appeal,' thereby 'ignoring the requirement that an interlocutory appeal advance litigation regardless of its

- 16 -

outcome.'" (quoting *Donlen Trust v. Wayne Srvs. Legacy, Inc.*, No. CIV. 20-092-DJN, 2020 WL 1550579, at *8 (E.D. Va. Apr. 1, 2020)) (alterations in *Clark*).

Because the issues identified by Defendants either fail to present controlling questions of law, are not subject to reasonable dispute, or would not materially contract the scope of further litigation, the motion for certification should be denied.

### B.    A Stay of Discovery Is Not Warranted

Defendants correctly note that "expedited resolution" of this matter is critical.  Mot. at 14. But that is exactly why a stay of discovery is neither warranted nor an efficient use of judicial resources.  Section 1292(b) is clear that an interlocutory appeal "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).  Congress imposed the requirement that the stay be ordered, rather than automatic, as a "protection against delay."  S. Rep. No. 85-2434 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 5255, 5257.  And "[t]he proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).  Defendants have not satisfied that burden.

Even if the Court decides that certification is warranted, it should not stay discovery. Defendants' arguments to the contrary fall flat.  As the Court explained in denying a stay pending interlocutory appeal in another case,

> The Government's claims that discovery requests will improperly burden the Government, and that discovery disputes will impact judicial economy, are premature.  The Court will consider and resolve discovery disputes, if any, as they arise, with due regard to all arguments offered by the parties and consideration of the interests of the parties and the need for judicial economy. Accordingly, the Court finds that the balance of the equities does not favor granting a stay.

*Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 953 (D. Md. 2019) ("*IRAP*"). Although this case involves different harms to Plaintiffs than the harms present in *IRAP*, the

potential harms here nonetheless significantly outweigh the as-yet unknown burdens of discovery. The longer the dismantling of USAID continues, the harder it will be to remedy the injury should Plaintiffs ultimately prevail on the Appointments Clause and separation of powers claims. Defendants apparently argue they have successfully run out the clock on certain of their unconstitutional actions. *See* Mot. at 26. But they should not be permitted to bootstrap into an indefinite prolonging of litigation. Rather, this case requires expeditious resolution, such that the Court directed the Parties to "proceed with discovery now," pending the filing and briefing of Defendants' motion. Case Mgmt. Conf. Tr. at 09:15-16. Should an appellate court take a different view of the merits of a stay—as in the cases cited by Defendants, *see* Mot. at 20—it is free to impose one. But as the Court clearly articulated during the Case Management Conference, there is no reason for further delay in this case, and Defendants have not provided one. *See* Case Mgmt. Conf. Tr. at 03:07-15, 09:17-19. Accordingly, the Court should deny Defendants' request for a stay of discovery.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' motion for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and a stay of proceedings.

Respectfully submitted,

*/s/ Norman L. Eisen*
Norman L. Eisen [9112170186]
Tianna J. Mays [1112140221]
**STATE DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Tianna@statedemocracydefenders.org

Mimi Marziani*
Rebecca (Beth) Stevens*
Joaquin Gonzalez*
**MARZIANI, STEVENS & GONZALEZ PLLC**
1533 Austin Highway
Suite 102-402
San Antonio, TX 78218
Tel: (210) 343-5604

Richard M. Heimann*
Nicole M. Rubin (30711)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000

*Class Counsel*

*\* Admitted pro hac vice*

- 19 -