UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J. DOE 4, *et al.*,<br><br>  *Plaintiffs*,<br><br> v.<br><br>ELON MUSK, *in his official capacity, et al.*,<br><br>  *Defendants*. | Case No. 8:25-cv-00462-TDC |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR CERTIFICATION OF THIS COURT'S AUGUST 13, 2025 MEMORANDUM OPINION AND ORDER FOR INTERLOCUTORY APPEAL AND FOR A STAY OF DISCOVERY**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.  THE COURT SHOULD CERTIFY ITS ORDER PARTIALLY DENYING
    DEFENDANTS' MOTION TO DISMISS FOR INTERLOCUTORY APPEAL ............... 2

    A.  Certification Is Warranted as to Plaintiffs' Article III Standing ............................ 2

    B.  Certification Is Warranted on this Court's Subject-Matter Jurisdiction. ................ 5

    C.  Certification Is Warranted to Determine whether Plaintiffs'
        Appointments Clause Theory Is Viable .................................................................. 8

    D.  Certification Is Warranted to Determine the Appropriate Standard
        to Apply to Plaintiffs' Purported "Separation of Powers" Claim .......................... 10

II. THIS COURT SHOULD ALSO STAY DISCOVERY PENDING
    RESOLUTION OF THE INTERLOCUTORY APPEAL ................................................ 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Am. Foreign Serv. Ass'n v. Trump*,
   No. 1:25-cv-352, 2025 WL 2097574 (D.D.C. July 25, 2025) .................................................. 4, 6

*Bradley v. DentalPlans.com*,
   No. 20-1094-BAH, 2024 WL 5158791 (D. Md. Dec. 18, 2024) .................................................. 3

*Burch v. Goodyear Tire & Rubber Co.*,
   554 F.2d 633 (4th Cir. 1977) ........................................................................................................ 3

*Burnap v. United States*,
   252 U.S. 512 (1920) ..................................................................................................................... 9

*Cheney v. U.S. Dist. Court for D.C.*,
   542 U.S. 367 (2004) ...................................................................................................... 10, 13, 14

*Clinton v. Jones*,
   520 U.S. 681 (1997) ................................................................................................................... 14

*Coal. For Equity & Excellence v. Md. Higher Educ. Comm'n*,
   Civ. No. CCB-06-2773, 2015 WL 4040425 (D. Md. June 29, 2015) ....................................... 11

*Dalton v. Specter*,
   511 U.S. 462 (1994) ................................................................................................................... 10

*Doe v. Dewees*,
   No. TDC-18-2014, 2022 WL 2195187 (D. Md. June 17, 2022) ............................................... 13

*Fernandez-Roque v. Smith*,
   671 F.2d 426 (11th Cir. 1982) ................................................................................................... 10

*FSGB Case No. 2013-043*,
   2014 FSGB LEXIS 316 (Jan. 14, 2014) ...................................................................................... 7

*Glob. Health Council v. Trump*,
   153 F.4th 1 (D.C. Cir. 2025) ................................................................................................ 11, 12

*In re Trump*,
   781 F. App'x 1 (D.C. Cir. 2019) .................................................................................................. 3

*Ingersoll-Rand Co. v. United States*,
   780 F.2d 74 (D.C. Cir. 1985) ....................................................................................................... 7

*Int'l Refugee Assistance Project v. Trump*,
  404 F. Supp. 3d 946 (D. Md. 2019) ............................................................................... 15

*Jackson v. City of Houston*,
  143 F.4th 640 (5th Cir. 2025) ......................................................................................... 3

*Kennedy v. St. Joseph's Ministries, Inc.*,
  657 F.3d 189 (4th Cir. 2011) ........................................................................................ 14

*Konya v. Lockheed Martin Corp.*,
  No. 24-750-BAH, 2025 WL 2050997 (D. Md. July 22, 2025) ............................. 3, 4, 5

*Loving v. United States*,
  517 U.S. 748 (1996) ..................................................................................................... 14

*Nat'l Ass'n of Immigr. Judges v. Owen*,
  139 F.4th 293 (4th Cir. 2025) ......................................................................................... 7

*Nat'l Treasury Emps. Union v. Vought*,
  149 F.4th 762 (2025) ................................................................................... 6, 8, 11, 15

