UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J. DOE 4, *et al.*, *individually and on behalf of all others similarly situated*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>UNITED STATES DOGE SERVICE, *et al.*,<br><br>    *Defendants*. | Case No. 8:25-cv-00462-TDC |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR PROTECTIVE ORDER**

Plaintiffs, unidentified current and former USAID employees and contractors, allege that Defendants cancelled government contracts, reduced the number of USAID employees and contractors, and closed USAID's headquarters, thus violating the Appointments Clause and the separation of powers.  *See* 2d Am. Compl., ECF No. 135.  To support these claims, Plaintiffs seek to depose three current or former high-ranking government personnel: Elon Musk, Peter Marocco, and Jeremy Lewin.  As the government understands it, Plaintiffs seek to depose each to determine who made the decision to take certain actions and the current operating status of USAID.  But longstanding limitations on deposing high-level Executive Branch personnel requires Plaintiffs to show exceptional circumstances exist before the depositions occur.  Because Plaintiffs have not made—and cannot make—that showing, a protective order is warranted.

Mr. Lewin was sued in his official capacity as "being delegated the roles of USAID Deputy Administrator for Policy and Programming and of Chief Operating Officer."  *See id.* ¶ 18.  Mr. Marocco was sued in his official capacity as "either serv[ing] or perform[ing] the duties and functions of the Acting USAID Deputy Administrator," *id.* ¶ 17.[1]  Mr. Musk, formerly "an unpaid special government employee pursuant to 18 U.S.C. § 202," was sued in his alleged "official capacity as the *de facto* leader of DOGE."  *Id.* at 2.  Prior to his departure from government service, Mr. Musk was a Senior Advisor to the President and an employee of the White House Office.  *See* Ex. 27, Decl. of Joshua Fisher ¶ 4, ECF No. 28-2.

## ARGUMENT

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or

---

[1] Messrs. Lewin and Marocco have been succeeded in their USAID capacities by Eric Ueland, who is now performing the duties of USAID Deputy Administrator.  *See* ECF No. 180 at 1 n.1.

1

discovery to certain matters." Fed. R. Civ. P. 26(c)(1).  Such an order is needed here because Plaintiffs' attempt to depose certain high-ranking government personnel is not permitted by law absent a heightened showing they cannot make.

"[E]xceptional circumstances must exist before the involuntary depositions of high agency officials are permitted."  See *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *see also Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify[.]"). Indeed, "the Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (citing *United States v. Morgan*, 313 U.S. 409 (1941)).

The reason for this standard is clear: "(1) to protect the integrity and independence of the government's decision-making process; (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants[.]" *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (cleaned up).  The compelled testimony of high-ranking personnel, moreover, raises significant "separation of powers concerns." *In re USA*, 624 F.3d 1368, 1376 (11th Cir. 2010); *see also Morgan*, 313 U.S. at 422.

To meet the "extraordinary circumstances" standard, Plaintiffs must "establish *at a minimum*, that the [personnel] possess information essential to [their] case which is not obtainable from another source." *In re United States (Reno)*, 197 F.3d 310, 313–14 (8th Cir. 1999) (emphasis added and citations omitted); *see also Blankenship v. Fox News Network, LLC*, No. 2:19-cv-236, 2020 WL 7234270, at *6 (S.D. W.Va. Dec. 8, 2020) (explaining that a party seeking to depose a high-ranking governmental official must "make an actual showing" that the official "possesses

personal knowledge relevant to the litigation" that is "essential to that party's case" and which "is not available through any alternative source or less burdensome means" (citations omitted)).

Here, all three potential deponents are "high-ranking" government personnel who are eligible for protection from deposition. "[H]igh-ranking" encompasses more than just cabinet-level officials or agency heads. *Newman*, 531 F. Supp. 3d at 189. As a former White House Senior Advisor, *See* Fisher Decl. ¶ 4, Mr. Musk plainly qualifies as "high-ranking." *Newman*, 531 F. Supp. 3d at 189–91 (barring deposition of White House Chief of Staff and another Deputy Assistant to the President); *see Alexander v. FBI*, 186 F.R.D. 1, 4 & n.1 (D.D.C. 1998) (applying doctrine to a "Senior Advisor to the President" and other White House advisors). And his deposition would necessarily intrude on White House activities and the President's performance of constitutional duties, which triggers significant separation-of-powers concerns. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 383 (2004).

