```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        NORTHERN DIVISION

 3    J. DOE 4, et al.,           )
                     Plaintiffs,  )
 4                                )
                     vs.          )    CIVIL CASE NO.
 5                                )    8:25-cv-000462-TDC
      UNITED STATES DOGE          )
 6    SERVICE, et al.,            )
                     Defendants.  )
 7    _____    )

 8                     WEDNESDAY, NOVEMBER 19, 2025
                           Greenbelt, Maryland
 9
                        TRANSCRIPT OF PROCEEDINGS
10          TELEPHONIC CASE MANAGEMENT CONFERENCE
            BEFORE THE HONORABLE THEODORE D. CHUANG
11

12    For the Plaintiffs:

13    Andrew H. Warren, Esquire
      Nicole M. Rubin, Esquire
14    Rebecca Stevens, Esquire
       Democracy Defenders Fund
15     600 Pennsylvania Avenue SE, Unit 15180
       Washington, D.C. 20003
16

17    For the Defendants:

18    Jacob S. Siler, Esquire
      James Wen, Esquire
19     U.S. Department of Justice
       Federal Programs Branch
20     1100 L Street NW
       Washington, D.C. 20005
21

22    (Proceedings Recorded by Audio Recording - Transcript Produced
                  by Computer-aided Transcription)
23
              Reported by: Amanda L. Longmore, RPR, CRR, FCRR
24                  Federal Official Court Reporter
                    101 W. Lombard Street, 4th Floor
25                  Baltimore, Maryland  21201
                          410-962-4474
```

**Exhibit A**

Telephonic Case Management Conference 11/19/25

1                    P R O C E E D I N G S

2          (10:02 a.m.)

3          THE CLERK:  The matter now pending before this court

4   is Civil Action Number 25-0462-TDC, J. Doe 4, et al., versus

5   Elon Musk, et al.  We are here today for the purpose of a Case

6   Management Conference.  Beginning with the plaintiffs, counsel

7   please identify yourselves for the record.

8          MR. WARREN:  Good morning, Your Honor.  This is

9   Andrew Warren of Democracy Defenders Fund on behalf of the

10  plaintiffs.  I'm joined today by Beth Stevens and Nicole Rubin.

11         THE COURT:  Good morning.

12         MR. SILER:  Good morning, Your Honor.  This is Jacob

13  Siler with the Department of Justice on behalf of the United

14  States, and with me on the line is James Wen, also from my

15  office.

16         THE COURT:  Okay.  Good morning, everyone.

17     So we are here for a Case Management Conference.  There is

18  this notice that was filed by the defendants regarding a

19  discovery-type motion.  We also have a protective order

20  proposal here.

21     And on that first point, just to clarify for everyone,

22  everyone's in agreement with this stipulated order regarding

23  confidentiality of discovery materials; is that correct?

24         MR. WARREN:  This is Andrew Warren.  Yes, Your Honor,

25  on behalf of the plaintiffs we are.

Telephonic Case Management Conference 11/19/25

1          THE COURT:  And for the Government, too?

2          MR. SILER:  Your Honor, this is Jacob -- yeah, this

3     is Jacob Siler.  I believe you're talking about Docket 181, and

4     that's correct, we are in agreement on that.

5          THE COURT:  So the only thing I will tell you,

6     because I do this in pretty much all of these cases, is I think

7     I'm fine with it, but there's a line on the last page which I'm

8     planning to delete.  It says, "The Clerk of the Court may

9     return to counsel for the parties, or destroy, any sealed

10    material at the end of the litigation, including any appeal."

11        And I typically take that line out.  This order's really

12    governing what the parties are doing.  I'm not going to bind

13    the court.  I mean, we're certainly not releasing sealed

14    material, but the timing of what happens with things is

15    sometimes governed by other record rules and I'm not going to

16    deviate from that.

17        So if I take that line out and then sign this, does

18    anybody have any issues with that?

19         MR. WARREN:  No objection from the plaintiffs, Your

20    Honor.

21         MR. SILER:  None from the Government, either.

22         THE COURT:  Okay.  So we can get that docketed today

23    and get that taken care of.

24        Now, as for the motion for protective order on the

25    depositions, let me ask the plaintiffs, I haven't asked you to

1    respond to the letter so nothing wrong with not having done

2    that, but I was interested in your take on not just wanting to

3    depose these individuals, and it looks like it's Mr. Musk,

4    Mr. Marocco, and Mr. Lewin, but they have a concern about

5    discovery regarding the mental processes of government actors

6    in reaching a decision.  And maybe you can tell me, is that an

7    area you plan to get into and, if so, why?

8            MR. WARREN:  Yes, Your Honor.  Again, this is Andrew

9    Warren.

10           The short answer to the Court's question is no, we don't

11   intend to get into that.  You know, that argument that the

12   Government raises is inevitable to fail for a couple of

13   reasons.  One, they are bringing that from the context of

14   depositions, and the deliberative process privilege and mental

15   process privilege applies to documents.  We're not aware of any

16   Fourth Circuit cases applying it to deposition testimony.

17           But beyond that, the privilege, as the Court is aware,

18   applies to predecisional information, so that's information

19   that is predecisional and deliberative in nature.  It's not

20   regarding an agency's federal position.

21           And of course the privilege is not absolute.  The

22   privilege only apply to opinions and not facts.  There are

23   reasons behind it, of course, to protect the integrity of the

24   deliberative process.  We are not intending to get into any of

25   that.

1        The plaintiffs are seeking discovery on essentially why
2   decisions -- excuse me, not seeking discovery on why decisions
3   were made in terms of what positions the Government
4   contemplated and why they arose at -- arrived at one position
5   rather than another.  That's the deliberative nature that the
6   privilege protects.
7        Instead, what the plaintiffs are seeking discovery on is
8   with regard to the Appointments Clause claim, and as the Court
9   acknowledged in its memorandum granting a preliminary
10  injunction, who made the decisions at issue and under what
11  authority they had.
12       And regarding the separation of powers claim, we need to
13  determine the current state of operations and whether those
14  operations are complying with the statutory minimum as required
15  of USAID, in addition to who made the decisions and under what
16  authority, because that pertains to whether the Executive
17  Branch exceeded its authority.  But the bottom line is that the
18  information we will seek are not the deliberations but the
19  decisions themselves.  The facts, not the opinions.
20            THE COURT:  Okay.  So leaving aside whether or not
21  certain questions leading to certain answers might be protected
22  by privilege or not, you're not planning to ask about mental
23  processes of government actors in reaching a decision, and so
24  that's not really an issue in contention as a practical matter.
25  Is that accurate?

1        MR. WARREN:  That's correct, Your Honor.

2        THE COURT:  Okay.  And then the letter also raises

3   this issue about these officials being high-level Executive

4   Branch officials who cannot be deposed under the Apex Doctrine,

5   I suppose except for under particular circumstances which the

6   Government says are not here.

7        I take it you don't agree with that or we wouldn't be

8   here, or maybe you can just clarify what your view is on

9   whether these officials meet that standard or not.  And is the

10  issue from your perspective they don't qualify for that

11  category or that, you know, their circumstances still warrant,

12  you know, whatever the extraordinary circumstances are, or

13  both?

14        MR. WARREN:  Well, there are a couple issues.  But

15  first, Your Honor is correct that we do not agree with the

16  Government's position that the Apex Doctrine applies here and

17  for a couple reasons.

18        The first is that the Fourth Circuit has never adopted the

19  Apex Doctrine.  It only recently acknowledged that the doctrine

20  exists, which was last year, 2025.  And District Courts within

21  the Fourth Circuit have used the doctrine in contrast to other

22  circuits to limit discovery that's intended to create abuse or

23  harassment.  That's not what's happening here, and the

24  Government doesn't even allege that that's what's happening

25  here.

