UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| J. DOES 4, 7, 22, 27, 28, and 29, *on behalf of themselves and all others similarly situated,*<br><br>    Plaintiffs,<br><br>    v.<br><br>ELON MUSK, *in his official capacity,*<br>UNITED STATES DOGE SERVICE,<br>THE DEPARTMENT OF<br>GOVERNMENT EFFICIENCY,<br>UNITED STATES<br>DEPARTMENT OF STATE,<br>UNITED STATES AGENCY FOR<br>INTERNATIONAL DEVELOPMENT,<br>MARCO RUBIO, *in his official capacity,*<br>PETER MAROCCO, *in his official capacity,*<br>JEREMY LEWIN, *in his official capacity,*<br>KENNETH JACKSON, *in his official capacity,* and<br>AMY GLEASON, *in her official capacity,*<br><br>    Defendants. | Civil Action No. 25-0462-TDC |

**MEMORANDUM OPINION**

Plaintiffs J. Does 4, 7, 22, 27, 28, and 29, who are current or recently terminated employees and contractors of the United States Agency for International Development ("USAID"), have filed this putative class action on behalf of themselves and similarly situated individuals against Defendants Elon Musk, the United States DOGE Service ("USDS"), the Department of Government Efficiency ("DOGE"), the United States Department of State ("State"), USAID, and five government officials with leadership positions at State, USAID, or DOGE for alleged violations of the United States Constitution arising from Defendants' actions to effectuate the

dismantling and shutdown of USAID. Defendants have filed a Motion for Certification of this Court's August 13, 2025 Memorandum Opinion and Order for Interlocutory Appeal and for a Stay of Discovery, pursuant to 28 U.S.C. § 1292(b), which is fully briefed. ECF No. 166. Having reviewed the submitted materials, the Court finds that no hearing is necessary. See D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## DISCUSSION

On March 18, 2025, the Court issued a memorandum opinion in which it granted in part and denied in part Plaintiffs' Motion for a Preliminary Injunction. *Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 687 (D. Md. 2025) ("*Does I*"), *preliminary injunction stayed by*, No. 25-1273, 2025 WL 1020995, at *7 (4th Cir. Mar. 28, 2025). On August 13, 2025, the Court issued a memorandum opinion in which it granted in part and denied in part Defendants' Motion to Dismiss. *Does 4, 7, 22, 27, 28 & 29 v. Musk* ("*Does II*"), No. 25-0462-TDC, 2025 WL 2346258, at *21 (D. Md. Aug. 13, 2025). The relevant factual background and procedural history is set forth in *Does I* and *Does II*, which are incorporated by reference in their entirety.

In the present Motion, Defendants argue that the Court should certify for interlocutory appeal *Does II* and its accompanying Order. ECF Nos. 150, 151. Specifically, Defendants argue that an interlocutory appeal is warranted based on four "controlling questions of law" at issue in the Court's ruling on the Motion to Dismiss: (1) whether Plaintiffs have standing under Article III of the United States Constitution; (2) whether the Court lacks subject matter jurisdiction because Plaintiffs' claims are subject to "mandatory channeling" in that federal statutes require that they be pursued only in designated judicial or administrative proceedings other than a United States district court; (3) whether under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs have stated a valid claim under the Appointments Clause of Article II of the Constitution; and (4)

whether under Rule 12(b)(6), Plaintiffs have stated a valid claim for a violation of the constitutional principle of Separation of Powers. Mot. at 5, ECF No. 166-1.

## I.     Legal Standard

Interlocutory appeals "are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). A federal district court may certify for appeal an order that is not otherwise appealable if it concludes (1) that the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Piecemeal interlocutory appeals should be "avoided" because review of non-final judgments is "effectively and more efficiently reviewed together in one appeal" at the end of litigation. *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993). Since certification under § 1292(b) should be granted "sparingly," the statute's requirements must be "strictly construed." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.* ("*Michaels*"), 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)).

The United States Court of Appeals for the Fourth Circuit has defined a controlling question of law to be a "pure question of law," that is, "an abstract legal issue that the court of appeals can decide quickly and cleanly." *Id.* (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)). A pure question of law does not require the appellate court "to delve beyond the surface of the record in order to determine the facts." *Id.* at 341 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). In contrast, a question is not a controlling question of law where the appellate court is asked to consider "whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* (quoting *McFarlin*, 381 F.3d at 1259).

