IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

J DOE 4, ET AL., )
)
Plaintiff, )
)Civil No.
vs. )8:25-cv-00462-TDC
)
ELON MUSK, ET AL., )Greenbelt, Maryland
)February 5, 2026
Defendants. )2:30 p.m.
)

**TRANSCRIPT OF PROCEEDINGS**
**CASE MANAGEMENT CONFERENCE VIA TELEPHONE**
**BEFORE THE HONORABLE THEODORE D. CHUANG**

A P P E A R A N C E S

On Behalf of the Plaintiffs:
Rebecca Stevens, Esquire
Tianna J. Mays, Esquire
Andrew H. Warren, Esquire
Mimi Marziani, Esquire
Andrew Silverstein, Esquire
Nicole M. Rubin, Esquire
Richard M. Heimann, Esquire

On Behalf of the Defendants:
Christopher M. Lynch, Esquire
Jacob S. Siler, Esquire
James J. Wen, Esquire

Proceedings Recorded by Audio Recording
(Transcript Produced By Computer-Aided Transcription)

Reported by: Ronda J. Thomas, RMR, CRR
Federal Official Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland 21201

(2:30 p.m.)

**THE COURT:** This is Judge Chuang.

**THE CLERK:** The matter now pending before this court is Civil Action Number 25-0462-TDC, J. Doe 4, et al. v. Elon Musk, et al.

We are here today for the purpose of a case management conference.

Beginning with the plaintiffs, Counsel, please identify yourselves for the record.

**MS. STEVENS:** Good afternoon. This is Beth Stevens. I am here with my colleagues Andrew Warren, Mimi Marziani, Andrew Silverstein, Nicole Rubin, Richard Heimann, and Tianna Mays. And we're here on behalf of the plaintiffs.

**THE COURT:** And good afternoon.

For the defendants?

**MR. SILER:** Good afternoon. This is Jacob Siler for the defendants, and with me on the phone is Christopher Lynch and James Wen.

**THE COURT:** Okay. Good afternoon. So we're here for a case management conference. The parties have filed a number of things, and I thought we could at least try to move the ball forward on some of these things.

I thought we could start with things that seem less complicated. So, for example, at the outset -- not at the outset, but one of -- I think I've got five or six different

filings. One of them, ECF Number 198, is about a motion for voluntary dismissal Plaintiff Doe 29 under Rule 41(a)(2).

And am I correct, Mr. Siler, that the government is not going to oppose this if it's with prejudice but not if it's without prejudice.

**MR. LYNCH:** Correct, Your Honor. This is Christopher Lynch. That is correct.

**THE COURT:** Okay. So, Ms. Stevens, what does that mean in terms of what you would like to do at this point? I'm not sure I was totally clear whether you want to pursue this with or without prejudice or whether you would agree to with prejudice?

**MS. STEVENS:** Yes, Your Honor. We are asking for a leave to file the motion without prejudice.

**THE COURT:** So it's a contested motion?

**MS. STEVENS:** Yes, Your Honor.

**THE COURT:** And can you just clarify, I'm looking at the letter again. It was a little bit unclear why we're doing this now as opposed to staying in the case?

**MS. STEVENS:** J. Doe 29, at the point in the case when we had to respond to discovery requests that we reveal their identity to the DOJ. Despite the protective order that's in place, they have a real fear for speaking, (inaudible) presents security for their family and were not comfortable with continuing, where the remainder of the class representatives

moved forward with discovery responses. So I think that leads us ethically to at least seek the voluntary dismissal.

**THE COURT:** So how is this going to get better later? I'm not sure. We're all here together. The case is going to forward. We're already part way through. And if it's dismissed without prejudice, that means in theory he could bring, or she, could bring a new case on their own at some point, which would seem quite inefficient. And so --

**MS. STEVENS:** Agreed, Your Honor. The two things we are concerned about on the specific question of with or without prejudice is we did not want this to be argument that any eventual outcome in this case did not apply to this person. And then of course any claims that they have outside of the class representation we didn't want there to be an argument that they couldn't pursue those.

And so that's why we request to have the dismissal without prejudice.

**THE COURT:** So are you just saying this person doesn't want to be a named plaintiff but is fine to be a continued member of the class?

**MS. STEVENS:** Yes, Your Honor.

**THE COURT:** But he or she is fine -- I mean, if the answer were, this person can stay in the class but can't file their own case, or can't do anything other than what a class member could do. So a class member can later object, later

perhaps opt out, but that they just want to be in the class, that's where they want to be. That's what you're seeking?

**MS. STEVENS:** Yes, Your Honor. With -- however to fashion the order such that the person is still in the class and is not in any way prejudiced by having been a class representative and then now having not been a class representative.

**THE COURT:** So, Mr. Siler, what's wrong with that? Certainly I understand your part where you don't want to have people coming back and filing new cases. If they're going to stay in the class, they're bound by what the class does. To the extent there's a way out of it, it's no different than anybody else who never was the names plaintiff but is still in the class, so . . .

(Overlapping speakers.)

**THE COURT:** -- unusual situation.

**MR. SILER:** Sorry, apologize.

So the issue for us, I mean, in plaintiffs' letter, their basis for seeking to -- without prejudice claiming that the defendant is not prejudiced by voluntary dismissal, the defendants have been prejudiced, and the nature of this person's participation in the case, frankly, smacks as gamesmanship.

This is the only class representative who is -- the PSC plaintiff, that unique category of individuals. Plaintiffs did

not even identify whether they were PSC plaintiffs, class representatives, until after the briefing was closed and the motion to dismiss and the class certification opposition. So we haven't been able to challenge the issue of PSC plaintiff.

Then, the only class member they have decides to drop out as soon as we seek discovery of this person. So this is sort of odd and improper. And they haven't identified another class representative.

And, you know, for purposes of today, we're not moving to decertify that aspect of the class, but we reserve all rights to seek relief with respect to the class. But we haven't been able to (inaudible) this person, the (inaudible) or adequacy and there are now no class representatives for the PSC plaintiffs and then this is a real problem for us.

So we think, you know, some exclusion of this person should be warranted going forward.

**THE COURT:** So on that point, Ms. Stevens, does this mean at some point soon the PSC class part of the case drops out, or do you have somebody else ready to go?

**MS. STEVENS:** It does not mean that, Your Honor. We are in conversations with potential -- who would be willing to be class representatives and have their information disclosed to DOJ.

We do take offense to the notion that this person was in the case for any sort of gamesmanship. They're truly worried

for their safety and security and I think rightfully so. And this court, of course, gave us permission to proceed in (inaudible) in the first place because of some other consideration.

So we have to respect the fact that this person is not willing to provide their information to the DOJ. We are bringing that to the court's attention after some back and forth with the DOJ about whether it would be with or without prejudice. And we are speaking to a different PSC who is willing to disclose their information.

But at this point we felt it incumbent on us to notify the court that this person could no longer proceed as class representative because he wasn't able to respond to those discovery requests on their behalf.

**THE COURT:** So let me ask you this: I mean, I understand if there were a class -- I mean, because there's a class there's a different category; but what is the likelihood that this person, having these fears, while still happy or willing to be a member of the class and to get whatever result the class ends up with, would then chose to hop out and then go off and do their own case on their own without any sort of group activity here?

Is that realistic to assume that that could even happen, or would ever happen?

**MS. STEVENS:** In my view, Your Honor, it's terribly

unlikely. But, we don't want to do anything that would improperly prejudice them in a way that's unnecessary to continue with this case and don't think it's necessary.

What I heard from DOJ counsel was their focus is on how this case can proceed with having no PSC as part of the class, that's not directly relevant to the question of whether this person might pursue their own claims in some other court.

**THE COURT:** Well, I guess we're just going to have to have a motion filed. It seems like kind of a waste of time in the sense that this should be the kind of thing that the parties could agree on.

It seems to me the reasonable place to end up would be something like this person can still be a member of the class because it really has no impact on the rest -- I mean, certainly, you know, the class -- assuming that there's any named plaintiff for this class, that's going to get litigated any way. So I see very little prejudice to the government by having one more person be in the class.

On the other hand, you know, being able to go off and do other things, I could see there being a concern about that. So it's theoretically possible, yes; but the likelihood of him or her going off and just doing their own case is pretty low, it seems. And I'm not sure why that person with these fears is unwilling to forego that given how deep into this case we are already.

So that seems to be the logical place to end up. Seems like both sides have dug in like they pretty much are on everything else that we're going to talk about.

So neither side is willing to try to work something out here? Because, I mean, the resources going into this one motion -- and you see how long it takes to get motions resolved. I mean, I move pretty quickly as best as we could to resolve the first motion, which was on an expedited emergency basis, but there's another 300 cases or so that deserve attention, too. And I'm not going to inconvenience them over the fact of that the parties in this case can't agree on anything simple like this.

So is this something that you think can be worked out, or do I have to set a briefing schedule for this?

**MS. STEVENS:** If I may, Your Honor, Ms. Stevens, we'd be willing to talk about an order that -- I think I indicated at the beginning -- fashioned the dismissal in a way that keeps this person in the class but hopefully gets at what the DOJ is seeking to avoid, unless it truly is, it cannot be included in the class, and then we may just be at an impasse.

**MR. LYNCH:** We're willing to discuss that, Your Honor.

**THE COURT:** I mean, it also seems to me -- again, I haven't looked into the law on this so I'm not trying to prejudge it, but it just seems to me it's reasonable to say that the person should be in the class. I think it's fair to

say to bring another federal case sometime down the road, I think there's a good argument that that shouldn't be allowed given how far we've gone into this.

I think there is a scenario, as the government has been asserting throughout and hasn't given up on, if for some reason there's some conclusion that as a PSC he has no claims here, but they could actually have brought some kind of claim in the court of claims through a contract process, I don't think it would be fair to prevent somebody from doing that because, again, everybody else in the class would potentially be able to do that. Assuming that other procedural barriers aren't in the way.

I don't think anybody should give up those alternatives options that have nothing to do with federal court if it turns out that's sort of the right answer for everybody in this group. And the only reason this person would be precluded is that they were willing to put their name on the complaint where every other class member didn't do that and would have those rights. That doesn't seem like the right result.

So, I don't know. I think with prejudice, without prejudice, I can understand why the parties can't reach an agreement on that.

But perhaps in this case there's a lot of different structural differences: Class actions, alternative, you know, forums. One side has asserted are the only forums that one can

use. That maybe there's a way to come up with a structure where this person is out of the case, has whatever rights that any other person in a situation would have but doesn't have the ability to -- or to start a whole new cases to replace this one. It seems like there's probably a way to structure something like that.

So, with that, maybe what we should do is see if the parties can discuss this a little bit, and if not we can set a date to file a motion on it.

How much time do you need to sort this out?

**MS. STEVENS:** This is Ms. Stevens. I think we can kind of figure this out within the week.

**MR. SILER:** That sounds right, Your Honor.

**THE COURT:** Okay. So today if today is the 5th, why don't we say by the 13th, Ms. Stevens, you can file your motion, which ideally would be some sort of agreed upon consent motion to do something. Whatever that is. And, if not, it's a contested motion. Just make it clear on what you're filing, what it is. And you can do that by the 13th.

Would the standard two weeks to respond be sufficient for any follow-up briefing by the government?

**MR. SILER:** Yes, Your Honor.

**THE COURT:** Same with a reply brief, Ms. Stevens?

**MS. STEVENS:** Yes, sir.

**THE COURT:** So, again, if it's agreed upon, we don't

need second and third briefs. See what you can do. There's probably a way, if the parties think about it hard enough. Okay. So that was the easy one.

There's also -- let me think where I wanted to go next.

More recently I think there was this last definition motion, ECF-199 from the government. And this one was trying to figure out whether there's a way that current federal employees can be contacted by the government. The idea that -- well, there's two parts.

The second part is about, would changing the definition of class to basically exclude any current federal employment. I'm not sure why we would do that but that's being requested.

And then the other part about whether counsel for defendants can speak to current federal employees about the case, whether or not they're class members.

Mr. Siler, why don't you explain why that's necessary at this point. And also whether there's been any narrowing of the issues where the parties might have some conflict.

**MR. LYNCH:** This is Mr. Lynch again.

Your Honor, the issue here is that there is (inaudible) somewhat uncertain under the professional rules how representation apply to absent class members. And under the Maryland Rules of Conduct, if they are in some way represented by plaintiff's counsel, it puts us in a bind about whether we can contact them, talk to them about the substance of the case,

you know, both protecting our privileges and work on substantive discovery issues, understand the claims and defenses.

I think, you know, the cleanest way to deal with this is just to exclude them from the class. But if, you know, plaintiffs are willing to say that they don't represent these people, or we can have an order saying that we can talk to them, that's fine, too. We just don't want to be in the position where there's a professional conduct problem or potential conflict with us speaking to federal employees to resolve these issues.

And, you know, when we have spoken to plaintiffs before, they've refused to allow us to speak on substance to these types of individuals. Even if they're not purporting to represent them. So this doesn't strike us as fair or reasonable.

And I think everybody would be helped if we can talk to them and figure out, you know, if they're going to be deposed what the scope of the privilege issues may be so that we don't overassert or under-assert. And that we can gather information that we need for discovery.

**THE COURT:** Can you just explain to me or give me an example of how you end up in a situation where there's a witness who has a privilege that you think or you think has privileged information and why that it's the category of people

who currently work for the federal government that that's an issue with the not people who don't work for the federal government but who did at the relevant time?

**MR. LYNCH:** There could be other people who do, to be fair.

This has come up specifically in the context of witnesses who are current employees. So we are trying to draw this scope narrowly. And I don't know that plaintiffs' counsel are planning to take depositions where we have to assert privileges of people who are currently fit within the definition of the class and are not current federal employees. But that (inaudible) too narrows, and, you know, we know of potential privilege issues related to one of these upcoming witnesses based on prior testimony from in other depositions.

**THE COURT:** Can you give me an example, you don't have to use names, but the type of position someone is in and the types of questions that you think might generate the privilege problem?

**MR. LYNCH:** Sure. To what extent these individuals, conversations with close presidential advisors, Elon Musk, would be potentially covered by the presidential communications privilege, depending on what it is. You know, what the substance of the conversation was. We have to be able to understand and get at that. So that's the example.

Individuals who worked at USAID but were not the -- I

think the class definition includes people who were a director or a deputy director as you would say at the time. But other than that, they're all in --

**THE COURT:** Are these individuals, when you say they're current federal employees, do they still work for USAID or State or are they with different agencies now?

**MR. LYNCH:** The ones we're talking about has been in different agencies. I think that we view people who still worked for USAID or State specifically as speaking -- as for defendants, if we talked to them, defendants themselves, like State and USAID are excluded from the class.

**THE COURT:** So how many people are in this category where they still work in the government in another agency and you think have this kind of information?

**MR. LYNCH:** I, frankly, don't know the full scope of the number of people who are former USAID employees who work for the government. I know of the one specifically that, again, plaintiffs have sought to take the deposition of in the next two weeks. And that's sort of what prompted this after -- after having tried to abide by not speaking to them, similar-situated individuals, in earlier depositions it seemed untenable.

**THE COURT:** And so none of these folks have lawyers themselves? That's usually the way this is handled is they have counsel and counsel talks to counsel.

**MR. LYNCH:** Not that we're aware of. One of the earlier deponents did. But subsequent ones, we're not aware of that.

**THE COURT:** Now, is that the only privilege you're focused on? Because I know on the one hand there's this deliberative process privilege that's been thrown out in some of the filings. But I also know at least with respect to some of the depositions the plaintiffs have said they're not pursuing that. They're really more about what has happened and when it happened and not why it happened or how they got to those decisions. At least that's how I thought it was characterized. I know not necessarily with respect to everything. But isn't some of it solved if you focus only on those kinds of things?

**MR. LYNCH:** If the questions are about, for example, potential plans that may have never happened, that would still be covered by the deliberative process privilege and there have been some questions in that regard. So that's one.

But, you know, but the presidential communications privilege is certainly the most forefront in our mind.

**THE COURT:** So other than Mr. Musk, are there any other individuals whose, you know, communications with who might be part of this issue that you would try to argue involve presidential communications or that privilege --

**MR. LYNCH:** Not Mr. Musk --

**THE COURT:** -- (inaudible) people.

**MR. LYNCH:** Not that I'm aware of that has come up in this case. I mean, the president, the vice president, people at that level. But Mr. Musk is the one who's come up in relation to. So that --

**THE COURT:** How many people actually -- maybe this is a question for the plaintiffs or how many people actually had communications with Mr. Musk that might even be implicated by this at all?

**MS. STEVENS:** Your Honor, as Mr. Lynch said, there are three witnesses that fall into this category of their letter, two of which we've already taken their deposition. And the process proceeded, in my opinion, perfectly tenable.

One of them was represented by counsel, one of them was not. The privileges were lodged during the deposition. We have a separate request about how to handle that. But, I mean, depositions themselves went as depositions do because there's no remaining person on our list of deponents that this actually applies to. And we -- they are covered by the class definition. We do represent them with respect to the class. It's one person, and the two examples thus far have gone perfectly fine. And so we think it should be that way moving forward.

**THE COURT:** What was the position of the third person, like the title or role?

**MS. STEVENS:** They're in the office of -- the security office at USAID. And there are about three or four sort of people down the organization chart from the administrator, maybe four or five down.

**THE COURT:** Okay. Some of this might get solved or at least rolled into the discussion about these privileges more generally.

In terms of this motion, Ms. Stevens, your thoughts on how best to proceed with this?

**MS. STEVENS:** With respect to the letter filed by the DOJ on seeking a class representative?

**THE COURT:** Uh-huh.

**MS. STEVENS:** We would ask that the court deny the defendants' request and we proceed as we had proceeded, which is, we show up at the deposition and if the defendant thinks that there's a privilege implicated by a question, they say that on the record, and we handle that in due course.

**THE COURT:** Okay. Well, and who is speaking for the government on this, Mr. Lynch or --

**MR. LYNCH:** Yes, Mr. Lynch.

**THE COURT:** Try to identify yourself when you speak so the record is clear.

I mean, let's -- we can talk about the privilege issue. I'm not -- I haven't seen any law on this. I mean, if you were to file a motion, is there any law that you would have that

would provide a basis to conclude that a class -- people should be knocked out of a class because of something like this? Or it was just your proposal as a practical way to solve this without sort of (unintelligible) but just solving the privilege issue.

**MR. LYNCH:** To be frank, Your Honor, I had just been looking at trying to solve the privilege issue at this point. And, you know, it's beyond the privilege issue also in that if we can't talk to these individuals, we may not be able to get all of the information about discovery that we need or could because, you know, we can't reach out to them about other information that they might have either.

**THE COURT:** Okay. So let's do two things here. I mean, my personal view, I mean, if you really feel like there's a need to brief it with cases and so forth, I'm not going to stop you from doing that.

But I think the issue of changing the class or knocking people out of the class, I kind of see that as a nonstarter. I don't see any reason why that should happen over an issue like this. And it is prejudicial to people who otherwise could be in the class. And so I don't think that's a really fruitful path.

I do think we can, as we talk about the privilege issue, which is another letter, we should fold in this discussion about exactly what is the right way to deal with these things.

I understand there's an issue there, just mechanically and procedurally we can figure that out.

So let's have that discussion and you can tell me again if you still want to file a motion. I'm just trying to narrow the class definition as opposed to trying to solve this other issue and see where we are.

Is someone not on mute?

So then we have the alternative service motion perhaps, which is ECF-191, and in this one it's really more about deposition subpoenas, I believe. And one of the issues, which I guess was a threshold issue I resolved in the most recent motion, but we do have I guess two witnesses, Mr. Farritor and Mr. Musk, where there's a concern about being able to have service. They seem to have different issues.

Mr. Farritor seems as if there's nothing here that indicates anybody is evading service or is just not available. It seems as if there's some trouble finding the exact location.

But is there a legal problem with what's been going on with Mr. Farritor, Ms. Stevens?

**MS. STEVENS:** Your Honor, we have tried service, at least five attempts at his two known addresses. His parents, I believe, are at one of them. And his mother has indicated that he won't be home for some time. But that is --

**THE COURT:** You broke up there. The mother indicated what?

**MS. STEVENS:** That he would not be home for some time. And so we have exhausted efforts in that we've, you know, had private process servers try to track him down and have been unable to do so. This is a member of DOGE who is no longer in the government, and so as we understand the government counsel is not willing to help us talk to him, and so we are at the point that it makes sense to request this court to allow substitute service on him.

It is -- Your Honor is correct, it is for a subpoena to depose him.

**THE COURT:** And so addresses and so forth having been -- you haven't been able to get those through any other kind of discovery?

**MS. STEVENS:** That's -- we have asked counsel more informally but have not gotten anything from them on sort of the range of witnesses, so . . .

**THE COURT:** I mean, there's got to be a personnel file with information on that. And I would have no problem with you getting that to get an address, if they're unwilling to give you the address straight up. Why not just get his personnel file?

**MS. STEVENS:** We can definitely request that, Your Honor.

**THE COURT:** Any problem with that, Mr. Lynch? I mean, if, you know, the government clearly knew where he lived at one

point and if you're unwilling to give that information, what's wrong with that?

**MR. SILER:** This is Mr. Siler, I'm handling this one. I'll apologize for the awkwardness of sort of the tag team but this is just the way --

**THE COURT:** One counsel per issue, generally. I mean, you are doing that. But just for everyone's sake, it's one counsel per issue. So this is a different issue, so go ahead.

**MR. SILER:** Yes, that's our intent.

Sitting here today, we have not been in contact with Mr. Farritor and, you know, we don't know his contact information. That said, I mean, they have not requested his personnel file. I think we would take that request and run that down. There may be some objection I'm not thinking of at the moment, but certainly we would take that request.

**MS. STEVENS:** Actually, Your Honor, may I respond?

**THE COURT:** Yes.

**MS. STEVENS:** Apologies.

It just occurred to me, our written discovery responses we've asked for -- not the personnel files but various understandings about some of these different deponents. And because of who the defendants are, there has been responses that they just don't know because Mr. Farritor and other folks related to DOGE were actually either under the employ or contracting with other agencies and then were -- detailed might

be too strong of a word -- sent over to USAID. And so USAID itself sort of famed ignorance about some specific questions about them.

So I would expect that we might get the response that none of the defendants have a personnel file on Mr. Farritor.

**THE COURT:** Even DOGE or the USDS? Or whatever it's called.

**MS. STEVENS:** Yes. Because none of them --

**THE COURT:** Well, first of all, anybody that's been at the Justice Department knows, or at least it's been my practice, anything involved with the federal government, criminal or civil, the government is the government. So in the government, you have access to it. And so I don't think it's a good answer to say, well, it's some other part of the government. The Justice Department covers the entire government. It's one executive branch. Maybe for a different branch it might be different.

And even if that were not the case, a third-party subpoena to every single one of these agencies that had some role with this person, or the private company that he worked for, if there was a point at which someone is a contractor, no problem with that. And obviously there's some time and expense. There's certainly not going to be any limitation on those things.

But, you know, if someone has got a personnel file, I

don't see why you wouldn't get the whole personnel file to figure out how best to find them. Unless they're just going to give them the information. If they're hiding the ball, I see no problem with that.

And they certainly should be able to answer questions if they haven't already as to if this person didn't work for them who, you know, they had some information on the trail as to where they actually worked and that should be pretty available.

Has there been any problem getting that information?

**MS. STEVENS:** We have an email that was turned over in the last couple of weeks that indicates which agency some of these were, at least at one point, tied to.

**THE COURT:** Okay. Well, I mean, I'm not a big fan of alternative service when it's just a matter of getting the address. It's one thing if the person is directly evading service when you're trying to serve them.

It doesn't sound like there's any claim that the parents are doing anything improper. It's, quite frankly, quite common that parents don't see their adult children regularly at their own homes. I see nothing nefarious.

There are easy ways and hard ways to do this. This is clearly a relevant witness, and the government clearly had information on where he lived, or at least other ways to contact him. And if they're unwilling to provide him voluntarily, then it seems as if it could take a little time.

I'll give you as much time as you need.

But seems to me that the whole personnel file would be in play. You can't just ask for one document and then go back and get a second document when you don't know if you have the right document. Just get the whole file.

And if Mr. Farritor is told that that's going to happen, maybe he'll authorize this information to go out. But if not, we'll go from there, and whatever is in the file will be relevant to finding him.

Mr. Lynch, have you had any contact with him or representative of him just to explain what's going on? Has that even happened?

