**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| J. DOE 4 *et al.*, *individually and on behalf of all others similarly situated*, <br><br>                 ***Plaintiffs,*** <br><br>                 **v.** <br><br> ELON MUSK *et al.*, <br><br>                 ***Defendants***. | Case No.  8:25-cv-00462-TDC |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ALTERNATIVE SERVICE

Plaintiffs submit this Memorandum of Law in support of their Unopposed Motion for Alternative Service in order to effectuate service of deposition subpoenas on Defendant Elon Musk and third-party witness Luke Farritor.

Plaintiffs have made repeated, unsuccessful attempts to serve Musk and Farritor with deposition subpoenas pursuant to Federal Rule of Civil Procedure 45.  Specifically, Plaintiffs made fourteen attempts to serve Musk and six attempts to serve Farritor at verified residences. Despite these efforts, both witnesses remain unserved. The circumstances of these attempts suggest that both individuals are evading service. Regardless, it would be fruitless to continue attempting personal service on either Musk or Farritor given Plaintiffs' diligent but unsuccessful efforts.

The testimony of both individuals is critical to this litigation. Musk is a defendant and the sole individual found to have had "firm control over DOGE." *Does v. Musk*, 771 F.Supp. 3d 637, 668 (D. Md. March 18, 2025) (ECF No. 73).  And Farritor was a member of the United States DOGE Service ("DOGE") team who had administrative access to USAID computer

systems, which allowed "DOGE team members [to] cut off access to email and other government computer systems for thousands of USAID employees . . . . " *Does v. Musk*, 2025 WL 2346258, at *3 (D. Md. Aug. 13, 2025) (ECF No. 150).

After exhaustive efforts to effectuate personal service at multiple addresses for each, alternative service is necessary to ensure Plaintiffs can depose Musk and Farritor before the close of discovery, currently scheduled for March 31, 2026. *See* ECF No. 193. For Musk, Plaintiffs propose a combination of (1) sending the subpoena via certified and first-class mail, (2) posting it to the security gate directly outside his West Lake Hills residence or leaving it with the attending security guard, and posting on the door of his Brownsville residence, and (3) sending it via e-mail. For Farritor, Plaintiffs similarly propose a combination of (1) certified and first-class mail, (2) posting on the door of two known residences, and (3) email. Together, these methods are sufficient to ensure "actual notice" of the "pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

## BACKGROUND

### I.    Plaintiffs' Attempts to Serve Musk

Musk is commonly known as the richest person in the world, with a net worth in the hundreds of billions of dollars. Although Musk owns multiple properties domestically and abroad, public reporting, prior litigation, and his own security staff confirm his primary residence is located in West Lake Hills, Texas.[1] Plaintiffs have attempted to serve him at that address ten

---

[1] *See* Ex. 1, Decl. of Andrew H. Warren, ¶ 2; *see also,* e.g., Nikita Mazurov, The New York Times Briefly Published Elon Musk's Home Address, The Intercept (May 6, 2025), https://theintercept.com/2025/05/06/new-york-times-elon-musk-home-address/ (noting the momentary erroneous publication of Elon Musk's home address and linking to a court filing that listed the address); Notice to Neighbors of Variance Request, City of West Lake Hills (June 9,

times. A process server made the first attempt, and Travis County, Texas Constables made attempts two through ten. Out of an abundance of caution, Plaintiffs also made four attempts to serve Musk personally at an address in Brownsville, Texas, that he listed on his Texas voter registration as his residence. *See* Ex. 2. Plaintiffs' fourteen attempts to serve Musk in person are as follows:

1. November 13, 2025 at 10:25 am: A private process server went to the West Lake Hills residence, a gated property, but was denied entry. The server spoke to an adult male through the call box, who said he could not provide any assistance or information. The process server left his card in the box. Ex. 3, Proof of Service by Chris Dathe, Dec. 5. 2025.

2. December 9, 2025 at 3:56 pm: Travis County Constable Gavin McGee was denied entry to the West Lake Hills property. He spoke to a man through the gate access box, who stated that Musk was not home at the moment and that nobody at the house was allowed to accept paperwork on his behalf. Ex. 4, Proof of Service by Gavin McGee, Jan. 15, 2026 at p. 6.

3. December 10, 2025 at 12:53 pm: A Travis County Constable was denied entry to the West Lake Hills property. He asked a person at the residence if it were possible to schedule a time and place to serve Musk and taped his business card to the gate entry access box. No response was ever received. Ex. 4 at p. 5.