*Omni MedSci, Inc. v. Apple Inc.*,
  No. 19-cv-05924-YGR, 2020 WL 759514 (N.D. Cal. Feb. 14, 2020) .......................... 3

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ........................................................................................ 10

*Tantaros v. Fox News Network, LLC*,
  465 F. Supp. 3d 385 (S.D.N.Y. 2020) ............................................................................ 5

*Trump v. Int'l Refugee Assistance Project*,
  No. 19-350 (4th Cir. Sept. 11, 2019) ............................................................................ 15

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ..................................................................................................... 10

**STATUTES**

22 U.S.C. § 2381 ................................................................................................................ 11

22 U.S.C. § 4131(a)(1) ......................................................................................................... 7

28 U.S.C. § 1292(b) ........................................................................................................... 12

**REGULATIONS**

5 C.F.R. § 351.901 ............................................................................................................... 7

## INTRODUCTION

If ever there were a case tailor-made for interlocutory review, it is this one. Plaintiffs are a class of former employees and contractors of the United States Agency for International Development ("USAID"). They allege that various governmental decisions to reduce the number of the agency's employees, cancel certain grants and contracts, and change the agency's physical office space—which they describe as a dismantling of a federal agency—resulted in injuries to the course of their employment. They assert these decisions were instigated by the wrong government actor, and in any event violate the separation of powers. As detailed in the Government's motion, courts considering similar claims against recent Executive Branch actions have diverged from this Court's legal analysis on three of the four questions the Government seeks to have certified: whether Plaintiffs have Article III standing, whether this Court has subject-matter jurisdiction, and the viability of Plaintiffs' separation-of-powers claim. The fourth question—whether Plaintiffs' Appointments Clause theory comports with the Constitution—presents a novel legal theory in firm tension with decades of Supreme Court precedent in a situation of national importance.

Plaintiffs' opposition largely does not contest that courts have differed on the jurisdictional or separation-of-powers questions. Nor do they gainsay the novelty of the Appointments Clause theory or dispute that its application may interfere with Executive Branch prerogatives. They instead oppose certification by claiming the Government's questions, though ones of law, are either case-specific or would not advance the ultimate termination of this litigation. To the contrary, the proliferation of cases across the country filed by former agency employees challenging large-scale employment actions and other alleged agency dismantling establish that the jurisdictional and separation of powers questions have application far broader than the claims presented here. All four questions, moreover, cut to the core of Plaintiffs' ability to maintain these claims in this Court.

1

At minimum, appellate review may remove significant areas of dispute and obviate burdensome discovery that would interfere with the Executive's duties, if not eliminate this case altogether. And even in the absence of certification, the Government's appeal of this Court's preliminary-injunction ruling remains pending before the Fourth Circuit, held in abeyance "for the district court to resolve the motion to dismiss or otherwise issue any subsequent appealable order." *See* Order, ECF No. 33, J. Does 1–26 v. Musk, No. 25-1273 (4th Cir. June 9, 2025).

Interlocutory review under Section 1292(b) may be an exception to the typical litigation process, but this is an exceptional case. This Court should certify its motion to dismiss order for immediate review and stay discovery pending the resolution of that appeal.

## ARGUMENT

**I. THE COURT SHOULD CERTIFY ITS ORDER PARTIALLY DENYING DEFENDANTS' MOTION TO DISMISS FOR INTERLOCUTORY APPEAL**

### A. Certification Is Warranted as to Plaintiffs' Article III Standing

As the Government explained in its opening brief, whether Plaintiffs have made the required showing of Article III standing to survive a motion to dismiss is a pure question of law that warrants immediate interlocutory review. Whether a group of former government employees have standing to maintain a lawsuit in federal district court to challenge Executive Branch actions that resulted in their termination, when their alleged injuries are untethered from their claims and they expressly disclaim any employment-related remedy, is a pure issue of law over which there is substantial ground for difference of opinion. And immediate appeal on that issue is likely to materially advance the resolution of this case, because success on this issue would end the case.