Messrs. Lewin and Marocco, both sued in their official capacities as having performed the duties of Deputy Administrator of USAID, are similarly eligible for protection. *See, e.g.*, *U.S. Bd. of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) (applying doctrine to members of the Board of Parole);[2] *Church of Scientology of Bos. v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990) (applying doctrine to Director of Exempt Organizations Technical Division, National Office of the I.R.S. who occupied a "Senior Executive, Level 4 position and is responsible for the management" of the Division); *United States v. Sensient Colors*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009) (applying doctrine to EPA Regional Administrator for Region 2, who "reports directly to the EPA

---

[2] At the pre-motion conference, Plaintiffs argued that the Fourth Circuit had not yet adopted the Apex Doctrine. Tr. at 6:18–19 (Nov. 19, 2025). In *Merhige*, however, the Fourth Circuit applied the "exceptional circumstances" test before depositions could be taken of high-ranking government actors. 487 F.2d at 29.

3

Administrator, who in turn reports directly to the President of the United States."). The Deputy USAID Administrator is a Senior Executive, Level 4 position. *See* Policy and Supporting Positions at 200, 118th Cong. (2024), *available at* https://www.govinfo.gov/content/pkg/GPO-PLUMBOOK-2024/pdf/GPO-PLUMBOOK-2024.pdf. Indeed, there is no basis for distinguishing the Deputy Administrator of USAID from similar positions to which the doctrine has been applied. *See, e.g.*, *Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002) (Deputy Chief of Staff of the Environmental Protection Agency); *Church of Scientology*, 138 F.R.D. at 12; *cf. Lederman v. N.Y City Dep't of Parks & Rec.*, 731 F.3d 199 (2d Cir. 2013) (affirming protective order barring deposition of former Deputy Mayor).

Nor can Plaintiffs establish that any of these proposed deponents is essential to their case. Even though each "may have first-hand knowledge" of events relevant to Plaintiffs' claims, they cannot establish the information is unobtainable through other means. *See Newman*, 531 F. Supp. 3d at 190.[3] Plaintiffs have never identified the facts they want to establish through these depositions, let alone identified deficiencies in written discovery that require live testimony to resolve. Any specific deficiencies Plaintiffs identify could be addressed through conferral and amendment, if necessary. If Plaintiffs seek only to identify which government actors took certain decisions and on what authority, all that could be worked out through written discovery or stipulations without deposition.[4]

Plaintiffs' failure to exhaust alternatives before seeking depositions of high-ranking personnel is dispositive. Many such alternatives exist. Plaintiffs could, for example, serve

---

[3] Plaintiffs are incorrect that the presumption against depositions of high-ranking governmental personnel applies only in cases of "abuse or harassment" or where the proposed deponent has no personal knowledge. Tr. at 8:20–25; *see e.g.*, *Newman*, 531 F. Supp. 3d at 188–90.

[4] The parties apparently agree that depositions to establish any official's "reasons for taking official actions" would be inappropriate. *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015).

additional interrogatories to obtain any supplemental facts they hope to gain from depositions. *See Alexander*, 186 F.R.D. at 5; *Blankenship*, 2020 WL 7234270, at *7. At a minimum, Plaintiffs must depose other witnesses *before* seeking to depose high-ranking government actors, and then justify why they need the additional depositions. *Blankenship*, 2020 WL 7234270, at *7 (finding it "significant that Plaintiff [had] scheduled the depositions of several others who would also have personal knowledge"). In addition, Defendants have requested that Plaintiffs provide proposed stipulations that would obviate the need for these depositions. Plaintiffs have not provided any such list.

The fact that Mr. Musk has left government service and neither Mr. Lewin nor Mr. Marocco continues to serve in their former roles does not alter this analysis. Courts have recognized that the bar on depositions of high-ranking Executive Branch personnel "is no less applicable to former officials than to current officials," even though any immediate "interference with official duties is absent." *FDIC v. Galan-Alvarez*, Case No. 1:15-mc-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015) (citation omitted); *see* Order at 3, *In re Murthy*, No. 22-30697 (5th Cir. Jan. 5, 2023) ("We agree with other circuits that [the doctrine] is equally applicable to former officials, lest they be ensnared in unnecessary discovery upon leaving office."); *Lederman*, 731 F.3d at 203–04 (former deputy mayor); *Blankenship*, 2020 WL 7234270, at *6. If that doctrine "is to have any meaning, the protections must continue upon the official's departure from public service." *United States v. Wal-Mart Stores, Inc.*, No. PJM-01-cv-152, 2002 WL 562301, at *2–4 (D. Md. Mar. 29, 2002); *see also In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022); *In re United States*, 542 F. App'x 944, 949 (Fed. Cir. 2013).

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion for a protective order precluding the depositions of Messrs. Musk, Lewin, and Marocco.

5

Dated: November 21, 2025                Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

*/s/ Jacob S. Siler*
CHRISTOPHER M. LYNCH
(DC Bar No. 1049152)
JACOB S. SILER (DC Bar No. 1003383)
JAMES J. WEN (NY Bar No. 5422126)
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-4556
Email: jacob.s.siler@usdoj.gov

*Attorneys for Defendants*