1        But regarding the substance of the Apex Doctrine, even

2   assuming that the Fourth Circuit recognizes it, we acknowledge

3   that generally speaking deposing Apex officials is discouraged,

4   but the reason why is because it's high-ranking officials are

5   typically removed from the daily subject of the litigation and

6   have no unique knowledge of the facts at issue.  And that's

7   something that District Courts in the Fourth Circuit have

8   pointed out on several occasions.

9        I mean, the Apex Doctrine is rooted in the fact that the

10   executive, the Apex executive lacks any knowledge of the

11   relevant facts.  It does not prohibit the deposition of

12   executives who have personal knowledge that are relevant to the

13   parties' claims and defenses.

14        So we really have two issues here.  One is that the

15   standard in other circuits is that the parties seeking the

16   deponent must be able to show that the official has personal

17   knowledge of the facts; and secondly, that other less

18   burdensome avenues for obtaining that information have been

19   exhausted.

20        Here, the first prong is easily satisfied.  We need look

21   no further than the Court's ruling in granting the preliminary

22   injunction.  The Court found that there were factual questions

23   concerning Mr. Musk, Mr. Marocco, Secretary Rubio, all with

24   regard to their exercise of significant authority.  That

25   pertains to both the Appointments Clause and the separation of

1    powers claims.

2        The Court also found that even in what position Mr. Musk

3    occupied is a factual -- is in dispute and that's relevant to

4    the continuing Government -- excuse me, the continuing

5    Government position issue under the Appointments Clause and how

6    it sits.

7        And Mr. Lewin, just like Mr. Marocco and Mr. Musk and

8    Secretary Rubio, is at the center of the decisionmaking here.

9    I mean, this is not a slip-and-fall case where the plaintiffs

10   are seeking to depose these officials where someone fell

11   outside a government building.

12       The knowledge that these officials, Mr. Musk, Mr. Marocco,

13   Mr. Lewin, and potentially Secretary Rubio have, what they did,

14   when they did it, and under whose authority is the heart of the

15   factual dispute in this case.

16       Regarding the second prong --

17           THE COURT:  Okay.

18           MR. WARREN:  Sorry, Your Honor, I'll pause there.

19           THE COURT:  Well, just for a second.  I mean, the

20   letter refers to Mr. Musk, Mr. Marocco, Mr. Lewin.  Are you

21   also seeking to depose Secretary Rubio or not?

22           MR. WARREN:  We have not at this point, Your Honor,

23   but we haven't received discovery yet.  We haven't received

24   document production from the Government despite the Court's

25   deadline.  We haven't received satisfactory responses to our

1   interrogatories.  So we can't make the determination at this

2   point that we will not seek to depose Secretary Rubio but we

3   also --

4          THE COURT:  But you haven't asked for it, either.

5          MR. WARREN:  We have not, Your Honor, because at this

6   point we believe it would be premature anticipating the

7   information we are entitled to receive from these other

8   witnesses.

9          THE COURT:  Um-hmm, okay.

10         So was there anything else you were going to add?  Again,

11   this isn't necessarily argument on the motion; although, to be

12   honest, since this is a discovery issue, the hope is this

13   doesn't turn into, you know, a long drawn-out briefing process.

14   To some degree having some discussion today to narrow the

15   issues is helpful.  So beyond -- what else were you going to

16   add?  I don't want to cut you off.

17         MR. WARREN:  Not a problem, Your Honor.  I'll keep it

18   brief, recognizing we're not having the argument on the issues

19   today, but as the Court said, we are trying to identify the

20   issues and whether there's even a need to have full briefing on

21   this.

22         But the second prong of the standard under the Apex

23   Doctrine is that the -- no other witnesses have the knowledge

24   that these officials do and that other forms of discovery won't

25   suffice.  Here, it's hard for the Government to argue that

Telephonic Case Management Conference 11/19/25

1    other individuals have the knowledge that these individuals

2    have considering they were at the center of the questions that

3    are being asked, center of the decisionmaking process.

4         But additionally, it's impossible for the Government to

5    say that we can obtain this information from other witnesses

6    when they're not producing discovery.  No documents were

7    produced last week that had not been already published in other

8    cases.  Their discovery production was limited to four

9    declarations submitted in other cases.  Nothing internal,

10   nothing that was nonpublic and, frankly, nothing that was

11   responsive to the majority of the plaintiff document requests.

12        The Government says in their notice of motion that this

13   information could be received -- to be obtained for

14   interrogatories.  The problem is they didn't provide adequate

15   responses to many of our interrogatories.

16        And just by way of example, one of the interrogatories

17   sought information about meetings that Mr. Musk had.  This was

18   an interrogatory sent to the DOGE defendant, that's U.S.

19   Digital Service, DOGE, and to Ms. Gleason.  And the Government

20   responded flat out saying we're not going to provide this

21   information, and now their position is we can't depose Mr. Musk

22   about what meetings he had because we can obtain the

23   information from other sources.  They haven't provided the

24   information.

25             THE COURT:  Okay.

1           MR. WARREN:  So it's certainly premature at this

2    point to say that certain witnesses who are at the very center

3    of controversy are off limits because the information can be

4    obtained through other means.

5           I'm sorry for continuing, Your Honor, but that's all on

6    that point.

7           THE COURT:  Okay.  So just quickly on the other side

8    of this, and obviously, Mr. Siler, I have your letter which is

9    quite detailed so I have a good idea of what your position is,

10   but just on that last point, is it correct that you haven't

11   produced discovery in response to the written requests leaving

12   aside depositions?

13          MR. SILER:  No, Your Honor.  That is not accurate.

14   We have responded -- we have provided substantive responses to

15   interrogatories.  And, you know, plaintiffs have identified

16   some objections to our responses, there's some follow-up

17   questions.  We are conferring on those.  We've taken those

18   concerns back to our client agencies and we are trying to work

19   out whether we can address those concerns.

20          On specifically the USCS issue that plaintiffs identified,

21   we do have changing arguments because those are directed at the

22   White House, but a similar interrogatory that was posed to the

23   State Department we did respond to.  And, again, they had some

24   issues and had some follow-up questions with our response that

25   we are conferring on.

Telephonic Case Management Conference 11/19/25

1        With respect to documents, you know, our response deadline

2   was last week.  Rule 34 permits us to make our production at a

3   reasonable time.  We intend to make rolling productions

4   beginning this Friday.  You know, I don't need to beat a dead

5   horse but there was a lapse in appropriations that set us back

6   a little bit.  We asked for an extension to our response

7   deadline.  We have offered on a few occasions to, you know,

8   work on an agreement to -- or extended schedule for the end of

9   discovery in this case, subject of course to our objections

10  being overruled.  And obviously we would have to put that

11  before the Court but I don't -- we do not agree that it is

12  accurate to say that we have not provided discovery in this

13  case.  Obviously there are issues that the parties are working

14  out, as there is in every case, but it is just simply

15  inaccurate to say that we have not produced discovery.

16        THE COURT:  Okay.  Well, as you all know from both

17  the local -- Case Management Order, the local rules, and the

18  federal rules, there's processes that the parties should go

19  through among themselves before we have an actual motion on

20  discovery, and the idea behind all those procedures is that

21  things get worked out if they can be.  So I encourage you to do

22  that on all the issues that continue to remain in dispute, with

23  the exception of the one that we're talking about now since we

24  have gotten at least to the point of this letter.

25        What I would say at this point is, as I said, usually

Telephonic Case Management Conference 11/19/25

1    these things are either worked out among themselves or when a

2    discovery issue is first teed up for the Court, sometimes

3    issues can be resolved orally through a conference like this,

4    other times it requires the full motion.  This is somewhere in

5    between.