3

Under this standard, in *Michaels*, the Fourth Circuit found that the issue of whether "the Attorney General possesses an absolute veto power over voluntary settlements" in False Claims Act *qui tam* actions presented a pure question of law, but that the issue of whether the relators' statistical sampling evidence could appropriately be considered under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), did not because it involved consideration of "the particular facts and evidence in th[e] case." *Id.* at 335, 341. The Fourth Circuit has also found that whether the religious organization exemption of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e-1(a), bars Title VII claims for religious harassment and retaliation against religious organizations is a pure question of law for purposes of § 1292(b). *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 191, 195 (4th Cir. 2011). In another case, a court concluded that whether the protections of the Trafficking Victims Protection Act ("TVPA") apply to individuals engaged in "work programs in federal immigration detention facilities operated by private for-profit contractors" was a pure question of law because it was a "discrete and abstract legal issue," but whether "the complaint in this case sufficiently alleged a violation of the TVPA, assuming it applies to private contractors," was not such a question because the "adequacy of the complaint" was a "fact-intensive inquiry" that it declined to address on an interlocutory appeal. *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1275 (11th Cir. 2020).

On the second element, whether there is "substantial ground for difference of opinion" on a pure question of law, courts may find substantial grounds "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). However, the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient."

4

*In re Flor,* 79 F.3d 281, 284 (2d Cir. 1996). Lack of unanimity among courts, *North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust,* 889 F. Supp. 849, 852 (E.D.N.C. 1995), and a lack of relevant authority, *Union County v. Piper Jaffray & Co., Inc.,* 525 F.3d 643, 647 (8th Cir. 2008), do not suffice. Similarly, a party's disagreement with the decision of the district court, no matter how strong, does not establish substantial grounds. *Couch,* 611 F.3d at 633.

As for the third element, the material-advancement prong, certification of an interlocutory appeal is appropriate only "in exceptional situations in which doing so would avoid protracted and expensive litigation." *Fannin v. CSX Transp., Inc.,* 873 F.2d 1438, No. 88–8120, 1989 WL 42583, at *2 (4th Cir. 1989) (unpublished) (quoting *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1026 (9th Cir. 1982)). More often, an interlocutory appeal can cause "delay, adding costs and diminishing coherence," and "risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson,* 515 U.S. at 309. Thus, under this prong, the mere fact that an issue's "resolution at this time may save pre-trial and trial effort and expense is not determinative"; rather, "the question best adapted" to interlocutory review is "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin,* 1989 WL 42583, at *5 (citing *Palandjian v. Pahlavi,* 782 F.2d 313, 314 (1st Cir.1986)); *see also McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004) (stating that this element is met when "resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation"). Where litigation is likely to continue in a significant way regardless of the resolution of an interlocutory appeal, the appeal does not materially advance the termination of the case. *See Hall v. Greystar Mgmt. Servs.,* 193 F. Supp. 3d 522, 528 (D. Md. 2016) (declining to

certify an interlocutory appeal where a reversal would likely lead to re-filed litigation in state court).

## II.  Standing

Defendants have not established that the requirements of 28 U.S.C. § 1292(b) have been met such that interlocutory appeal is warranted on the question of whether Plaintiffs have standing. First, Defendants have not identified a pure question of law arising from the Court's ruling that Plaintiffs have pleaded sufficient facts to demonstrate standing to assert each of their claims and instead effectively challenge whether the "district court properly applied settled law to the facts or evidence of a particular case." *Michaels*, 848 F.3d at 341 (quoting *McFarlin*, 381 F.3d at 1259). As to the Appointments Clause, although Defendants assert that Plaintiffs lacked standing because duly appointed agency officials eventually approved or ratified the agency actions that allegedly caused Plaintiffs' injuries, the Court's ruling was based on the conclusion that the allegations were sufficient to demonstrate that Plaintiffs' incurred injuries were traceable to actions by an unauthorized official, Musk, including actions for which there has been no showing of ratification by a duly authorized official. *Does II*, 2025 WL 2346258, at *15–17. The fact that Defendants dispute the Court's drawing of "reasonable inferences" from the facts alleged in the Second Amended Complaint, Mot. at 9, illustrates that their standing argument does not relate to "an abstract legal issue that the court of appeals can decide quickly and cleanly" and instead requires an application of law to the facts of this specific case. *Michaels*, 848 F.3d at 340. Indeed, as the Court noted in ruling on the Motion to Dismiss, at the present stage, before factual development has occurred, it is premature to conclude that Plaintiffs' injuries were the result of lawful actions taken by a duly appointed officer, rather than the result of the unratified actions of Musk. *Does II*, 2025 WL 2346258, at *17.