**MR. SILER:** This is Mr. Siler. We have not had any contact with anyone --

**THE COURT:** Sorry.

**MR. SILER:** -- it's okay. We have not been in contact with Mr. Farritor or anyone claiming to represent him.

**THE COURT:** Okay. What was your proposal in terms of how to do alternative service, Ms. Stevens?

**MS. STEVENS:** We asked, Your Honor, in the letter for a couple of things. Physical posting of the subpoena at the last-known address, first class and/or certified mail (inaudible) is certified mail to the mailing home or last-known address.

And then I believe we do not have an email for

Mr. Farritor, but to the extent that we could find one or the government has one, sending it to his email as well.

And then, as Your Honor knows, sometimes courts will allow social media accounts, and so we primarily indicated that for Mr. Musk that to the extent the social media accounts could be located, we've asked permission to do that as well. We'd basically cover every basis as far as we can.

**THE COURT:** Would your motion have more details than what we have in the letter because I don't -- one of the issues with alternative service is it's got to be reasonably calculated to actually reach the person, and if you're just saying it's a possible address, and we're going to send it by mail there, who knows if that's actually going to actually provide notice.

This reasonably identified address in Palo Alto, I don't know why and how it's going to identify it. Doesn't seem how clear it is that this person actually lives there. I don't have that.

So is the issue that you have information that you just -- you can't get it to a place where you can hand it to him? Or is it that you don't have enough information on the first point about whether the personnel file would get more information?

**MS. STEVENS:** You know, Your Honor, we think it's both. The Palo Alto address we have tried on multiple occasions. There's cars in the driveway and they won't answer

the door. And so that, you know, is some indication of avoiding the process server.

I told you what happened with respect to the parents' address.

So to the extent the personnel file has a different address, obviously we would try that. But we have done our due diligence in tracking down these two addresses that are tied to Mr. Farritor, still tied to Mr. Farritor. But, of course, if we had to file a motion we would provide more detail and an affidavit of attempts by the process servers.

**THE COURT:** I mean, usually with a motion like this we get an affidavit from the process server explaining what was done and what wasn't done. The two things we really need are, one, that this really is highly likely to be where he can be reached, which that's based on how good your address information is and what's the sort of it and so forth.

Or, if there's some indication from the process server that the person was actually there.

And then secondly is, you know, is there some sense of either evasion or going to that location isn't going to work for some reason. So you've got to have both of those things.

I guess what I would say, before you file a motion on this -- and I'm happy to have you file a motion on this, but the issue is really, those are the two things you're going to need. If you don't have that, if you don't have some

reasonable confidence about the address and you need to start by getting actual information from the government or from a government file on this individual, then we should do that first.

I'll leave it to you as to which, you know, what you need to do before you can actually file a motion.

Do you have a sense now or do you want to think about that?

**MS. STEVENS:** I think we'd want to think about that with respect to Mr. Farritor, specifically. I have a different response with respect to Mr. Musk. And then, as we said in our letter, there are other witnesses that we thought would possibly fall under this, and we have a witness that falls under this requested alternative service that we did not put in the letter at the time. That we hadn't tried all the attempts.

**THE COURT:** Okay. Alternative service really is the alternative. It's not the default so if you just -- it shouldn't be the case that that's the first move. It sounds like it hasn't been for the two in the letter. I don't know about the third person you're talking about.

So, I mean, I think -- Mr. Siler, you don't see any way to work this out where, you know, these things eventually work out, they find the person, and it's a lot of work for everybody.

You don't think there's a way that the government could

make this happen?

**MR. SILER:** This is Mr. Siler. I mean, our position is that we don't take a position on the motion. We're not opposed to it. I do not think that we will be able to voluntarily accept service for these individuals or facilitate service for these individuals, if that's Your Honor's question.

**THE COURT:** It wasn't. It was more if you have a way to communicate with them because, again, I mean, if there's a subpoena or something or discovery request through a government agency for address and personal contact information through a personnel file, otherwise, you know, I don't want to see anybody opposing that from the government.

Obviously, Mr. Farritor can jump in and file a motion to quash or something like that, but it's going to be denied if the issue is, well, I don't want anybody to know where I live and I'm not going to tell them. It's different if they tell us where they live and they say there's no need for this. That's a possibility.

But I don't think, you know, again, I'm authorizing now that kind of discovery request or subpoena if you don't have enough to find the right person. If you do, and the issue is evasion and they're not coming to the door, that's a different issue and we can address that perhaps with the alternative service piece.

But if you don't really know it's the right place it's not

going to work. So you've got to know it's the right place. If you don't have enough, you've got to get enough.

So I'm not going to put a time limit on filing this. I think you should just run those tracks and see where we are.

I think you can file a motion but you're going to have to make those showings if it's going to be successful.

Any questions about that, Ms. Stevens?

**MS. STEVENS:** Yes, Your Honor. Is what Your Honor just articulated regarding Mr. Farritor, Mr. Musk and any other witnesses that if we do have evidence that it's their address and they appear to be attempting to evade service --

**THE COURT:** We'll talk about Mr. Musk separately.

I do think in terms of whether you need to do a letter regarding some other witness, I don't think you do. I think I've told you what I think the parameters are and hopefully if you think that -- if you think that you fit within those, then you can file that motion.

I also -- isn't it correct from a timing standpoint, Mr. Siler, you said you're not going to take a position on Mr. Farritor, if there is a motion on Mr. Farritor. So if that's the case, if we get the motion, we don't need to wait for a government response; is that correct?

**MR. SILER:** Yes, Your Honor. We do not intend to take a position on the alternative service motion.

**THE COURT:** Okay. And then as to Mr. Musk, same

thing?

**MR. SILER:** From the government, yes. Although I do have with one question and it's not clear to me who the plaintiffs are referring to in terms of the third individual at this point? I don't -- there are versions of that person that implicate different interests. And so if they could clarify, I think that would be useful, just for our informational purpose.

**MS. STEVENS:** We're happy to, Your Honor. It's Mr. Marocco. We've attempted at least five attempts at various addresses. At one point a security guard called Mr. Marocco and they declined to accept service. We have mailed the subpoena, via first class and certified mail. At every address we know tied him to Texas. A relative answered one of the addresses and said he was in Washington, D.C., but there are no known addresses in Washington, D.C. Everything has been Texas, I believe including his voter registration and tax records.

**THE COURT:** Does Mr. Marocco still work for the government somewhere, Mr. Siler?

**MR. SILER:** He does. But he does not work for any of the defendants in this case.

**THE COURT:** Which agency does he work for?

**MR. SILER:** He works for -- I believe it's DHS, a subagency of DHS.

**MS. STEVENS:** Your Honor, I'm going to have to check my email from November and December, but I understood the last

communication we had with the government on this said he had left government service. But I'll have to go back and look. That's new information.

**THE COURT:** Okay. Well, same thing in terms of him. I mean, again, if you can make the showing that you know where he should be found, and there's been evasion, then you'll probably get alternative service; or that your efforts have been -- you haven't been able to nail that down, if you aren't sure about the right location, then a subpoena or discovery request for a personnel file is entirely within bounds.

We'll go from there.

**MS. STEVENS:** Okay.

**THE COURT:** Mr. Musk, similar issue, but we also have this issue of a security personnel and otherwise.

**MS. STEVENS:** Yes, that's correct, Your Honor. We attempted service ten times. The security guard either says he's not at home, or they don't know who that is. This is the home residence for Mr. Musk. It's been confirmed by some security guard and probably available information as well as private investigator.

**THE COURT:** Okay. I mean, when you talk about things like this, posting at the last known address, is that something a server can even get to or no?

**MS. STEVENS:** They can get to the (inaudible), like where the security -- where you go through security to get into

to serve it.

**THE COURT:** Okay. And then this email option, do you have no email addresses?

**MS. STEVENS:** We have no email addresses for attorneys in the past, I don't believe --

**THE COURT:** I'm sorry, you're fading out again.

**MS. STEVENS:** Oh. For attorneys who have represented him in the past.

**THE COURT:** I see. When you say in the past, in relation to this case or some other matter?

**MS. STEVENS:** Other matters, Your Honor.

**THE COURT:** Okay. Well, I think you can file a motion on that as well. I think, again, if you document, you know, efforts to evade -- whether they're -- I mean, this is not unusual to have security personnel for someone in a position such as Mr. Musk. Legitimately, at least in their roles, feeling like they can't let people get close to someone but that does usually provide a basis for alternative service, not necessarily because of intent but just because the reality whether you can accomplish this or not.

And so, again, you have to have a clear, it has to be clear that you are going to the right place. And I think if you can come up with a plan that is reasonably calculated to -- actual notice, I think is fine.

The email issue I think is one way.

The social media I think is, as you said, it may have been done in the past. I think it's definitely a last resort.

But see what you can do in terms of email and other things first and go to that only as the last resort.

Okay. And same thing, Mr. Siler, you have nothing to add here?

**MR. SILER:** Yeah, the government takes --

**THE COURT:** I'm sure there's a personnel file somewhere. I'm sure there's a personnel file somewhere. Do we need to go to that or? I mean, it just seems to me that these folks worked for the government for a while. They're probably under certain obligations about, you know, their government service or the idea that you can't reach out to any of these folks seems somewhat unbelievable.

**MR. SILER:** Your Honor, I think there are two issues. I know we're certainly happy to look into whether there's information about their addresses that we can provide informally. We can take that back and look at that.

But separately, I mean, service is an individual fairness notice issue. We cannot waive Mr. Musk's personal right to be served without his consent, and we do not, you know, we're not in communication with Mr. Musk so we cannot do that.

**THE COURT:** No, I understand --

(Overlapping speakers.)

**MR. SILER:** Yeah, yeah.

**THE COURT:** I understand where you are, and I don't think there's anything wrong with your position, other than I think the point being if this was just a normal case in which there was a company and people used to work for the company and they're needed as witnesses for a case, usually the HR department, or the general counsel or somebody, can look in a file, find that person's contact information, call them up, and say, "Hey, look, these guys need you for this case. It's not our interest in calling you but they do. It's a legitimate case."

You know, it may make sense just to accept service, to at least make sure it's clear how it can be done without saying we're going to be rummaging through personnel files and things like that, which is where it goes.

Seems like that's the kind of thing that's going to happen in a company when you have former employees and this is no difference it seems to me.

"Overlapping speakers.)

**MR. SILER:** Your Honor, I'm not sure this is a normal case in that regard. And I can only tell you what I can tell you and that is that we're happy to take that back. But I can't commit to, you know, Mr. Musk, you know, taking any of our calls certainly and agreeing to that kind of a process, even if he did.

**THE COURT:** Okay. I understand. So same thing with

everybody, I guess. This can be one motion or three, although the results may not be the same for each witness.

And, again, if you don't have enough on contact information, you need to go to government files for that. I think you should do that.

Again, I would see no reason for the government to oppose that. Really, anybody, unless there is a better source of that information, which right now we don't necessarily have.

But, I do think you could at least get the leads on Mr. Musk. It's really just a matter of execution and the service. So if there's a need for alternative way because of the physical limitations of that situation, then I'll consider it.

Anything else on service?

**MS. STEVENS:** Yes, sir. Just one more thing. We were able to look up that email I referenced about Mr. Marocco, and the government did represent to us he left government service, he left the State Department, and had not provided any updated information to let us know that he's back in government service. They have 100 percent known we have been seeking his deposition. So, but I think it's important to note the problem with that changing information and our inability to serve these folks. This is indicative of that.

**THE COURT:** So, Mr. Siler, which component agency does he work for? DHS is a big place.

**MR. SILER:** Yeah, I believe he works for TSA. And I -- I'm not looking at my communications right now. I think initially our information was that he had left the government. He departed the State Department at a point shortly before -- and this was last year -- the plaintiff, you know, instigated the seeking of his deposition.

And our information at that time -- in fact, this might even been during the government shutdown in October and November of last year. Our information at that time was that he had left the government.

At some time after, candidly, I thought I had updated the plaintiffs on this, but if I hadn't, you know, I think it was subject to a pending motion anyway. But I believe -- there was certainly no intent to hide the ball on this.

We later learned that he worked for TSA and, you know, I can't -- standing here today, but we'll take back this request. You know, the motion that was covering Mr. Marocco was decided yesterday. And, you know, I'll take this back and see if we can work back an informal ability to get contact information for him. But we'll look into that.

**THE COURT:** Well, since he is a current federal employee this whole idea of accepting service seems like a lot easier. I'm not saying you have to or can do that, I feel like he is in a different position than the other folks. Please think about that as well.

**MR. SILER:** We will, Your Honor.

**THE COURT:** Okay. Just as a caveat, Ms. Stevens, I've said that if there's no other way to get the information, get the information from any of these individuals, government personnel files is fair game. And I think everyone -- I think that's absolutely true.

But legitimately those files should not -- I'm not sure the mechanism for protective order regarding, none of that should get outside of this case. I hope you understand that.

**MS. STEVENS:** Of course, Your Honor.

**THE COURT:** Okay. So I think -- is everything else sort of in the realm of discovery and privileges and things like that and scope of discovery?

**MS. STEVENS:** I think the only other thing on services, folks for a subpoena for a deposition, Your Honor, is Mr. Butler, who is the subject of our conversation about the defendants being able to speak to a class representative; they have been in contact with him with respect to us trying to set his deposition but have declined to actually help us set that deposition with him.

And so I don't think this fits in substitute service necessarily but it is tangential and important for the court to know about because we are trying -- we're actively trying to set his deposition.

**THE COURT:** I'm sorry, who is this? Who is the

witness?

**MS. STEVENS:** His name PJ Butler. That's the person who is in the security office at USAID that was about four or five sort of down the chain from the administrator.

**THE COURT:** And you're saying there's a problem getting him on the schedule, even aside the privilege issues?

**MS. STEVENS:** Yes, Your Honor. We are trying to serve him for -- with a subpoena for his deposition. The defendants have told us they're in contact with him about that but have declined to help us actually set that deposition for a date that he's available of.

**THE COURT:** Mr. Siler? Mr. Lynch?

**MR. LYNCH:** This is Mr. Lynch. This is the individual that the plaintiffs are refusing to let us speak to about anything to do with this case, and they want us to help them organize their service. They're now claiming that they represent him, which is the first time I've heard anything about that, you know, 15 minutes ago they said that. If he's their client, he's their responsibility. If he's not, we can do something about this.

But this is sort of, again, more of the gamesmanship and hamstringing us in our case that has been characteristic of plaintiffs' action.

**THE COURT:** So where does he work now? Does anybody know?

**MR. LYNCH:** I don't know --

**MS. STEVENS:** It's our understanding, Your Honor. Apologies, this is Ms. Stevens. It's our understanding that he works at the Customs and Border Patrol for DHS but a different witness testified that that's where he works.

**THE COURT:** Okay. So I don't know if he's at headquarters or he's in the field. We can get into this issue with the privileges and whose client is whose. But, I mean, is it your position that they can't talk to him about other things, Ms. Stevens?

**MS. STEVENS:** It's our position he is a member of the class and with that we represent him in terms of he's a class member. So what Mr. Lynch is getting at -- and he works for the federal government and is a witness in this case. And has access to facilitate, even an email address for him. We're not asking him to do everything, but they are in contact with this person and have so far declined to put up --

**THE COURT:** Well, it's one thing to say you can have a conversation with him, there's another thing to say you don't have the records to reach him.

Mr. Lynch, why can't a current federal employees' contact information, it seems relevant to the case, be provided.

**MR. LYNCH:** We can. They haven't (inaudible) in any formal way. There's a representation issue. It is not so easy for us to ask for his consent, for example, to do this

informally. You know, if we're allowed to ask him for his consent to supply his email, we can perhaps do that.

**THE COURT:** I mean, it's a government email, right? It's not a personal email?

**MR. LYNCH:** True.

**THE COURT:** Doesn't the government own that? Does he have a right to object to that?

**MR. LYNCH:** Apparently, Your Honor, I don't know that he has a legal right to object. And I wouldn't want to represent one way or the other. But it does seem like a matter of courtesy to our employees that we don't tend to give out email addresses --

**THE COURT:** I agree, Ms. Stevens. You can't have it both ways. Are you saying they can't contact him for any reason or are you saying they can't contact him for this reason?

What is your position on it?

**MS. STEVENS:** We think it's a nuance position, Your Honor, that they can't -- because he's currently working in the government -- they have been in contact with him. They have. And so they can either ask him if the date that we propose is a date on which he can show up for his deposition, or if they could connect us, or send us the email, we're happy to talk to him directly.

But that's a different question, we think, than what

they're raising in their letter about privilege and the substance. He still is a class member and, thus far, two out of the three, 66 percent of the time, we've had a deposition where they did not talk to the witnesses before the deposition because they were class members. They came into the deposition and they made their privilege assertion.

And now we're seeking from Your Honor what to do about this privilege information. But it went forward in the way that was perfectly reasonable.

**THE COURT:** Okay. Well, again, this person is in the government. It seems to me the cleanest thing to do is to get his email address. I think it's fair for the government or counsel or someone from counsel's office to be able to ask this person if there's any problem providing that.

I think the alternative, again, is a subpoena for this person's personnel file and get a home address and go find him there. And if under those circumstances the witness has no problem with the email address, or even if they do, if it's the government's position it's their email address, they can send it over. If not, you know, they'll get the personnel file and they'll get the home address and they'll find them there. And those are options that the witness can pursue or can be made aware of.

I don't think there's any reason the government can't make him aware of those options, is there?

**MS. STEVENS:** Not that I can think of right now, no.

**THE COURT:** Okay. I mean, again, there's easier ways to do this than subpoenaing someone's personnel file. There's a lot of in between there. I think someone -- the government could get access and provide information with the consent of the person. There's so many different ways this can happen.

I'm surprised we're at this point. But if we are, we are.

There's certainly been no sign that the witness is trying to evade anything. So I don't think we need to go to that level of intrusion unless it's really necessary.

So, anyways, on to discovery issues.

It seems to me like we've got three issues: One is the scope of the 30(b)(6) deposition; one is how to deal with these privilege objections; and then the third is this issue about someone like the witness we've been just been talking about and what kind of communications can or cannot occur between the government and those witnesses in connection with the privilege issue.

Is that the scope of what we still have to cover?

**MS. STEVENS:** Yes, Your Honor. This is Ms. Stevens.

**THE COURT:** Does that -- anything else from the government side that we haven't covered? I think they're all interconnected to some degree.

**MR. SILER:** This is Mr. Siler, and yes, that's what I was going to say.

**THE COURT:** Okay. So let's start with this privilege issue.

Ms. Stevens, you said that there is -- there were depositions of individuals. Things came up where the government objected and said it was privileged information.

Can you just give me a little more specifics in terms of the kinds of questions that generated that, whether you agree or disagree they're covered by the privilege. We don't have to cover every question, just give me a flavor of what we're talking about here.

**MS. STEVENS:** Yes, Your Honor. My colleague, Andrew Warren, is on the call, and he is handling the privilege questions specifically.

**THE COURT:** Okay.

**MR. WARREN:** Good afternoon, Your Honor. Andrew warren for the plaintiffs.

**THE COURT:** Okay.

**MR. WARREN:** So as we noted on our December 15th pre-motion letter, these issues of privilege have come up a few times in the context of deliberative process and presidential communication privileges. And as Your Honor knows, the government counsel has instructed the witness not to answer.

We're raising it now not to litigate the prior occurrence, but we expect it to happen more with upcoming witnesses. So we wanted a chance to discuss with the court a plan to go forward.

And specifically as to the question the court just asked about where this came up. With one of the witness, deliberative process privilege was asserted in response to a question about preparation that DOGE had taken prior to arriving at USAID. And we do disagree with the proper application of that privilege to the content. It was not -- did not apply based on the question that was asked.

And we had gone back and forth with counsel after the fact and during the deposition to try to understand how it could apply.

With regard to a presidential communication privilege, it came up in two separate depositions. Both concerning questions about conversations that someone had with Mr. Musk. Again, we disagree that presidential communication privilege applies, not to go into the reasons why, but that's the context of the three instances so far where it's come up where counsel for both sides disagreed about it. And we think it's going to come up in future depositions as well.

**THE COURT:** And so part of the issue is what's the answer on whether these are privilege or not. But you also said from a process standpoint, is there a way to do this where -- I mean, it does seem to me from the witness's standpoint primarily and, frankly, for counsel as well, it's highly inefficient to be in a situation where questions are not answered, there's a privilege asserted, and then if it turns

out it wasn't -- the court doesn't find it to be privileged you're going to go back and bring these folks back.

I'm not saying that that would happen. Maybe the privileges are all valid.

But do you have a proposal in your letter as to sort of how to deal with this from an efficiency standpoint? And I think we should all try to come up with something from an efficiency standpoint.

I wasn't sure how it worked mechanically where I think you said they answer the questions under seal. That's all good, but does that mean that counsel for the plaintiffs hear the answer, and they can't use it but it's heard? How are you planning to do that?

**MR. WARREN:** Yes, Your Honor. We believe that that's the most efficient way to proceed where counsel hears the answer, and then we would be not able to use that if the court later determined that privilege should apply.

And depending on the type of question and the answer, it could -- it's hard to imagine how there would be prohibition against indirect use, but we're anticipating that we -- it would be essentially direct use we would be precluded from that testimony.

**THE COURT:** But isn't a direct use kind of important sometimes? I mean, you're basically saying that you get the benefit of hearing this and you can do whatever you want with

that information. You can ask a different witness a question based on that. I'm skeptical that this is the right way to do this.

Are there any cases that support that approach?

**MR. WARREN:** We can try to find case law, Your Honor, that supports that approach. But the types of questions that we're asking and the indication of the privilege in the past, and what we anticipate in the future, I don't think there's going to be an issue about the indirect use.

For example, one of the questions asked was -- it concerned a conversation that a DOGE employee had with Mr. Musk regarding his duties at DOGE, and government counsel objected on presidential communications privilege.

The information that he would provide in that situation is not going to lead us to additional witnesses necessarily. And to the extent that it did, we would be able to ask who we should be able to ask the contextual questions to establish who else did you speak with about this topic. Because that determines whether it was with the president's immediate advisors, which is required for presidential communications privilege.

We should be able to ask who the information was communicated to, even if that goes to whether it remains confidential, which is required for the privilege to apply.

So we would be able to ask those contextual questions that

would allow us the indirect or the derivative use regardless. So I really do think the issue comes down only to direct use and the proposal that we've made to allow the questions to be answered, and then to preclude our use until the court approved it would solve that problem.

**THE COURT:** But you don't have an example of a case where it actually worked?

**MR. WARREN:** Your Honor, off the top of my head we do not where the court has done that.

But we are aware -- that is, in terms of dividing between direct and indirect use. We can find examples. We should able to find examples where the court has allowed this process to occur of allowing the witness to answer a question and then reviewed in-camera for later determination of use.

**THE COURT:** Okay. Let's hear from the government.

**MR. SILER:** That's me, Mr. Siler.

Your Honor, I have sort of two points to make in response to Mr. Warren's argument. The first is that our position is that neither the plaintiffs nor their counsel are entitled to learn information with respect to governmental privileges, even if that's under seal. And I think that goes to the heart of the privilege, which is meant to, you know -- the governmental privileges are meant to encourage advisors and other employees (inaudible) use the deliberative process and the presidential communications privilege. Our view is those privileges

apply -- the presidential communication privilege applies even when the closest advisor to the president is reaching into agencies and gathering information in the scope of their jurisdiction that they're advising the president on.

And so, you know, we don't think any alternative process is necessary here. These things can be litigated in the usual way. But to the extent that court is inclined to have an alternative process, that process must include excluding counsel from hearing the answer to the question until the claim can be assessed.

And I'd note that this case is, you know, not a normal business case where, you know, competitors and in business and we're talking about attorney-client privilege or something of that nature. This is the government and a nonprofit organization representing, you know, people who have different political views, and I think there is political opponents to the administration and so that just raises different issues.

**THE COURT:** I'm not sure --

(Overlapping speakers.)

**THE COURT:** I mean, you haven't seen the full range of civil litigation. I guarantee you I can point to a million cases I've had where the oppositional views of the plaintiffs and the defendants, whether it's a corporate case or -- this is nothing compared to some of these other ones. So I don't know if I agree with you that this is the most sort of diametrically

opposed group of parties that we've ever seen or anything like that but, you know.

**MR. SILER:** Your Honor, point taken. Point taken.

I have been doing this for long enough to know that that private cases get contentious too. But I do think there's a different character dispute when you're talking about two businesses having a commercial dispute and the federal government and the executive branch against people who are challenging the policies of the administration are different --

**THE COURT:** So I don't think we need to waste time on that issue. We can agree to disagree.

**MR. SILER:** Understand.

**THE COURT:** I mean, if you've been at the Justice Department long enough, you haven't done those government cases -- the private cases, but anyway.