---

2025), https://www.westlakehills.gov/DocumentCenter/View/4221/109-Stratford-Reserve-Variances-3rd-Notification (variance request by Central Texas Permit Partners LLC).

4. December 11, 2025 at 1:48 pm: A Travis County Constable was denied entry to the West Lake Hills property. A man who answered the gate access box confirmed that Musk's security received the business card from the last attempt to serve process. Ex. 4 at p. 5.

5. December 15, 2025 at 2:24 pm: A Travis County Constable was denied entry to the West Lake Hills property. A man who answered the call box said "there is no one here by that name" when the constable asked for "Mr. Musk." Ex. 4 at p. 5.

6. December 16, 2025 at 12:25 pm: A Travis County Constable visited the West Lake Hills property and observed that no one was home. Ex. 4 at p. 5.

7. December 19, 2025 at 11:24 am: A Travis County Constable visited the West Lake Hills property and observed that no one was home. Ex. 4 at p. 5.

8. December 29, 2025 at 1:45 pm: A Travis County Constable was denied entry to the West Lake Hills property. A security guard said that Musk was not home at the moment. Ex. 4 at p. 4.

9. December 31, 2025 at 11:36 am: A Travis County Constable was denied entry to the West Lake Hills property. A security guard said that Musk was not home at the moment. Ex. 4 at p. 4.

10. January 9, 2026 at 3:14 pm: A Travis County Constable was denied entry to the West Lake Hills property. A security guard said that Musk was "not here right now, and I can't help you." Ex. 4 at p. 4.

11. February 19, 2026 at 4:30 pm: A private process server went to the Brownsville residence, a small home inside a gated community. There was no answer at the door and no vehicles in the driveway. Ex. 5, Return of Non-Service by Aurelio Chavez, Feb. 23, 2026.

12. February 20, 2026 at 1:30 pm: A private process server went to the Brownsville residence and was told by several workers at the property that none of the current residents were available. Ex. 5.

13. February 22, 2026 at 11:45 am: A private process server went to the Brownsville residence; there was no answer at the door and no vehicles visible. Ex. 5.

14. February 23, 2026 at 9:24 am: A private process server went to the Brownsville residence; there was no answer at the door and no vehicles visible. Ex. 5.

Plaintiffs have also attempted to contact Musk through an attorney who has represented him in other litigation. *See* Ex. 1, ¶ 3. On October 17, 2025, Plaintiffs emailed the attorney and asked whether he was representing Musk in this matter. *Id*. The attorney responded that same day with a question about the nature of the case, to which Plaintiffs promptly replied. *Id*. Plaintiffs followed up with the attorney on October 21, 2025 and February 12, 2026 but have not received any response. *Id*.

## II. Plaintiffs' Attempts to Serve Farritor

Plaintiffs have attempted to serve Farritor with a deposition subpoena four times at his presumed current residence in Palo Alto, California, and twice at his family residence in Lincoln, Nebraska. A private investigator retained by Plaintiffs has confirmed both addresses are connected with Farritor. Ex. 1, ¶ 5. Additionally, on February 18, 2026, government counsel provided Plaintiffs with Farritor's last known contact information, including an email address, cell phone, and personal address, which is that of the family residence in Lincoln. *Id.* The Lincoln residence also matches public records of a car registered to Farritor. *Id.* Plaintiffs' six attempts to serve Farritor in person are as follows:

1. November 6, 2025 at 6:13 pm: A private process server went to the Lincoln residence. A woman identifying herself as Farritor's mother said he was not there and would not be there for a long time. Ex. 6, Proof of Service by Inmaculada Jackman, Nov. 20, 2025.

2. November 19, 2025 at 10:45 am: A private process server went to the Palo Alto residence. There were lights on at the property and two cars in the driveway, but no one answered the door. Ex. 7, Proof of Service by Harry Oswaldo Constanza Oliva, Nov. 24, 2025.

3. November 19, 2025 at 1:10 pm: A private process server went to the Palo Alto residence. There were lights on at the property and two cars in the driveway, but no one answered the door. Ex. 7.

4. November 22, 2025 at 9:45 pm: A private process server went to the Palo Alto residence. There were lights on at the property and two cars in the driveway, but no one answered the door. Ex. 7.

5. November 23, 2025 at 7: 00 pm: A private process server went to the Palo Alto residence. There were lights on at the property and two cars in the driveway, but no one answered the door. Ex. 7.

6. February 26, 2026 at 1:48 pm: A private process went to the Lincoln residence. There were two vehicles in the driveway, the garage door was open, and someone inside the house moved shades while looking through a porch window at the process server. However, no one answered the door. Ex. 1, ¶ 6.