In response, Plaintiffs badly mischaracterize the Government's arguments. *See* ECF No. 169 at 11. The Government nowhere suggested that "questions of standing should automatically merit certification." *Id.* The Government quoted the Wright & Miller language Plaintiffs highlight

2

in arguing that subject-matter jurisdiction is a legal question that meets the first element of Section 1292(b). The language Plaintiffs accuse the Government of misleadingly excising all goes to whether the *other* required elements for certification are met, *i.e.*, whether there is substantial ground for difference of opinion in "routine" standing cases. *Id.*

Plaintiffs cannot seriously contest that Plaintiffs' standing to sue is a pure legal question. Even their featured case concedes that "a question of standing, generally speaking, is a purely legal question that satisfies the first of the three elements of 28 U.S.C. § 1292(b)." *Bradley v. DentalPlans.com*, No. 20-1094-BAH, 2024 WL 5158791, at *6 (D. Md. Dec. 18, 2024); *see* ECF No. 169 at 8.[1] Plaintiffs instead contend that questions of standing that depend on application of Article III standards to a particular case are not "pure" questions of law. ECF No. 169 at 7–8, but courts routinely disagree in granting interlocutory review in such cases. *See, e.g.*, *Jackson v. City of Houston*, 143 F.4th 640, 645–47 (5th Cir. 2025) (reviewing on interlocutory appeal from denial of motion to dismiss whether specific plaintiffs had standing to bring equal protection claim); *In re Trump*, 781 F. App'x 1, 2 (D.C. Cir. 2019) (remanding failure to certify question of legislator standing for interlocutory appeal because it "squarely meet[s] the criteria for certification under Section 1292(b)"); *Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 635–36 (4th Cir. 1977) (reviewing state attorney general's standing to sue for injuries to the state on interlocutory appeal); *Konya v. Lockheed Martin Corp.*, No. 24-750-BAH, 2025 WL 2050997, at *4 (D. Md. July 22, 2025), *perm. app. granted*, Order, No. 25-180 (4th Cir. Sept. 9, 2025); *Omni MedSci, Inc. v. Apple Inc.*, No. 19-cv-05924-YGR, 2020 WL 759514, at *1 (N.D. Cal. Feb. 14, 2020) ("Standing and

---

[1] In any case, the conditional language Plaintiffs quote from *Bradley* was dictum, as the proffered standing question was not subject to substantial grounds for difference of opinion. *See* 2024 WL 5158791, at *6. Indeed, that court felt no need to "waste words addressing the first and last of the elements for an interlocutory appeal" because the issue presented had been "squarely addressed" in a prior Fourth Circuit opinion. *Id.* Plaintiffs offer nothing like that here.

3

subject-matter jurisdiction are controlling issues of law" for purposes of Section 1292(b).). Even where a standing decision "detail[s] the factual allegations recounted in the amended complaint" *and* where a plaintiff would have an "opportunity to amend . . . to allege additional facts" establishing their standing, the "ultimate decision" whether "those facts, if true" establish standing is "a legal one" susceptible of interlocutory appeal. *See Konya*, 2025 WL 2050997, at *3–4.

The specific deficiencies in Plaintiffs' standing underscore that interlocutory review is warranted. As noted, Plaintiffs' employment- and contract-based injuries were the only basis on which this Court found standing. But Plaintiffs' claims are insufficiently tied to those injuries, and their requested relief goes well beyond getting their jobs back or reinstating their contracts. *See* ECF No. 166-1 at 9–11 (arguing that "the remedy sought must still relate to" the asserted employment or contract "injury"). Those deficiencies do not depend on resolution of any factual disputes or require the appellate court to delve into the record.

There is substantial ground for difference of opinion on that question. Indeed, as the Government has explained, another court considering related challenges to USAID's purported "dismantling" concluded that organizational plaintiffs seeking to rely on their members' harms "suffered as a result of the government's actions with respect to USAID" lack "standing to challenge the government's *non*-personnel actions with respect to USAID, such as its grant terminations, website closures, and lease transfers." *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-352, 2025 WL 2097574, at *6–7 (D.D.C. July 25, 2025) ("*AFSA*"), *appeal filed sub nom. Pers. Servs. Contractor Ass'n v. Trump*, No. 25-5291 (D.C. Cir. Aug. 13, 2025). The fact that this Court's opinion conflicts with the court's analysis of similar allegations in *AFSA* as to the same federal agency is powerful evidence that interlocutory review is appropriate.