6         What I will say at this point is, first, I see three

7    issues here.  One is the argument that the request for

8    discovery such as the depositions of Mr. Musk, Mr. Marocco, and

9    Mr. Lewin is unnecessary and disproportioned to the needs of

10   this case.

11        I entirely disagree with that.  I think in the prior

12   opinions it's been quite clear that there are factual issues

13   and these three witnesses clearly have something relevant to

14   those issues.  And I don't understand the argument at all that

15   it's disproportionate to the needs of this case.  This is --

16   these are the key people in the case.  We're not talking about

17   deposing hundreds of people on wide-ranging issues.  This is

18   very focused issues here.  These are clearly key witnesses, so

19   that argument's a nonstarter and I'm going to deny any argument

20   or motion or argument that discovery should be barred because

21   it's unnecessary and disproportionate to the needs of the case.

22        On the issue of whether discovery regarding the mental

23   processes of government actors in reaching decisions is off

24   limits, whether by privilege or otherwise, is not clearly

25   stated in the letter what the reason is, which privilege, if

Telephonic Case Management Conference 11/19/25

1    any, but that doesn't seem to be an issue that needs to be

2    decided because the plaintiffs have said that they're not going

3    to be pursuing that kind of discovery.  So it's effectively not

4    either ripe or it's moot.  Whichever way you look at it, it's

5    nothing that needs to be decided.  The parties basically have

6    an agreement that that won't be a subject.

7         On the third issue of whether these are high-ranking

8    government officials who should not be deposed under this Apex

9    Doctrine, I do think that is something that requires some -- a

10   formal motion with some briefing on an expedited schedule with

11   limited limitations on what needs to be said.  We usually try

12   to keep discovery disputes -- try to resolve them crisply and

13   quickly without delaying the case.

14        It is a doctrine that, obviously, it's a very specific

15   legal argument that's being made and I think, one, I don't want

16   to conclude that the Government has said everything it could

17   possibly say in the letter and certainly the defense, while

18   having -- I'm sorry, the plaintiffs, although having made a

19   little bit of an oral argument here, they should have an

20   opportunity to present the cases that they're referring to.

21        So what I would ask everyone to do is to -- we'll have a

22   very tight schedule on a motion on that issue of the Apex

23   Doctrine.  I would ask if the parties think they can make those

24   arguments in five pages, is that something that you see any

25   reason why we can't do that?

1          MR. SILER:  Your Honor, I have a clarifying question,

2     if I might.  On the first issue about --

3          THE COURT:  Sorry, which counsel is this?

4          MR. SILER:  Sorry, this is -- apologies, this is

5     Mr. Siler for the Government.

6          THE COURT:  Yes.  Go ahead.

7          MR. SILER:  On the first issue that we raised -- on

8     the first issue that we raised, and I understand both your

9     prior rulings and your ruling today that you do not wish to

10    hear more on the proportionality argument.  I think the

11    Government for purposes of preservation of that argument would

12    like either a ruling prohibiting us from filing a motion on

13    that or, you know, the ability to preserve those objections in

14    a written motion.

15         That aside, I think we could work with the five-page limit

16    with respect to the -- I mean, Apex is, in my view, a bit of a

17    misnomer of the doctrine but we'll call it that for purposes --

18    for these purposes the Apex Doctrine.  I think we could get

19    that done in five pages, yes.

20         THE COURT:  Okay.  So I understand you want to

21    preserve arguments.  I mean, if we were in a trial setting in

22    the courtroom, I think the transcript of this discussion would

23    be sufficient.  You've stated on the record you want to -- you

24    have a continuing objection to that ruling and this is

25    something -- this is, you know, we're on the record here, a

1    transcript could be ordered of this, so I think you're okay.

2         And then how about from your side, Mr. Warren, in terms of

3    five pages to respond on the Apex Doctrine?

4              MR. WARREN:  Your Honor, that's sufficient for the

5    plaintiffs.

6              THE COURT:  Okay.  So today is November 19th, I

7    believe.  Could we hear from the Government, say, by Friday?

8    It seems like you have already put this argument together

9    largely through the letter anyways.

10             MR. SILER:  Yes, that's sufficient timing for the

11   Government.  This is Mr. Siler again.  Apologies.  That's

12   sufficient timing for the Government.

13        I would note that as of last night the plaintiff indicated

14   they wanted to take the deposition of Mr. Marocco I believe by

15   December 16th.  I don't know if they are planning to stick to

16   that date, but I just flag that for the Court as a potential

17   timing issue.

18             THE COURT:  Sure.  I understand.

19        So then from plaintiff's side, could you respond by, say,

20   Wednesday?

21             MR. WARREN:  Yes, Your Honor.

22             THE COURT:  I mean, is Tuesday possible?

23             MR. WARREN:  Tuesday is possible, Your Honor.

24             THE COURT:  Okay.  That would be great, because that

25   way we're rolling into the Thanksgiving weekend.

Telephonic Case Management Conference 11/19/25

1          Okay.  So on the one hand knowing that, again, we try to
2     keep discovery moving, so I am hopeful that we can get you an
3     answer, maybe not immediately after that given the Thanksgiving
4     holiday but perhaps first week of December.  Probably well
5     before the 16th, although I don't know far enough in advance
6     that one could easily pivot.  And my view is that while we try
7     to keep everything on track, if the Court ends up delaying this
8     process by taking longer in resolving the motion, then I'm not
9     going to prejudice, I guess, whoever wants more discovery, we
10    can probably add a little time at the end of the discovery
11    period if that's the hang-up.  So it wouldn't prevent the
12    depositions or other discovery, whether it can be done on that
13    date, unclear.
14          First off, I don't know what the ruling is going to be
15    even if Mr. Marocco does even get to testify or has to testify,
16    but then if he does whether we can have that by the 16th.  I
17    think we probably could, so I wouldn't say that that should be
18    taken off the table.  We'll do our best to get you a ruling in
19    advance of that one way or the other.
20          And then typically for discovery, like I said, we don't
21    even always have briefing on it, so I'm not sure and I would
22    take the view, again, to keep these things moving that we don't
23    need any reply briefs on this.  This seems like it's a pretty
24    discrete issue and we've already got the preview from the
25    Government, so I'll take those two briefs of five pages each

1    and make a decision on the discovery question.

2        And we'll give you that stipulated protective order that

3    will keep everything else moving.

4        Is there anything else we should discuss while we're here

5    today?

6            MR. WARREN:  Your Honor, this is --

7            MR. SILER:  Your Honor --

8        [Indiscernible crosstalk.]

9            MR. WARREN:  I'm sorry, Jake.  Go ahead.

10            MR. SILER:  Oh, no, that's fine.  I don't want to --

11    certainly want to give you the opportunity to speak.  But this

12    is Mr. Siler for the Government.

13        I mean, I do also want to flag for the Court that we have

14    a pending request for an interlocutory appeal that the

15    Government, and obviously that hasn't held up discovery so far,

16    but I think some of the arguments in that may become moot the

17    further into discovery we get, so we would ask just for a

18    ruling at the earliest possible time.

19            THE COURT:  No, I understand that, and we have it on

20    our -- we definitely have it on our list.  We know about it.

21    We're trying to work through that motion as well as all motions

22    that we get in all the cases.  So yes, I understand that that's

23    there and I don't mind getting the reminder.