As to standing for the Separation of Powers claim, Defendants again advance a fact-based argument: that Plaintiffs have not shown that remedying any violation of the Separation of Powers would redress their injuries. By objecting to the Court's conclusion that the requested injunctive relief against the dismantling of USAID could facilitate the redress of employment-related injuries by removing a significant obstacle to Plaintiffs' relief, *id.*, Defendants again seek review of "whether the district court properly applied settled law to the facts or evidence of a particular case." *Michaels*, 848 F.3d at 341 (quoting *McFarlin*, 381 F.3d at 1259).

Where Defendants have not identified a "controlling question of law" relating to standing as required for interlocutory review, there is no need to address its claim that there is "substantial ground for difference of opinion" on the Court's standing ruling. *See Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 675–76 (7th Cir. 2000) (noting that a district court may not certify an order for interlocutory appeal unless all statutory criteria are met). In any event, the Court notes that *American Foreign Service Association v. Trump* ("*AFSA*"), 792 F. Supp. 3d 116 (D.D.C. 2025), cited by Defendants as a basis for such a difference of opinion, was brought by four organizations representing employees or contractors of USAID and thus involved the factually and legally distinct issues of organizational standing and third-party standing, which are not at issue in the present case. *Id.* at 123, 129–33.

Finally, an interlocutory appeal on this issue would not materially advance the termination of litigation at this point in the case. As stated in the Court's opinion on the Motion to Dismiss, although the Court relied only on the pleaded allegations in ruling on Defendants' facial challenge to standing, additional facts beyond the pleadings, specifically facts submitted in relation to the Motion for a Preliminary Injunction, even more definitively establish Plaintiffs' standing. *Does II*, 2025 WL 2346258, at *17. Thus, any adverse appellate ruling on standing would have little

impact on advancing the termination of this case because Plaintiffs would have a substantial basis to seek, and the Court thus would almost certainly have to grant, leave to amend to insert the additional facts that would more conclusively demonstrate standing. *See id.* The Court thus declines to certify for interlocutory appeal the question of whether Plaintiffs have pleaded sufficient facts to demonstrate standing to assert each of their claims.

### III.    Mandatory Channeling

Defendants also do not meet the requirements of § 1292(b) on the question of whether Plaintiffs' claims are subject to mandatory channeling. In the Motion to Dismiss, Defendants argued that the claims of plaintiffs who were civil service employees ("the Civil Service Plaintiffs") had to be dismissed because the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111, requires that they be pursued through the Merit Systems Protection Board ("MSPB"), and that the claims of plaintiffs who were personal services contractors ("the PSC Plaintiffs") must be dismissed because the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101–7109, or, in the alternative, the Tucker Act, 28 U.S.C. §§ 1346(a), 1491, requires that they be pursued through administrative proceedings or in the United States Court of Federal Claims.

In analyzing these arguments, the Court applied the longstanding two-step test established by the United States Supreme Court in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), which consists of assessing (1) whether Congress's intent to preclude district court jurisdiction is "fairly discernible in the statutory scheme"; and (2) whether the claims "are of the type Congress intended to be reviewed within this statutory structure." *Id.* at 207, 212; *Does II*, 2025 WL 2346258, at *5. The second step, in turn, requires consideration of the following three factors ("the *Thunder Basin* factors"): (1) whether precluding district court jurisdiction "could foreclose

all meaningful judicial review" of the claim; (2) whether the claim is "'wholly collateral' to [the] statute's review provisions"; and (3) whether the claim is "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212–13; *Does II*, 2025 WL 2346258, at *6. Defendants do not contest that this issue is governed by *Thunder Basin* or that the analysis set forth in that opinion is settled law. Rather, Defendants argue that the Court's analysis of this issue turned on questions of statutory interpretation, rather than the specifics of this particular case.