Here's the question: It sounds like you would be open to a procedure under which if there were an allegedly privileged question with an answer that for efficiency sake to save the witnesses and the parties the trouble later that the answers could be given under seal, I mean, with a court reporter recording it, but with the counsel out of the room, opposing counsel out of the room.

Now, obviously there's a limitation on that if you can't do a follow-up question, you don't even know if the answer is responsive. So if you were to have a follow-up question it

would have to come later. But to the extent that that answer, itself, is all that proved to be necessary, and it wasn't heard or seen by the plaintiffs' counsel, would you have an objection to a procedure like that?

**MR. SILER:** Your Honor, I think we would prefer to have a normal process where counsel for the plaintiff can ask their contextual questions to -- of the witness to make a record to determine whether the privilege is appropriate, and then that claim can be litigated of course in the normal course. Does the plaintiff have a legal argument to make that the information should not be privileged.

So I think our first-line position is we would prefer the normal approach.

But, you know, secondarily -- just because I think an alternative approach where the deposition is taken and the plaintiffs' counsel has to leave the room, my worry is that that incentivizes additional challenges to privilege that would be potentially obviated by a more normal procedure.

Having said all of that, you know, I think it would have to be very clear that the plaintiffs' counsel are not entitled to see that portion of the transcript. There would have to be protections in place to ensure that.

The court reporter of course is, you know, would take the testimony but it would only go to the government and not the plaintiff. And I think that would be potentially, you know, I

think an exhausting burden on the witness but increases some burden on the parties and the process.

**THE COURT:** Well, so there's two things I would say: One is, while I agree with you that it's complicated, it does seem to create some efficiencies because not only does it reduce the likelihood of having to call a witness back, even though I don't think it would preclude that because, again, if they give an answer that was nonresponsive or naturally would have a follow-up answer, if they could hear that first answer they might be entitled to come back and ask follow-up questions. But it would certainly reduce the likelihood.

But it would also, frankly, put the court in a much better position to reach a fairer conclusion on the privilege issue to have not just the question but the answer under seal *ex parte*, in-camera, et cetera. So there's some value to that.

I also -- so are you saying that your first choice is to have nothing other than you object, no answer is given, and then we sort it out later? Or you're second choice is what we just described. And your last choice of course is to have the record made with opposing counsel present; is that correct?

**MR. SILER:** Yes, Your Honor, that's correct.

**THE COURT:** Okay. So and then let me just ask, maybe you can respond to this. The two examples that Mr. Warren gave of allegedly privileged information didn't really strike me as privilege.

I mean, I think one of them was what was done at DOGE. It didn't sound like a question that called for any kind of communications or questions -- or it was just here's what we physically did. And how that is relevant to a presidential communication or is covered by that or how it's covered by deliberative process which is usually about internal discussions about how to proceed.

The question doesn't call for any communication, it's just here's what we did. I'm not really seeing it.

Can you clarify or give me a better example of a question that you objected to that is more clearly privileged.

**MR. SILER:** Yes, Your Honor. That deposition, at least my understanding of it, and I'm at a bit of a disadvantage because that was not my deposition I defended, but my understanding the question was about DOGE's intent for USAID, which we believe would have been covered by the deliberative process privilege.

In any event, that particular question, in our view, was, you know, kind of moot because the -- I'm sorry, Your Honor. I'm thinking about a different question. I withdraw the latter point.

My understanding was the question is about DOGE's intent for future plans, not necessarily about preparation.

**THE COURT:** Okay.

**MR. WARREN:** Your Honor, I can help clarify the

factual basis if it helps the court.

**THE COURT:** Okay. I don't want to go question by question at this stage, but go ahead.

**MR. WARREN:** Understood. But for Mr. Siler referenced the question about intent, the question was, quote, "Will you please describe the content of those conversations with Mr. Butler?" And the witness was instructed not to answer on the basis of deliberative process privilege.

The questions --

(Overlapping speakers.)

**THE COURT:** -- (Inaudible) Mr. Butler or who?

**MR. WARREN:** I'm sorry, Your Honor, I couldn't hear the question?

**THE COURT:** The conversations between Mr. Musk and Mr. Butler or between Mr. Butler and someone else?

**MR. WARREN:** It was between Mr. Butler and Mr. Farritor. So the question does not involve --

(Overlapping speakers.)

**THE COURT:** I don't know who is -- what was the last thing said by somebody? I think you were talking over each other.

**MR. SILER:** Sorry.

**MR. WARREN:** Sorry, that was Mr. Lynch saying it's not accurate. The accurate (inaudible) about that one instance and this is the only instance where deliberative process privilege

has been so that the parties are disputed. In fact, I believe it's the only time deliberative process privilege has been invoked in any of the depositions.

Mr. McGill, who was a security officer at USAID, was asked about his knowledge of advanced preparation that DOGE took before arriving at USAID. And Mr. McGill testified that he had knowledge of those against preparation through a conversation that he had with Mr. Butler, who is also a USAID security employee.

When asked about those conversations, the content of the conversations, counsel instructed the witness not to answer.

**THE COURT:** So was there a separate question about what the actual preparations were? What was physically done?

**MR. WARREN:** There were questions asked about that. There was no objection to that. The objection was to a question about the conversation that the witness had with another individual at USAID about those preparations.

In this instance, the witness himself only knew about the preparations based on a conversation with another USAID employee.

**THE COURT:** Preparations for what?

**MR. WARREN:** That's what we're trying to determine.

**THE COURT:** (Inaudible.)

I mean, you didn't ask -- why did you say preparations for me, can you clarify?

**MR. WARREN:** Sure. The question was about advanced preparation. That was the testimony that the witness gave.

**THE COURT:** Preparations for what?

**MR. WARREN:** For what DOGE was going to do before arriving at USAID.

**THE COURT:** Okay.

**MR. WARREN:** But there was no more specificity provided because the witness was instructed not to answer the question.

**THE COURT:** Okay. Well, in any event, in terms of a process, I do think given apparently how difficult it is to get witnesses in, I know the ones who testified clearly aren't in that category, but we've got some coming up for which there are some difficulty getting service effected. Some are no longer with the government, some may have other things they need to do. I think trying to get them here twice is not a good idea.

While I understand that, again, I'm not saying they wouldn't have to, but I think we should reduce the likelihood. So I'm going to approve the intermediate process and not having the allegedly privileged information stated in front of the plaintiffs' counsel, I think that's letting the cat out of the bag. I don't agree that indirect use is always going to be fine. I also don't think we should guarantee there will be no potential and direct use. Usually there is. If you're a good lawyer you can think of something. I don't think that's

appropriate at this stage.

I do think that you can work -- obviously, you need to work with the court reporter on this. If the answer to the specific questions can be put on the record under seal only for the, you know, in a part of the deposition which is just the government's counsel, the witness and the court reporter, and when they produce the transcript that only those portions are not produced to everyone, only to the government's side. Again, they could end up being produced in-camera, that's a different issue, and that's what I would authorize at this point.

Anybody have any problems with that at this stage?

**MR. SILER:** This is Mr. Siler for the government.

I think that works for us. The only other point I would make is that this does relate to the conversation earlier about the government's ability to speak with people who are going to be deposed that are government employees. Our inability to speak with those individuals affects our ability to make tailored objections based on privilege and instructions not to answer because we are not able to understand what their substance of their testimony is going to be with respect to certain conversations they need to be having with Mr. Musk or certain, you know, information that might be potentially delivered to them so then we're constrained to make protective objections that we might otherwise not make.

**THE COURT:** It's a fair point. The reality is I think most of the witnesses who -- well, some of the witnesses who are upcoming are not in the class.

As a practical matter, how many other witnesses are there in that category, Mr. Warren or Ms. Stevens, in terms of people who are arguably in the class who are in this category that the government has identified as current government employees who are already in the class? How many of them are actually coming up?

**MR. WARREN:** I believe it's only Mr. Butler, Your Honor.

**THE COURT:** Okay.

**MR. WARREN:** This is Mr. Warren.

**THE COURT:** Okay. So what I would prefer we do, then is, subject to this new procedure on privilege, that we just keep it as it is now. I think, to be honest, I think I would want to get some briefings on that issue. And I think the cost benefit of briefing can do a full analysis of that issue versus it does seem as if they're able to make this work with other witnesses. And if it means possibly some overassertions of privilege, I could understand how that could happen when you're flying with less information.

So I think we'll all have to indulge the government on that. I think it's better to do that than it is to try to fully litigate this issue when we're talking about one witness.

And then at the end if the whole issue was unsatisfactory, we'll go back and -- we may have to do this anyways if there are still remaining privilege issues, I guess it would be the plaintiffs want to contest in some form, you know, we may have to do that. But at least we'll have a narrow set of issues in front of it. So that's how I'd like to proceed on this issue, even though I understand it's an issue.

And just going back to the privilege issue. I would just say no one has presented a particular objection to privileged information. I think the more the parties can work it out the better. We may have to do that at some point in the case, either all together at the end or somewhere in the middle at a natural stopping point.

What I would say just to perhaps guide you a little bit -- and I think it was implicit in my question and it didn't sound like after the clarification was necessarily being -- is inconsistent with that, but generally speaking, and I know that there's maybe some exceptions, I think when we're talking about these two privileges, my general view is these deliberative process issues really are pre-decisional communications that describe, you know, what was proposed and the protection is inherently about making sure the government personnel can speak freely about what they think should happen next.

So while there may be things that fall in that category, I don't think it's appropriate to object to testimony about if

something happened or what physically was done as opposed to what were the discussions about.

It sounds like so far it's a map, but I just want to make sure we're general on the same page about that. Obviously there may be exceptions that you can find a case on. So I'm not trying to make any broad final rulings. But just so we all are looking at it on a similar fashion.

On the presidential privilege communications, same thing. We're talking about communications. I would acknowledge that if we get into disputes about that, I'd probably want to see some briefing on that privilege, it comes up frequently. And the full range of what's permitted and not permitted, I think I'd want to see some law on.

But, implicitly, I think we're talking about communications. So if there's a communication and there's a theory under which it's privileged, then that's one thing. If it's things that happen, dates, times, you know, who made a decision, the kinds of things that came up in the last motion, I would expect that they're not likely to be in that category. And if there are certain to be (inaudible), there's some justification for that.

So, again, I'm not ruling on any particular motion. I just thought that might help everyone be on the same page.

Any questions about the privilege issue at this point?

**MR. SILER:** Your Honor, this is Mr. Siler. I just

want to be clear.

Is your intent -- is Your Honor's intent to issue an order sort of outlining the process or are you expecting the parties to kind of work together to come up with the intermediate option that you had indicated? What would you prefer?

**THE COURT:** What is your view?

**MR. SILER:** From my view I think we can work it out but I wanted to be clear with that.

**THE COURT:** Mr. Warren, any problem with that? We have a record. This is a transcribable hearing so we can go back to this. But I don't know the ins and outs of how your operations are with the court reporter. So I don't know if I could completely capture it. I could do a broad ruling that you could work within or you could kind of reach an understanding among yourselves first.

**MR. WARREN:** Your Honor, I don't think it's necessary for the court to memorialize this in writing. I think the court's instructions are clear.

I just think it may be helpful just to take another moment to talk through the issue. I'm confident the parties can work it out.

I think that if the proposal is, as the court said, that the questions should be answered without plaintiffs' counsel in the room, then what we'll try to do is have questions -- ask all the questions we can to establish the context of the

privilege, to determine whether it applies, and then either have the actual questions, if there are more than one, answered at the end of the deposition with counsel out of the room, or step out of the room in the interim so that government counsel can then assess whether a privilege actually applies.

As Mr. Siler said, they're sometimes having to invoke privilege out of an abundance of caution.

But I think either way, so long as the parties are working together to, again, ask all of the questions and provide all of the answers that they can, that are not privileged before getting to the privileged question, then that should suffice.

**THE COURT:** I agree with that. And, obviously, I think both counsel can work together, again, implicitly just, again, piece of guidance, I do think that foundational questions that don't call for the actual communications or discussion of what the deliberative process is are appropriate and, frankly, are very helpful if a ruling needs to be made later.

So if it's an issue of, you know, did you have a conversation with somebody? When did it occur? Who else was there? Those kinds of questions I think, you know -- and should be allowed so we can get a better sense of what we're dealing with later so long as of course you stop short of the actual communications.

Any questions about any of that?

**MR. SILER:** No, Your Honor. This is Mr. Siler.

**THE COURT:** Okay. Unfortunately, I have a 4:00 hearing that I'm late for. I think the only other major issue is this 30(b)(6) topic area. And I don't know whether -- since you've been doing depositions of individual people, some of this may be -- maybe some of these things are covered, I don't know.

I'm seeing a list of 30 -- 32 topics. Are we still at a point where -- are we at a point where you need someone to decide which topics are in and which are out? Or is there a better way for you to work this out?

**MS. STEVENS:** Your Honor, this is Ms. Stevens. I'll just briefly say we've sort of gone round and round on questions with these topics back in the beginning of November. Government counsel indicated they might be able to submit counter-stipulations to us, (inaudible) stipulations slightly before that. We've not been able to get any stipulation from the government and neither did we get a proposal on a narrowing of the topics.

There are sort of a significant amount in number of topics, but they are narrowly described, specific topics. And the case we're talking about reasonable similarity, that is why there are many because we are trying to be very specific about the information we need from them to two 30(b)(6) depositions.

And the government has previously indicated that they

would likely seek to have one witness for both 30(b)(6) depositions, which would narrow the time element on this potentially that was raised in their letter. So we're sort of at an impasse.

**MR. LYNCH:** Mr. Lynch. Couple of quick things, Your Honor. I apologize (inaudible). We'd be happy to continue getting I think -- one thing my colleague on the other side just said was, yes, they served these in November to change their position, despite loads of other discovery, they served these before any discovery was taken. Virtually all is duplicative. You know, if they want to take 30(b)(6) depositions based on what they know, they should get a narrow specific topic of the things they need from us and we're happy to provide stipulations in the alternative. We've said this a long time.

They withdraw their offer of stipulations when I could not commitment 100 percent certainty to a specific date that I would respond by on a phone call with people who have to review those decisions were not on the call and haven't been consulted. I said I can give you 99 percent certain that I would get back to you by a date certain, but I do have to withhold the possibility that, you know, 1 percent chance somebody less authorized can't do it in time.

You know, we're happy to talk about this with them if they want to. If not, we will need (inaudible) to negotiate.

And then the other things, the one witness, I did not suggest or we did not suggest at any time that that was our intent. I asked the plaintiff if they would be willing so that I could take that possibility back as one thing. I don't know if it's feasible. I don't know if our clients are willing to do it. And was something that (inaudible) we intend to do necessarily.

**THE COURT:** Okay. Ms. Stevens, this point about this list being generated early on and now you've gotten some discovery, is there any chance that some of these topics are no longer necessary or at least sort of narrower than they currently are, given that you've gotten some discovery?

**MS. STEVENS:** Yes and no, Your Honor. So we've taken four depositions: Two security officers, the former acting administrator for 10 days; and then also one member of DOGE who was not particularly forthcoming.

The defendant had turned over a substantial number of documents. I will say there are -- we're still engaging in rolling document production from back in October/November time frame. So there's still documents we do not have. The fastest way to get to some of this is to talk to a person on behalf of these two agencies.

And in the context of whether the documents are themselves sufficient to obviate the need for somebody, we just found out in a deposition two days ago that there's a document that is

responsive to our document request about communications with Congress that we have not gotten in production.

We don't know what we don't know because document production is still ongoing. And we feel strongly that we need to talk to these 30(b)(6) witnesses to get to the bottom of some of this.

**THE COURT:** Okay. Well, honestly, I'm not completely sure how it's going to go with the 30(b)(6) witness on all of these topics. It seems to me the most useful source of information will be individual witnesses, assuming they can be identified and served and answer questions, you know, openly and honestly. I don't know if that's where we are on that.

So I think what I would suggest is the parties -- are we saying that no one is going to have a deposition until there's an agreement on these lists? Because it seems as if -- it's always helpful in the 30(b)(6) situation for the witness to have an idea what's coming. But, I mean, it seems like it's sort of the -- kind of the perfect enemy of the good.

You can have topics, you can ask someone to prepare for them. If there's something that went beyond what's in the topics, then it may be a legitimate question to say I'm not really ready to answer that. But by having a broad range at least you have a bigger sense of what could come up.

I guess I'm not really sure I understand why the deposition can't occur if lists -- topics have to be, you know,

sort of adjudicated in advance. That just seems not that helpful.

I mean, it seems to me that, you know, there's a few exceptions but almost all of these topics are relevant to the case. Now, were there individual questions appropriate? I have no idea.

I guess I'm not sure I understand why we have to get to a "yes" on a list of these topics before we can do anything.

Mr. Lynch?

**MR. LYNCH:** Your Honor, the prepping for a 30(b)(6) deposition is extraordinarily burdensome for the government. It can takes weeks of full-time preparation by multiple attorneys and the witness, which, frankly, given the way that they want to schedule this, it's not possible. This is, like, the entirety -- the topics are essentially the entirety of the case, right. Everything conceivable.

And we're prepping multiple witnesses in the next month for deposition. It's like we don't know what they're going to ask and it's going to be a complete waste of our time.

And I think that's really the problem here because it's more about (inaudible) up the burden than it is actually uncovering information.

And, frankly, every 30(b)(6) deposition I have ever been involved with, the topics have been adjudicated in advance before the witness is selected or prepped because what the

topics are matters to who the designee is.

**THE COURT:** Okay. So I've got 32 topics here. Why don't you file something stating why these are inappropriate for some reason, and I'll look at it and go from there.

I think I have a pretty good idea why most of these are being asking. It's totally fine if you ask me. There are a couple I have some questions about.

I think an efficient way to go is you file something explaining why any -- which of these topics you object to and why. Some of them you don't have to object to of course if you don't choose to. And then depending on how clearcut it is based on your answers, I might ask for a reply filing by the plaintiffs if I'm unsure about that, or if it's pretty clear from both sides, from just the topic and your objection that it's clearly in or clearly out, I won't ask for that. But I will potentially ask for a reply if I need additional clarification from plaintiffs about what they really want.

Now, it may make sense to have like a week before that where the parties can still talk about it, or do you feel like you've talked it through already?

**MR. LYNCH:** I mean, I think it might be useful to continue to talk. As I say, Your Honor, the collectivity, the sheer number of documents is part of the problem. We get -- we can prepare a witness fully on that in a reasonable amount of time.

Thirty-two, I don't think we can. I just -- I don't see how that's even feasible.

**THE COURT:** I mean, the number isn't really the issue it seems to me. Someone could have said everything in the case and it's one topic and it's bigger than what we have here. So there's no magic in that. I agree with you there could be some -- some aspects of things that are beyond the scope.

But anyway, how about this, why don't we say a week to have back and forth and meeting and conferring and trying to narrow this down so the government doesn't have to necessarily respond to 32 different topics. Again, there's no reason to have to pick all 32, but at least whatever that you object to. And then maybe one of them or some of them can be reframed in a way that is agreeable to everybody so we don't have to look at 32 different disputes.

And then do you want to file them in a week or maybe make it two weeks? One week for discussion, one week to put them in together? How do you want to do that, Mr. Lynch.

**MR. LYNCH:** I think another week to file would be good.

**THE COURT:** So filing in two weeks, the first week are you meeting and conferring?

**MR. LYNCH:** Yeah.

**THE COURT:** Okay. And then what I would suggest we do you, I'll try to reply -- which I would probably say do a week

after I issue a notice. I think it could be efficient, I'll issue a notice on the ones I need something on, if any.

Is that agreeable to you, Ms. Stevens.

**MS. STEVENS:** Yes, Your Honor.

And if the government counsel would be able to put in writing the specific objections to the 32 so that we can discuss them in advance of the filing, we're happy to do that.

**THE COURT:** Well, I think that's part of the meeting and conferring. I agree, you want to share your objections in advance, you could do that. But I, you know, whether it's oral or written, that should be happening anyways. So I don't think I need to require you to get the written version but you should definitely be understanding each other's views. That should definitely be happening.

Okay. So I do have another hearing and it involves at least one of these parties, as I said, the government writ large. So I don't want to keep them waiting any longer.

Just to recap, maybe going backwards to front.

We'll get a filing in two weeks on the 30(b)(6) from the government, a reply to the -- if I need something on certain topics, I'll issue a note for the plaintiffs to respond to that.

We have an agreement or an understanding at least of what I put forth as the -- what I'm directing is the procedure for the privilege issue, which is having privileged answers being

provided at the deposition but under seal *ex parte* without plaintiffs' counsel present, just the court reporter and the government.

We're not going to make any particular -- we're not going to narrow the cert class -- we're not going to modify the class definitions. And we're not going to make determinations about contact with the government between the government and class members, at least until we get through this next witness, this last witness we can do that through the process that we just described.

And the plaintiffs can file a motion for alternative service. I'm not going to set a deadline but I'll look for -- I'll accept those when they come in.

And then the understanding is the government is not responding to those because they're taking no position on that.

And then there will be discussions about what to do about Plaintiff Doe 29 with -- if a motion needs to be filed, it'll be filed on February 13th. You'll let us know if the consent motion for some end result or if it's opposed we'll do the standard two weeks after that and two weeks for the reply brief.

Did I miss anything?

**MS. STEVENS:** I don't think so, Your Honor. This is Ms. Stevens.

**MR. SILER:** Your Honor, this is Mr. Siler. There is

one additional thing, which I'll try to be very brief about.

Just to clarify for everyone, the department received the order about the three depositions that were entered yesterday. We're evaluating options on further release. But after the brief was closed on that, the plaintiff for the first time requested deposing Amy Gleason to which we objected. Those arguments are similar to the ones we made in that brief, in the briefing earlier with respect to the Cheney Doctrine and her official -- she's a little differently situated because she was not in the position on the weekend that is the focus of this case, but we did want to make the court aware that that objection has been lodged.

And if there is some, you know, indication the court wants to make whether that would be accepted or not or whether we should just let that develop in the normal course, I did want to get that on the record.

**THE COURT:** I mean, hopefully the parties can talk about that further. If there's a need for a motion on that, then I suppose you could file it. I would ask you to work within the law of the case in terms of -- understanding that they disagree or at some point be able to ask someone else about those.

But work within those parameters or explain what you agree with or disagree with. Obviously the facts may be different, which is why I don't think it's fair to make any rulings right

now. I'm not actually that familiar with her exact role.

So long as your (inaudible) is within the last ruling and file a motion that sort of works with that and or addresses sort of whether you're reiterating similar arguments, go ahead and do that.

But I'd ask you all to meet and confer to see if there's a way to work -- the only thing I would say, I think it's implicit, but I don't think formally, I know it's one of the issues. I would hope, and I thought this was the case given the service issues, that I think logically the three witnesses that were subject of that motion we really should wait towards the end until after we've had depositions of whoever else is relevant that you want to pursue, so that the questions can be narrow and focus on information you don't already have or confirming things that you need to be confirmed, rather than a fishing or broader approach.

So that's one of the factors in the motion, in the (inaudible) in other sources. Again, based on the record in front of me, I believe that there's not enough -- there's no indication of other sources, but if -- I think to just sort of be fair to the witnesses, I think we should wait until later to do them. At least until after witnesses who could have additional information that would limit the need to talk to these witnesses have been deposed. And the fact of the matter I think each one of them you don't have access to yet and

that's going to take some time. I don't think it'll probably change too much. But I wanted to throw that out there as a general parameter.

Any questions about that?

**MS. STEVENS:** Yes, Your Honor.

**MR. SILER:** Not from the government, Your Honor.

**MS. STEVENS:** Pardon, our proposed schedule is in accordance with that, Your Honor.

**THE COURT:** Okay. And, again, I think the problem with ruling is the understanding that that's how it likely works.

Okay, we'll try to make an order with specific things that involve dates, not necessarily the procedure as we said, but the filing dates. And I think that concludes the conference. Thank you all very much. Have a good day.

(Conference concluded at 4:20 p.m.)

I, Ronda J. Thomas, certify that the foregoing is a true, correct, and complete transcript of the audio-recorded proceedings in the above-entitled matter, audio recorded via FTR Gold on February 5, 2026, and transcribed from the audio recording to the best of my ability, and that said transcript has been compared with the audio recording.

Dated this 10th day of February 2026.