Plaintiffs have also attempted to contact Farritor via his cell phone. On February 24, 2026, Plaintiffs called the phone number provided by the government but was unable to reach him. Ex. 1, ¶ 7. On February 25, 2026, Plaintiffs sent a text message to the same number asking Farritor to call back. *Id.* To date, he has not responded. *Id.*

## ARGUMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 45(b)(1) provides that "[a]ny person who is at least 18 years old and not a party may serve a subpoena," and that "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Although the "longstanding interpretation of Rule 45 has been that personal service of subpoenas is required," Wright & Miller, *9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.)*, Rule 45 "does not expressly require personal in-hand service," *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005). Increasingly, federal courts have permitted methods of service other than personal service. *Id.* at 505 (explaining "as Rule 4(e) demonstrates, the drafters of the Federal Rules knew how to require personal service when they wanted it [and]…there is absolutely no policy distinction that would justify permitting 'lesser' forms of service for a summons and a complaint—which actually commence a lawsuit—but not for a subpoena"); *see also King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) (holding that in-hand delivery is not required under Rule 45 so long as service is made in a manner that reasonably ensures actual receipt of the subpoena); *Western Resources, Inc. v. Union Pacific R.R. Co.*, 2002 WL 1822432, at *2 (D. Kan. July 23, 2002) (holding that delivery of subpoena via Federal Express was sufficient because effective service under Rule 45 is not limited to personal service); *Bland v. Fairfax Cnty.*, 275 F.R.D. 466, 471-72 (E.D. Va. 2011) (holding that Rule 45 allows for service by certified mail). Permitting alternative service under Rule 45 accords with the principle that the rules "be construed, administered, and employed … to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Specifically, a party is entitled to "alternative means of service—that is, non-personal service—of a subpoena for a deposition []: (1) after a party has made diligent efforts to effectuate personal service; and (2) if the alternative means seem likely to reasonably ensure actual receipt of the subpoena." *Jowite Ltd. P'ship v. Fed. Ins. Co.*, No. SAG-18-2413, 2019 WL 13251993, at *2 (D. Md. July 17, 2019) (collecting cases). In *Jowite,* the district court found that the plaintiff had undertaken diligent efforts warranting alternative service by attempting "to serve [the defendant] at his place of business, and at his home multiple times, [while] twice leaving [a] business card with a person at [his] home." *Id.*; *see also Chambers v. Whirlpool Corp.*, 2016 WL9451361, at *2-3 (C.D. Cal. Aug. 12, 2016) (finding diligence where process server attempted personal service three times); *Meade Communities, LLC v. Calypso*, ("*Calypso*"), No. CV EA-23-2736, 2024 WL 3370964, at *2 (D. Md. Feb. 7, 2024) (diligence satisfied in the Rule 4 context where three failed attempts were accompanied by evasive behavior by the defendant).

Alternative methods of service must be "reasonably calculated" to give the defendant "actual notice" of the action and "afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314. Courts within the Fourth Circuit have "looked to both Rule 4 and applicable forum state law service rules for guidance on how a subpoena must be 'delivered' under Rule 45." *Kegege v. Namesilo LLC*, No. CV TDC-20-1066, 2024 WL 1299998, at *3 (D. Md. Mar. 27, 2024) (citing *In re Newbrook Shipping Corp.*, 31 F.4th 889, 897 (4th Cir. 2022)); *see also* Md. Rules 2-510(d), 2-121(a)(3) (permitting service of a subpoena by "mailing to the person . . . by certified mail.").

In the context of Rule 4, courts have held that service by mail is "sufficient when reasonably calculated to reach the interested parties." *Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 431 (D. Md. 2012) (collecting cases); *see, e.g., Jowite,* 2019 WL

13251993, at *2 (granting alternative service via lesser forms of mail, such as federal express and first-class mail); *Nat'l Liab. & Fire Ins. Co. v. Rooding*, No. CV ELH-15-2572, 2017 WL 281994, at *5 (D. Md. Jan. 23, 2017) (granting permission to plaintiff to serve the summons and complaint by posting it at the address and mailing it via first class and certified mail).