4

Interlocutory appeal may also materially advance the ultimate termination of the litigation. If Plaintiffs lack standing to seek their requested relief, then it is difficult to see how they could amend their complaint to cure the defect. *Contra* ECF No. 169 at 10–11. No additional facts could rehabilitate Plaintiffs' defective legal theory. At minimum, an immediate appeal as to standing may narrow the scope of Plaintiffs' challenge to their own employment harms, which would drastically simplify discovery and eliminate broader contested issues about the ongoing operation of USAID. *See Konya*, 2025 WL 2050997, at *5 (finding certification of standing question appropriate despite possibility that "leave to amend might be granted subsequent to an adverse ruling").

### B.     Certification Is Warranted on this Court's Subject-Matter Jurisdiction

The question whether this Court has subject-matter jurisdiction over Plaintiffs' claims—notwithstanding the specialized review schemes of the CSRA, FSA, or CDA—also warrants review under Section 1292(b).

Plaintiffs first contend that determinations whether cases should be channeled are fundamentally fact-bound. *See* ECF No. 169 at 11–12. But they identify no disputes of fact that this Court resolved—or that a Court of Appeals would need to resolve—to rule on the fundamentally legal question whether Congress intended the kinds of claims Plaintiffs assert here to be channeled to other adjudicatory bodies through the CSRA, FSA, or CDA. Indeed, this Court's subject-matter jurisdiction turns on the correct interpretation of those statutes and application of the *Thunder Basin* factors, not any specific factual scenario limited to this case. *See Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 390–91 (S.D.N.Y. 2020) (granting 1292(b) certification where subject-matter jurisdiction "turns on" the interpretation of a statute). The several cases proliferating around the nation addressing whether federal agency employees' challenges to large-scale RIFs and alleged dismantling of agencies are within the jurisdiction of

5

federal district courts show that the legal questions here are far from case specific. *See* ECF No. 150 at 15–16 (citing cases); ECF No. 166-1 at 12–14.

Next, the Government has established that there are substantial grounds for difference of opinion as to this Court's subject-matter jurisdiction. ECF No. 166-1 at 11–13. The Government's motion cited several district court and court of appeals opinions that directly conflict with this Court's analysis. *Id.* (citing, among others, *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 774–76 (2025) ("*NTEU*"), *AFSA*, 2025 WL 2097574, at \*12–15). Plaintiffs do not even address these opinions, much less explain why they fail to establish substantial grounds for difference of opinion. *See* ECF No. 169 at 12 (citing two different opinions). Indeed, Plaintiffs *concede* that "some courts have analyzed subject matter jurisdiction differently" than this Court did in its August 13 Memorandum Opinion and Order. *Id.* at 1. At most, Plaintiffs suggest in passing that these cases are legally and factually distinct. *Id.* But one of those cases involved the same arguments about the same federal agency at issue here, based on the same predicate that USAID was being "dismantled." *See AFSA*, 2025 WL 2097574, at \*10–16.

Nor are Plaintiffs correct that this Court already addressed these opinions: the cited *AFSA* opinion was released after the close of briefing in this case and *NTEU* was decided after this Court issued its ruling. The Court discussed neither in its Opinion. If Plaintiffs suggest this case is distinct from *AFSA* because they do not seek specific relief related to their own employment relationship, ECF No. 169 at 12, that merely underscores the importance of certifying the question of Article III standing, *see AFSA*, 2025 WL 2097574, at \*12 (concluding that plaintiffs had standing to challenge only "the government's action with respect to their members' employment status," which claims were subject to channeling); *id.* at \*14 (PSC plaintiffs "'may not sidestep the restrictions of the

6

CDA merely by avoiding a request for damages'" (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79 (D.C. Cir. 1985))).

Certification of the question whether this Court has subject-matter jurisdiction would also materially advance the ultimate termination of the litigation. If this Court lacks subject-matter jurisdiction, this case ends. Plaintiffs nowhere dispute this. Instead, they argue that the Fourth Circuit is unlikely to resolve the entire case, either because the claims of some categories of plaintiffs are likely to survive review or because the Fourth Circuit's decision in *National Ass'n of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) ("*NAIJ*") would require a remand for further factual development. Neither contention is correct.