24        Anything else from the plaintiffs?

25            MR. SILER:  Thank you, Your Honor.

Telephonic Case Management Conference 11/19/25

1           MR. WARREN:  Yes, Your Honor.  Again, this is
2    Mr. Warren for the plaintiffs.
3           At a certain point we are going to seek an extension of
4    the discovery deadline.  I can get into the reasons why.  The
5    Court identified potentially some of the issues just a moment
6    ago, but the bottom line is that discovery is not proceeding as
7    smoothly as we'd hoped.
8           I think the parties have engaged in many e-mails and
9    multiple meet-and-confers and we are making slow progress, but,
10   as I mentioned before, there have been some issues with the
11   Government's document production, with the response to written
12   discovery, there's been some issues in terms of getting
13   witnesses scheduled and serving deponents, and I won't, you
14   know, belabor the point with the Court.
15          But my ultimate question at this moment is would the Court
16   want us to file a notice of motion to extend discovery?  The
17   defendants have told us they'd agree to an extension.  The
18   issue at this point is we don't know exactly how far we will
19   need to push discovery because it's going to depend how much
20   discovery actually proceeds in a timely manner, but we did want
21   to alert the Court that both sides agree that an extension of
22   the deadline, the current discovery deadlines is necessary.
23          THE COURT:  So, okay.  And Mr. Siler, I think you had
24   said earlier that at least to some degree in your view things
25   have been slowed down by the shutdown, and so it would seem at

Telephonic Case Management Conference 11/19/25

1    a minimum just to adjust for that.  There could be some

2    extension.  But do you have a -- I mean, it sounds like -- I

3    mean, do you agree to some extension, although I don't know if

4    you agree on how much?

5              MR. SILER:  This is Mr. Siler.  Yes.  I mean, I

6    believe we said this in at least one of -- maybe our extension

7    motion with respect to discovery that there have been some

8    delays related to the shutdown.  We obviously did not obtain a

9    stay of the case during that period, but given those delays, I

10   think we would agree to some extension.  I don't think the

11   parties have at this point ripened that agreement to a specific

12   timeline and I'm not sure that there will be a dispute about

13   how long the extension would be, but I do think that is

14   something that the parties could work on before we come back to

15   the Court about the length of that extension.

16             THE COURT:  So --

17        [Indiscernible crosstalk.]

18             MR. SILER:  Apologies.  Again, that would be subject

19   to the specific obviously objections that we've raised about

20   particular discovery.

21             THE COURT:  Sure.  I mean, I think we -- typically if

22   we're all in agreement that some extension makes sense, if only

23   just to adjust for the delayed ability of the Government to

24   react during the shutdown, and then the usual approach, if you

25   can reach an agreement, which is of course highly encouraged,

1    you would just file a joint motion or consent motion.  I know

2    the Case Management Order consent motions don't need to be

3    previewed.  And with a proposed order that gives the old dates

4    and the new dates and we can usually deal with that pretty

5    easily.

6         If it's contested, then, you know, I might suggest some

7    sort of notice like you've already filed, which probably

8    doesn't have to be very detailed just to tee it up because if

9    it's contested it's probably easier to deal with through a

10   conference like this than to have briefing on dates and things

11   like that, but hopefully it doesn't come to that.

12        And I don't mind, again, if you're waiting to see what

13   happens with this current motion, again, I would like to try to

14   tell you I can get you an answer pretty quickly but if for some

15   reason I'm delayed, you know, you may build that into the

16   process so maybe it makes sense to wait a little bit and see,

17   one, do I delay the process by taking longer on this motion,

18   obviously depending on whether these individuals are subject to

19   deposition or not, that could affect how much time you need.

20        And so you might want to wait, but maybe we do have a

21   common understanding that some extension is appropriate so that

22   no one gets kind of caught off guard at the end of this and

23   getting into the issues about, you know, whether the motion

24   should have been filed earlier.

25        Is that agreeable to everyone?

1          MR. WARREN:  This is Mr. Warren.  That is agreeable

2     to the plaintiffs, Your Honor.

3          MR. SILER:  And this is Mr. Siler, yes.  Agreed on

4     behalf of the Government.

5          THE COURT:  Okay.  Okay.  So we'll issue an order

6     with the dates on the briefing and also issue the protective

7     order.  Is there anything else we should discuss today?

8          MR. SILER:  Not from the Government.

9          MR. WARREN:  Not from the plaintiffs, Your Honor.

10          THE COURT:  Okay.  Thank you all very much, then.

11     Have a good day.

12          (The proceedings concluded at 10:30 a.m.)

13                    CERTIFICATE OF OFFICIAL REPORTER

14          I, Amanda L. Longmore, Registered Professional Reporter
      and Federal Certified Realtime Reporter, do hereby certify that
15     the foregoing is a correct transcript of the audio-recorded
      proceedings in the above-entitled matter, audio recorded via
16     FTR Gold on November 19, 2025, and transcribed from the audio
      recording to the best of my ability and that said transcript
17     has been compared with the audio recording.

18                              Dated this 20th day of November 2025
                                 -S-
19                              _____

20                              AMANDA L. LONGMORE, RPR, CRR, FCRR
                                FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25

Telephonic Case Management Conference 11/19/25

**10:02** [1] - 2:2
**16th** [3] - 16:15; 17:5, 16
**181** [1] - 3:3
**19th** [1] - 16:6
**2025** [1] - 6:20
**25-0462-TDC** [1] - 2:4
**34** [1] - 12:2
**4** [1] - 2:4
**a.m** [1] - 2:2
**ability** [2] - 15:13; 20:23
**able** [1] - 7:16
**absolute** [1] - 4:21
**abuse** [1] - 6:22
**accurate** [3] - 5:25; 11:13; 12:12
**acknowledge** [1] - 7:2
**acknowledged** [2] - 5:9; 6:19
**Action** [1] - 2:4
**actors** [3] - 4:5; 5:23; 13:23
**actual** [1] - 12:19
**add** [3] - 9:10, 16; 17:10
**addition** [1] - 5:15
**additionally** [1] - 10:4
**address** [1] - 11:19
**adequate** [1] - 10:14
**adjust** [2] - 20:1, 23
**adopted** [1] - 6:18
**advance** [2] - 17:5, 19
**affect** [1] - 21:19
**agencies** [1] - 11:18
**agency's** [1] - 4:20
**ago** [1] - 19:6
**agree** [8] - 6:7, 15; 12:11; 19:17, 21; 20:3, 10
**agreeable** [1] - 21:25
**agreement** [7] - 2:22; 3:4; 12:8; 14:6; 20:11, 22, 25
**ahead** [2] - 15:6; 18:9

**al** [2] - 2:4
**alert** [1] - 19:21
**allege** [1] - 6:24
**Andrew** [3] - 2:9, 24; 4:8
**answer** [3] - 4:10; 17:3; 21:14
**answers** [1] - 5:21
**anticipating** [1] - 9:6
**anyways** [1] - 16:9
**Apex** [13] - 6:4, 16, 19; 7:1, 3, 9-10; 9:22; 14:8, 22; 15:16, 18; 16:3
**apologies** [3] - 15:4; 16:11; 20:18
**appeal** [2] - 3:10; 18:14
**applies** [3] - 4:15, 18; 6:16
**apply** [1] - 4:22
**applying** [1] - 4:16
**Appointments** [3] - 5:8; 7:25; 8:5
**approach** [1] - 20:24
**appropriate** [1] - 21:21
**appropriations** [1] - 12:5
**area** [1] - 4:7
**argue** [1] - 9:25
**argument** [12] - 4:11; 9:11, 18; 13:7, 14, 19-20; 14:15, 19; 15:10; 16:8
**argument's** [1] - 13:19
**arguments** [4] - 11:21; 14:24; 15:21; 18:16
**arose** [1] - 5:4
**arrived** [1] - 5:4
**aside** [3] - 5:20; 11:12; 15:15
**assuming** [1] - 7:2
**authority** [5] - 5:11, 16-17; 7:24; 8:14
**avenues** [1] - 7:18
**aware** [2] - 4:15, 17
**barred** [1] - 13:20