The Court finds that its rulings on Defendants' mandatory channeling arguments did not involve a pure question of law and instead consisted of the application of settled law to the particular facts of this case. The first step of the *Thunder Basin* test, whether the statutes at issue were designed to strip district courts of jurisdiction, might typically be considered a pure question of statutory interpretation. However, in *National Association of Immigration Judges v. Owen* ("*NAIJ*"), 139 F.4th 293 (4th Cir. 2025), cited in this Court's Motion to Dismiss ruling, the Fourth Circuit found that based on recent events, including President Trump's removal of the Special Counsel and of two members of the MSPB such that it lacks a quorum, there are now serious questions as to whether the CSRA's adjudicatory scheme continues to function as intended. *Id.* at 304–05. The court therefore remanded that case to the district court for factfinding to determine whether present circumstances have undermined the functioning of the CSRA's adjudicatory scheme. *Id.* In light of *NAIJ*, this Court's ruling on the Motion to Dismiss did not rely on a statutory interpretation of whether the CSRA meets the first step of the *Thunder Basin* test. *See Does II*, 2025 WL 2346258, at *6. Moreover, even if it had done so, any adverse ruling on appeal based on this first step would not materially advance the ultimate termination of the case because the likely result would be a remand for a fact-bound determination similar to the one at issue in *NAIJ*.

As for the second step of the *Thunder Basin* test, the Court's ruling was not grounded in a pure question of law. Rather, whether the claims are of the type that Congress intended to be reviewed within the CSRA statutory scheme, and the application of the three *Thunder Basin* factors underlying that question, necessarily involves examining the specific claims and alleged facts in this particular case. Indeed, in its ruling on the Motion to Dismiss, the Court engaged in a detailed, fact-based analysis of whether the specific Separation of Powers claims asserted by the Civil Service Plaintiffs are of the type for which the inability to pursue them in a federal district court would "foreclose all meaningful judicial review," whether they are "wholly collateral" to the CSRA's review provisions, and whether they are "outside the agency's expertise," including by assessing the degree to which the claims intersected with specific prohibited personnel practices or merit system principles, whether the claims or the alleged injuries directly flowed from a specific employment action, and whether the Civil Service Plaintiffs were seeking damages or reinstatement to the former positions. *Thunder Basin*, 510 U.S. at 212–13; *Does II*, 2025 WL 2346258, at *6–9.

Similarly, the Court's ruling that neither the CDA nor the Tucker Act precludes the Court from exercising jurisdiction over the claims advanced by the PSC Plaintiffs was grounded in a fact-based analysis applying firmly established legal principles set forth in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), which assesses (1) "the source of the rights upon which the plaintiff bases its claims"; and (2) "the type of relief sought (or appropriate)." *Id.* at 968. Specifically, the Court considered such issues as the degree to which the PSC Plaintiffs' claims were grounded in and required examination of the terms of their contracts, as well as whether the claims sought monetary relief, enforcement of a particular contractual term, or reinstatement of a particular contractor. *Does II*, 2025 WL 2346258, at *11–14.