Ronda J. Thomas

Ronda J. Thomas, RMR, CRR
Federal Official Court Reporter

**MR. LYNCH: [23]** 3/6 9/21 12/19 14/4 14/19 15/7 15/15 16/1 16/15 16/25 17/2 18/20 19/6 39/13 40/1 40/23 41/5 41/8 64/5 67/10 68/21 69/19 69/23
**MR. SILER: [33]** 2/16 5/17 11/13 11/22 22/3 22/9 25/13 25/16 29/2 30/23 31/2 31/19 31/22 34/7 34/15 34/25 35/19 37/1 38/1 43/24 48/16 50/3 50/12 51/5 52/21 53/12 54/22 57/13 60/25 61/7 63/1 71/25 74/6
**MR. WARREN: [18]** 44/15 44/18 46/14 47/5 48/8 53/25 54/4 54/12 54/16 54/23 55/14 55/22 56/1 56/4 56/7 58/10 58/13 61/16
**MS. STEVENS: [53]** 2/10 3/13 3/16 3/20 4/9 4/21 5/3 6/20 7/25 9/15 11/11 11/24 17/10 18/1 18/10 18/13 20/20 21/1 21/14 21/22 22/16 22/18 23/8 24/10 25/20 26/23 28/9 30/8 31/8 31/24 32/12 32/15 32/24 33/4 33/7 33/11 36/15 38/10 38/14 39/2 39/7 40/2 40/11 41/18 43/1 43/20 44/11 63/12 65/13 70/4 71/23 74/5 74/7
**THE CLERK: [1]** 2/3
**THE COURT: [119]**

**1**

**10 [1]** 65/15
**100 [1]** 36/20
**100 percent [1]** 64/17
**101 [1]** 1/25
**10th [1]** 75/8
**13th [3]** 11/15 11/19 71/18
**15 [1]** 39/18
**15th [1]** 44/18
**191 [1]** 20/9
**198 [1]** 3/1
**199 [1]** 12/6

**2**

**2026 [3]** 1/6 75/4 75/8
**21201 [1]** 1/25
**25-0462-TDC [1]** 2/4
**29 [3]** 3/2 3/20 71/17
**2:30 [2]** 1/7 2/1

**3**

**30 [12]** 43/13 63/4 63/8 63/24 64/1 64/11 66/5 66/8 66/16 67/10 67/23 70/19
**300 [1]** 9/9
**32 [6]** 63/8 68/2 69/11 69/12 69/15 70/6

**4**

**41 [1]** 3/2
**4:00 hearing [1]** 63/3
**4:20 [1]** 74/16
**4th [1]** 1/25

**5**

**5th [1]** 11/14

**6**

**66 percent [1]** 42/3

**8**

**8:25-cv-00462-TDC [1]** 1/5

**9**

**99 percent [1]** 64/20

**A**

**abide [1]** 15/20
**ability [5]** 11/4 37/19 57/16 57/18 75/5
**able [27]** 6/4 6/12 7/13 8/19 10/10 14/23 19/9 20/13 21/12 24/5 29/4 32/8 36/16 38/17 42/13 46/16 47/16 47/17 47/22 47/25 48/11 57/20 58/19 63/15 63/17 70/5 72/21
**about [111]**
**above [1]** 75/3
**above-entitled [1]** 75/3
**absent [1]** 12/22
**absolutely [1]** 38/6
**abundance [1]** 62/7
**accept [4]** 29/5 31/11 35/11 71/13
**accepted [1]** 72/14
**accepting [1]** 37/22
**access [4]** 23/13 40/15 43/5 73/25
**accomplish [1]** 33/20
**accordance [1]** 74/8
**accounts [2]** 26/4 26/5
**accurate [2]** 54/24 54/24
**acknowledge [1]** 60/9
**acting [1]** 65/14
**action [2]** 2/4 39/23
**actions [1]** 10/24
**actively [1]** 38/23
**activity [1]** 7/22
**actual [6]** 28/2 33/24 55/13 62/2 62/15 62/24
**actually [20]** 10/7 17/6 17/7 17/18 22/16 22/24 24/8 26/11 26/13 26/13 26/17 27/18 28/6 38/19 39/10 48/7 58/8 62/5 67/21 73/1
**add [1]** 34/5
**additional [5]** 47/15 51/17 68/16 72/1 73/23
**address [23]** 21/19 21/20 24/15 25/22 25/24 26/12 26/15 26/24 27/4 27/6 27/15 28/1 29/10 29/23 30/10 31/12 32/22 40/15 42/12 42/16 42/18 42/19 42/21
**addresses [11]** 20/21 21/11 27/7 31/10 31/14 31/15 33/3 33/4 34/17 41/12 73/3
**adequacy [1]** 6/12
**adjudicated [2]** 67/1 67/24
**administration [2]** 49/17 50/9
**administrator [3]** 18/3 39/4 65/15
**adult [1]** 24/19
**advance [4]** 67/1 67/24 70/7 70/10
**advanced [2]** 55/5 56/1
**advising [1]** 49/4
**advisor [1]** 49/2
**advisors [3]** 14/20 47/20 48/23
**affects [1]** 57/18
**affidavit [2]** 27/10 27/12
**after [12]** 6/2 7/7 15/19 15/20 37/11 45/8 59/16 70/1 71/20 72/4 73/12 73/22
**afternoon [5]** 2/10 2/14 2/16 2/19 44/15
**again [30]** 3/18 9/22 10/10 11/25 12/19 15/18 20/3 29/8 29/19 32/5 33/6 33/13 33/21 36/3 36/6 39/21 42/10 42/15 43/2 45/13 52/7 56/17 57/9 60/22 62/9 62/13 62/14 69/11 73/18 74/9
**against [3]** 46/20 50/8 55/7
**agencies [6]** 15/6 15/8 22/25 23/19 49/3 65/22
**agency [5]** 15/13 24/11 29/10 31/21 36/24
**ago [2]** 39/18 65/25
**agree [13]** 3/11 8/11 9/11 41/13 44/7 49/25 50/11 52/4 56/22 62/12 69/6 70/9 72/23
**agreeable [2]** 69/14 70/3
**agreed [3]** 4/9 11/16 11/25
**agreeing [1]** 35/23
**agreement [3]** 10/22 66/15 70/23
**ahead [3]** 22/8 54/3 73/4
**Aided [1]** 1/22
**al [4]** 1/3 1/6 2/4 2/5
**all [25]** 4/4 6/10 15/3 17/9 19/10 23/9 28/15 43/22 46/4 46/7 46/10 51/2 51/19 58/23 59/12 60/6 61/25 62/9 62/9 64/10 66/8 67/4 69/12 73/6 74/15
**allegedly [3]** 50/17 52/24 56/20
**allow [5]** 13/13 21/7 26/3 48/1 48/3
**allowed [4]** 10/2 41/1 48/12 62/22
**allowing [1]** 48/13
**almost [1]** 67/4
**already [7]** 4/5 8/25 17/12 24/6 58/8 68/20 73/14
**also [13]** 9/22 12/4 12/17 16/7 19/8 30/18 32/13 45/20 52/12 52/16 55/8 56/23 65/15
**alternative [19]** 10/24 20/8 24/14 25/19 26/10 28/14 28/16 28/17 29/23 30/24 32/7 33/18 36/11 42/15 49/5 49/8 51/15 64/14 71/11
**alternatives [1]** 10/13
**although [2]** 31/2 36/1
**Alto [2]** 26/15 26/24
**always [2]** 56/22 66/16
**am [2]** 2/11 3/3
**among [1]** 61/15
**amount [2]** 63/20 68/24
**Amy [1]** 72/6
**analysis [1]** 58/18
**Andrew [6]** 1/14 1/15 2/11 2/12 44/11 44/15
**another [11]** 6/7 9/9 10/1 15/13 19/24 40/19 55/17 55/19 61/19 69/19 70/15
**answer [28]** 4/23 10/15 23/14 24/5 26/25 44/22 45/20 46/10 46/12 46/16 46/18 48/13 49/9 50/18 50/24 51/1 52/8 52/9 52/9 52/14 52/17 54/7 55/11 56/8 57/3 57/20 66/11 66/22
**answered [5]** 31/13 45/25 48/4 61/23 62/2
**answers [4]** 50/19 62/10 68/12 70/25
**anticipate [1]** 47/8
**anticipating [1]** 46/20
**any [58]** 4/11 4/13 5/5 6/25 7/21 8/15 8/17 11/3 11/21 12/11 12/17 16/21 18/24 18/25 19/19 21/12 21/24 23/23 24/9 24/17 25/10 25/13 28/21 30/7 30/9 31/19 34/13 35/22 36/18 38/4 40/23 41/14 42/14 42/24 47/4 49/5 53/2 53/8 53/18 55/3 56/10 57/12 60/6 60/22 60/24 61/9 62/25 62/25 63/17 64/10 65/2 65/10 68/9 70/2 70/17 71/4 72/25 74/4
**anybody [9]** 5/13 10/13 20/16 23/9 29/12 29/15 36/7 39/24 57/12
**anyone [2]** 25/14 25/17
**anything [15]** 4/24 8/1 9/12 21/15 23/11 24/18 35/2 36/14 39/15 39/17 43/9 43/21 50/1 67/8 71/22
**anyway [3]** 37/13 50/15 69/8
**anyways [3]** 43/11 59/2 70/11
**Apologies [2]** 22/18 40/3
**apologize [3]** 5/17 22/4 64/6
**apparently [2]** 41/8 56/11
**appear [1]** 30/11
**application [1]** 45/6
**applies [5]** 17/19 45/14 49/1 62/1 62/5
**apply [7]** 4/12 12/22 45/7 45/10 46/17 47/24 49/1
**approach [5]** 47/4 47/6 51/13 51/15 73/16
**appropriate [5]** 51/8 57/1 59/25 62/16 67/5
**approve [1]** 56/19
**approved [1]** 48/4
**are [119]**

## A


**area [1]** 63/4
**aren't [3]** 10/11 32/8 56/12
**arguably [1]** 58/6
**argue [1]** 16/23
**argument [5]** 4/11 4/14 10/2 48/18 51/10
**arguments [2]** 72/7 73/4
**arriving [3]** 45/5 55/6 56/5
**articulated [1]** 30/9
**as [70]** 3/19 5/22 6/6 6/6 7/12 8/5 9/7 9/7 10/4 10/6 13/15 15/2 15/9 15/9 17/10 17/17 18/14 19/3 19/18 19/23 20/5 20/15 20/17 21/5 24/6 24/7 24/25 25/1 25/1 26/2 26/3 26/6 26/7 26/7 28/5 28/11 30/25 32/19 32/19 33/13 33/16 34/1 34/4 35/5 37/25 38/2 44/18 44/21 45/1 45/18 45/23 46/5 52/24 58/4 58/7 58/16 58/19 60/1 61/22 62/6 62/8 62/23 65/4 66/15 68/22 70/16 70/24 73/2 74/2 74/13
**aside [1]** 39/6
**ask [27]** 7/15 18/13 25/3 40/25 41/1 41/21 42/13 47/1 47/16 47/17 47/22 47/25 51/6 52/10 52/22 55/24 61/24 62/9 66/19 67/19 68/6 68/12 68/15 68/16 72/19 72/21 73/6
**asked [11]** 21/14 22/20 25/20 26/6 45/1 45/7 47/10 55/4 55/10 55/14 65/3
**asking [4]** 3/13 40/16 47/7 68/6
**aspect [1]** 6/10
**aspects [1]** 69/7
**assert [2]** 13/20 14/9
**asserted [3]** 10/25 45/3 45/25
**asserting [1]** 10/5
**assertion [1]** 42/6
**assess [1]** 62/5
**assessed [1]** 49/10
**assume [1]** 7/23
**assuming [3]** 8/15 10/11 66/10
**attempted [2]** 31/9 32/16
**attempting [1]** 30/11
**attempts [4]** 20/21 27/10 28/15 31/9
**attention [2]** 7/7 9/10
**attorney [1]** 49/13
**attorney-client [1]** 49/13
**attorneys [3]** 33/4 33/7 67/13
**audio [5]** 1/22 75/2 75/3 75/4 75/6
**audio-recorded [1]** 75/2
**authorize [2]** 25/7 57/10
**authorized [1]** 64/23
**authorizing [1]** 29/19
**available [4]** 20/16 24/8 32/19 39/11
**avoid [1]** 9/19
**avoiding [1]** 27/2
**aware [7]** 16/1 16/2 17/2 42/23 42/25 48/10 72/11
**awkwardness [1]** 22/4


## B


**back [23]** 5/10 7/7 25/3 32/2 34/18 35/21 36/19 37/16 37/18 37/19 45/8 46/2 46/2 52/6 52/10 59/2 59/8 61/11 63/14 64/21 65/4 65/19 69/9
**backwards [1]** 70/18
**bag [1]** 56/22
**ball [3]** 2/21 24/3 37/14
**Baltimore [1]** 1/25
**barriers [1]** 10/11
**based [9]** 14/14 27/15 45/7 47/2 55/19 57/19 64/12 68/12 73/18
**basically [3]** 12/11 26/7 46/24
**basis [7]** 5/19 9/9 19/1 26/7 33/18 54/1 54/8
**be [148]**
**because [36]** 7/3 7/13 7/16 8/14 9/5 10/9 16/5 17/17 19/2 19/11 22/22 22/23 23/8 26/9 29/8 33/19 33/19 36/11 38/23 41/19 42/5 47/18 51/14 52/5 52/7 53/14 53/19 56/8 57/20 63/23 66/3 66/15 67/20 67/25 71/15 72/9
**been [49]** 5/5 5/6 5/21 6/4 6/11 10/4 12/17 15/7 16/6 16/18 19/6 20/18 21/3 21/12 21/12 22/10 22/22 23/9 23/10 24/9 25/16 28/19 31/15 32/6 32/8 32/8 32/18 34/1 36/20 37/8 38/18 39/22 41/20 43/8 43/15 43/15 50/4 50/13 53/16 55/1 55/2 63/5 63/17 64/19 67/23 67/24 72/12 73/24 75/6
**before [15]** 1/10 2/3 13/12 27/22 28/6 37/4 42/4 55/6 56/4 62/10 63/17 64/10 67/8 67/25 68/18
**beginning [3]** 2/8 9/17 63/14
**behalf [5]** 1/13 1/17 2/13 7/14 65/21
**being [11]** 8/19 8/20 12/12 20/13 35/3 38/17 57/9 59/16 65/9 68/6 70/25
**believe [13]** 20/10 20/22 25/25 31/16 31/22 33/5 37/1 37/13 46/14 53/16 55/1 58/10 73/19
**benefit [2]** 46/25 58/18
**best [4]** 9/7 18/9 24/2 75/5
**Beth [1]** 2/10
**better [8]** 4/3 36/7 52/12 53/10 58/24 59/11 62/22 63/11
**between [7]** 43/4 43/16 48/10 54/14 54/15 54/16 71/7
**beyond [3]** 19/8 66/20 69/7
**big [2]** 24/13 36/25
**bigger [2]** 66/23 69/5
**bind [1]** 12/24
**bit [4]** 3/18 11/8 53/13 59/14
**Border [1]** 40/4
**both [10]** 9/2 13/1 26/24 27/21 41/14 45/12 45/16 62/13 64/1 68/14
**bottom [1]** 66/5
**bound [1]** 5/11
**bounds [1]** 32/10
**branch [3]** 23/16 23/17 50/8
**brief [6]** 11/23 19/15 71/21 72/1 72/5 72/7
**briefing [6]** 6/2 9/14 11/21 58/18 60/11 72/8
**briefings [1]** 58/17
**briefly [1]** 63/13
**briefs [1]** 12/1
**bring [4]** 4/7 4/7 10/1 46/2
**bringing [1]** 7/7
**broad [3]** 60/6 61/13 66/22
**broader [1]** 73/16
**broke [1]** 20/24
**brought [1]** 19/7
**burden [3]** 52/1 52/2 67/21
**burdensome [1]** 67/11
**business [2]** 49/12 49/12
**businesses [1]** 50/7
**Butler [9]** 38/16 39/2 54/7 54/11 54/15 54/15 54/16 55/8 58/10


## C


**calculated [2]** 26/11 33/23
**call [7]** 35/7 44/12 52/6 53/8 62/15 64/18 64/19
**called [3]** 23/7 31/10 53/2
**calling [1]** 35/9
**calls [1]** 35/23
**came [5]** 42/5 44/4 45/2 45/12 60/18
**camera [3]** 48/14 52/15 57/9
**can [110]**
**can't [23]** 4/23 4/24 9/11 10/21 19/9 19/11 25/3 26/20 33/17 34/13 35/22 37/16 40/9 40/21 41/13 41/14 41/15 41/19 42/24 46/12 50/23 64/23 66/25
**candidly [1]** 37/11
**cannot [4]** 9/19 34/20 34/22 43/16
**capture [1]** 61/13
**cars [1]** 26/25
**case [53]** 1/10 2/6 2/20 3/19 3/20 4/4 4/7 4/12 4/24 5/22 6/18 6/25 7/21 8/3 8/5 8/22 8/24 9/11 10/1 10/23 11/2 12/15 12/25 17/3 23/18 28/18 30/21 31/20 33/10 35/3 35/5 35/8 35/10 35/20 38/9 39/15 39/22 40/14 40/22 47/5 48/6 49/11 49/12 49/23 59/11 60/5 63/22 67/5 67/16 69/4 72/11 72/20 73/9
**cases [9]** 5/10 9/9 11/4 19/15 47/4 49/22 50/5 50/15 50/15
**cat [1]** 56/21
**category [10]** 5/25 7/17 13/25 15/12 17/11 56/13 58/5 58/6 59/24 60/19
**caution [1]** 62/7
**caveat [1]** 38/2
**cert [1]** 71/5
**certain [7]** 34/12 57/22 57/23 60/20 64/20 64/21 70/20
**certainly [11]** 5/9 8/15 16/20 22/15 23/23 24/5 34/16 35/23 37/14 43/8 52/11
**certainty [1]** 64/17
**certification [1]** 6/3
**certified [3]** 25/22 25/23 31/12
**certify [1]** 75/1
**cetera [1]** 52/15
**chain [1]** 39/4
**challenge [1]** 6/4
**challenges [1]** 51/17
**challenging [1]** 50/9
**chance [3]** 44/25 64/22 65/10
**change [2]** 64/8 74/2
**changing [3]** 12/10 19/17 36/22
**character [1]** 50/6
**characteristic [1]** 39/22
**characterized [1]** 16/12
**chart [1]** 18/3
**check [1]** 31/24
**Cheney [1]** 72/8
**children [1]** 24/19
**choice [3]** 52/16 52/18 52/19
**choose [1]** 68/11
**chose [1]** 7/20
**Christopher [3]** 1/18 2/17 3/6
**CHUANG [2]** 1/10 2/2
**circumstances [1]** 42/17
**civil [4]** 1/4 2/4 23/12 49/21
**claim [4]** 10/7 24/17 49/9 51/9
**claiming [3]** 5/19 25/17 39/16
**claims [5]** 4/13 8/7 10/6 10/8 13/2
**clarification [2]** 59/16 68/17
**clarify [6]** 3/17 31/6 53/10 53/25 55/25 72/2
**class [68]** 3/25 4/14 4/20 4/23 4/24 4/25 5/1 5/4 5/5 5/6 5/11 5/11 5/14 5/24 6/1 6/3 6/5 6/7 6/10 6/11 6/13 6/18 6/22 7/12 7/16 7/17 7/19 7/20 8/5 8/13 8/15 8/16 8/18 9/18 9/20 9/25 10/10 10/18 10/24 12/11 12/15 12/22 13/5

## C


**class... [25]** 14/11 15/1 15/11 17/19 17/20 18/11 19/1 19/2 19/17 19/18 19/21 20/5 25/22 31/12 38/17 40/12 40/12 42/2 42/5 58/3 58/6 58/8 71/5 71/5 71/7
**cleanest [2]** 13/4 42/11
**clear [13]** 3/10 11/18 18/22 26/17 31/3 33/21 33/22 35/12 51/20 61/1 61/8 61/18 68/13
**clearcut [1]** 68/11
**clearly [7]** 21/25 24/22 24/22 53/11 56/12 68/15 68/15
**client [3]** 39/19 40/8 49/13
**clients [1]** 65/5
**close [2]** 14/20 33/17
**closed [2]** 6/2 72/5
**closest [1]** 49/2
**colleague [2]** 44/11 64/7
**colleagues [1]** 2/11
**collectivity [1]** 68/22
**come [14]** 11/1 14/6 17/2 17/4 33/23 44/19 45/16 45/17 46/7 51/1 52/10 61/4 66/23 71/13
**comes [2]** 48/2 60/11
**comfortable [1]** 3/24
**coming [5]** 5/10 29/22 56/13 58/8 66/17
**commercial [1]** 50/7
**commit [1]** 35/22
**commitment [1]** 64/17
**common [1]** 24/18
**communicate [1]** 29/8
**communicated [1]** 47/23
**communication [9]** 32/1 34/22 44/21 45/11 45/14 49/1 53/5 53/8 60/15
**communications [18]** 14/21 16/19 16/22 16/24 17/8 37/2 43/16 47/13 47/20 48/25 53/3 59/20 60/8 60/9 60/15 62/15 62/24 66/1
**company [4]** 23/20 35/4 35/4 35/16
**compared [2]** 49/24 75/6
**competitors [1]** 49/12
**complaint [1]** 10/17
**complete [2]** 67/19 75/2
**completely [2]** 61/13 66/7
**complicated [2]** 2/24 52/4
**component [1]** 36/24
**Computer [1]** 1/22
**Computer-Aided [1]** 1/22
**conceivable [1]** 67/16
**concern [2]** 8/20 20/13
**concerned [2]** 4/10 47/11
**concerning [1]** 45/12
**conclude [1]** 19/1
**concluded [1]** 74/16
**concludes [1]** 74/14
**conclusion [2]** 10/6 52/13
**conduct [2]** 12/23 13/9
**confer [1]** 73/6
**conference [5]** 1/10 2/7 2/20 74/14 74/16
**conferring [3]** 69/9 69/22 70/9
**confidence [1]** 28/1
**confident [1]** 61/20
**confidential [1]** 47/24
**confirmed [2]** 32/18 73/15
**confirming [1]** 73/15
**conflict [2]** 12/18 13/10
**Congress [1]** 66/2
**connect [1]** 41/23
**connection [1]** 43/17
**consent [6]** 11/16 34/21 40/25 41/2 43/5 71/18
**consider [1]** 36/12
**consideration [1]** 7/4
**constrained [1]** 57/24
**consulted [1]** 64/20
**contact [19]** 12/25 22/10 22/11 24/24 25/10 25/14 25/16 29/10 35/7 36/3 37/19 38/18 39/9 40/16 40/21 41/14 41/15 41/20 71/7
**contacted [1]** 12/8
**content [3]** 45/6 54/6 55/10
**contentious [1]** 50/5
**contest [1]** 59/4
**contested [2]** 3/15 11/18
**context [5]** 14/6 44/20 45/15 61/25 65/23
**contextual [3]** 47/17 47/25 51/7
**continue [3]** 8/3 64/6 68/22
**continued [1]** 4/19
**continuing [1]** 3/25
**contract [1]** 10/8
**contracting [1]** 22/25
**contractor [1]** 23/21
**conversation [9]** 14/23 38/16 40/19 47/11 55/7 55/16 55/19 57/15 62/20
**conversations [8]** 6/21 14/20 45/13 54/6 54/14 55/10 55/11 57/22
**corporate [1]** 49/23
**correct [10]** 3/3 3/6 3/7 21/9 30/18 30/22 32/15 52/20 52/21 75/2
**cost [1]** 58/17
**could [42]** 2/21 2/23 4/6 4/7 4/25 7/12 7/23 8/11 8/20 9/7 10/7 14/4 19/10 19/20 24/25 26/1 26/5 28/25 31/6 36/9 41/23 43/5 45/9 46/19 50/20 52/9 57/9 58/21 58/21 61/13 61/13 61/14 61/14 64/16 65/4 66/23 69/4 69/6 70/1 70/10 72/19 73/22
**couldn't [2]** 4/15 54/12
**counsel [41]** 2/8 8/4 12/13 12/24 14/8 15/25 15/25 15/25 17/14 21/5 21/14 22/6 22/8 35/6 42/13 44/22 45/8 45/16 45/23 46/11 46/15 47/12 48/19 49/9 50/21 50/22 51/3 51/6 51/16 51/20 52/20 55/11 56/21 57/6 61/23 62/3 62/4 62/13 63/15 70/5 71/2
**counsel's [1]** 42/13
**counter [1]** 63/16
**counter-stipulations [1]** 63/16
**couple [4]** 24/11 25/21 64/5 68/7
**course [12]** 4/13 7/2 18/17 27/8 38/10 51/9 51/10 51/23 52/19 62/23 68/10 72/15
**court [31]** 1/1 2/3 7/2 7/12 8/7 10/8 10/14 18/13 21/7 38/22 44/25 45/1 46/1 46/16 48/4 48/9 48/12 49/7 50/20 51/23 52/12 54/1 57/3 57/6 61/12 61/17 61/22 71/2 72/11 72/13 75/12
**court's [2]** 7/7 61/18
**courtesy [1]** 41/11
**courts [1]** 26/3
**cover [3]** 26/7 43/19 44/9
**covered [9]** 14/21 16/17 17/19 43/22 44/8 53/5 53/5 53/16 63/6
**covering [1]** 37/17
**covers [1]** 23/15
**create [1]** 52/5
**criminal [1]** 23/12
**CRR [2]** 1/24 75/12
**current [9]** 12/7 12/11 12/14 14/7 14/11 15/5 37/21 40/21 58/7
**currently [4]** 14/1 14/10 41/19 65/12
**Customs [1]** 40/4
**cv [1]** 1/5