Courts have also accepted electronic mail, in conjunction with other methods, as reasonable to afford due process in the context of Rule 4. *See, e.g.*, *Lipenga v. Kambalame*, 2015 WL 9484473, at *4 (D. Md. Dec. 28, 2015) (permitting service via email and Facebook under Rule 4(f)(3)); *Enovative Techs., LLC v. Leor*, No. CIV. JKB-14-3956, 2014 WL 7409534, at *1 (D. Md. Dec. 24, 2014) (directing plaintiff to serve defendant via electronic mail). This district's allowance of email service is consistent with practices in other districts. *See, e.g.*, *SEC v. David*, 2020 WL 703464, at *1 (S.D.N.Y. Feb. 12, 2020) (permitting the SEC to serve the defendant with the subpoena by email); *Amann v. Office of Utah Attorney General*, 2021 WL 4949032, at *2 (D. Utah Oct. 25, 2021) ("service by email [was] a means reasonably calculated to ensure actual receipt of the subpoena"); *S.E.C. v. Ahmed*, 2015 WL 13647201, at *4 (D. Conn. May 21, 2015) ("Service of a subpoena may be made by facsimile, e- mail, mail, hand or overnight courier.").

Courts have also permitted service by affixing the subpoena to the home or business address of the named party or leaving the subpoena with a person of suitable age and position. *See, e.g.*, *Tube City IMS, LLC v. Anza Cap. Partners, LLC*, 2014 WL 6361746 at *3 (S.D.N.Y. Nov. 14, 2014) (granting request to serve subpoena by affixing subpoena to door and sending via certified mail); *Export Development Canada v. SDR Group, Inc.*, 2020 WL 1888825, at *2 (E.D. Mich. Apr. 16, 2020) (Lawson, J.) (permitting service by firmly affixing a copy of the subpoena and the order to the front door of the address, in combination with other methods); *JPMorgan*

*Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 1313259, at *3 (S.D.N.Y. May 11, 2009) (permitting service of subpoena by leaving copy with person of suitable age and discretion in combination with other methods); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 55 (2d Cir. 2002) (upholding service of subpoena by attaching a copy to the door and mailing a copy to witness' counsel); *Green v. Baca*, 2005 WL 283361, at *1 n.1 (C.D. Cal. Jan. 31, 2005) (holding that "leaving [paper] at the person's office with a clerk or other person in charge, or if no one is in charge leaving it in a conspicuous place in the office…is sufficient under Rule 45.").

## II.    Plaintiffs' Proposed Alternative Methods of Service Are Reasonably Calculated to Ensure Receipt

Service via certified and first-class mail, leaving or posting the subpoena at their residences, and e-mail are "reasonably calculated" to ensure Musk and Farritor will each receive notice that comports with constitutional standards of due process. *Mullane*, 339 U.S. at 314.

Plaintiffs have confirmed Musk's primary residence is the West Lake Hills property through litigation records and public documents, as well as the information provided by security personnel during repeated attempts at service, including statements that Musk was not home at that moment. Plaintiffs' proposal to send the subpoena by certified mail and first-class mail to the West Lake Hills property and the Brownsville property, leave a copy with security at the West Lake Hills property (or post it at the security gate if security will not accept it) and on the door of the Brownsville property are "reasonably calculated" to reach Musk. To further ensure receipt, Plaintiffs also propose sending the subpoena to Musk via his government email address, which has been publicly confirmed. *See* Ex. 1, ¶ 4. Although it is unknown whether Musk continues to directly use this email address, Musk is known to maintain multiple email addresses at his various companies, and it is reasonable to assume that his government email forwards to one or more of

his other email accounts. Moreover, even if this email address is out of service, it is only one of three methods to effectuate service.

Plaintiffs have identified a current address for Farritor in Palo Alto, California, confirmed by a private investigator, and his family address in Lincoln, Nebraska, confirmed by public records, government counsel, and Farritor's mother. Plaintiffs' proposal to send the subpoena by certified mail to both properties and leave a copy posted at the door of each are "reasonably calculated" to reach Farritor. To further ensure receipt, Plaintiffs also propose sending Farritor the subpoena at his last known email address, as provided by government counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Alternative Service with respect to Musk and Farritor.

Dated: February 26, 2026

Respectfully submitted,

/s/ Tianna J. Mays
Norman L. Eisen, [09460]
Tianna J. Mays, [21597]
Andrew H. Warren*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Tianna@democracydefenders.org
Andrew@democracydefenders.org

Richard M. Heimann*
Nicole M. Rubin [30711]
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111

Mimi Marziani*
Rebecca (Beth) Stevens*
Joaquin Gonzalez*
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604
mmarziani@msgpllc.com
bstevens@msgpllc.com
jgonzalez@msgpllc.com

Tel: (415) 956-1000
rheimann@lchb.com
nrubin@lchb.com

*Attorneys for Plaintiffs*
*Admitted pro hac vice