Plaintiffs first argue that this case is likely to continue because the claims of Foreign Service Limited ("FSL") Plaintiffs should not be channeled. ECF No. 169 at 13. The FSL Plaintiffs' claims are equally subject to channeling as the other categories of Plaintiffs, as Defendants explained in their motion to dismiss reply. *See* ECF No. 133 at 13. Just like other Plaintiffs, they may challenge their terminations under the comprehensive review scheme established by Congress. *See, e.g.*, 5 C.F.R. § 351.901; 22 U.S.C. § 4131(a)(1); FSGB Case No. 2013-043, 2014 FSGB LEXIS 316, at *5 (Jan. 14, 2014) ("[I]t is well understood in Board practice that an allegedly harmful action, such as an agency's violation of law or regulation, 'is grievable even where it pertains to one of the exclusions in section 1101(b)."). Yet, even if Plaintiffs are correct that the FSL Plaintiffs' claims should not be channeled, limiting this case to only the FSL Plaintiffs would reduce the scope of potentially relevant discovery. There would be no need in such a case to probe the Executive's decision making as to other employment categories.[2]

---

[2] For similar reasons, the Government respectfully disagrees that it did not argue that Plaintiffs' Appointments Clause claim should be channeled. *See* ECF No. 150 at 10. The Government's reply argued that channeling applied to both of Plaintiffs' "constitutional claim*s*." ECF No. 133 at 4

7

Nor does the Fourth Circuit's decision in *NAIJ* suggest that an immediate interlocutory appeal will not advance the ultimate termination of this action. For one, Plaintiffs forfeited any such argument here by not contesting that the CSRA is exclusive for claims within its scope. *See* ECF No. 121 at 9–10. Furthermore, the Government has petitioned for panel and *en banc* rehearing in *NAIJ*, such that the Fourth Circuit may soon conclusively resolve that issue. ECF No. 45, No. 23-2235 (4th Cir. Aug. 18, 2025). But even if it remains circuit law, *NAIJ* if anything supports the Government's argument for immediate appeal. This Court concluded that it need not address *NAIJ* because the *Thunder Basin* factors separately supported federal district court jurisdiction. ECF No. 150 at 13. The absence of an immediate appeal risks burdening the parties with litigating the case to final judgment, only to have the Court of Appeals remand potentially years later for further proceedings to address *NAIJ*. Regardless, *NAIJ* has no application to any claim channeled to the Foreign Service Grievance Board by the FSA or the Court of Federal Claims by the CDA.

### C. Certification Is Warranted to Determine whether Plaintiffs' Appointments Clause Theory Is Viable

The Government has also established that interlocutory review is warranted to resolve the appropriate standard for Plaintiffs' Appointments Clause claim. ECF No. 166-1 at 13–17. Plaintiffs attempt to cast the Government's argument as fundamentally factual, ECF No. 169 at 13–14, but that position is incorrect. The Government has consistently maintained that whether a position qualifies as an office sufficient to trigger the Appointments Clause requires a formal, legal analysis of the duties and powers imbued into that position *by law*. *See, e.g.*, ECF No. 166-1 at 13; ECF No. 110-1 at 25–26. More than a century of Supreme Court cases addressing Appointments Clause claims reflects this approach, determining whether a person is "an officer or an employé" solely

---

(emphasis added). And Plaintiffs' alleged injuries flow from their employment with USAID, precisely the type of claim subject to channeling. *Id.* at 2–3; *see NTEU*, 149 F.4th at 774–75.

8

by reference to "the manner in which Congress has specifically provided for the creation of the" position. *Burnap v. United States*, 252 U.S. 512, 516 (1920); *see also* ECF No. 110-1 at 25.