**beat** [1] - 12:4
**become** [1] - 18:16
**beginning** [2] - 2:6; 12:4
**behalf** [3] - 2:9, 13, 25
**behind** [2] - 4:23; 12:20
**belabor** [1] - 19:14
**best** [1] - 17:18
**Beth** [1] - 2:10
**between** [1] - 13:5
**beyond** [2] - 4:17; 9:15
**bind** [1] - 3:12
**bit** [4] - 12:6; 14:19; 15:16; 21:16
**bottom** [2] - 5:17; 19:6
**Branch** [2] - 5:17; 6:4
**brief** [1] - 9:18
**briefing** [5] - 9:13, 20; 14:10; 17:21; 21:10
**briefs** [2] - 17:23, 25
**bringing** [1] - 4:13
**build** [1] - 21:15
**building** [1] - 8:11
**burdensome** [1] - 7:18
**cannot** [1] - 6:4
**care** [1] - 3:23
**case** [13] - 8:9, 15; 12:9, 13-14, 17; 13:10, 15-16, 21; 14:13; 20:9; 21:2
**Case** [2] - 2:5, 17
**cases** [6] - 3:6; 4:16; 10:8; 14:20; 18:22
**category** [1] - 6:11
**caught** [1] - 21:22
**center** [4] - 8:8; 10:2; 11:2
**certain** [4] - 5:21; 11:2; 19:3
**certainly** [4] - 3:13; 11:1; 14:17; 18:11
**changing** [1] - 11:21
**Circuit** [5] - 4:16; 6:18, 21; 7:2, 7

**circuits** [2] - 6:22; 7:15
**circumstances** [3] - 6:5, 11
**Civil** [1] - 2:4
**claim** [2] - 5:8, 12
**claims** [2] - 7:13; 8:1
**clarify** [2] - 2:21; 6:8
**clarifying** [1] - 15:1
**Clause** [3] - 5:8; 7:25; 8:5
**clear** [1] - 13:12
**clearly** [3] - 13:13, 18, 24
**CLERK** [1] - 2:3
**Clerk** [1] - 3:8
**client** [1] - 11:18
**common** [1] - 21:21
**complying** [1] - 5:14
**concern** [1] - 4:4
**concerning** [1] - 7:23
**concerns** [2] - 11:18
**conclude** [1] - 14:16
**Conference** [2] - 2:6, 17
**conference** [2] - 13:3; 21:10
**conferring** [2] - 11:17, 25
**confers** [1] - 19:9
**confidentiality** [1] - 2:23
**consent** [2] - 21:1
**considering** [1] - 10:2
**contemplated** [1] - 5:4
**contention** [1] - 5:24
**contested** [2] - 21:6, 9
**context** [1] - 4:13
**continue** [1] - 12:22
**continuing** [4] - 8:4; 11:5; 15:24
**contrast** [1] - 6:21
**controversy** [1] - 11:3
**correct** [5] - 2:23; 3:4; 6:1, 15; 11:10

**counsel** [2] - 2:6; 3:9; 15:3
**couple** [3] - 4:12; 6:14, 17
**course** [4] - 4:21, 23; 12:9; 20:25
**Court** [16] - 3:8; 4:17; 5:8; 7:22; 8:2; 9:19; 12:11; 13:2; 16:16; 17:7; 18:13; 19:5, 14-15, 21; 20:15
**court** [2] - 2:3; 3:13
**COURT** [25] - 2:11, 16; 3:1, 5, 22; 5:20; 6:2; 8:17, 19; 9:4, 9; 10:25; 11:7; 12:16; 15:3, 6, 20; 16:6, 18, 22, 24; 18:19; 19:23; 20:16, 21
**Court's** [3] - 4:10; 7:21; 8:24
**courtroom** [1] - 15:22
**Courts** [2] - 6:20; 7:7
**create** [1] - 6:22
**crisply** [1] - 14:12
**crosstalk** [2] - 18:8; 20:17
**current** [3] - 5:13; 19:22; 21:13
**cut** [1] - 9:16
**daily** [1] - 7:5
**date** [2] - 16:16; 17:13
**dates** [3] - 21:3, 10
**dead** [1] - 12:4
**deadline** [5] - 8:25; 12:1, 7; 19:4, 22
**deadlines** [1] - 19:22
**deal** [2] - 21:4, 9
**December** [2] - 16:15; 17:4
**decided** [2] - 14:2, 5
**decision** [3] - 4:6; 5:23; 18:1
**decisionmaking** [2] - 8:8; 10:3
**decisions** [6] - 5:2, 10, 15, 19; 13:23

**declarations** [1] - 10:9
**defendant** [1] - 10:18
**defendants** [2] - 2:18; 19:17
**Defenders** [1] - 2:9
**defense** [1] - 14:17
**defenses** [1] - 7:13
**definitely** [1] - 18:20
**degree** [2] - 9:14; 19:24
**delay** [1] - 21:17
**delayed** [2] - 20:23; 21:15
**delaying** [1] - 14:13; 17:7
**delays** [2] - 20:8
**delete** [1] - 3:8
**deliberations** [1] - 5:18
**deliberative** [4] - 4:14, 19, 24; 5:5
**Democracy** [1] - 2:9
**deny** [1] - 13:19
**Department** [2] - 2:13; 11:23
**deponent** [1] - 7:16
**deponents** [1] - 19:13
**depose** [5] - 4:3; 8:10, 21; 9:2; 10:21
**deposed** [2] - 6:4; 14:8
**deposing** [2] - 7:3; 13:17
**deposition** [4] - 4:16; 7:11; 16:14; 21:19
**depositions** [5] - 3:25; 4:14; 11:12; 13:8; 17:12
**despite** [1] - 8:24
**destroy** [1] - 3:9
**detailed** [2] - 11:9; 21:8
**determination** [1] - 9:1
**determine** [1] - 5:13
**deviate** [1] - 3:16
**Digital** [1] - 10:19

Telephonic Case Management Conference 11/19/25

**directed** [1] - 11:21
**disagree** [1] - 13:11
**discouraged** [1] - 7:3
**discovery** [40] - 2:19, 23; 4:5; 5:1, 7; 6:22; 8:23; 9:12, 24; 10:6, 8; 11:11; 12:9, 12, 15, 20; 13:2, 8, 20, 22; 14:3, 12; 17:2, 9-10, 12, 20; 18:1, 15, 17; 19:4, 6, 12, 16, 19-20, 22; 20:7, 20
**discovery-type** [1] - 2:19
**discrete** [1] - 17:24
**discuss** [1] - 18:4
**discussion** [2] - 9:14; 15:22
**disproportionate** [2] - 13:15, 21
**disproportionate** [1] - 13:9
**dispute** [4] - 8:3, 15; 12:22; 20:12
**disputes** [1] - 14:12
**District** [2] - 6:20; 7:7
**Docket** [1] - 3:3
**docketed** [1] - 3:22
**Doctrine** [10] - 6:4, 16, 19; 7:1, 9; 9:23; 14:9, 23; 15:18; 16:3
**doctrine** [4] - 6:19, 21; 14:14; 15:17
**document** [3] - 8:24; 10:11; 19:11
**documents** [3] - 4:15; 10:6; 12:1
**Doe** [1] - 2:4
**DOGE** [2] - 10:18
**done** [3] - 4:1; 15:19; 17:12
**down** [1] - 19:25
**drawn** [1] - 9:13
**drawn-out** [1] - 9:13
**during** [2] - 20:9,