Thus, the Court's rulings on the mandatory channeling arguments advanced by Defendants were based on the application of "settled law to the facts or evidence of a particular case" and thus do not present pure questions of law appropriate for interlocutory appellate review. *Michaels*, 848 F.3d at 341. Accordingly, Defendants' attempts to identify case law from which to argue that there is a "substantial ground for difference of opinion" is unavailing. *Id.* at 340; *Couch*, 611 F.3d at 633. In any event, as with the standing issue, Defendants cite to factually distinguishable cases such as *National Treasury Employees Union v. Vought* ("*NTEU*"), 149 F.4th 762 (D.C. Cir. 2025), *judgment granted and reh'g en banc granted*, No. 25-5091, 2025 WL 3659406, at *1 (D.C. Cir. Dec. 17, 2025), which addressed a challenge to the shutdown of the Consumer Financial Protection Bureau ("CFPB") and in which, among other differences, the plaintiffs sought "reinstatement for [employees] already terminated," the rescission of contract terminations, and an order "to prevent the CFPB from terminating other members in the future," facts relied upon in the ruling but not present in Plaintiffs' case. *Id.* at 773–75; *Does II*, 2025 WL 2346258, at *7, *12 (finding that Plaintiffs have not requested specific injunctive relief "to allow them to retain or recover their positions" and "seek no specific action relating to personal services contracts"). Likewise, although Defendants cite *AFSA* as a case illustrating a difference of opinion relating to whether the CDA precludes district court jurisdiction, in that case, the court relied on the facts that the plaintiffs, which were organizations representing employees and contractors, had standing only in relation to actions taken against their members' employment status, or in the case of contractors, in relation to the contract rights of its members. *See AFSA*, 792 F. Supp. 3d at 137–38. Where this Court's ruling on the mandatory channeling issues was predicated on different facts, including that the plaintiffs' claims were not challenging employment decisions or contractual violations, such distinctions further illustrate that Defendants have not identified a pure legal question that is

"an abstract legal issue that the court of appeals can decide quickly and cleanly." *Michaels*, 848 F.3d at 340.

Finally, an interlocutory appeal is not warranted because litigation is likely to continue in a significant way regardless of the resolution of an interlocutory appeal on Defendants' arguments under the CSRA and CDA. First, as the Court has noted, in their Motion to Dismiss Defendants made no argument that the claims of plaintiffs who were Foreign Service employees or plaintiffs who were Foreign Service Limited ("FSL") employees ("the FSL Plaintiffs") are statutorily precluded under the CSRA, the CDA, or any other statute. *See Does II*, 2025 WL 2346258, at *9–10. Although Defendants briefly discussed FSL employees in their reply brief on the Motion to Dismiss, in the present Motion they again address FSL employees only in the reply brief and without identifying any case law from which a substantial ground for a difference of opinion could be drawn. Thus, the core of Plaintiffs' Separation of Powers claim, focused on whether USAID could be unilaterally shut down by the Executive Branch, will still need to be fully litigated and resolved, at a minimum, because of the FSL Plaintiffs' claims. Further, in the Motion to Dismiss, Defendants made no argument that the CSRA or the CDA precludes the Appointments Clause claims, and while they presently claim that they did so in the reply brief, they offered no specific reasoning in either Motion as to why those claims are statutorily precluded. *See Does II*, 2025 WL 2346258 at *5; *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, new arguments cannot be raised in a reply brief before the district court."). Therefore, an interlocutory appeal on Defendants' mandatory channeling arguments would not materially advance the termination of the overall case.

For all of these reasons, the Court concludes that upon consideration of the requirements of § 1292(b), an interlocutory appeal relating to Defendants' mandatory channeling arguments is not warranted.

## IV. Appointments Clause

Defendants also seek an interlocutory appeal of the Court's determination that Plaintiffs have stated a viable claim of a violation of the Appointments Clause based on two specified issues: (1) "the appropriate standard for identifying a 'continuing position established by law' that is vested with 'significant authority pursuant to the laws of the United States'" under *Lucia v. Securities & Exchange Commission*, 585 U.S. 237, 245 (2018); and (2) whether Plaintiffs' claim can succeed when "any action that plausibly injured them was properly approved or ratified by an official with uncontested authority." Mot. at 13–14.