## D


**D.C [2]** 31/14 31/15
**date [6]** 11/9 39/10 41/21 41/22 64/17 64/21
**Dated [1]** 75/8
**dates [3]** 60/17 74/13 74/14
**day [2]** 74/15 75/8
**days [2]** 65/15 65/25
**deadline [1]** 71/12
**deal [4]** 13/4 19/25 43/13 46/6
**dealing [1]** 62/23
**December [2]** 31/25 44/18
**December 15th [1]** 44/18
**decertify [1]** 6/10
**decide [1]** 63/10
**decided [1]** 37/17
**decides [1]** 6/5
**decision [1]** 60/18
**decisional [1]** 59/20
**decisions [2]** 16/11 64/19
**declined [4]** 31/11 38/19 39/10 40/17
**deep [1]** 8/24
**default [1]** 28/17
**defendant [3]** 5/20 18/15 65/17
**defendants [14]** 1/7 1/17 2/15 2/17 5/21 12/14 15/10 15/10 22/22 23/5 31/20 38/17 39/8 49/23
**defendants' [1]** 18/14
**defended [1]** 53/14
**defenses [1]** 13/3
**definitely [4]** 21/22 34/2 70/13 70/14
**definition [6]** 12/5 12/10 14/10 15/1 17/20 20/5
**definitions [1]** 71/6
**degree [1]** 43/23
**deliberative [12]** 16/6 16/17 44/20 45/3 48/24 53/6 53/17 54/8 54/25 55/2 59/19 62/16
**delivered [1]** 57/24
**denied [1]** 29/14
**deny [1]** 18/13
**departed [1]** 37/4
**department [7]** 23/10 23/15 35/6 36/18 37/4 50/14 72/2
**depending [3]** 14/22 46/18 68/11
**deponents [3]** 16/2 17/18 22/21
**depose [1]** 21/10
**deposed [3]** 13/18 57/17 73/24
**deposing [1]** 72/6
**deposition [31]** 15/18 17/12 17/15 18/15 20/10 36/21 37/6 38/15 38/19 38/20 38/24 39/8 39/10 41/22 42/3 42/4 42/5 43/13 45/9 51/15 53/12 53/14 57/5 62/3 65/25 66/14 66/25 67/11 67/18 67/23 71/1
**depositions [17]** 14/9 14/14 15/21 16/8 17/17 17/17 44/4 45/12 45/18 55/3 63/5 63/24 64/2 64/12 65/14 72/3 73/12
**deputy [1]** 15/2
**derivative [1]** 48/1
**describe [2]** 54/6 59/21
**described [3]** 52/19 63/21 71/10
**deserve [1]** 9/9
**designee [1]** 68/1
**despite [2]** 3/22 64/9
**detail [1]** 27/9
**detailed [1]** 22/25
**details [1]** 26/8
**determination [1]** 48/14
**determinations [1]** 71/6
**determine [3]** 51/8 55/22 62/1
**determined [1]** 46/17
**determines [1]** 47/19
**develop [1]** 72/15
**DHS [4]** 31/22 31/23 36/25 40/4
**diametrically [1]** 49/25
**did [23]** 4/11 4/12 5/25 14/3 16/2 28/14 35/24 36/17 42/4 45/7 47/16 47/18 53/4 53/9 55/24

## D


**did... [8]** 62/19 62/20 63/18 65/1 65/2 71/22 72/11 72/15
**didn't [7]** 4/14 10/18 24/6 52/24 53/2 55/24 59/15
**difference [1]** 35/17
**differences [1]** 10/24
**different [31]** 2/25 5/12 7/9 7/17 10/23 15/6 15/8 20/14 22/8 22/21 23/16 23/17 27/5 28/10 29/16 29/22 31/6 37/24 40/4 41/25 43/6 47/1 49/15 49/17 50/6 50/9 53/20 57/10 69/11 69/15 72/24
**differently [1]** 72/9
**difficult [1]** 56/11
**difficulty [1]** 56/14
**diligence [1]** 27/7
**direct [5]** 46/21 46/23 48/2 48/11 56/24
**directing [1]** 70/24
**directly [3]** 8/6 24/15 41/24
**director [2]** 15/1 15/2
**disadvantage [1]** 53/14
**disagree [6]** 44/8 45/5 45/14 50/11 72/21 72/24
**disagreed [1]** 45/17
**disclose [1]** 7/10
**disclosed [1]** 6/22
**discovery [19]** 3/21 4/1 6/6 7/14 13/2 13/21 19/10 21/13 22/19 29/9 29/20 32/9 38/12 38/13 43/11 64/9 64/10 65/10 65/12
**discuss [4]** 9/21 11/8 44/25 70/7
**discussion [5]** 18/6 19/24 20/3 62/16 69/17
**discussions [3]** 53/7 60/2 71/16
**dismiss [1]** 6/3
**dismissal [5]** 3/2 4/2 4/16 5/20 9/17
**dismissed [1]** 4/6
**dispute [2]** 50/6 50/7
**disputed [1]** 55/1
**disputes [2]** 60/10 69/15
**DISTRICT [2]** 1/1 1/1
**dividing [1]** 48/10
**DIVISION [1]** 1/2
**do [103]**
**Doctrine [1]** 72/8
**document [8]** 25/3 25/4 25/5 33/13 65/19 65/25 66/1 66/3
**documents [4]** 65/15 65/20 65/23 68/23
**DOE [5]** 1/3 2/4 3/2 3/20 71/17
**does [23]** 3/8 5/11 6/17 6/20 31/17 31/19 31/19 31/21 33/18 36/24 39/24 39/24 41/6 41/10 43/21 45/22 46/11 51/10 52/4 52/5 54/17 57/15 58/19
**doesn't [10]** 4/18 10/19 11/3 13/15 24/17 26/16 41/6 46/1 53/8 69/10
**DOGE [10]** 21/4 22/24 23/6 45/4 47/11 47/12 53/1 55/5 56/4 65/15
**DOGE's [2]** 53/15 53/22
**doing [8]** 3/18 8/22 10/9 19/16 22/7 24/18 50/4 63/5
**DOJ [7]** 3/22 6/23 7/6 7/8 8/4 9/18 18/11
**don't [97]**
**done [10]** 27/6 27/13 27/13 34/2 35/12 48/9 50/14 53/1 55/13 60/1
**door [2]** 27/1 29/22
**down [10]** 10/1 18/3 18/4 21/3 22/14 27/7 32/8 39/4 48/2 69/10
**draw [1]** 14/7
**driveway [1]** 26/25
**drop [1]** 6/5
**drops [1]** 6/18
**due [2]** 18/17 27/6
**dug [1]** 9/2
**duplicative [1]** 64/11
**during [3]** 17/15 37/8 45/9
**duties [1]** 47/12


## E


**each [4]** 36/2 54/20 70/13 73/25
**earlier [4]** 15/21 16/2 57/15 72/8
**early [1]** 65/9
**easier [2]** 37/23 43/2
**easy [3]** 12/3 24/21 40/24
**ECF [3]** 3/1 12/6 20/9
**ECF Number 198 [1]** 3/1
**ECF-191 [1]** 20/9
**ECF-199 [1]** 12/6
**effected [1]** 56/14
**efficiencies [1]** 52/5
**efficiency [3]** 46/6 46/8 50/18
**efficient [3]** 46/15 68/8 70/1
**efforts [3]** 21/2 32/7 33/14
**either [8]** 19/12 22/24 27/20 32/16 41/21 59/12 62/1 62/8
**element [1]** 64/2
**ELON [3]** 1/6 2/4 14/20
**else [12]** 5/13 6/19 9/3 10/10 36/14 38/11 43/21 47/18 54/15 62/20 72/21 73/12
**email [19]** 24/10 25/25 26/2 31/25 33/2 33/3 33/4 33/25 34/3 36/16 40/15 41/2 41/3 41/4 41/12 41/23 42/12 42/18 42/19
**emergency [1]** 9/8
**employ [1]** 22/24
**employee [4]** 37/22 47/11 55/9 55/20
**employees [12]** 12/8 12/14 13/10 14/7 14/11 15/5 15/16 35/16 41/11 48/23 57/17 58/7
**employees' [1]** 40/21
**employment [1]** 12/11
**encourage [1]** 48/23
**end [9]** 8/12 9/1 13/23 57/9 59/1 59/12 62/3 71/19 73/12
**ends [1]** 7/20
**enemy [1]** 66/18
**engaging [1]** 65/18
**enough [9]** 12/2 26/21 29/21 30/2 30/2 36/3 50/4 50/14 73/19
**ensure [1]** 51/22
**entered [1]** 72/3
**entire [1]** 23/15
**entirely [1]** 32/10
**entirety [2]** 67/15 67/15
**entitled [4]** 48/19 51/20 52/10 75/3
**Esquire [10]** 1/13 1/14 1/14 1/15 1/15 1/16 1/16 1/18 1/18 1/19
**essentially [2]** 46/21 67/15
**establish [2]** 47/17 61/25
**et [5]** 1/3 1/6 2/4 2/5 52/15
**ethically [1]** 4/2
**evade [3]** 30/11 33/14 43/9
**evading [2]** 20/16 24/15
**evaluating [1]** 72/4
**evasion [3]** 27/20 29/20 32/6
**even [20]** 6/1 7/23 13/14 17/8 23/6 23/18 25/12 32/23 35/24 37/8 39/6 40/15 42/18 47/23 48/20 49/1 50/24 52/6 59/7 69/2
**event [2]** 53/18 56/10
**eventual [1]** 4/12
**eventually [1]** 28/22
**ever [3]** 7/24 50/1 67/23
**every [6]** 10/18 23/19 26/7 31/12 44/9 67/23
**everybody [6]** 10/10 10/15 13/17 28/24 36/1 69/14
**everyone [4]** 38/5 57/8 60/23 72/2
**everyone's [1]** 22/7
**everything [7]** 9/3 16/13 31/15 38/11 40/16 67/16 69/4
**evidence [1]** 30/10
**ex [2]** 52/14 71/1
**exact [2]** 20/17 73/1
**exactly [1]** 19/25
**example [9]** 2/24 13/23 14/15 14/24 16/15 40/25 47/10 48/6 53/10
**examples [4]** 17/21 48/11 48/12 52/23
**exceptions [3]** 59/18 60/5 67/4
**exclude [2]** 12/11 13/5
**excluded [1]** 15/11
**excluding [1]** 49/8
**exclusion [1]** 6/15
**execution [1]** 36/10
**executive [2]** 23/16 50/8
**exhausted [1]** 21/2
**exhausting [1]** 52/1
**expect [3]** 23/4 44/24 60/19
**expecting [1]** 61/3
**expedited [1]** 9/8
**expense [1]** 23/22
**explain [4]** 12/16 13/22 25/11 72/23
**explaining [2]** 27/12 68/9
**extent [8]** 5/12 14/19 26/1 26/5 27/5 47/16 49/7 51/1
**extraordinarily [1]** 67/11


## F


**facilitate [2]** 29/5 40/15
**fact [6]** 7/5 9/11 37/7 45/8 55/1 73/24
**factors [1]** 73/17
**facts [1]** 72/24
**factual [1]** 54/1
**fading [1]** 33/6
**fair [9]** 9/25 10/9 13/15 14/5 38/5 42/12 58/1 72/25 73/21
**fairer [1]** 52/13
**fairness [1]** 34/19
**fall [3]** 17/11 28/13 59/24
**falls [1]** 28/13
**famed [1]** 23/2
**familiar [1]** 73/1
**family [1]** 3/24
**fan [1]** 24/13
**far [7]** 10/3 17/21 26/7 40/17 42/2 45/16 60/3
**Farritor [17]** 20/12 20/15 20/19 22/11 22/23 23/5 25/6 25/17 26/1 27/8 27/8 28/10 29/13 30/9 30/20 30/20 54/17
**fashion [2]** 5/4 60/7
**fashioned [1]** 9/17
**fastest [1]** 65/20
**fear [1]** 3/23
**fears [2]** 7/18 8/23
**feasible [2]** 65/5 69/2
**February [4]** 1/6 71/18 75/4 75/8
**February 13th [1]** 71/18
**federal [17]** 1/24 10/1 10/14 12/7 12/11 12/14 13/10 14/1 14/2 14/11 15/5 23/11 37/21 40/14 40/21 50/7 75/12
**feel [4]** 19/14 37/23 66/4 68/19
**feeling [1]** 33/17
**felt [1]** 7/11
**few [2]** 44/19 67/3
**field [1]** 40/7
**figure [5]** 11/12 12/7 13/18 20/2 24/2
**file [41]** 3/14 4/23 11/9 11/15 18/25 20/4 21/17 21/21 22/13 23/5 23/25 24/1 25/2 25/5 25/8 26/22 27/5 27/9 27/22 27/23 28/3 28/6 29/11 29/13 30/5 30/17 32/10 33/12 34/8 34/9 35/7 42/16 42/20 43/3 68/3 68/8 69/16 69/19 71/11 72/19 73/3
**filed [5]** 2/20 8/9 18/10 71/17 71/18
**files [5]** 22/20 35/13

**F**

**files... [3]** 36/4 38/5 38/7
**filing [8]** 5/10 11/18 30/3 68/12 69/21 70/7 70/19 74/14
**filings [2]** 3/1 16/7
**final [1]** 60/6
**find [12]** 24/2 26/1 28/23 29/21 35/7 42/16 42/21 46/1 47/5 48/11 48/12 60/5
**finding [2]** 20/17 25/9
**fine [7]** 4/19 4/22 13/8 17/22 33/24 56/23 68/6
**first [17]** 7/3 9/8 23/9 25/22 26/21 28/4 28/18 31/12 34/4 39/17 48/18 51/12 52/9 52/16 61/15 69/21 72/5
**first-line [1]** 51/12
**fishing [1]** 73/16
**fit [2]** 14/10 30/16
**fits [1]** 38/21
**five [5]** 2/25 18/4 20/21 31/9 39/4
**flavor [1]** 44/9
**Floor [1]** 1/25
**flying [1]** 58/22
**focus [4]** 8/4 16/13 72/10 73/14
**focused [1]** 16/5
**fold [1]** 19/24
**folks [8]** 15/23 22/23 34/11 34/14 36/23 37/24 38/15 46/2
**follow [5]** 11/21 50/24 50/25 52/9 52/10
**follow-up [5]** 11/21 50/24 50/25 52/9 52/10
**forefront [1]** 16/20
**forego [1]** 8/24
**foregoing [1]** 75/1
**form [1]** 59/4
**formal [1]** 40/24
**formally [1]** 73/8
**former [3]** 15/16 35/16 65/14
**forth [7]** 7/8 19/15 21/11 27/16 45/8 69/9 70/24
**forthcoming [1]** 65/16
**forums [2]** 10/25 10/25
**forward [7]** 2/22 4/1 4/5 6/16 17/23 42/8 44/25
**found [2]** 32/6 65/24
**foundational [1]** 62/14
**four [4]** 18/2 18/4 39/3 65/14
**frame [1]** 65/20
**frank [1]** 19/6
**frankly [8]** 5/22 15/15 24/18 45/23 52/12 62/17 67/13 67/23
**freely [1]** 59/23
**frequently [1]** 60/11
**front [4]** 56/20 59/6 70/18 73/19
**fruitful [1]** 19/21
**FTR [1]** 75/4
**full [5]** 15/15 49/20 58/18 60/12 67/12
**full-time [1]** 67/12
**fully [2]** 58/25 68/24
**further [2]** 72/4 72/18
**future [3]** 45/18 47/8 53/23

**G**

**game [1]** 38/5
**gamesmanship [3]** 5/23 6/25 39/21
**gather [1]** 13/20
**gathering [1]** 49/3
**gave [3]** 7/2 52/23 56/2
**general [4]** 35/6 59/19 60/4 74/3
**generally [3]** 18/7 22/6 59/17
**generate [1]** 14/17
**generated [2]** 44/7 65/9
**get [54]** 4/3 7/19 8/16 9/6 14/24 18/5 19/9 21/12 21/19 21/20 23/4 24/1 25/4 25/5 26/20 26/22 27/12 30/2 30/21 32/7 32/23 32/24 32/25 33/17 36/9 37/19 38/3 38/3 38/9 40/7 42/11 42/16 42/20 42/21 43/5 46/24 50/5 56/11 56/16 58/17 60/10 62/22 63/17 63/18 64/12 64/21 65/21 66/5 67/7 68/23 70/12 70/19 71/8 72/16
**gets [1]** 9/18
**getting [9]** 21/19 24/9 24/14 28/2 39/6 40/13 56/14 62/11 64/7
**give [13]** 10/13 13/22 14/15 21/19 22/1 24/3 25/1 41/11 44/6 44/9 52/8 53/10 64/20
**given [9]** 8/24 10/3 10/5 50/20 52/17 56/11 65/12 67/13 73/9
**Gleason [1]** 72/6
**go [28]** 6/19 7/20 8/19 12/4 22/8 25/3 25/7 25/8 32/2 32/11 32/25 34/4 34/10 36/4 42/16 43/9 44/25 45/15 46/2 51/24 54/2 54/3 59/2 61/10 66/8 68/4 68/8 73/4
**goes [3]** 35/14 47/23 48/21
**going [57]** 3/4 4/3 4/4 5/10 6/16 8/8 8/16 8/22 9/3 9/5 9/10 13/18 19/15 20/18 23/23 24/2 25/6 25/11 26/12 26/13 26/16 27/20 27/20 27/24 29/14 29/16 30/1 30/3 30/5 30/6 30/19 31/24 33/22 35/13 35/15 43/25 45/17 46/2 47/9 47/15 56/4 56/19 56/22 57/16 57/21 59/8 66/8 66/14 67/18 67/19 70/18 71/4 71/4 71/5 71/6 71/12 74/1
**Gold [1]** 75/4
**gone [4]** 10/3 17/21 45/8 63/13
**good [15]** 2/10 2/14 2/16 2/19 10/2 23/14 27/15 44/15 46/10 56/16 56/24 66/18 68/5 69/20 74/15
**got [11]** 2/25 16/10 21/17 23/25 26/10 27/21 30/1 30/2 43/12 56/13 68/2
**gotten [4]** 21/15 65/9 65/12 66/2
**government [83]**
**government's [4]** 42/19 57/6 57/8 57/16
**governmental [2]** 48/20 48/22
**Greenbelt [1]** 1/6
**group [3]** 7/22 10/16 50/1
**guarantee [2]** 49/21 56/23
**guard [3]** 31/10 32/16 32/19
**guess [8]** 8/8 20/11 20/12 27/22 36/1 59/3 66/24 67/7
**guidance [1]** 62/14
**guide [1]** 59/14
**guys [1]** 35/8

**H**

**had [29]** 3/21 17/7 18/14 19/6 21/2 23/19 24/7 24/22 25/10 25/13 27/9 32/1 32/1 36/18 37/3 37/10 37/11 42/3 45/4 45/8 45/13 47/11 49/22 55/6 55/8 55/16 61/5 65/17 73/12
**hadn't [2]** 28/15 37/12
**hamstringing [1]** 39/22
**hand [3]** 8/19 16/5 26/20
**handle [2]** 17/16 18/17
**handled [1]** 15/24
**handling [2]** 22/3 44/12
**happen [12]** 7/23 7/24 19/19 25/6 29/1 35/15 43/6 44/24 46/3 58/21 59/23 60/17
**happened [7]** 16/9 16/10 16/10 16/16 25/12 27/3 60/1
**happening [2]** 70/11 70/14
**happy [10]** 7/18 27/23 31/8 34/16 35/21 41/23 64/6 64/13 64/24 70/7
**hard [3]** 12/2 24/21 46/19
**has [35]** 8/14 10/4 10/6 10/25 11/2 13/24 13/24 14/6 15/7 16/9 17/2 20/22 22/22 23/25 24/9 25/11 26/2 27/5 31/15 33/21 39/22 40/14 41/9 42/17 44/22 48/9 48/12 51/16 55/1 55/2 58/7 59/9 63/25 72/12 75/6
**hasn't [2]** 10/5 28/19
**have [172]**
**haven't [13]** 6/4 6/7 6/11 9/23 18/24 21/12 24/6 32/8 40/23 43/22 49/20 50/14 64/19
**having [15]** 5/5 5/6 7/18 8/5 8/18 15/20 21/11 50/7 51/19 52/6 56/19 57/22 62/6 66/22 70/25
**he [41]** 4/6 4/22 7/13 10/6 20/23 21/1 21/25 23/20 24/23 27/14 31/14 31/19 31/19 31/21 31/22 32/1 32/6 35/24 36/17 36/18 36/25 37/1 37/3 37/4 37/10 37/15 37/21 37/24 39/24 40/3 40/5 40/11 40/13 41/6 41/9 41/22 42/2 44/12 47/14 55/6 55/8
**he'll [1]** 25/7
**he's [10]** 32/17 36/19 39/11 39/18 39/19 39/19 40/6 40/7 40/12 41/19
**head [1]** 48/8
**headquarters [1]** 40/7
**hear [4]** 46/11 48/15 52/9 54/12
**heard [4]** 8/4 39/17 46/12 51/2
**hearing [5]** 46/25 49/9 61/10 63/3 70/15
**hears [1]** 46/15
**heart [1]** 48/21
**Heimann [2]** 1/16 2/12
**help [6]** 21/6 38/19 39/10 39/15 53/25 60/23
**helped [1]** 13/17
**helpful [4]** 61/19 62/17 66/16 67/2
**helps [1]** 54/1
**her [3]** 8/22 72/8 73/1
**here [20]** 2/6 2/11 2/13 2/19 4/4 7/22 9/5 10/6 12/20 19/13 20/15 22/10 34/6 37/16 44/10 49/6 56/16 67/20 68/2 69/5
**here's [3]** 50/16 53/3 53/9
**Hey [1]** 35/8
**hide [1]** 37/14
**hiding [1]** 24/3
**highly [2]** 27/14 45/24
**him [36]** 8/21 21/3 21/6 21/8 21/10 24/24 24/24 25/9 25/10 25/11 25/17 26/20 31/13 32/4 33/8 37/20 38/18 38/20 39/6 39/8 39/9 39/17 40/9 40/12 40/15 40/16 40/19 40/20 41/1 41/14 41/15 41/20 41/21 41/24 42/16 42/25
**himself [1]** 55/18
**his [22]** 20/21 20/21 20/22 21/20 22/11 22/12 26/2 31/16 34/21 36/20 37/6 38/19 38/24 39/2 39/8 40/25 41/1 41/2 41/22 42/12 47/12 55/5
**home [7]** 20/23 21/1 25/23 32/17 32/18 42/16 42/21
**homes [1]** 24/20
**honest [1]** 58/16
**honestly [2]** 66/7 66/12
**Honor [69]** 3/6 3/13 3/16 4/9 4/21 5/3 6/20 7/25 9/15 9/21 11/13 11/22 12/20 17/10 19/6 20/20 21/9 21/23 22/16 25/20 26/3 26/23 30/8 30/8 30/23 31/8 31/24 32/15 33/11 34/15 35/19 38/1 38/10 38/15

**H**

**Honor... [35]** 39/7 40/2 41/8 41/19 42/7 43/20 44/11 44/15 44/21 46/14 47/5 48/8 48/17 50/3 51/5 52/21 53/12 53/19 53/25 54/12 58/11 60/25 61/16 63/1 63/12 64/6 65/13 67/10 68/22 70/4 71/23 71/25 74/5 74/6 74/8
**Honor's [2]** 29/6 61/2
**HONORABLE [1]** 1/10
**hop [1]** 7/20
**hope [2]** 38/9 73/9
**hopefully [3]** 9/18 30/15 72/17
**how [42]** 4/3 8/4 8/24 9/6 10/3 11/10 12/21 13/23 15/12 16/10 16/11 17/6 17/7 17/16 18/8 24/2 25/19 26/16 26/16 27/15 35/12 43/13 45/9 46/6 46/9 46/12 46/19 53/4 53/5 53/7 56/11 58/4 58/8 58/21 59/6 61/11 66/8 68/11 69/2 69/8 69/18 74/10
**however [1]** 5/3
**HR [1]** 35/5
**huh [1]** 18/12