Plaintiffs again concede that Mr. Musk never formally held any such position created by law that was imbued with substantial legal authority. *See* ECF No. 169 at 14–15. Their legal theory is that, notwithstanding this lack of formal position created by law, Mr. Musk nevertheless *in fact* instigated the events and actions to which they object. *Id.* But if the Government's legal position is correct, then all the evidence in the world that Mr. Musk "took 'a leading role' in the takeover and dismantling of" USAID by causing others to use their formal authority to take the complained-of actions would make no difference. *Id.* (citation omitted). Indeed, even if Mr. Musk *himself* exceeded his authority as a senior advisor to the President and was the only government actor to authorize the employment terminations, contract cancelations, and other actions Plaintiffs assert are an effective dismantling of USAID, that would not establish that he served as an Officer of the United States in violation of the Appointments Clause (though it may cause other legal problems). That is the very essence of a controlling question of law.

If that were not enough, Plaintiffs have no response to the Government's argument that their Appointments Clause claim is legally precluded when there is no dispute that any action that plausibly injures them was approved or ratified by an official with uncontested authority. *See* ECF No. 166-1 at 14–16. Indeed, the only reference Plaintiffs make to this argument is to acknowledge that "Defendants correctly identify" it as an "issue" in this case. ECF No. 169 at 13. For the reasons explained in the Government's motion, it is a controlling question of law eligible for certification under § 1292(b). ECF No. 166-1 at 5–6, 14–16.

There are also substantial grounds for difference of opinion on these Appointments Clause questions. Plaintiffs erroneously argue that the Government has not identified any case in support

9

of their Appointments Clause argument. ECF No. 169 at 14. To the contrary, the Government's motion cited several Supreme Court cases that are in tension with this Court's analysis of the Appointments Clause, ECF No. 166-1 at 13–16, not to mention the several more cited in the Government's prior filings, *see* ECF No. 110-1 at 25–30; ECF No. 28 at 13–19.

In any case, the novelty of Plaintiffs' claims is a mark in favor of certification, not one against it. To reiterate, Plaintiffs here challenge Executive Branch actions that go to the core of the President's Article II duties. The possibility of interfering with those duties is a reason to grant special solicitude to the Government in determining whether interlocutory review is appropriate, *see Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 390 (2004), particularly in a case of "national significance," *Fernandez-Roque v. Smith*, 671 F.2d 426, 431–32 (11th Cir. 1982). Even in the absence of conflicting authority, courts have not hesitated to certify novel legal challenges for interlocutory review in far more mundane cases than this. *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

Certification of the Appointments Clause question may also materially advance the ultimate termination of this litigation, which Plaintiffs do not appear to contest. Most of the factual issues that this Court perceived required discovery would be moot if the Appointments Clause claim were dismissed. *See* ECF No. 169 at 14–15. And it would obviate Plaintiffs' requests to probe Executive Branch decision-making through depositions of various high-ranking State Department officials—not to mention Mr. Musk himself.

### D. Certification Is Warranted to Determine the Appropriate Standard to Apply to Plaintiffs' Purported "Separation of Powers" Claim

Independent of the three other questions, this Court should certify for immediate appeal the question whether to apply *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) or the more circumscribed standard for statutory or equitable claims applied in *Dalton v. Specter*, 511

10

U.S. 462 (1994). *See* ECF No. 166-1 at 16–18. Plaintiffs suggest that this question is not a controlling question of law, but they fail to provide any basis for that suggestion. *See* ECF No. 169 at 15. They are wrong. Which of two legal standards applies to Plaintiffs' claims is a quintessential question of pure law that controls the disposition of this litigation. *See Coal. For Equity & Excellence v. Md. Higher Educ. Comm'n*, Civ. No. CCB-06-2773, 2015 WL 4040425, at *5 (D. Md. June 29, 2015) ("Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." (citation omitted)).

The Government has also established that there is substantial ground for difference of opinion on this legal question. *See* ECF No. 166-1 at 16–18. Indeed, two recent D.C. Circuit cases—decided after this Court's ruling—concluded in like circumstances that *Dalton* precluded any freestanding separation-of-powers claim. *Id.* (discussing *NTEU*, 149 F.4th at 791–93; *Glob. Health Council v. Trump*, 153 F.4th 1, 13–18 (D.C. Cir. 2025).