24
**e-mails** [1] - 19:8
**earliest** [1] - 18:18
**easier** [1] - 21:9
**easily** [3] - 7:20; 17:6; 21:5
**effectively** [1] - 14:3
**either** [5] - 3:21; 9:4; 13:1; 14:4; 15:12
**Elon** [1] - 2:5
**encourage** [1] - 12:21
**encouraged** [1] - 20:25
**end** [4] - 3:10; 12:8; 17:10; 21:22
**ends** [1] - 17:7
**engaged** [1] - 19:8
**entirely** [1] - 13:11
**entitled** [1] - 9:7
**essentially** [1] - 5:1
**et** [2] - 2:4
**exactly** [1] - 19:18
**example** [1] - 10:16
**exceeded** [1] - 5:17
**except** [1] - 6:5
**exception** [1] - 12:23
**excuse** [2] - 5:2; 8:4
**Executive** [2] - 5:16; 6:3
**executive** [1] - 7:10
**executives** [1] - 7:12
**exercise** [1] - 7:24
**exhausted** [1] - 7:19
**exists** [1] - 6:20
**expedited** [1] - 14:10
**extend** [1] - 19:16
**extended** [1] - 12:8
**extension** [12] - 12:6; 19:3, 17, 21; 20:2, 6, 10, 13, 15, 22; 21:21
**extraordinary** [1]

- 6:12
**fact** [1] - 7:9
**facts** [5] - 4:22; 5:19; 7:6, 11, 17
**factual** [4] - 7:22; 8:3, 15; 13:12
**fail** [1] - 4:12
**fall** [1] - 8:9
**far** [3] - 17:5; 18:15; 19:18
**federal** [2] - 4:20; 12:18
**fell** [1] - 8:10
**few** [1] - 12:7
**file** [2] - 19:16; 21:1
**filed** [3] - 2:18; 21:7, 24
**filing** [1] - 15:12
**fine** [2] - 3:7; 18:10
**first** [11] - 2:21; 6:15, 18; 7:20; 13:2, 6; 15:2, 7-8; 17:4, 14
**five** [5] - 14:24; 15:15, 19; 16:3; 17:25
**five-page** [1] - 15:15
**flag** [2] - 16:16; 18:13
**flat** [1] - 10:20
**focused** [1] - 13:18
**follow** [2] - 11:16, 24
**follow-up** [2] - 11:16, 24
**formal** [1] - 14:10
**forms** [1] - 9:24
**four** [1] - 10:8
**Fourth** [5] - 4:16; 6:18, 21; 7:2, 7
**frankly** [1] - 10:10
**Friday** [2] - 12:4; 16:7
**full** [2] - 9:20; 13:4
**Fund** [1] - 2:9
**generally** [1] - 7:3
**given** [2] - 17:3; 20:9
**Gleason** [1] - 10:19
**governed** [1] - 3:15
**governing** [1] - 3:12
**government** [5] - 4:5; 5:23; 8:11;

13:23; 14:8
**Government** [23] - 3:1, 21; 4:12; 5:3; 6:6, 24; 8:4, 24; 9:25; 10:4, 12, 19; 14:16; 15:5, 11; 16:7, 11-12; 17:25; 18:12, 15; 20:23
**Government's** [2] - 6:16; 19:11
**granting** [2] - 5:9; 7:21
**great** [1] - 16:24
**guard** [1] - 21:22
**guess** [1] - 17:9
**hand** [1] - 17:1
**hang** [1] - 17:11
**hang-up** [1] - 17:11
**harassment** [1] - 6:23
**hard** [1] - 9:25
**hear** [2] - 15:10; 16:7
**heart** [1] - 8:14
**held** [1] - 18:15
**helpful** [1] - 9:15
**high** [3] - 6:3; 7:4; 14:7
**high-level** [1] - 6:3
**high-ranking** [2] - 7:4; 14:7
**highly** [1] - 20:25
**hmm** [1] - 9:9
**holiday** [1] - 17:4
**honest** [1] - 9:12
**Honor** [22] - 2:8, 12, 24; 3:2, 20; 4:8; 6:1, 15; 8:18, 22; 9:5, 17; 11:5, 13; 15:1; 16:4, 21, 23; 18:6, 25; 19:1
**hope** [1] - 9:12
**hoped** [1] - 19:7
**hopeful** [1] - 17:2
**hopefully** [1] - 21:11
**horse** [1] - 12:5
**House** [1] - 11:22
**hundreds** [1] - 13:17
**idea** [2] - 11:9; 12:20
**identified** [3] - 11:15, 20; 19:5
**identify** [2] - 2:7;

9:19
**immediately** [1] - 17:3
**impossible** [1] - 10:4
**inaccurate** [1] - 12:15
**including** [1] - 3:10
**indicated** [1] - 16:13
**indiscernible** [1] - 20:17
**Indiscernible** [1] - 18:8
**individuals** [4] - 4:3; 10:1; 21:18
**inevitable** [1] - 4:12
**information** [12] - 4:18; 5:18; 7:18; 9:7; 10:5, 13, 17, 21, 23-24; 11:3
**injunction** [2] - 5:10; 7:22
**instead** [1] - 5:7
**integrity** [1] - 4:23
**intend** [2] - 4:11; 12:3
**intended** [1] - 6:22
**intending** [1] - 4:24
**interested** [1] - 4:2
**interlocutory** [1] - 18:14
**internal** [1] - 10:9
**interrogatories** [5] - 9:1; 10:14-16; 11:15
**interrogatory** [2] - 10:18; 11:22
**issue** [19] - 5:10, 24; 6:3, 10; 7:6; 8:5; 9:12; 11:20; 13:2, 22; 14:1, 7, 22; 15:2, 7-8; 16:17; 17:24; 19:18
**issues** [19] - 3:18; 6:14; 7:14; 9:15, 18, 20; 11:24; 12:13, 22; 13:3, 7, 12, 14, 17-18; 19:5, 10, 22; 21:23
**Jacob** [3] - 2:12; 3:2

**Jake** [1] - 18:9
**James** [1] - 2:14
**joined** [1] - 2:10
**joint** [1] - 21:1
**Justice** [1] - 2:13
**keep** [6] - 9:17; 14:12; 17:2, 7, 22; 18:3
**key** [2] - 13:16, 18
**kind** [2] - 14:3; 21:22
**knowing** [1] - 17:1
**knowledge** [7] - 7:6, 10, 12, 17; 8:12; 9:23; 10:1
**lacks** [1] - 7:10
**lapse** [1] - 12:5
**largely** [1] - 16:9
**last** [6] - 3:7; 6:20; 10:7; 11:10; 12:2; 16:13
**leading** [1] - 5:21
**least** [3] - 12:24; 19:24; 20:6
**leaving** [2] - 5:20; 11:11
**legal** [1] - 14:15
**length** [1] - 20:15
**less** [1] - 7:17
**letter** [8] - 4:1; 6:2; 8:20; 11:8; 12:24; 13:25; 14:17; 16:9
**level** [1] - 6:3
**Lewin** [5] - 4:4; 8:7, 13, 20; 13:9
**limit** [2] - 6:22; 15:15
**limitations** [1] - 14:11
**limited** [2] - 10:8; 14:11
**limits** [2] - 11:3; 13:24
**line** [6] - 2:14; 3:7, 11, 17; 5:17; 19:6
**list** [1] - 18:20
**litigation** [2] - 3:10; 7:5
**local** [2] - 12:17
**look** [2] - 7:20; 14:4
**looks** [1] - 4:3
**mails** [1] - 19:8
**majority** [1] - 10:11
**Management** [2] - 2:6, 17