Defendants again fail to identify a pure question of law suitable for an interlocutory appeal. As to the first issue, this Court, in denying the Motion to Dismiss, accepted the two-part standard for an Appointments Clause challenge set forth in *Lucia* and applied it to the unique factual scenario at issue in this case, such that its determinations that the allegations are sufficient to state a claim were grounded in the fact-based conclusions that the USDS Administrator position was a continuing position established by law, that there were sufficient factual allegations to support the conclusion that Musk occupied that position, and that his actions qualified as the exercise of "significant authority." *Does II*, 2025 WL 2346258, at *19; *see also Does I*, 771 F. Supp. 3d at 662–69. While a properly certified question for interlocutory appeal must "lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law," here, the Court's application of the *Lucia* standard was grounded almost entirely in the specific facts of the present case as asserted in the operative complaint and thus did

not involve a pure question of law appropriate for an interlocutory appeal. *McFarlin*, 381 F.3d at 1259; *see also Barrientos*, 951 F.3d at 1275 (declining to address the "adequacy of the complaint—or any other fact-intensive inquiry" on an interlocutory appeal under § 1292(b)). Even if this issue could be deemed to have generated a pure question of law, Defendants have identified no case law or other authority, such as a case resolving the same issue in a manner contrary to this Court's ruling, that demonstrates that there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

As for the second issue, the question whether Plaintiffs' Appointments Cause claim fails because "any action that plausibly injured them was properly approved or ratified by an official with uncontested authority" likewise does not present a pure question of law. Mot. at 13–14. The Court's ruling that Plaintiffs have stated a viable Appointments Clause claim was not predicated on a contrary legal principle; rather, the Court concluded that the factual allegations support the inference that Plaintiffs' injuries were the result of specific actions by Musk for which there was no evidence of any ratification by an authorized official. *Does II*, 2025 WL 2346258, at *19. The Court thus concluded that as to the Appointments Clause claims, "additional factual development through discovery is necessary" to determine the "identity of the actual decisionmakers for any exercises of significant authority." *Id.* Where the issue of whether unauthorized decisions were later ratified by authorized decisionmakers is a fact-based inquiry that requires discovery, not a pure question of law, this issue is entirely inappropriate for interlocutory appeal. *See Mamani v. Berzain*, 825 F.3d 1304, 1313 (11th Cir. 2016) (declining to consider an interlocutory appeal of a denial of a Rule 12(b)(6) motion because it required the appeals court to "scrutinize the scores of factual allegations that support all the plaintiffs' claims," as well as to "assess the clusters of allegations that support each of the plaintiffs' individual claims"). Again, even if this issue did

involve such a pure legal question, Defendants have identified no case law or other authority demonstrating that there is "substantial ground for difference of opinion" in relation to the Court's ruling on this issue. 28 U.S.C. § 1292(b).

Finally, the Court finds that an interlocutory appeal on the Appointments Clause claim would not "materially advance the ultimate termination" of this case because of the extensive litigation that would still be required on the Separation of Powers claim. *See Michaels*, 848 F.3d at 340; *Fannin*, 1989 WL 42583, at *5; *McFarlin*, 381 F.3d at 1259. The Court thus declines to certify for interlocutory appeal the question of whether Plaintiffs adequately pleaded their Appointments Clause claim.

## V.      Separation of Powers

Finally, Defendants argue that the Court's rejection pursuant to Rule 12(b)(6) of their argument that Plaintiffs failed to state a valid Separation of Powers claim warrants an interlocutory appeal. In denying the Motion to Dismiss, the Court relied in part on the well-established framework for analyzing alleged violations of the Separation of Powers by the Executive Branch set forth in the concurrence in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). *See Does II*, 2025 WL 2346258, at *21. In seeking an interlocutory appeal on this claim, Defendants now assert that Plaintiffs' Separation of Powers claim was actually a statutory claim, such that application of *Youngstown* is improper under *Dalton v. Specter*, 511 U.S. 462, 473–74 (1994) (holding that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review").

However, whether Plaintiffs asserted a constitutional claim subject to *Youngstown*, rather than a pure statutory claim, depends significantly on the allegations in the operative complaint, such that the Court's ruling on this claim involves not a pure question of law over which there is

substantial ground for difference of opinion, but an application of settled legal principles, including those in *Dalton*, to the specific facts of this particular case. *See Michaels*, 848 F.3d at 341.