**I**

**I'd [5]** 49/11 59/6 60/10 60/13 73/6
**I'll [14]** 22/4 25/1 28/5 32/2 36/12 37/18 63/12 68/4 69/25 70/1 70/21 71/12 71/13 72/1
**I'm [51]** 3/9 3/17 4/4 8/23 9/10 9/23 12/11 17/2 18/24 19/15 20/4 22/3 22/14 24/13 27/23 29/16 29/19 30/3 31/24 33/6 34/8 34/9 35/19 37/2 37/23 38/7 38/25 43/7 46/3 47/2 49/18 53/9 53/13 53/19 53/20 54/12 56/17 56/19 60/5 60/22 61/20 63/3 63/8 66/7 66/21 66/24 67/7 68/13 70/24 71/12 73/1
**I've [6]** 2/25 30/15 38/2 39/17 49/22 68/2
**idea [7]** 12/8 34/13 37/22 56/16 66/17 67/6 68/5
**ideally [1]** 11/16
**identified [4]** 6/7 26/15 58/7 66/11
**identify [4]** 2/8 6/1 18/21 26/16
**identity [1]** 3/22
**ignorance [1]** 23/2
**imagine [1]** 46/19
**immediate [1]** 47/19
**impact [1]** 8/14
**impasse [2]** 9/20 64/4
**implicate [1]** 31/6
**implicated [2]** 17/8 18/16
**implicit [2]** 59/15 73/8
**implicitly [2]** 60/14 62/13
**important [3]** 36/21 38/22 46/23
**improper [2]** 6/7 24/18
**improperly [1]** 8/2
**inability [2]** 36/22 57/17
**inappropriate [1]** 68/3
**inaudible [22]** 3/23 6/12 6/12 7/3 12/20 14/12 17/1 25/23 32/24 40/23 48/24 54/11 54/24 55/23 60/20 63/16 64/6 64/25 65/6 67/21 73/2 73/18
**incentivizes [1]** 51/17
**inclined [1]** 49/7
**include [1]** 49/8
**included [1]** 9/19
**includes [1]** 15/1
**including [1]** 31/16
**inconsistent [1]** 59/17
**inconvenience [1]** 9/10
**increases [1]** 52/1
**incumbent [1]** 7/11
**indicated [7]** 9/16 20/22 20/24 26/4 61/5 63/15 63/25
**indicates [2]** 20/16 24/11
**indication [5]** 27/1 27/17 47/7 72/13 73/20
**indicative [1]** 36/23
**indirect [5]** 46/20 47/9 48/1 48/11 56/22
**individual [8]** 28/3 31/4 34/19 39/13 55/17 63/5 66/10 67/5
**individuals [13]** 5/25 13/14 14/19 14/25 15/4 15/21 16/22 19/9 29/5 29/6 38/4 44/4 57/18
**indulge [1]** 58/23
**inefficient [2]** 4/8 45/24
**informal [1]** 37/19
**informally [3]** 21/15 34/18 41/1
**information [56]** 6/22 7/6 7/10 13/20 13/25 15/14 19/10 19/12 21/18 22/1 22/12 24/3 24/7 24/9 24/23 25/17 26/19 26/21 26/22 27/16 28/2 29/10 32/3 32/19 34/17 35/7 36/4 36/8 36/19 36/22 37/3 37/7 37/9 37/19 38/3 38/4 40/22 42/8 43/5 44/5 47/1 47/14 47/22 48/20 49/3 51/11 52/24 56/20 57/23 58/22 59/10 63/24 66/10 67/22 73/14 73/23
**informational [1]** 31/7
**inherently [1]** 59/22
**initially [1]** 37/3
**ins [1]** 61/11
**instance [3]** 54/24 54/25 55/18
**instances [1]** 45/16
**instigated [1]** 37/5
**instructed [4]** 44/22 54/7 55/11 56/8
**instructions [2]** 57/19 61/18
**intend [2]** 30/23 65/6
**intent [9]** 22/9 33/19 37/14 53/15 53/22 54/5 61/2 61/2 65/3
**interconnected [1]** 43/23
**interest [1]** 35/9
**interests [1]** 31/6
**interim [1]** 62/4
**intermediate [2]** 56/19 61/4
**internal [1]** 53/6
**intrusion [1]** 43/10
**investigator [1]** 32/20
**invoke [1]** 62/6
**invoked [1]** 55/3
**involve [3]** 16/23 54/17 74/13
**involved [2]** 23/11 67/24
**involves [1]** 70/15
**is [258]**
**isn't [5]** 16/13 27/20 30/18 46/23 69/3
**issue [55]** 5/18 6/4 12/20 14/2 16/23 18/23 19/5 19/7 19/8 19/17 19/19 19/23 20/1 20/5 20/11 22/6 22/8 22/8 26/19 27/24 29/15 29/21 29/23 32/13 32/14 33/25 34/20 40/7 40/24 43/14 43/18 44/2 45/19 47/9 48/2 50/11 52/13 57/10 58/17 58/18 58/25 59/1 59/6 59/7 59/8 60/24 61/2 61/20 62/19 63/4 69/3 70/1 70/2 70/21 70/25
**issues [19]** 12/18 13/2 13/11 13/19 14/13 20/10 20/14 26/9 34/15 39/6 43/11 43/12 44/19 49/17 59/3 59/5 59/20 73/9 73/10
**it [160]**
**it'll [2]** 71/17 74/1
**it's [99]**
**itself [2]** 23/2 51/2

**J**

**Jacob [2]** 1/18 2/16
**James [2]** 1/19 2/18
**Judge [1]** 2/2
**jump [1]** 29/13
**jurisdiction [1]** 49/4
**just [75]** 3/17 4/18 5/1 8/8 8/22 9/20 9/24 11/18 13/5 13/8 13/22 19/3 19/4 19/6 20/1 20/4 20/16 21/20 22/5 22/7 22/19 22/23 24/2 24/14 25/3 25/5 25/11 26/11 26/19 28/17 30/4 30/9 31/7 33/19 34/10 35/3 35/11 36/10 36/15 38/2 43/15 44/6 44/9 45/1 49/17 51/14 52/14 52/19 52/22 53/3 53/8 57/5 58/15 59/8 59/8 59/14 60/3 60/6 60/23 60/25 61/19 61/19 62/13 63/13 64/8 65/24 67/1 68/14 69/1 70/18 71/2 71/9 72/2 72/15 73/20
**Justice [3]** 23/10 23/15 50/13
**justification [1]** 60/21

**K**

**keep [2]** 58/16 70/17
**keeps [1]** 9/17
**kind [17]** 8/9 8/10 10/7 11/12 15/14 19/18 21/13 29/20 35/15 35/23 43/16 46/23 53/2 53/19 61/4 61/14 66/18
**kinds [4]** 16/14 44/7 60/18 62/21
**knew [2]** 21/25 55/18
**knocked [1]** 19/2
**knocking [1]** 19/17
**know [113]**
**knowledge [2]** 55/5 55/7
**known [6]** 20/21 25/22 25/23 31/15 32/22 36/20
**knows [4]** 23/10 26/3 26/13 44/21

**L**

**large [1]** 70/17
**last [15]** 12/5 24/11 25/22 25/23 31/25 32/22 34/2 34/4 37/5 37/9 52/19 54/19 60/18 71/9 73/2
**last-known [2]** 25/22 25/23
**late [1]** 63/3
**later [12]** 4/3 4/25 4/25 37/15 46/17 48/14 50/19 51/1 52/18 62/18 62/23 73/21
**latter [1]** 53/20
**law [6]** 9/23 18/24 18/25 47/5 60/13 72/20
**lawyer [1]** 56/25
**lawyers [1]** 15/23
**lead [1]** 47/15
**leads [2]** 4/1 36/9
**learn [1]** 48/20
**learned [1]** 37/15
**least [22]** 2/21 4/2 16/7 16/11 18/6 20/21 23/10 24/12 24/23 31/9 33/16 35/12 36/9 53/13 59/5 65/11 66/23 69/12 70/16 70/23 71/8 73/22
**leave [3]** 3/14 28/5 51/16
**left [5]** 32/2 36/17 36/18 37/3 37/10
**legal [3]** 20/18 41/9 51/10
**legitimate [2]** 35/9 66/21
**legitimately [2]** 33/16 38/7
**less [3]** 2/23 58/22 64/23
**let [8]** 7/15 12/4 33/17 36/19 39/14 52/22 71/18 72/15
**let's [5]** 18/23 19/13 20/3 44/1 48/15
**letter [15]** 3/18 5/18 17/11 18/10 19/24 25/20 26/9 28/12 28/15 28/19 30/13 42/1 44/19 46/5 64/3
**letting [1]** 56/21
**level [2]** 17/4 43/10
**like [41]** 3/9 8/9 8/13 9/2 9/2 9/12 10/19 11/5 11/6 15/10 17/25 19/2 19/14 19/19 24/17 27/11 28/19 29/14 32/22 32/24 33/17 35/14 35/15 37/22 37/23 38/13 41/10 43/12 43/15 50/1 50/16 51/4 53/2 59/6 59/16

**L**

**like... [6]** 66/3 66/17 67/14 67/18 68/18 68/19
**likelihood [5]** 7/17 8/21 52/6 52/11 56/18
**likely [4]** 27/14 60/19 64/1 74/10
**limit [2]** 30/3 73/23
**limitation [2]** 23/23 50/23
**limitations [1]** 36/12
**line [1]** 51/12
**list [4]** 17/18 63/8 65/9 67/8
**lists [2]** 66/15 66/25
**litigate [2]** 44/23 58/25
**litigated [3]** 8/16 49/6 51/9
**litigation [1]** 49/21
**little [7]** 3/18 8/17 11/8 24/25 44/6 59/14 72/9
**live [2]** 29/15 29/17
**lived [2]** 21/25 24/23
**lives [1]** 26/17
**loads [1]** 64/9
**located [1]** 26/6
**location [3]** 20/17 27/20 32/9
**lodged [2]** 17/15 72/12
**logical [1]** 9/1
**logically [1]** 73/10
**Lombard [1]** 1/25
**long [7]** 9/6 50/4 50/14 62/8 62/23 64/15 73/2
**longer [5]** 7/12 21/4 56/14 65/11 70/17
**look [10]** 32/2 34/16 34/18 35/6 35/8 36/16 37/20 68/4 69/14 71/12
**looked [1]** 9/23
**looking [4]** 3/17 19/7 37/2 60/7
**lot [4]** 10/23 28/23 37/22 43/4
**low [1]** 8/22
**Lynch [17]** 1/18 2/17 3/7 12/19 17/10 18/19 18/20 21/24 25/10 39/12 39/13 40/13 40/21 54/23 64/5 67/9 69/18

**M**

**made [7]** 42/6 42/22 48/3 52/20 60/17 62/17 72/7
**magic [1]** 69/6
**mail [4]** 25/22 25/23 26/13 31/12
**mailed [1]** 31/11
**mailing [1]** 25/23
**major [1]** 63/3
**make [25]** 11/18 29/1 30/6 32/5 35/11 35/12 42/24 48/17 51/7 51/10 57/15 57/18 57/24 57/25 58/19 60/3 60/6 68/18 69/16 71/4 71/6 72/11 72/14 72/25 74/12
**makes [1]** 21/7
**making [1]** 59/22
**management [3]** 1/10 2/6 2/20
**many [7]** 15/12 17/6 17/7 43/6 58/4 58/8 63/23
**map [1]** 60/3
**Marocco [5]** 31/9 31/10 31/17 36/16 37/17
**MARYLAND [4]** 1/1 1/6 1/25 12/23
**Marziani [2]** 1/15 2/11
**matter [8]** 2/3 24/14 33/10 36/10 41/10 58/4 73/24 75/3
**matters [2]** 33/11 68/1
**may [21]** 9/15 9/20 13/19 16/16 19/9 22/14 22/16 34/1 35/11 36/2 56/15 59/2 59/4 59/11 59/24 60/5 61/19 63/6 66/21 68/18 72/24
**maybe [13]** 11/1 11/7 17/6 18/4 23/16 25/7 46/3 52/22 59/18 63/6 69/13 69/16 70/18
**Mays [2]** 1/14 2/13
**McGill [2]** 55/4 55/6
**me [30]** 2/17 7/15 8/12 9/22 9/24 12/4 13/22 13/22 14/15 20/3 22/19 25/2 31/3 34/10 35/17 42/11 43/12 44/6 44/9 45/22 48/16 52/22 52/24 53/10 55/25 66/9 67/3 68/6 69/4 73/19
**mean [47]** 3/9 4/22 5/18 6/18 6/20 7/15 7/16 8/14 9/5 9/7 9/22 17/3 17/16 18/23 18/24 19/14 19/14 21/17 21/24 22/6 22/12 24/13 27/11 28/21 29/2 29/8 32/5 32/21 33/14 34/10 34/19 40/8 41/3 43/2 45/22 46/11 46/24 49/20 50/13 50/20 53/1 55/24 66/17 67/3 68/21 69/3 72/17
**means [2]** 4/6 58/20
**meant [2]** 48/22 48/23
**mechanically [2]** 20/1 46/9
**mechanism [1]** 38/8
**media [3]** 24/4 26/5 34/1
**meet [1]** 73/6
**meeting [3]** 69/9 69/22 70/8
**member [12]** 4/20 4/25 4/25 6/5 7/19 8/13 10/18 21/4 40/11 40/13 42/2 65/15
**members [4]** 12/15 12/22 42/5 71/8
**memorialize [1]** 61/17
**middle [1]** 59/12
**might [18]** 8/7 12/18 14/17 16/23 17/8 18/5 19/12 22/25 23/4 23/17 37/7 52/10 57/23 57/25 60/23 63/15 68/12 68/21
**million [1]** 49/21
**Mimi [2]** 1/15 2/11
**mind [1]** 16/20
**minutes [1]** 39/18
**miss [1]** 71/22
**modify [1]** 71/5
**moment [2]** 22/15 61/19
**month [1]** 67/17
**moot [1]** 53/19
**more [20]** 8/18 12/5 16/9 18/6 20/9 21/14 26/8 26/22 27/9 29/7 36/15 39/21 44/6 44/24 51/18 53/11 56/7 59/10 62/2 67/21
**most [7]** 16/20 20/11 46/15 49/25 58/2 66/9 68/5
**mother [2]** 20/22 20/24
**motion [44]** 3/1 3/14 3/15 6/3 8/9 9/6 9/8 11/9 11/16 11/17 11/18 12/6 18/8 18/25 20/4 20/8 20/12 26/8 27/9 27/11 27/22 27/23 28/6 29/3 29/13 30/5 30/17 30/20 30/21 30/24 33/12 36/1 37/13 37/17 44/19 60/18 60/22 71/11 71/17 71/19 72/18 73/3 73/11 73/17
**motions [1]** 9/6
**move [3]** 2/21 9/7 28/18
**moved [1]** 4/1
**moving [2]** 6/9 17/22
**Mr [2]** 30/20 31/18
**Mr. [90]**
**Mr. Butler [8]** 38/16 54/7 54/11 54/15 54/15 54/16 55/8 58/10
**Mr. Farritor [16]** 20/12 20/15 20/19 21/11 22/23 23/5 25/6 25/17 26/1 27/8 27/8 28/10 29/13 30/9 30/20 54/17
**Mr. Lynch [14]** 12/19 17/10 18/19 18/20 21/24 25/10 39/12 39/13 40/13 40/21 54/23 64/5 67/9 69/18
**Mr. Marocco [5]** 31/9 31/10 31/17 36/16 37/17
**Mr. McGill [2]** 55/4 55/6
**Mr. Musk [20]** 16/21 16/25 17/4 17/8 20/13 26/5 28/11 30/9 30/12 30/25 32/13 32/18 33/16 34/22 35/22 36/10 45/13 47/11 54/14 57/22
**Mr. Musk's [1]** 34/20
**Mr. Siler [19]** 3/3 5/8 12/16 22/3 25/13 28/21 29/2 30/19 34/5 36/24 39/12 43/24 48/16 54/4 57/13 60/25 62/6 63/1 71/25
**Mr. Warren [4]** 52/23 58/5 58/13 61/9
**Mr. Warren's [1]** 48/18
**Ms [2]** 9/15 18/8
**Ms. [19]** 3/8 6/17 11/11 11/15 11/23 20/19 25/19 30/7 38/2 40/3 40/10 41/13 43/20 44/3 58/5 63/12 65/8 70/3 71/24
**Ms. Stevens [19]** 3/8 6/17 11/11 11/15 11/23 20/19 25/19 30/7 38/2 40/3 40/10 41/13 43/20 44/3 58/5 63/12 65/8 70/3 71/24
**much [6]** 9/2 11/10 25/1 52/12 74/2 74/15
**multiple [3]** 26/24 67/12 67/17
**MUSK [23]** 1/6 2/5 14/20 16/21 16/25 17/4 17/8 20/13 26/5 28/11 30/9 30/12 30/25 32/13 32/18 33/16 34/22 35/22 36/10 45/13 47/11 54/14 57/22
**Musk's [1]** 34/20
**must [1]** 49/8
**mute [1]** 20/7
**my [19]** 2/11 7/25 17/13 19/14 23/10 31/25 37/2 44/11 48/8 51/16 53/13 53/14 53/15 53/22 59/15 59/19 61/7 64/7 75/5

**N**

**nail [1]** 32/8
**name [2]** 10/17 39/2
**named [2]** 4/19 8/16
**names [2]** 5/13 14/16
**narrow [7]** 20/4 59/5 64/2 64/12 69/10 71/5 73/14
**narrower [1]** 65/11
**narrowing [2]** 12/17 63/18
**narrowly [2]** 14/8 63/21
**narrows [1]** 14/12
**natural [1]** 59/13
**naturally [1]** 52/8
**nature [2]** 5/21 49/14
**necessarily [10]** 16/12 33/19 36/8 38/22 47/15 53/23 59/16 65/7 69/10 74/13
**necessary [7]** 8/3 12/16 43/10 49/6 51/2 61/16 65/11
**need [35]** 11/10 12/1 13/21 19/10 19/15 25/1 27/13 27/25 28/1 28/5 29/17 30/13 30/21 34/10 35/8 36/4 36/11 43/9 50/10 56/15 57/2 57/22 63/9 63/24 64/13 64/25 65/24 66/4 68/16 70/2 70/12 70/20 72/18 73/15 73/23
**needed [1]** 35/5
**needs [2]** 62/17 71/17
**nefarious [1]** 24/20
**negotiate [1]** 64/25
**neither [3]** 9/4 48/19 63/18
**never [2]** 5/13 16/16
**new [5]** 4/7 5/10 11/4 32/3 58/15
**next [5]** 12/4 15/19 59/23 67/17 71/8
**Nicole [2]** 1/16 2/12
**no [40]** 1/4 5/12 6/13 7/12 8/5 8/14 10/6 17/18 21/4 21/18 23/21 24/4 29/17 31/14 32/23 33/3 33/4 34/23 35/16 36/6 37/14 38/3 42/17 43/1 43/8 52/17 55/15 56/7 56/14 56/23 59/9 63/1 65/10 65/13 66/14 67/6 69/6 69/11 71/15 73/19
**none [4]** 15/23 23/4 23/8 38/8
**nonprofit [1]** 49/14

## N


**nonresponsive [1]** 52/8
**nonstarter [1]** 19/18
**normal [8]** 35/3 35/19 49/11 51/6 51/9 51/13 51/18 72/15
**not [155]**
**note [3]** 36/21 49/11 70/21
**noted [1]** 44/18
**nothing [6]** 10/14 20/15 24/20 34/5 49/24 52/17
**notice [5]** 26/14 33/24 34/20 70/1 70/2
**notify [1]** 7/11
**notion [1]** 6/24
**November [5]** 31/25 37/9 63/14 64/8 65/19
**now [21]** 2/3 3/19 5/6 6/13 15/6 16/4 28/7 29/19 36/8 37/2 39/16 39/24 42/7 43/1 44/23 50/23 58/16 65/9 67/5 68/18 73/1
**nuance [1]** 41/18
**number [8]** 2/4 2/20 3/1 15/16 63/20 65/17 68/23 69/3


## O


**object [8]** 4/25 41/7 41/9 52/17 59/25 68/9 68/10 69/12
**objected [4]** 44/5 47/12 53/11 72/6
**objection [7]** 22/14 51/3 55/15 55/15 59/9 68/14 72/12
**objections [5]** 43/14 57/19 57/25 70/6 70/9
**obligations [1]** 34/12
**obviate [1]** 65/24
**obviated [1]** 51/18
**obviously [8]** 23/22 27/6 29/13 50/23 57/2 60/4 62/12 72/24
**occasions [1]** 26/25
**occur [4]** 43/16 48/13 62/20 66/25
**occurred [1]** 22/19
**occurrence [1]** 44/23
**October [2]** 37/8 65/19
**October/November [1]** 65/19
**odd [1]** 6/7
**off [4]** 7/21 8/19 8/22 48/8
**offense [1]** 6/24
**offer [1]** 64/16
**office [4]** 18/1 18/2 39/3 42/13
**officer [1]** 55/4
**officers [1]** 65/14
**official [3]** 1/24 72/9 75/12
**Oh [1]** 33/7
**okay [43]** 2/19 3/8 11/14 12/3 18/5 18/18 19/13 24/13 25/16 25/18 28/16 30/25 32/4 32/12 32/21 33/2 33/12 34/5 35/25 38/2 38/11 40/6 42/10 43/2 44/1 44/14 44/17 48/15 52/22 53/24 54/2 56/6 56/10 58/12 58/14 63/2 65/8 66/7 68/2 69/24 70/15 74/9 74/12
**one [68]** 2/25 3/1 8/18 9/5 10/25 10/25 11/5 12/3 12/6 14/13 15/17 16/1 16/5 16/18 17/4 17/14 17/14 17/21 20/9 20/10 20/22 21/25 22/3 22/6 22/7 23/16 23/19 24/12 24/15 25/3 26/1 26/2 26/9 27/14 31/3 31/10 31/13 33/25 36/1 36/15 40/18 41/10 43/12 43/13 45/2 47/10 52/4 53/1 54/24 58/25 59/9 60/16 62/2 64/1 64/7 65/1 65/4 65/15 66/14 69/5 69/13 69/17 69/17 70/16 72/1 73/8 73/17 73/25
**ones [6]** 15/7 16/2 49/24 56/12 70/2 72/7
**ongoing [1]** 66/4
**only [22]** 5/24 6/5 10/16 10/25 16/4 16/13 34/4 35/20 38/14 48/2 51/24 52/5 54/25 55/2 55/18 57/4 57/7 57/8 57/14 58/10 63/3 73/7
**open [1]** 50/16
**openly [1]** 66/11
**operations [1]** 61/12
**opinion [1]** 17/13
**opponents [1]** 49/16
**oppose [2]** 3/4 36/6
**opposed [6]** 3/19 20/5 29/4 50/1 60/1 71/19
**opposing [3]** 29/12 50/21 52/20
**opposition [1]** 6/3
**oppositional [1]** 49/22
**opt [1]** 5/1
**option [2]** 33/2 61/5
**options [4]** 10/14 42/22 42/25 72/4
**oral [1]** 70/10
**order [8]** 3/22 5/4 9/16 13/7 38/8 61/2 72/3 74/12
**organization [2]** 18/3 49/15
**organize [1]** 39/16
**other [47]** 4/24 7/3 8/7 8/19 8/20 10/11 10/18 11/3 12/13 14/4 14/14 15/2 16/21 16/22 19/11 20/5 21/12 22/23 22/25 23/14 24/23 28/12 30/9 30/14 33/10 33/11 34/3 35/2 37/24 38/3 38/14 40/9 41/10 48/23 49/24 52/17 54/21 56/15 57/14 58/4 58/19 63/3 64/7 64/9 65/1 73/18 73/20
**other's [1]** 70/13
**otherwise [4]** 19/20 29/11 32/14 57/25
**our [34]** 13/1 16/20 17/18 22/9 22/19 27/6 28/11 29/2 31/7 35/9 35/23 36/22 37/3 37/7 37/9 38/16 39/22 40/2 40/3 40/11 41/11 44/18 48/4 48/18 48/25 51/12 53/18 57/17 57/18 65/2 65/5 66/1 67/19 74/7
**out [42]** 5/1 5/12 6/5 6/19 7/20 9/4 9/13 10/15 11/2 11/10 11/12 12/7 13/18 16/6 19/2 19/11 19/18 20/2 24/2 25/7 28/22 28/23 33/6 34/13 41/11 42/2 46/1 50/21 50/22 52/18 56/21 59/10 61/7 61/21 62/3 62/4 62/7 63/10 63/11 65/24 68/15 74/2
**outcome [1]** 4/12
**outlining [1]** 61/3
**outs [1]** 61/11
**outset [2]** 2/24 2/25
**outside [2]** 4/13 38/9
**over [7]** 9/10 19/19 23/1 24/10 42/20 54/20 65/17
**overassert [1]** 13/20
**overassertions [1]** 58/20
**Overlapping [6]** 5/15 34/24 35/18 49/19 54/10 54/18
**own [8]** 4/7 4/24 7/21 7/21 8/7 8/22 24/20 41/6