Plaintiffs' attempt to distinguish those cases fails. They argue that their claim is distinct from those addressed by the D.C. Circuit because the Government in this case invoked the "President's Article II authority" to review "foreign aid." ECF No. 169 at 16 (citation omitted). In neither of the briefs Plaintiffs cite, however, did the Government assert a "freestanding Article II power" to dismantle USAID. *See id.* at 15–16 (citation omitted). Rather, the Government's point was that courts have traditionally given the President wide latitude in determining the United States' interests in foreign affairs. *See* ECF No. 28 at 23–24; ECF No. 110-1 at 32; *cf.* Tr. of Prelim. Inj. Hr'g at 97:9–13, ECF No. 53 (conceding that "where Congress has created an agency by statute," Article II does not permit the President to "unilaterally completely eliminate that agency"). And Congress has authorized the President to determine how best to administer foreign aid programs. *See, e.g.*, 22 U.S.C. § 2381 ("[T]he President may exercise any functions conferred

11

upon him by [the Foreign Assistance Act] through such agency or officer of the United States Government as he shall direct."). In any event, the Government in *Global Health Council* made a stronger claim that the President possessed "'vast and generally unreviewable' foreign affairs powers." 153 F.4th at 15. But that did not preclude the D.C. Circuit from concluding that the claims at issue were fundamentally statutory under *Dalton* and that *Youngstown* was "inapposite." *Id.* So even if Plaintiffs were correct that the Government had asserted "inherent Article II powers," ECF No. 169 at 15–16, substantial grounds for disagreement on the appropriate standard exists regardless. As Plaintiffs themselves admit, "there is disagreement as to whether the elimination of USAID presents a statutory or separation of powers constitutional claim." *Id.* at 2. That is enough to warrant certification here.

Finally, certification of the separation-of-powers question may materially advance the ultimate termination of this litigation. *See* ECF No. 166-1 at 6–7.[3] Plaintiffs argue that certification of the separation-of-powers question will result in piecemeal appeals. *See* ECF No. 169 at 16. To the contrary, *declining* certification risks further fracturing this case between this Court and the Court of Appeals because the Government's preliminary-injunction appeal remains pending at the Fourth Circuit, held in abeyance pending resolution of the motion to dismiss or other appealable order. Plaintiffs, moreover, entirely fail to respond to the Government's argument that the Court of Appeals may address "any issue fairly included within the certified order" so long as at least one issue satisfies Section 1292(b). *See* ECF No. 166-1 at 8 n.2 (citation omitted). But even if review were limited to the separation of powers question, that would nonetheless resolve fully half of the

---

[3] Plaintiffs cite two district courts and one unpublished Fourth Circuit case to suggest that the material advancement prong requires "that an interlocutory appeal advance litigation regardless of its outcome." ECF No. 169 at 16–17. Section 1292(b)'s text, however, requires only that "an immediate appeal . . . *may* materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (emphasis added).

12

claims in this litigation. *Cf. Doe v. Dewees*, No. TDC-18-2014, 2022 WL 2195187, at *4 (D. Md. June 17, 2022) (finding risk of piecemeal appeals when interlocutory review would affect only 2 of 35 claims). However the Fourth Circuit were to resolve the question, ensuring the parties litigate this case based on the correct standard of review will at minimum ensure that they are not developing a record on an incorrect legal premise.

Plaintiffs' attempt to fault the Government for not identifying specific discovery requests that "would be averted" is unserious. ECF No. 169 at 16. At the time the Government filed its motion, Plaintiffs had not yet served any discovery on any claim. *See* ECF No. 166-1 at 6. And Plaintiffs had agreed with the Government "that no discovery [was] necessary as to the Separation of Powers claim." *See* ECF No. 159 at 2. Plaintiffs have now apparently reversed course and concluded that they "will proceed with discovery on both the Appointments Clause and separation of powers claims." ECF No. 170 at 1. Although certification would be appropriate regardless of Plaintiffs' shifting tactics, the Government can hardly be blamed for failing to identify then non-existent discovery requests that would be averted by certification.

And now that Plaintiffs have served discovery on their separation-of-powers claim, the benefits of immediate appeal to advance the ultimate termination of this case are crystal clear. Plaintiffs demand discovery into internal agency operations and planning, such as how USAID plans to perform its "[c]ore [f]unctions" or comply with a laundry list of federal statutes. *See* Ex. A at 6. On the government's view of the law, this discovery is unnecessary, irrelevant, likely to invade relevant privileges, and itself violates the separation of powers. *See Cheney*, 542 U.S. at 382. But even if the Government's views on the merits of Plaintiffs' separation-of-powers claim proves incorrect, immediate appeal now obviates nettlesome discovery disputes that would arise about the appropriateness of this inquiry.