**management** [2] - 12:17; 21:2
**manner** [1] - 19:20
**Marocco** [8] - 4:4; 7:23; 8:7, 12, 20; 13:8; 16:14; 17:15
**material** [2] - 3:10, 14
**materials** [1] - 2:23
**matter** [2] - 2:3; 5:24
**mean** [12] - 3:13; 7:9; 8:9, 19; 15:16, 21; 16:22; 18:13; 20:2, 5, 21
**means** [1] - 11:4
**meet** [2] - 6:9; 19:9
**meet-and-confers** [1] - 19:9
**meetings** [2] - 10:17, 22
**memorandum** [1] - 5:9
**mental** [4] - 4:5, 14; 5:22; 13:22
**mentioned** [2] - 19:10
**might** [4] - 5:21; 15:2; 21:6, 20
**mind** [2] - 18:23; 21:12
**minimum** [2] - 5:14; 20:1
**misnomer** [1] - 15:17
**moment** [2] - 19:5, 15
**moot** [2] - 14:4; 18:16
**morning** [4] - 2:8, 11-12, 16
**motion** [20] - 2:19; 3:24; 9:11; 10:12; 12:19; 13:4, 20; 14:10, 22; 15:12, 14; 17:8; 18:21; 19:16; 20:7; 21:1, 13, 17, 23
**motions** [2] - 18:21; 21:2
**moving** [3] - 17:2, 22; 18:3
**MR** [30] - 2:8, 12,

24; 3:2, 19, 21; 4:8; 6:1, 14; 8:18, 22; 9:5, 17; 11:1, 13; 15:1, 4, 7; 16:4, 10, 21, 23; 18:6, 9-10, 25; 19:1; 20:5, 18
**multiple** [1] - 19:9
**musk** [7] - 4:3; 8:2, 12, 20; 10:17, 21; 13:8
**Musk** [3] - 2:5; 7:23; 8:7
**must** [1] - 7:16
**narrow** [1] - 9:14
**nature** [2] - 4:19; 5:5
**necessarily** [1] - 9:11
**necessary** [1] - 19:22
**need** [8] - 5:12; 7:20; 9:20; 12:4; 17:23; 19:19; 21:2, 19
**needs** [6] - 13:9, 15, 21; 14:1, 5, 11
**never** [1] - 6:18
**new** [1] - 21:4
**Nicole** [1] - 2:10
**night** [1] - 16:13
**none** [1] - 3:21
**nonpublic** [1] - 10:10
**nonstarter** [1] - 13:19
**note** [1] - 16:13
**nothing** [5] - 4:1; 10:9; 14:5
**notice** [4] - 2:18; 10:12; 19:16; 21:7
**November** [1] - 16:6
**Number** [1] - 2:4
**objection** [2] - 3:19; 15:24
**objections** [4] - 11:16; 12:9; 15:13; 20:19
**obtain** [3] - 10:5, 22; 20:8
**obtained** [2] - 10:13; 11:4
**obtaining** [1] - 7:18
**obviously** [8] - 11:8; 12:10, 13;

14:14; 18:15; 20:8, 19; 21:18
**occasions** [2] - 7:8; 12:7
**occupied** [1] - 8:3
**offered** [1] - 12:7
**office** [1] - 2:15
**official** [1] - 7:16
**officials** [9] - 6:3, 9; 7:3; 8:10, 12; 9:24; 14:8
**old** [1] - 21:3
**one** [13] - 4:13; 5:4; 7:14; 10:16; 12:23; 13:7; 14:15; 17:1, 6, 19; 20:6; 21:17, 22
**operations** [2] - 5:13
**opinions** [3] - 4:22; 5:19; 13:12
**opportunity** [2] - 14:20; 18:11
**oral** [1] - 14:19
**orally** [1] - 13:3
**order** [7] - 2:19, 22; 3:24; 12:17; 18:2; 21:2
**order's** [1] - 3:11
**ordered** [1] - 16:1
**otherwise** [1] - 13:24
**outside** [1] - 8:11
**overruled** [1] - 12:10
**page** [2] - 3:7; 15:15
**pages** [4] - 14:24; 15:19; 16:3; 17:25
**particular** [2] - 6:5; 20:20
**parties** [10] - 3:9, 12; 7:15; 12:13, 18; 14:5, 23; 19:8; 20:11, 14
**parties'** [1] - 7:13
**pause** [1] - 8:18
**pending** [2] - 2:3; 18:14
**people** [2] - 13:16
**perhaps** [1] - 17:4
**period** [2] - 17:11; 20:9
**permits** [1] - 12:2
**personal** [2] - 7:12, 16
**perspective** [1] -

6:10
**pertains** [2] - 5:16; 7:25
**pivot** [1] - 17:6
**plaintiff** [2] - 10:11; 16:13
**plaintiff's** [1] - 16:19
**plaintiffs** [15] - 2:6, 10, 25; 3:19, 25; 5:1, 7; 8:9; 11:15, 20; 14:2, 18; 16:5; 18:24; 19:2
**plan** [1] - 4:7
**planning** [3] - 3:8; 5:22; 16:15
**point** [14] - 2:21; 8:22; 9:2, 6; 11:2, 6, 10; 12:24; 13:6; 19:3, 14, 18; 20:11
**pointed** [1] - 7:8
**posed** [1] - 11:22
**position** [7] - 4:20; 5:4; 6:16; 8:2, 5; 10:21; 11:9
**positions** [1] - 5:3
**possible** [3] - 16:22; 18:18
**possibly** [1] - 14:17
**potential** [1] - 16:16
**potentially** [2] - 8:13; 19:5
**powers** [2] - 5:12; 8:1
**practical** [1] - 5:24
**predecisional** [1] - 4:18
**prejudice** [1] - 17:9
**preliminary** [2] - 5:9; 7:21
**premature** [2] - 9:6; 11:1
**present** [1] - 14:20
**preservation** [1] - 15:11
**preserve** [2] - 15:13, 21
**pretty** [4] - 3:6; 17:23; 21:4, 14
**prevent** [1] - 17:11

**preview** [1] - 17:24
**previewed** [1] - 21:3
**privilege** [9] - 4:14, 17, 21-22; 5:6, 22; 13:24
**problem** [2] - 9:17; 10:14
**procedures** [1] - 12:20
**proceeding** [1] - 19:6
**proceeds** [1] - 19:20
**process** [8] - 4:14, 24; 9:13; 10:3; 17:8; 21:16
**processes** [4] - 4:5; 5:23; 12:18; 13:23
**produced** [3] - 10:7; 11:11; 12:15
**producing** [1] - 10:6
**production** [4] - 8:24; 10:8; 12:2; 19:11
**productions** [1] - 12:3
**progress** [1] - 19:9
**prohibit** [1] - 7:11
**prohibiting** [1] - 15:12
**prong** [3] - 7:20; 8:16; 9:22
**proportionality** [1] - 15:10
**proposal** [1] - 2:20
**proposed** [1] - 21:3
**protect** [1] - 4:23
**protected** [1] - 5:21
**protective** [3] - 2:19; 3:24; 18:2
**protects** [1] - 5:6
**provide** [2] - 10:14, 20
**provided** [3] - 10:23; 11:14; 12:12
**published** [1] - 10:7
**purpose** [1] - 2:5
**purposes** [3] -

15:11, 17
**pursuing** [1] - 14:3
**push** [1] - 19:19
**put** [2] - 12:10; 16:8
**qualify** [1] - 6:10
**questions** [5] - 5:21; 7:22; 10:2; 11:17, 24
**quickly** [3] - 11:7; 14:13; 21:14
**quite** [2] - 11:9; 13:12
**raised** [3] - 15:7; 20:19
**raises** [2] - 4:12; 6:2
**ranging** [1] - 13:17
**ranking** [2] - 7:4; 14:7
**rather** [1] - 5:8
**reach** [1] - 20:25
**reaching** [3] - 4:6; 5:23; 13:23
**react** [1] - 20:24
**really** [3] - 3:11; 5:24; 7:14
**reason** [4] - 7:4; 13:25; 14:25; 21:15
**reasonable** [1] - 12:3
**reasons** [4] - 4:13, 23; 6:17; 19:4
**receive** [1] - 9:7
**received** [4] - 8:23, 25; 10:13
**recently** [1] - 6:19
**recognizes** [1] - 7:2
**recognizing** [1] - 9:18
**record** [4] - 2:7; 3:15; 15:23, 25
**referring** [1] - 14:20
**refers** [1] - 8:20
**regard** [2] - 5:8; 7:24
**regarding** [8] - 2:18, 22; 4:5, 20; 5:12; 7:1; 8:16; 13:22
**related** [1] - 20:8
**releasing** [1] - 3:13
**relevant** [4] -