Notably, the original Complaint in this case asserted the same core Separation of Powers claim relating to the shutdown of USAID, with no mention of any federal statutes, and in relation to the Motion for a Preliminary Injunction, Defendants argued in part that Plaintiffs were unlikely to succeed on the claim because the executive action was within the President's constitutional powers under Article II of the Constitution, including the power over the conduct of foreign affairs. Opp'n Mot. Prelim. Inj. at 23–24, ECF No. 28. In turn, the Court found a likelihood of success on the merits of this claim based in part on an analysis under *Youngstown*. *Does I*, 771 F. Supp. 3d at 678. Although the presently operative Second Amended Complaint has included citations to certain federal statutes, its formal statement of the Separation of Powers claim continues to rely only on the Constitution, and it remains fundamentally the same claim. *See* Second Am. Compl. ¶¶ 133–40, ECF No. 135. The Court thus denied the Motion to Dismiss based on similar reasoning. *Does II*, 2025 WL 2346258, at *20.

Defendants' citation to case law in support of their claim that there are reasonable grounds for disagreement on the applicable legal standard for the Separation of Powers claim illustrates that this issue is not a pure question of law. *See NTEU*, 149 F.4th 762; *Global Health Council v. Trump*, 153 F.4th 1, 7 (D.C. Cir. 2025). In *NTEU*, which is now subject to *en banc* review, the plaintiff organizations challenged decisions by the leadership of the CFPB to downsize the agency substantially based on allegations that a shutdown would violate the statutes that establish the CFPB as well as the constitutional principle of the Separation of Powers. *NTEU*, 149 F.4th at 791–92. The court held that *Youngstown* did not apply because "the only constitutional source of executive authority in this case is the President's obligation to take care that the *statutes* governing

the CFPB are faithfully executed," and the Government had invoked no "freestanding Article II power" as it did in *Youngstown*. *Id.* at 794. Here, upon consideration of the allegations in the Second Amended Complaint, Plaintiffs' Separation of Powers claim is grounded in specific constitutional provisions or principles, does not rest entirely on an alleged failure to comply with statutory requirements, and, as in *Youngstown*, Defendants have invoked Article II authority separate from the obligation to faithfully execute federal statutes, specifically, the President's Article II authority over foreign affairs. *See Does I*, 771 F. Supp. 3d at 674–78; Opp'n Mot. Prelim. Inj. at 23–24, ECF No. 28; Mot. Dismiss at 32, ECF No. 110-1.

Similarly, in *Global Health Council*, USAID grantees asserted that a January 20, 2025 executive order that froze foreign aid spending violated the Impoundment Control Act, the Anti-Deficiency Act, the Administrative Procedure Act, as well as the Constitution, and the Court concluded that the plaintiffs effectively sought only "to enforce the statutes" in part because the Government disclaimed any constitutional defense to the claim. *Global Health Council*, 153 F.4th at 9–10, 14–15. In contrast, as discussed above, Plaintiffs from the outset focused only on a constitutional argument, they do not directly assert any statutory claims on this issue, and the Government has asserted and not disavowed its constitutional defense based on the President's Article II foreign policy power. Thus, consideration of *NTEU* and *Global Health Council* demonstrates that the question of whether Plaintiffs have pleaded a valid Separation of Powers claims is not a pure question of law that can be decided "quickly and cleanly," *Michaels*, 848 F.3d at 340 (quoting *Mamani*, 825 F.3d at 1312), but instead depends on an individualized analysis of the specific allegations in this case and even the Government's litigating position in relation to them. The Court therefore finds that the Defendants have not identified a pure question of law arising from the Court's ruling on the Separation of Powers claim.

Finally, the Court finds that certifying this question for interlocutory appeal would not "materially advance the ultimate termination" of this case because where the Court has already declined to certify the other questions presented for interlocutory appeal, extensive litigation would still be required on the Appointments Clause claim and thus would not substantially shorten the litigation. See *Michaels*, 848 F.3d at 340; *Fannin*, 1989 WL 42583, at *5; *McFarlin*, 381 F.3d at 1259. The Court will therefore decline to certify for interlocutory appeal the question of whether, pursuant to Rule 12(b)(6), Plaintiffs have stated a valid Separation of Powers claim.

Because the Court will not certify the identified questions for interlocutory appeal, it necessarily will deny the request for a stay of discovery.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Certification for Interlocutory Appeal and for a Stay of Discovery, ECF No. 166, will be DENIED. A separate Order shall issue.

Date: January 29, 2026

THEODORE D. CHUANG
United States District Judge