## P


**p.m [3]** 1/7 2/1 74/16
**page [2]** 60/4 60/23
**Palo [2]** 26/15 26/24
**parameter [1]** 74/3
**parameters [2]** 30/15 72/23
**Pardon [1]** 74/7
**parents [3]** 20/21 24/17 24/19
**parents' [1]** 27/3
**part [12]** 4/5 5/9 6/18 8/5 12/10 12/13 16/23 23/14 45/19 57/5 68/23 70/8
**parte [2]** 52/14 71/1
**participation [1]** 5/22
**particular [4]** 53/18 59/9 60/22 71/4
**particularly [1]** 65/16
**parties [19]** 2/20 8/11 9/11 10/21 11/8 12/2 12/18 50/1 50/19 52/2 55/1 59/10 61/3 61/20 62/8 66/13 68/19 70/16 72/17
**parts [1]** 12/9
**party [1]** 23/18
**past [5]** 33/5 33/8 33/9 34/2 47/7
**path [1]** 19/22
**Patrol [1]** 40/4
**pending [2]** 2/3 37/13
**people [26]** 5/10 13/7 13/25 14/2 14/4 14/10 15/1 15/8 15/12 15/16 17/1 17/3 17/6 17/7 18/3 19/1 19/18 19/20 33/17 35/4 49/15 50/8 57/16 58/5 63/5 64/18
**per [2]** 22/6 22/8
**percent [5]** 36/20 42/3 64/17 64/20 64/22
**perfect [1]** 66/18
**perfectly [3]** 17/13 17/22 42/9
**perhaps [6]** 5/1 10/23 20/8 29/23 41/2 59/14
**permission [2]** 7/2 26/6
**permitted [2]** 60/12 60/12
**person [39]** 4/12 4/18 4/23 5/4 6/6 6/12 6/15 6/24 7/5 7/12 7/18 8/7 8/13 8/18 8/23 9/18 9/25 10/16 11/2 11/3 17/18 17/21 17/24 23/20 24/6 24/15 26/11 26/17 27/18 28/20 28/23 29/21 31/5 39/2 40/17 42/10 42/14 43/6 65/21
**person's [3]** 5/22 35/7 42/16
**personal [4]** 19/14 29/10 34/20 41/4
**personnel [22]** 21/17 21/20 22/13 22/20 23/5 23/25 24/1 25/2 26/22 27/5 29/11 32/10 32/14 33/15 34/8 34/9 35/13 38/5 42/16 42/20 43/3 59/22
**phone [2]** 2/17 64/18
**physical [2]** 25/21 36/12
**physically [3]** 53/4 55/13 60/1
**pick [1]** 69/12
**piece [2]** 29/24 62/14
**PJ [1]** 39/2
**place [10]** 3/23 7/3 8/12 9/1 26/20 29/25 30/1 33/22 36/25 51/22
**plaintiff [14]** 1/4 3/2 4/19 5/13 5/25 6/4 8/16 37/5 51/6 51/10 51/25 65/3 71/17 72/5
**plaintiff's [1]** 12/24
**plaintiffs [23]** 1/13 2/8 2/13 5/25 6/1 6/14 13/6 13/12 15/18 16/8 17/7 31/4 37/12 39/14 44/16 46/11 48/19 49/22 59/4 68/13 68/17 70/21 71/11
**plaintiffs' [9]** 5/18 14/8 39/23 51/3 51/16 51/20 56/21 61/23 71/2
**plan [2]** 33/23 44/25
**planning [2]** 14/9 46/13
**plans [2]** 16/16 53/23
**play [1]** 25/3
**please [3]** 2/8 37/24 54/6
**point [32]** 3/9 3/20 4/8 6/17 6/18 7/11 12/17 19/7 21/7 22/1 23/21 24/12 26/21 31/5 31/10 35/3 37/4 43/7 49/21 50/3 50/3 53/21 57/11 57/14 58/1 59/11 59/13 60/24 63/9 63/9 65/8 72/21
**points [1]** 48/17
**policies [1]** 50/9
**political [2]** 49/16 49/16
**portion [1]** 51/21
**portions [1]** 57/7
**position [21]** 13/9 14/16 17/24 29/2 29/3 30/19 30/24 33/15 35/2 37/24 40/9 40/11 41/17 41/18 42/19 48/18 51/12 52/13 64/9 71/15 72/10
**possibility [3]** 29/18 64/22 65/4

**P**

**possible [3]** 8/21 26/12 67/14
**possibly [2]** 28/13 58/20
**posting [2]** 25/21 32/22
**potential [5]** 6/21 13/10 14/12 16/16 56/24
**potentially [7]** 10/10 14/21 51/18 51/25 57/23 64/3 68/16
**practical [2]** 19/3 58/4
**practice [1]** 23/11
**pre [2]** 44/19 59/20
**pre-decisional [1]** 59/20
**pre-motion [1]** 44/19
**preclude [2]** 48/4 52/7
**precluded [2]** 10/16 46/21
**prefer [4]** 51/5 51/12 58/14 61/5
**prejudge [1]** 9/24
**prejudice [14]** 3/4 3/5 3/11 3/12 3/14 4/6 4/11 4/17 5/19 7/9 8/2 8/17 10/20 10/21
**prejudiced [3]** 5/5 5/20 5/21
**prejudicial [1]** 19/20
**preparation [6]** 45/4 53/23 55/5 55/7 56/2 67/12
**preparations [6]** 55/13 55/17 55/19 55/21 55/24 56/3
**prepare [2]** 66/19 68/24
**prepped [1]** 67/25
**prepping [2]** 67/10 67/17
**present [2]** 52/20 71/2
**presented [1]** 59/9
**presents [1]** 3/23
**president [4]** 17/3 17/3 49/2 49/4
**president's [1]** 47/19
**presidential [13]** 14/20 14/21 16/19 16/24 44/20 45/11 45/14 47/13 47/20 48/24 49/1 53/4 60/8
**pretty [6]** 8/22 9/2 9/7 24/8 68/5 68/13
**prevent [1]** 10/9
**previously [1]** 63/25
**primarily [2]** 26/4 45/23
**prior [3]** 14/14 44/23 45/4
**private [5]** 21/3 23/20 32/20 50/5 50/15
**privilege [61]** 13/19 13/24 14/13 14/17 14/22 16/4 16/6 16/17 16/20 16/24 18/16 18/23 19/4 19/7 19/8 19/23 39/6 42/1 42/6 42/8 43/14 43/17 44/1 44/8 44/12 44/19 45/3 45/6 45/11 45/14 45/20 45/25 46/17 47/7 47/13 47/21 47/24 48/22 48/25 49/1 49/13 51/8 51/17 52/13 52/25 53/17 54/8 54/25 55/2 57/19 58/15 58/21 59/3 59/8 60/8 60/11 60/24 62/1 62/5 62/7 70/25
**privileged [13]** 13/25 44/5 46/1 50/17 51/11 52/24 53/11 56/20 59/9 60/16 62/10 62/11 70/25
**privileges [12]** 13/1 14/9 17/15 18/6 38/12 40/8 44/21 46/4 48/20 48/23 48/25 59/19
**probably [8]** 11/5 12/2 32/7 32/19 34/11 60/10 69/25 74/1
**problem [18]** 6/14 13/9 14/18 20/18 21/18 21/24 23/21 24/4 24/9 36/21 39/5 42/14 42/18 48/5 61/9 67/20 68/23 74/9
**problems [1]** 57/12
**procedural [1]** 10/11
**procedurally [1]** 20/2
**procedure [6]** 50/17 51/4 51/18 58/15 70/24 74/13
**proceed [8]** 7/2 7/12 8/5 18/9 18/14 46/15 53/7 59/6
**proceeded [2]** 17/13 18/14
**proceedings [3]** 1/9 1/22 75/3
**process [31]** 10/8 16/6 16/17 17/13 21/3 27/2 27/10 27/12 27/17 35/23 44/20 45/3 45/21 48/12 48/24 49/5 49/8 49/8 51/6 52/2 53/6 53/17 54/8 54/25 55/2 56/11 56/19 59/20 61/3 62/16 71/9
**produce [1]** 57/7
**produced [3]** 1/22 57/8 57/9
**production [3]** 65/19 66/2 66/4
**professional [2]** 12/21 13/9
**prohibition [1]** 46/19
**prompted [1]** 15/19
**proper [1]** 45/5
**proposal [6]** 19/3 25/18 46/5 48/3 61/22 63/18
**propose [1]** 41/21
**proposed [2]** 59/21 74/7
**protecting [1]** 13/1
**protection [1]** 59/21
**protections [1]** 51/22
**protective [3]** 3/22 38/8 57/24
**proved [1]** 51/2
**provide [11]** 7/6 19/1 24/24 26/14 27/9 33/18 34/17 43/5 47/14 62/9 64/14
**provided [4]** 36/18 40/22 56/8 71/1
**providing [1]** 42/14
**PSC [8]** 5/24 6/1 6/4 6/13 6/18 7/9 8/5 10/6
**purporting [1]** 13/14
**purpose [2]** 2/6 31/7
**purposes [1]** 6/9
**pursue [5]** 3/10 4/15 8/7 42/22 73/13
**pursuing [1]** 16/9
**put [9]** 10/17 28/14 30/3 40/17 52/12 57/4 69/17 70/5 70/24
**puts [1]** 12/24

**Q**

**quash [1]** 29/14
**question [40]** 4/10 8/6 17/7 18/16 29/6 31/3 41/25 44/9 45/1 45/4 45/7 46/18 47/1 48/13 49/9 50/16 50/18 50/24 50/25 52/14 53/2 53/8 53/10 53/15 53/18 53/20 53/22 54/2 54/3 54/5 54/5 54/13 54/17 55/12 55/16 56/1 56/9 59/15 62/11 66/21
**questions [37]** 14/17 16/15 16/18 23/2 24/5 30/7 44/7 44/13 45/12 45/24 46/10 47/6 47/10 47/17 47/25 48/3 51/7 52/11 53/3 54/9 55/14 57/4 60/24 61/23 61/24 61/25 62/2 62/9 62/15 62/21 62/25 63/14 66/11 67/5 68/7 73/13 74/4
**quick [1]** 64/5
**quickly [1]** 9/7
**quite [3]** 4/8 24/18 24/18
**quote [1]** 54/5

**R**

**raised [1]** 64/3
**raises [1]** 49/17
**raising [2]** 42/1 44/23
**range [4]** 21/16 49/20 60/12 66/22
**rather [1]** 73/15
**reach [7]** 10/21 19/11 26/11 34/13 40/20 52/13 61/14
**reached [1]** 27/15
**reaching [1]** 49/2
**ready [2]** 6/19 66/22
**real [2]** 3/23 6/14
**realistic [1]** 7/23
**reality [2]** 33/19 58/1
**really [23]** 8/14 16/9 19/14 19/21 20/9 27/13 27/14 27/24 28/16 29/25 36/7 36/10 43/10 48/2 52/24 53/9 59/20 66/22 66/24 67/20 68/17 69/3 73/11
**realm [1]** 38/12
**reason [10]** 10/5 10/16 19/19 27/21 36/6 41/15 41/16 42/24 68/4 69/11
**reasonable [7]** 8/12 9/24 13/16 28/1 42/9 63/22 68/24
**reasonably [3]** 26/10 26/15 33/23
**reasons [1]** 45/15
**Rebecca [1]** 1/13
**recap [1]** 70/18
**received [1]** 72/2
**recent [1]** 20/11
**recently [1]** 12/5
**record [9]** 2/9 18/17 18/22 51/8 52/20 57/4 61/10 72/16 73/18
**recorded [3]** 1/22 75/2 75/3
**recording [4]** 1/22 50/21 75/5 75/6
**records [2]** 31/16 40/20
**reduce [3]** 52/6 52/11 56/18
**referenced [2]** 36/16 54/4
**referring [1]** 31/4
**reframed [1]** 69/13
**refused [1]** 13/13
**refusing [1]** 39/14
**regard [3]** 16/18 35/20 45/11
**regarding [4]** 30/9 30/14 38/8 47/12
**regardless [1]** 48/1
**registration [1]** 31/16
**regularly [1]** 24/19
**reiterating [1]** 73/4
**relate [1]** 57/15
**related [2]** 14/13 22/24
**relation [2]** 17/5 33/10
**relative [1]** 31/13
**release [1]** 72/4
**relevant [8]** 8/6 14/3 24/22 25/9 40/22 53/4 67/4 73/13
**relief [1]** 6/11
**remainder [1]** 3/25
**remaining [2]** 17/18 59/3
**remains [1]** 47/23
**replace [1]** 11/4
**reply [6]** 11/23 68/12 68/16 69/25 70/20 71/20
**Reported [1]** 1/24
**reporter [8]** 1/24 50/20 51/23 57/3 57/6 61/12 71/2 75/12
**represent [8]** 13/6 13/15 17/20 25/17 36/17 39/17 40/12 41/10
**representation [3]** 4/14 12/22 40/24
**representative [8]** 5/6 5/7 5/24 6/8 7/13 18/11 25/11 38/17
**representatives [4]** 3/25 6/2 6/13 6/22
**represented [3]** 12/23 17/14 33/7
**representing [1]** 49/15
**request [12]** 4/16 17/16 18/14 21/7 21/22 22/13 22/15 29/9 29/20 32/10 37/16 66/1
**requested [4]** 12/12 22/12 28/14 72/6
**requests [2]** 3/21 7/14
**require [1]** 70/12
**required [2]** 47/20 47/24
**reserve [1]** 6/10
**residence [1]** 32/18
**resolve [2]** 9/8 13/11
**resolved [2]** 9/7 20/11
**resort [2]** 34/2 34/4
**resources [1]** 9/5
**respect [13]** 6/11 7/5 16/7 16/12 17/20 18/10 27/3 28/10 28/11 38/18 48/20 57/21 72/8
**respond [8]** 3/21 7/13 11/20 22/16 52/23 64/18 69/11 70/21
**responding [1]** 71/15

## R


**response [5]** 23/4 28/11 30/22 45/3 48/17
**responses [3]** 4/1 22/19 22/22
**responsibility [1]** 39/19
**responsive [2]** 50/25 66/1
**rest [1]** 8/14
**result [3]** 7/19 10/19 71/19
**results [1]** 36/2
**reveal [1]** 3/21
**review [1]** 64/18
**reviewed [1]** 48/14
**Richard [2]** 1/16 2/12
**right [20]** 10/15 10/19 11/13 19/25 25/4 29/21 29/25 30/1 32/9 33/22 34/20 36/8 37/2 41/3 41/7 41/9 43/1 47/2 67/16 72/25
**rightfully [1]** 7/1
**rights [3]** 6/10 10/19 11/2
**RMR [2]** 1/24 75/12
**road [1]** 10/1
**role [3]** 17/25 23/19 73/1
**roles [1]** 33/16
**rolled [1]** 18/6
**rolling [1]** 65/19
**Ronda [3]** 1/24 75/1 75/12
**room [6]** 50/21 50/22 51/16 61/24 62/3 62/4
**round [2]** 63/13 63/13
**Rubin [2]** 1/16 2/12
**Rule [1]** 3/2
**rules [2]** 12/21 12/23
**ruling [5]** 60/22 61/13 62/17 73/2 74/10
**rulings [2]** 60/6 72/25
**rummaging [1]** 35/13
**run [2]** 22/13 30/4


## S


**safety [1]** 7/1
**said [25]** 16/8 17/10 22/12 28/11 30/19 31/14 32/1 34/1 38/3 39/18 44/3 44/5 45/21 46/10 51/19 54/20 61/22 62/6 64/8 64/14 64/20 69/4 70/16 74/13 75/5
**sake [2]** 22/7 50/18
**same [9]** 11/23 30/25 32/4 34/5 35/25 36/2 60/4 60/8 60/23
**save [1]** 50/18
**say [26]** 9/24 10/1 11/15 13/6 15/2 15/4 18/16 23/14 27/22 29/17 33/9 35/8 40/18 40/19 43/25 52/3 55/24 59/9 59/14 63/13 65/18 66/21 68/22 69/8 69/25 73/7
**saying [14]** 4/18 13/7 26/12 35/12 37/23 39/5 41/14 41/15 46/3 46/24 52/16 54/23 56/17 66/14
**says [1]** 32/16
**scenario [1]** 10/4
**schedule [4]** 9/14 39/6 67/14 74/7
**scope [8]** 13/19 14/7 15/15 38/13 43/13 43/19 49/3 69/7
**seal [6]** 46/10 48/21 50/20 52/14 57/4 71/1
**second [4]** 12/1 12/10 25/4 52/18
**secondarily [1]** 51/14
**secondly [1]** 27/19
**security [14]** 3/24 7/1 18/1 31/10 32/14 32/16 32/19 32/25 32/25 33/15 39/3 55/4 55/8 65/14
**see [24]** 8/17 8/20 9/6 11/7 12/1 19/18 19/19 20/6 24/1 24/3 24/19 24/20 28/21 29/11 30/4 33/9 34/3 36/6 37/18 51/21 60/10 60/13 69/1 73/6
**seeing [2]** 53/9 63/8
**seek [4]** 4/2 6/6 6/11 64/1
**seeking [7]** 5/2 5/19 9/19 18/11 36/20 37/6 42/7
**seem [9]** 2/23 4/8 10/19 20/14 26/16 41/10 45/22 52/5 58/19
**seemed [1]** 15/21
**seems [26]** 8/9 8/12 8/23 9/1 9/1 9/22 9/24 11/5 20/15 20/17 24/25 25/2 34/10 34/14 35/15 35/17 37/22 40/22 42/11 43/12 66/9 66/15 66/17 67/1 67/3 69/4
**seen [4]** 18/24 49/20 50/1 51/3
**selected [1]** 67/25
**send [3]** 26/12 41/23 42/19
**sending [1]** 26/2
**sense [8]** 8/10 21/7 27/19 28/7 35/11 62/22 66/23 68/18
**sent [1]** 23/1
**separate [3]** 17/16 45/12 55/12
**separately [2]** 30/12 34/19
**serve [4]** 24/16 33/1 36/22 39/7
**served [4]** 34/21 64/8 64/9 66/11
**server [4]** 27/2 27/12 27/17 32/23
**servers [2]** 21/3 27/10
**service [34]** 20/8 20/14 20/16 20/20 21/8 24/14 24/16 25/19 26/10 28/14 28/16 29/5 29/6 29/24 30/11 30/24 31/11 32/2 32/7 32/16 33/18 34/13 34/19 35/11 36/11 36/14 36/17 36/20 37/22 38/21 39/16 56/14 71/12 73/10
**services [1]** 38/15
**set [8]** 9/14 11/8 38/18 38/19 38/24 39/10 59/5 71/12
**share [1]** 70/9
**she [3]** 4/7 4/22 72/9
**she's [1]** 72/9
**sheer [1]** 68/23
**short [1]** 62/23
**shortly [1]** 37/4
**should [36]** 6/16 8/10 9/25 10/13 11/7 17/22 19/1 19/19 19/24 24/5 24/8 28/3 30/4 32/6 36/5 38/7 38/9 46/7 46/17 47/17 47/22 48/11 51/11 56/18 56/23 59/23 61/23 62/11 62/22 64/12 70/11 70/12 70/13 72/15 73/11 73/21
**shouldn't [2]** 10/2 28/18
**show [2]** 18/15 41/22
**showing [1]** 32/5
**showings [1]** 30/6
**shutdown [1]** 37/8
**side [5]** 9/4 10/25 43/22 57/8 64/7
**sides [3]** 9/2 45/17 68/14
**sign [1]** 43/8
**significant [1]** 63/20
**Siler [22]** 1/18 2/16 3/3 5/8 12/16 22/3 25/13 28/21 29/2 30/19 31/18 34/5 36/24 39/12 43/24 48/16 54/4 57/13 60/25 62/6 63/1 71/25
**Silverstein [2]** 1/15 2/12
**similar [5]** 15/21 32/13 60/7 72/7 73/4
**similar-situated [1]** 15/21
**similarity [1]** 63/22
**simple [1]** 9/12
**since [2]** 37/21 63/5
**single [1]** 23/19
**sir [2]** 11/24 36/15
**Sitting [1]** 22/10
**situated [2]** 15/21 72/9
**situation [7]** 5/16 11/3 13/23 36/12 45/24 47/14 66/16
**six [1]** 2/25
**skeptical [1]** 47/2
**slightly [1]** 63/16
**smacks [1]** 5/22
**so [146]**
**social [3]** 26/4 26/5 34/1
**solve [4]** 19/3 19/7 20/5 48/5
**solved [2]** 16/13 18/5
**solving [1]** 19/4
**some [73]** 2/22 4/7 6/15 6/18 7/3 7/7 8/7 10/5 10/6 10/7 11/16 12/18 12/23 16/6 16/7 16/13 16/18 18/5 20/17 20/23 21/1 22/14 22/21 23/2 23/14 23/19 23/22 24/7 24/11 27/1 27/17 27/19 27/21 27/25 30/14 32/18 33/10 37/11 43/23 49/24 52/1 52/5 52/15 56/13 56/14 56/14 56/15 58/2 58/17 58/20 59/4 59/11 59/18 60/11 60/13 60/20 63/5 63/6 65/9 65/10 65/12 65/21 66/6 68/4 68/7 68/10 69/7 69/7 69/13 71/19 72/13 72/21 74/1
**somebody [7]** 6/19 10/9 35/6 54/20 62/20 64/23 65/24
**someone [15]** 14/16 20/7 23/21 23/25 33/15 33/17 42/13 43/4 43/15 45/13 54/15 63/9 66/19 69/4 72/21
**someone's [1]** 43/3
**something [20]** 8/13 9/4 9/13 11/6 11/17 19/2 29/9 29/14 32/22 39/20 46/7 49/13 56/25 60/1 65/6 66/20 68/3 68/8 70/2 70/20
**sometime [1]** 10/1
**sometimes [3]** 26/3 46/24 62/6
**somewhat [2]** 12/21 34/14
**somewhere [4]** 31/18 34/9 34/9 59/12
**soon [2]** 6/6 6/18
**sorry [8]** 5/17 25/15 33/6 38/25 53/19 54/12 54/22 54/23
**sort [30]** 6/6 6/25 7/21 10/15 11/10 11/16 15/19 18/2 19/4 21/15 22/4 23/2 27/16 38/12 39/4 39/21 46/5 48/17 49/25 52/18 61/3 63/13 63/20 64/3 65/11 66/18 67/1 73/3 73/4 73/20
**sought [1]** 15/18
**sound [3]** 24/17 53/2 59/15
**sounds [4]** 11/13 28/18 50/16 60/3
**source [2]** 36/7 66/9
**sources [2]** 73/18 73/20
**SOUTHERN [1]** 1/2
**speak [9]** 12/14 13/13 18/21 38/17 39/14 47/18 57/16 57/18 59/22
**speakers [6]** 5/15 34/24 35/18 49/19 54/10 54/18
**speaking [7]** 3/23 7/9 13/10 15/9 15/20 18/18 59/17
**specific [9]** 4/10 23/2 57/4 63/21 63/23 64/13 64/17 70/6 74/12
**specifically [6]** 14/6 15/9 15/17 28/10 44/13 45/1
**specificity [1]** 56/7
**specifics [1]** 44/6
**spoken [1]** 13/12
**stage [3]** 54/3 57/1 57/12
**standard [2]** 11/20 71/20
**standing [1]** 37/16
**standpoint [5]** 30/18 45/21 45/23 46/6 46/8
**start [4]** 2/23 11/4 28/1 44/1
**State [5]** 15/6 15/9 15/11 36/18 37/4
**stated [1]** 56/20
**STATES [1]** 1/1
**stating [1]** 68/3
**stay [2]** 4/23 5/11
**staying [1]** 3/19
**step [1]** 62/4
**Stevens [23]** 1/13 2/10 3/8 6/17 9/15 11/11