## II.  THIS COURT SHOULD ALSO STAY DISCOVERY PENDING RESOLUTION OF THE INTERLOCUTORY APPEAL

Discovery should also be stayed pending completion of proceedings related to any interlocutory appeal. A primary salutary benefit of an interlocutory appeal is that immediate appellate review could avoid burdensome and "(possibly) costly discovery." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 196 (4th Cir. 2011). That principle holds true here, where Plaintiffs are seeking discovery into senior State Department and USAID decision-making, as well as discovery from a component of the Executive Office of the President and the deposition of a former senior White House advisor. With respect to discovery requests directed at White House components or officials, such an inquiry "interfer[es] with a coequal branch's ability to discharge its constitutional responsibilities." *Cheney*, 542 U.S. at 382; *cf. Clinton v. Jones*, 520 U.S. 681, 701 (1997) (recognizing that "the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties" (quoting *Loving v. United States*, 517 U.S. 748, 757 (1996))). If this discovery is permissible at all, it should occur only if there is a compelling "need." *Cheney*, 542 at 388. If the Government prevails in an interlocutory appeal on one or more of the proposed questions, no such need exists.

In response to this, Plaintiffs fail to establish that they will suffer any prejudice from the temporary delay in discovery to permit appellate review. The only prejudice they identify is an assertion that their injuries will be more difficult to remedy "the longer the dismantling of USAID continues." ECF No. 169 at 18. They do not explain why. Indeed, such claim is contrary to their previous representations and litigation conduct. Plaintiffs previously asserted that at some point *before* September 1, 2025, they would "lose the ability to meaningfully achieve the injunctive relief they seek and thus will no longer be able to vindicate their constitutional rights." *See, e.g.*,

14

ECF No. 106 at 1. That date has passed, and with it Plaintiffs' arguments for exigency.[4] Consistent with that lack of urgency, Plaintiffs have recently declined to pursue their proposed early partial motion for summary judgment, in the face of their prior contention that early "resolution of the Separation of Powers claim is . . . essential." ECF No. 159 at 2; *see* ECF No. 170. Nor is there a legal basis for their unsupported assertion: To the extent they seek relief that would require USAID to increase operations to some higher level, challenges seeking "pervasive judicial control over the day-to-day management of the agency" are "not viable." *NTEU*, 149 F.4th at 777. Other forms of remedies, such as backpay or monetary relief for employment harms, are unavailable because of Plaintiffs' litigation strategy to forgo those remedies to seek to avoid channeling.

Plaintiffs' primary authority for continuing discovery is this Court's decision in *International Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 953 (D. Md. 2019). But as this Court is doubtless aware, the Fourth Circuit stayed district court proceedings immediately thereafter. *See Trump v. Int'l Refugee Assistance Project*, No. 19-350 (4th Cir. Sept. 11, 2019). This Court should follow that approach here at the outset, notwithstanding Plaintiffs' suggestion that the Court disregard relevant appellate rulings, ECF No. 169 at 18.

## CONCLUSION

For the foregoing reasons, this Court should certify its August 13, 2025 Memorandum Opinion and Order for interlocutory review and stay discovery pending completion of any Section 1292(b) proceedings.

---

[4] Plaintiffs' intimation that the Government has somehow "run out the clock" is unfounded. ECF No. 169 at 18. Plaintiffs chose not to move for a preliminary injunction after amending their Complaint; they cannot now claim that the Government "ran out" a "clock" they opted to let run.

15

Dated: October 30, 2025          Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

*/s/ Jacob S. Siler*
GARRY D. HARTLIEB (IL Bar. No. 6322571)
CHRISTOPHER M. LYNCH
(DC Bar No. 1049152)
JACOB S. SILER (DC Bar No. 1003383)
JAMES J. WEN (NY Bar No. 5422126)
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-4556
Email: jacob.s.siler@usdoj.gov

*Attorneys for Defendants*