Telephonic Case Management Conference 11/19/25

7:11; 8:3; 13:13
**remain** [1] - 12:22
**reminder** [1] - 18:23
**removed** [1] - 7:5
**reply** [1] - 17:23
**request** [2] - 13:7; 18:14
**requests** [2] - 10:11; 11:11
**required** [1] - 5:14
**requires** [2] - 13:4; 14:9
**resolve** [1] - 14:12
**resolved** [1] - 13:3
**resolving** [1] - 17:8
**respect** [3] - 12:1; 15:16; 20:7
**respond** [4] - 4:1; 11:23; 16:3, 19
**responded** [2] - 10:20; 11:14
**response** [5] - 11:11, 24; 12:1, 6; 19:11
**responses** [4] - 8:25; 10:15; 11:14, 16
**responsive** [1] - 10:11
**return** [1] - 3:9
**ripe** [1] - 14:4
**ripened** [1] - 20:11
**rolling** [2] - 12:3; 16:25
**rooted** [1] - 7:9
**Rubin** [1] - 2:10
**Rubio** [5] - 7:23; 8:8, 13, 21; 9:2
**Rule** [1] - 12:2
**rules** [3] - 3:15; 12:17
**ruling** [7] - 7:21; 15:9, 12, 24; 17:14, 18; 18:18
**rulings** [1] - 15:9
**satisfactory** [1] - 8:25
**satisfied** [1] - 7:20
**schedule** [3] - 12:8; 14:10, 22
**scheduled** [1] - 19:13
**sealed** [2] - 3:9, 13
**second** [3] - 8:16,

19; 9:22
**secondly** [1] - 7:17
**Secretary** [5] - 7:23; 8:8, 13, 21; 9:2
**see** [4] - 13:6; 14:24; 21:12, 16
**seek** [3] - 5:18; 9:2; 19:3
**seeking** [6] - 5:1, 7; 7:15; 8:10, 21
**seem** [2] - 14:1; 19:25
**sense** [2] - 20:22; 21:16
**sent** [1] - 10:18
**separation** [2] - 5:12; 7:25
**Service** [1] - 10:19
**serving** [1] - 19:13
**set** [1] - 12:5
**setting** [1] - 15:21
**several** [1] - 7:8
**short** [1] - 4:10
**show** [1] - 7:16
**shutdown** [3] - 19:25; 20:8, 24
**side** [3] - 11:7; 16:2, 19
**sides** [1] - 19:21
**sign** [1] - 3:17
**significant** [1] - 7:24
**SILER** [13] - 2:12; 3:2, 21; 11:13; 15:1, 4, 7; 16:10; 18:7, 10, 25; 20:5, 18
**Siler** [8] - 2:13; 3:3; 11:8; 15:5; 16:11; 18:12; 19:23; 20:5
**similar** [1] - 11:22
**simply** [1] - 12:14
**sits** [1] - 8:6
**slip** [1] - 8:9
**slip-and-fall** [1] - 8:9
**slow** [1] - 19:9
**slowed** [1] - 19:25
**smoothly** [1] - 19:7
**someone** [1] - 8:10
**sometimes** [2] - 3:15; 13:2
**somewhere** [1] -

13:4
**sorry** [6] - 8:18; 11:5; 14:18; 15:3; 18:9
**sort** [1] - 21:7
**sought** [1] - 10:17
**sounds** [1] - 20:2
**sources** [1] - 10:23
**speaking** [1] - 7:3
**specific** [3] - 14:14; 20:11, 19
**specifically** [1] - 11:20
**standard** [3] - 6:9; 7:15; 9:22
**State** [1] - 11:23
**state** [1] - 5:13
**States** [1] - 2:14
**statutory** [1] - 5:14
**stay** [1] - 20:9
**Stevens** [1] - 2:10
**stick** [1] - 16:15
**still** [1] - 6:11
**stipulated** [2] - 2:22; 18:2
**subject** [5] - 7:5; 12:9; 14:6; 20:18; 21:18
**submitted** [1] - 10:9
**substance** [1] - 7:1
**substantive** [1] - 11:14
**suffice** [1] - 9:25
**sufficient** [4] - 15:23; 16:4, 10, 12
**suggest** [1] - 21:6
**suppose** [1] - 6:5
**table** [1] - 17:18
**tee** [1] - 21:8
**teed** [1] - 13:2
**terms** [3] - 5:3; 16:2; 19:12
**testify** [2] - 17:15
**testimony** [1] - 4:16
**Thanksgiving** [1] - 16:25
**thanksgiving** [1] - 17:3
**THE** [26] - 2:3, 11, 16; 3:1, 5, 22; 5:20; 6:2; 8:17, 19; 9:4, 9; 10:25; 11:7; 12:16; 15:3, 6,

20; 16:6, 18, 22, 24; 18:19; 19:23; 20:16, 21
**themselves** [3] - 5:19; 12:19; 13:1
**third** [1] - 14:7
**three** [2] - 13:6, 13
**tight** [1] - 14:22
**timeline** [1] - 20:12
**timely** [1] - 19:20
**timing** [4] - 3:14; 16:10, 12, 17
**today** [8] - 2:5, 10; 3:22; 9:14, 19; 15:9; 16:6; 18:5
**together** [1] - 16:8
**track** [1] - 17:7
**transcript** [2] - 15:22; 16:1
**trial** [1] - 15:21
**try** [5] - 14:11; 17:1, 6; 21:13
**trying** [3] - 9:19; 11:18; 18:21
**Tuesday** [2] - 16:22
**turn** [1] - 9:13
**two** [2] - 7:14; 17:25
**type** [1] - 2:19
**typically** [4] - 3:11; 7:5; 17:20; 20:21
**U.S** [1] - 10:18
**ultimate** [1] - 19:15
**um-hmm** [1] - 9:9
**unclear** [1] - 17:13
**under** [8] - 5:10, 15; 6:4; 8:5, 14; 9:22; 14:8
**unique** [1] - 7:6
**United** [1] - 2:13
**unnecessary** [2] - 13:9, 21
**up** [7] - 11:16, 24; 13:2; 17:7, 11; 18:15; 21:8
**USAID** [1] - 5:15
**USCS** [1] - 11:20
**usual** [1] - 20:24
**versus** [1] - 2:4
**view** [5] - 6:8; 15:16; 17:6, 22; 19:24

**wait** [2] - 21:16, 20
**waiting** [1] - 21:12
**wants** [1] - 17:9
**warrant** [1] - 6:11
**WARREN** [17] - 2:8, 24; 3:19; 4:8; 6:1, 14; 8:18, 22; 9:5, 17; 11:1; 16:4, 21, 23; 18:6, 9; 19:1
**Warren** [5] - 2:9, 24; 4:9; 16:2; 19:2
**Wednesday** [1] - 16:20
**week** [3] - 10:7; 12:2; 17:4
**weekend** [1] - 16:25
**Wen** [1] - 2:14
**whichever** [1] - 14:4
**White** [1] - 11:22
**wide** [1] - 13:17
**wide-ranging** [1] - 13:17
**wish** [1] - 15:9
**witnesses** [7] - 9:8, 23; 10:5; 11:2; 13:13, 18; 19:13
**written** [3] - 11:11; 15:14; 19:11
**year** [1] - 6:20
**yourselves** [1] - 2:7