## S


**Stevens... [17]** 11/15 11/23 18/8 20/19 25/19 30/7 38/2 40/3 40/10 41/13 43/20 44/3 58/5 63/12 65/8 70/3 71/24
**still [19]** 5/4 5/13 7/18 8/13 15/5 15/8 15/13 16/16 20/4 27/8 31/17 42/2 43/19 59/3 63/8 65/18 65/20 66/4 68/19
**stipulation [1]** 63/17
**stipulations [4]** 63/16 63/16 64/14 64/16
**stop [2]** 19/16 62/23
**stopping [1]** 59/13
**straight [1]** 21/20
**Street [1]** 1/25
**strike [2]** 13/15 52/24
**strong [1]** 23/1
**strongly [1]** 66/4
**structural [1]** 10/24
**structure [2]** 11/1 11/5
**subagency [1]** 31/23
**subject [4]** 37/13 38/16 58/15 73/11
**submit [1]** 63/15
**subpoena [10]** 21/9 23/18 25/21 29/9 29/20 31/12 32/9 38/15 39/8 42/15
**subpoenaing [1]** 43/3
**subpoenas [1]** 20/10
**subsequent [1]** 16/2
**substance [5]** 12/25 13/13 14/23 42/2 57/21
**substantial [1]** 65/17
**substantive [1]** 13/2
**substitute [2]** 21/8 38/21
**successful [1]** 30/6
**such [2]** 5/4 33/16
**suffice [1]** 62/11
**sufficient [2]** 11/20 65/24
**suggest [4]** 65/2 65/2 66/13 69/24
**supply [1]** 41/2
**support [1]** 47/4
**supports [1]** 47/6
**suppose [1]** 72/19
**sure [19]** 3/10 4/4 8/23 12/12 14/19 32/9 34/8 34/9 35/12 35/19 38/7 46/9 49/18 56/1 59/22 60/4 66/8 66/24 67/7
**surprised [1]** 43/7


## T


**tag [1]** 22/4
**tailored [1]** 57/19
**take [18]** 6/24 14/9 15/18 22/13 22/15 24/25 29/3 30/19 30/23 34/18 35/21 37/16 37/18 51/23 61/19 64/11 65/4 74/1
**taken [7]** 17/12 45/4 50/3 50/3 51/15 64/10 65/13
**takes [3]** 9/6 34/7 67/12
**taking [2]** 35/22 71/15
**talk [22]** 9/3 9/16 12/25 13/7 13/17 18/23 19/9 19/23 21/6 30/12 32/21 40/9 41/23 42/4 61/20 64/24 65/21 66/5 68/19 68/22 72/17 73/23
**talked [2]** 15/10 68/20
**talking [12]** 15/7 28/20 43/15 44/10 49/13 50/6 54/20 58/25 59/18 60/9 60/14 63/22
**talks [1]** 15/25
**tangential [1]** 38/22
**tax [1]** 31/16
**TDC [2]** 1/5 2/4
**team [1]** 22/4
**TELEPHONE [1]** 1/10
**tell [5]** 20/3 29/16 29/16 35/20 35/20
**ten [1]** 32/16
**tenable [1]** 17/13
**tend [1]** 41/11
**terms [13]** 3/9 18/8 25/18 30/13 31/4 32/4 34/3 40/12 44/6 48/10 56/10 58/5 72/20
**terribly [1]** 7/25
**testified [3]** 40/5 55/6 56/12
**testimony [6]** 14/14 46/22 51/24 56/2 57/21 59/25
**Texas [2]** 31/13 31/15
**than [16]** 4/24 5/12 15/3 16/21 26/8 35/2 37/24 41/25 43/3 52/17 58/24 62/2 65/11 67/21 69/5 73/15
**Thank [1]** 74/15
**that [493]**
**that's [59]** 3/22 4/16 5/2 5/2 8/2 8/6 8/16 10/15 12/12 12/16 13/8 14/1 14/24 15/19 15/24 16/6 16/11 16/18 19/21 21/14 22/9 23/9 25/6 26/13 27/15 28/18 29/6 29/17 29/22 30/21 32/3 32/15 35/15 35/15 38/6 39/2 40/5 41/25 43/24 45/15 46/10 46/14 48/16 48/21 52/21 55/22 56/21 56/25 57/9 57/10 59/6 60/16 63/12 67/20 69/2 70/8 73/17 74/1 74/10
**their [38]** 3/21 3/24 4/7 4/24 5/18 6/22 7/1 7/6 7/10 7/14 7/21 7/21 8/4 8/7 8/22 10/17 17/11 17/12 24/19 24/19 30/10 33/16 34/12 34/17 39/16 39/19 39/19 42/1 42/6 42/19 48/19 49/3 51/7 57/20 57/21 64/3 64/9 64/16
**them [44]** 3/1 8/2 9/10 12/25 12/25 13/5 13/8 13/15 13/18 15/10 15/20 17/14 17/14 17/20 19/11 20/22 21/15 23/3 23/8 24/2 24/3 24/6 24/16 29/8 29/16 35/7 39/15 42/21 53/1 56/16 57/24 58/8 63/24 64/24 66/20 68/10 69/13 69/13 69/16 69/17 70/7 70/17 73/22 73/25
**themselves [4]** 15/10 15/24 17/17 65/23
**then [49]** 4/13 5/6 6/5 6/14 7/20 7/20 9/20 12/13 20/8 22/25 24/25 25/3 25/25 26/3 27/19 28/3 28/11 30/16 30/25 32/6 32/9 33/2 36/12 43/14 45/25 46/16 48/4 48/13 51/9 52/18 52/22 57/24 58/14 59/1 60/16 61/24 62/1 62/5 62/11 65/1 65/15 66/21 68/11 69/13 69/16 69/24 71/14 71/16 72/19
**THEODORE [1]** 1/10
**theoretically [1]** 8/21
**theory [2]** 4/6 60/16
**there [74]** 4/14 6/13 7/16 8/20 10/4 12/5 12/20 14/4 16/17 16/21 17/10 18/2 18/25 20/1 20/18 20/24 22/14 22/22 23/21 24/9 24/21 25/8 26/13 26/17 27/18 27/19 28/12 30/20 31/5 31/14 32/11 34/15 35/4 36/7 37/13 42/17 42/21 42/25 43/4 44/3 44/3 45/21 46/19 47/4 49/16 50/17 51/21 55/12 55/14 55/15 56/7 56/13 56/23 56/24 58/4 59/2 59/24 60/5 60/20 62/2 62/21 63/10 63/20 63/23 65/10 65/18 67/5 68/4 68/6 69/6 71/16 71/25 72/13 74/2
**there's [71]** 5/12 7/16 7/17 8/15 9/9 10/2 10/6 10/23 11/1 11/5 12/1 12/4 12/7 12/9 12/17 13/9 13/23 16/5 17/17 18/16 19/14 20/1 20/13 20/15 20/17 21/17 23/22 23/23 24/17 26/25 27/17 28/25 29/8 29/17 32/6 34/8 34/9 34/16 35/2 36/11 38/3 39/5 40/19 40/24 42/14 42/24 43/2 43/3 43/6 43/8 45/25 47/8 50/5 50/23 52/3 52/15 59/18 60/15 60/15 60/20 65/20 65/25 66/14 66/20 67/3 69/6 69/11 72/18 73/6 73/19 73/19
**these [49]** 2/22 7/18 8/23 13/6 13/11 13/13 14/13 14/19 15/4 15/23 18/6 19/9 19/25 22/21 23/19 24/12 27/7 28/22 29/5 29/6 34/10 34/13 35/8 36/22 38/4 43/13 44/19 45/20 46/2 49/6 49/24 59/19 59/19 63/6 63/14 64/8 64/10 65/10 65/22 66/5 66/9 66/15 67/4 67/8 68/3 68/5 68/9 70/16 73/24
**they [91]**
**they'll [3]** 42/20 42/21 42/21
**they're [30]** 5/10 5/11 6/25 12/15 13/14 13/18 15/3 15/5 16/8 16/9 18/1 21/19 24/2 24/3 24/24 29/22 33/14 34/11 35/5 39/9 39/16 42/1 43/22 44/8 49/4 58/19 60/19 62/6 67/18 71/15
**they've [1]** 13/13
**thing [19]** 8/10 24/15 31/1 32/4 34/5 35/15 35/25 36/15 38/14 40/18 40/19 42/11 54/20 60/8 60/16 64/7 65/4 72/1 73/7
**things [33]** 2/21 2/22 2/23 4/9 8/20 16/14 19/13 19/25 23/24 25/21 27/13 27/21 27/24 28/22 32/21 34/3 35/13 38/12 40/10 44/4 49/6 52/3 56/15 59/24 60/17 60/18 63/6 64/5 64/13 65/1 69/7 73/15 74/12
**think [151]**
**thinking [2]** 22/14 53/20
**thinks [1]** 18/15
**third [6]** 12/1 17/24 23/18 28/20 31/4 43/14
**third-party [1]** 23/18
**Thirty [1]** 69/1
**Thirty-two [1]** 69/1
**this [217]**
**Thomas [3]** 1/24 75/1 75/12
**those [34]** 4/15 7/13 10/13 10/18 16/11 16/14 21/12 23/23 27/21 27/24 30/4 30/6 30/16 38/7 42/17 42/22 42/25 43/17 47/25 48/25 50/14 54/6 55/7 55/10 55/17 57/7 57/18 62/21 64/19 71/13 71/15 72/6 72/22 72/23
**though [2]** 52/7 59/7
**thought [7]** 2/21 2/23 16/11 28/12 37/11 60/23 73/9
**thoughts [1]** 18/8
**three [8]** 17/11 18/2 36/1 42/3 43/12 45/15 72/3 73/10
**threshold [1]** 20/11
**through [12]** 4/5 10/8 21/12 29/9 29/10 32/25 35/13 55/7 61/20 68/20 71/8 71/9
**throughout [1]** 10/5
**throw [1]** 74/2
**thrown [1]** 16/6
**thus [2]** 17/21 42/2
**Tianna [2]** 1/14 2/12
**tied [4]** 24/12 27/7 27/8 31/13
**time [28]** 8/9 11/10 14/3 15/2 20/23 21/1 23/22 24/25 25/1 28/15 30/3 37/7 37/9 37/11 39/17 42/3 50/10 55/2 64/2 64/15 64/23 65/2 65/19 67/12 67/19 68/25 72/5 74/1
**times [3]** 32/16 44/20 60/17
**timing [1]** 30/18
**title [1]** 17/25
**today [6]** 2/6 6/9 11/14 11/14 22/10 37/16
**together [6]** 4/4 59/12 61/4 62/9 62/13 69/18
**told [4]** 25/6 27/3 30/15 39/9
**too [6]** 9/10 13/8 14/12 23/1 50/5 74/2
**took [1]** 55/5

## T

**top [1]** 48/8
**topic [5]** 47/18 63/4 64/13 68/14 69/5
**topics [20]** 63/8 63/10 63/14 63/19 63/21 63/21 65/10 66/9 66/19 66/21 66/25 67/4 67/8 67/15 67/24 68/1 68/2 68/9 69/11 70/21
**totally [2]** 3/10 68/6
**towards [1]** 73/11
**track [1]** 21/3
**tracking [1]** 27/7
**tracks [1]** 30/4
**trail [1]** 24/7
**transcribable [1]** 61/10
**transcribed [1]** 75/4
**transcript [6]** 1/9 1/22 51/21 57/7 75/2 75/5
**Transcription [1]** 1/22
**tried [4]** 15/20 20/20 26/24 28/15
**trouble [2]** 20/17 50/19
**true [3]** 38/6 41/5 75/1
**truly [2]** 6/25 9/19
**try [14]** 2/21 9/4 16/23 18/21 21/3 27/6 45/9 46/7 47/5 58/24 61/24 69/25 72/1 74/12
**trying [17]** 9/23 12/6 14/7 19/7 20/4 20/5 24/16 38/18 38/23 38/23 39/7 43/8 55/22 56/16 60/6 63/23 69/9
**TSA [2]** 37/1 37/15
**turned [2]** 24/10 65/17
**turns [2]** 10/14 45/25
**twice [1]** 56/16
**two [31]** 4/9 11/20 12/9 15/19 17/12 17/21 19/13 20/12 20/21 27/7 27/13 27/24 28/19 34/15 42/2 45/12 48/17 50/6 52/3 52/23 59/19 63/24 65/14 65/22 65/25 69/1 69/17 69/21 70/19 71/20 71/20
**type [2]** 14/16 46/18
**types [3]** 13/14 14/17 47/6

## U

**Uh [1]** 18/12
**Uh-huh [1]** 18/12
**unable [1]** 21/4
**unbelievable [1]** 34/14
**uncertain [1]** 12/21
**unclear [1]** 3/18
**uncovering [1]** 67/22
**under [17]** 3/2 12/21 12/22 13/20 22/24 28/13 28/14 34/12 42/17 46/10 48/21 50/17 50/20 52/14 57/4 60/16 71/1
**under-assert [1]** 13/20
**understand [19]** 5/9 7/16 10/21 13/2 14/24 20/1 21/5 34/23 35/1 35/25 38/9 45/9 50/12 56/17 57/20 58/21 59/7 66/24 67/7
**understanding [11]** 40/2 40/3 53/13 53/15 53/22 61/15 70/13 70/23 71/14 72/20 74/10
**understandings [1]** 22/21
**understood [2]** 31/25 54/4
**Unfortunately [1]** 63/2
**unintelligible [1]** 19/4
**unique [1]** 5/25
**UNITED [1]** 1/1
**unless [4]** 9/19 24/2 36/7 43/10
**unlikely [1]** 8/1
**unnecessary [1]** 8/2
**unsatisfactory [1]** 59/1
**unsure [1]** 68/13
**untenable [1]** 15/22
**until [8]** 6/2 48/4 49/9 66/14 71/8 73/12 73/21 73/22
**unusual [2]** 5/16 33/15
**unwilling [4]** 8/24 21/19 22/1 24/24
**up [38]** 7/20 8/12 9/1 10/5 10/13 11/1 11/21 13/23 14/6 17/2 17/4 18/15 20/24 21/20 33/23 35/7 36/16 40/17 41/22 44/4 44/19 45/2 45/12 45/16 45/17 46/7 50/24 50/25 52/9 52/10 56/13 57/9 58/9 60/11 60/18 61/4 66/23 67/21
**upcoming [3]** 14/13 44/24 58/3
**updated [2]** 36/18 37/11
**upon [2]** 11/16 11/25
**us [29]** 4/2 5/18 6/14 7/2 7/11 12/24 13/10 13/13 13/15 21/6 29/16 36/17 36/19 38/18 38/19 39/9 39/10 39/14 39/15 39/22 40/25 41/23 41/23 47/15 48/1 57/14 63/16 64/13 71/18
**USAID [17]** 14/25 15/5 15/9 15/11 15/16 18/2 23/1 23/1 39/3 45/5 53/16 55/4 55/6 55/8 55/17 55/19 56/5
**USDS [1]** 23/6
**use [16]** 11/1 14/16 46/12 46/16 46/20 46/21 46/23 47/9 48/1 48/2 48/4 48/11 48/14 48/24 56/22 56/24
**used [1]** 35/4
**useful [3]** 31/7 66/9 68/21
**usual [1]** 49/6
**usually [6]** 15/24 27/11 33/18 35/5 53/6 56/24

## V

**valid [1]** 46/4
**value [1]** 52/15
**various [2]** 22/20 31/9
**version [1]** 70/12
**versions [1]** 31/5
**versus [1]** 58/18
**very [6]** 8/17 51/20 62/17 63/23 72/1 74/15
**via [3]** 1/10 31/12 75/3
**vice [1]** 17/3
**view [8]** 7/25 15/8 19/14 48/25 53/18 59/19 61/6 61/7
**views [3]** 49/16 49/22 70/13
**Virtually [1]** 64/10
**voluntarily [2]** 24/25 29/5
**voluntary [3]** 3/2 4/2 5/20
**voter [1]** 31/16
**vs [1]** 1/5

## W

**wait [3]** 30/21 73/11 73/21
**waiting [1]** 70/17
**waive [1]** 34/20
**want [35]** 3/10 4/11 4/14 4/19 5/1 5/2 5/9 8/1 13/8 20/4 28/7 28/9 29/11 29/15 39/15 41/9 46/25 54/2 58/17 59/4 60/3 60/10 60/13 61/1 64/11 64/25 67/14 68/17 69/16 69/18 70/9 70/17 72/11 72/15 73/13
**wanted [4]** 12/4 44/25 61/8 74/2
**wants [1]** 72/13
**warranted [1]** 6/16
**warren [8]** 1/14 2/11 44/12 44/16 52/23 58/5 58/13 61/9
**Warren's [1]** 48/18
**was [82]**
**was trying [1]** 12/6
**Washington [2]** 31/14 31/15
**wasn't [6]** 7/13 27/13 29/7 46/1 46/9 51/2
**waste [3]** 8/9 50/10 67/19
**way [38]** 4/5 5/5 5/12 8/2 8/17 9/17 10/12 11/1 11/5 12/2 12/7 12/23 13/4 15/24 17/22 19/3 19/25 22/5 28/21 28/25 29/7 33/25 36/11 38/3 40/24 41/10 42/8 45/21 46/15 47/2 49/7 62/8 63/11 65/21 67/13 68/8 69/14 73/7
**ways [6]** 24/21 24/21 24/23 41/14 43/2 43/6
**we [231]**
**we'd [4]** 9/15 26/6 28/9 64/6
**we'll [12]** 25/8 30/12 32/11 37/16 37/20 58/23 59/2 59/5 61/24 70/19 71/19 74/12
**we're [50]** 2/13 2/19 3/18 4/4 4/5 6/9 8/8 9/3 9/21 15/7 16/1 16/2 26/12 29/3 31/8 34/16 34/21 35/13 35/21 38/23 40/15 41/1 41/23 42/7 43/7 44/9 44/23 46/20 47/7 49/13 55/22 57/24 58/25 59/18 60/4 60/9 60/14 62/22 63/22 64/3 64/13 64/24 65/18 67/17 70/7 71/4 71/4 71/5 71/6 72/4
**we've [17]** 10/3 17/12 21/2 22/20 26/6 31/9 42/3 43/12 43/15 48/3 50/1 56/13 63/13 63/17 64/14 65/13 73/12
**week [9]** 11/12 68/18 69/8 69/16 69/17 69/17 69/19 69/21 69/25
**weekend [1]** 72/10
**weeks [9]** 11/20 15/19 24/11 67/12 69/17 69/21 70/19 71/20 71/20
**well [24]** 8/8 12/9 18/18 23/9 23/14 24/13 26/2 26/6 29/15 32/4 32/19 33/12 33/13 37/21 37/25 40/18 42/10 45/18 45/23 52/3 56/10 58/2 66/7 70/8
**Wen [2]** 1/19 2/18
**went [3]** 17/17 42/8 66/20
**were [26]** 3/24 4/23 6/1 7/16 10/17 14/25 15/1 17/15 18/24 22/24 22/25 23/18 24/12 36/15 42/5 44/3 50/17 50/25 54/20 55/13 55/14 60/2 64/19 67/5 72/3 73/11
**what [78]**
**what's [9]** 5/8 20/18 22/1 25/11 27/16 45/19 60/12 66/17 66/20
**whatever [7]** 7/19 11/2 11/17 23/6 25/8 46/25 69/12
**when [21]** 3/20 13/12 15/4 16/10 18/21 24/14 24/16 25/4 32/21 33/9 35/16 49/2 50/6 55/10 57/7 58/21 58/25 59/18 62/20 64/16 71/13
**where [50]** 3/25 5/2 5/9 10/17 11/2 12/4 12/18 13/9 13/23 14/9 15/13 20/6 20/13 21/25 24/8 24/23 26/20 27/14 28/22 29/15 29/17 30/4 32/5 32/25 32/25 35/1 35/14 39/24 40/5 42/4 44/4 45/2 45/16 45/16 45/22 45/24 46/9 46/15 48/7 48/9 48/12 49/12 49/22 51/6 51/15 54/25 63/9 63/9 66/12 68/19
**whether [29]** 3/10 3/11 6/1 7/8 8/6 12/7 12/13 12/15 12/17 12/24 26/22 30/13 33/14 33/20 34/16 44/7 45/20 47/19 47/23 49/23 51/8 62/1 62/5 63/4 65/23 70/10 72/14 72/14 73/4
**which [38]** 4/8 9/8 11/16 17/12 18/14 19/24 20/9 20/10 23/21 24/11 27/15 28/5 31/21 35/3 35/14 36/8 36/24 39/17 41/22 47/20 47/24 48/22 50/17 53/6 53/16 56/13 57/5 60/16 63/10 63/10 64/2 67/13 68/9 69/25 70/25 72/1 72/6 72/25
**while [5]** 7/18 34/11 52/4 56/17 59/24
**who [52]** 5/13 5/24 6/21 7/9 13/24 14/1 14/2 14/3 14/4 14/7 14/10 14/25 15/1 15/8 15/16 15/16 16/22 18/18 19/20 21/4 22/22

**W**

**who... [31]** 24/7 26/13 31/3 32/17 33/7 38/16 38/25 38/25 39/3 47/16 47/17 47/22 49/15 50/8 54/11 54/19 55/4 55/8 56/12 57/16 58/2 58/2 58/6 58/6 58/7 60/17 62/20 64/18 65/15 68/1 73/22
**who's [1]** 17/4
**whoever [1]** 73/12
**whole [6]** 11/4 24/1 25/2 25/5 37/22 59/1
**whose [3]** 16/22 40/8 40/8
**why [27]** 3/18 4/16 8/23 10/21 11/14 12/12 12/16 12/16 13/25 16/10 19/19 21/20 24/1 26/16 40/21 45/15 55/24 63/22 66/24 67/7 68/2 68/3 68/5 68/9 68/10 69/8 72/25
**will [11]** 25/8 26/3 29/4 38/1 54/5 56/23 64/25 65/18 66/10 68/16 71/16
**willing [12]** 6/21 7/6 7/10 7/19 9/4 9/16 9/21 10/17 13/6 21/6 65/3 65/5
**withdraw [2]** 53/20 64/16
**withhold [1]** 64/22
**within [8]** 11/12 14/10 30/16 32/10 61/14 72/20 72/23 73/2
**without [15]** 3/5 3/11 3/14 4/6 4/10 4/16 5/19 7/8 7/21 10/20 19/4 34/21 35/12 61/23 71/1
**witness [36]** 13/24 24/22 28/13 30/14 36/2 39/1 40/5 40/14 42/17 42/22 43/8 43/15 44/22 45/2 47/1 48/13 51/7 52/1 52/6 54/7 55/11 55/16 55/18 56/2 56/8 57/6 58/25 64/1 65/1 66/8 66/16 67/13 67/25 68/24 71/8 71/9
**witness's [1]** 45/22
**witnesses [25]** 14/6 14/13 17/11 20/12 21/16 28/12 30/10 35/5 42/4 43/17 44/24 47/15 50/19 56/12 58/2 58/2 58/4 58/20 66/5 66/10 67/17 73/10 73/21 73/22 73/24
**won't [3]** 20/23 26/25 68/15
**word [1]** 23/1
**work [33]** 9/4 13/1 14/1 14/2 15/5 15/13 15/16 24/6 27/20 28/22 28/22 28/23 30/1 31/17 31/19 31/21 35/4 36/25 37/19 39/24 57/2 57/3 58/19 59/10 61/4 61/7 61/14 61/20 62/13 63/11 72/19 72/23 73/7
**worked [9]** 9/13 14/25 15/9 23/20 24/8 34/11 37/15 46/9 48/7
**working [2]** 41/19 62/8
**works [8]** 31/22 37/1 40/4 40/5 40/13 57/14 73/3 74/11
**worried [1]** 6/25
**worry [1]** 51/16
**would [92]**
**wouldn't [3]** 24/1 41/9 56/18
**writ [1]** 70/16
**writing [2]** 61/17 70/6
**written [3]** 22/19 70/11 70/12
**wrong [3]** 5/8 22/2 35/2

**Y**

**yeah [5]** 34/7 34/25 34/25 37/1 69/23
**year [2]** 37/5 37/9
**yes [28]** 3/13 3/16 4/21 5/3 8/21 11/22 11/24 18/20 22/9 22/17 23/8 30/8 30/23 31/2 32/15 36/15 39/7 43/20 43/24 44/11 46/14 52/21 53/12 64/8 65/13 67/8 70/4 74/5
**yesterday [2]** 37/18 72/3
**yet [1]** 73/25
**you [263]**
**you'll [2]** 32/6 71/18
**you're [19]** 5/2 11/18 16/4 22/1 24/16 26/11 27/24 28/20 30/5 30/19 33/6 39/5 46/2 46/24 50/6 52/18 56/24 58/21 73/4
**you've [8]** 27/21 30/1 30/2 50/13 63/5 65/9 65/12 68/20
**your [92]**
**yourself [1]** 18/21
**yourselves [2]** 2/9 61/15