IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

J. DOE 4, et al.,                        )
                                         )
          Plaintiffs,                    )
       vs.                               ) CIVIL NO.:
                                         ) 8:25-cv-00462-TDC
ELON MUSK, et al.,                       )
                                         )
          Defendants.                    )
_____)

                              Greenbelt, Maryland
                              March 26, 2026

TRANSCRIPT OF PROCEEDINGS
**CASE MANAGEMENT CONFERENCE**
BEFORE THE HONORABLE THEODORE D. CHUANG
Via Teleconference


<u>For the Plaintiffs</u>:

     ANDREW H. WARREN, Esquire
        Democracy Defenders Fund
        600 Pennsylvania Avenue SE #15180
        Washington, DC 20003

     MIMI MARZIANI, Esquire
        Marziani, Stevens & Gonzalez PLLC
        500 W. 2nd Street, Suite 1900
        Austin, TX 78701

     NICOLE M. RUBIN, Esquire
        Lieff Cabraser Heimann & Bernstein, LLP
        275 Battery Street, 29th Floor
        San Francisco, CA 94111

<u>For the Defendants</u>:

     CHRISTOPHER M. LYNCH, Esquire
        United States Department of Justice, Civil Division
        Federal Programs Branch, 1100 L Street, NW
        Washington, DC 20005

          Proceedings Recorded by Audio Recording;
           Transcript Produced By Stenographic
               Computer-Aided Transcription

P R O C E E D I N G S

(11:02 a.m.)

THE CLERK:  Case Number 25-0462-TDC, J. Doe 4, et al. versus Elon Musk, et al.  We are here today for the purpose of a case management conference.  Beginning with the plaintiffs, counsel, please identify yourselves for the record.

MR. WARREN:  Good morning, Your Honor.  Andrew Warren on behalf of the plaintiffs.

THE COURT:  Good morning.

MR. LYNCH:  Good morning, Your Honor.  Christopher Lynch on behalf of defendants.

THE COURT:  Good morning.  Anyone else on?

MS. MARZIANI:  Yes, Your Honor.  Mimi Marziani on behalf of the plaintiff.

MS. RUBIN:  Good morning, Your Honor.  Nicole Rubin on behalf of the plaintiff.

THE COURT:  Good morning.  Sounds like that's it. We're here for a case management conference, and, frankly, I have some time to resolve some of these discovery issues which have cropped up.  I apologize for the delay in getting to all of this.  But I think we can talk about most, if not all, of what's on the table right now.

I want to start by just confirming we have the motion for alternative service which is unopposed, and obviously we have

as to Mr. Musk, there's effectively a stay on any deposition of Mr. Musk -- unless or until there's a showing that it becomes absolutely necessary.

So Mr. Farritor is not in that category, as I understand it. Is there any objection, Mr. Lynch, to granting the motion with the approach being that Mr. Farritor can be served under these terms but that I would suggest we hold off on any service of Mr. Musk until it's clear that there actually could be a deposition but that we wouldn't have to refile or have another motion for alternative service later? Is that agreeable to the Government?

MR. LYNCH: That's fine, Your Honor.

THE COURT: Okay. Any problem with that approach, Mr. Warren?

MR. WARREN: No, Your Honor. I think as the Court suggested, I would request that the Court grant the motion with regard to Mr. Musk as well, and plaintiffs will not attempt to serve him directly or through alternate means until we have the Court's permission to do so pending resolution of the protective order.

THE COURT: Right. So we'll grant the motion, and I'll stay any service of Mr. Musk until further order. Does that sound okay, just as a way to close that issue out?

MR. WARREN: Yes, Your Honor.

THE COURT: Okay. So then we also have a proposal

to -- well, to extend the discovery deadline, also to increase the hours and numbers of depositions.  I do have the letter on that and as you may have gathered -- I have both letters, one from each side.  Sometimes when it comes to discovery issues, I know I and my colleagues try to do it without formal motions, and conferences is one way we do that.  So, I mean, I see the -- both the time and increase in depositions proposal.

Usually from the government side or the responding side on this, there's a little less opportunity to say what you want to say.  I see some of the reasons laid out in the letter for this proposal to start with, many of which include needing to have -- you know, pursuing other means, whatever they are, to get the information that might have come from the three witnesses who are subject of the writ of mandamus.  Presumably the plaintiff should have some opportunity to continue to pursue that angle to see if they can get what they need.  It may take more steps, one would assume, than going straight to the other witnesses but that's okay.  That's the process that's been set up.

So I think certainly some opportunity to do that, I think, is warranted.  Whether the right number of depositions or amount of time is at issue, I don't know, but that's one thing that jumps to mind.

And then the other thing I'm not sure about I fully understand, there was this Rule 30(b)(6) deposition and I know

there was some discussion about that in prior conferences, but what is the status of that piece, the 30(b)(6) deposition, Mr. Warren?

MR. WARREN: Your Honor, again, this is Andrew Warren for the plaintiffs. With regard to 30(b)(6), it's actually proceeding as we speak. Mr. Lynch and I stepped out of the deposition to have this conference with the Court. The 30(b)(6) deposition, two of them, are scheduled and occurring today and tomorrow. That's with regard to USAID and on behalf of the State Department.

THE COURT: Okay. So -- well, that's interesting. Sorry I created a conflict. I know we had to shift this for unexpected reasons. Let me ask you this. Are we really in a position today to understand what's really needed going forward, or could those depositions inform how many more witnesses we need, how much time we need, or do you think that that's already -- whatever you've asked for is still necessary regardless of what happens with these depositions?

MR. WARREN: Your Honor, this is Mr. Warren again. I do think that it is necessary to have the allowance to have additional depositions. In short, the Fourth Circuit expressly left open --

THE COURT: There's a little feedback -- Mr. Warren, there's a little feedback with you now on your -- could you maybe adjust the microphone or do something?

MR. WARREN: Yes. Mr. Lynch and I are in the same room. He's going to step out so that -- because we're on separate lines on speaker phone.

THE COURT: Oh, okay.

MR. LYNCH: Hopefully, this is better, Your Honor. I'm sorry. It's a funny situation to have a telephone conference in which both the parties are in the same room. I've never had that experience when we're not with you. Hopefully, this is better.

THE COURT: Okay, that's fine. So Mr. Warren?

MR. WARREN: Yes, Your Honor. I was saying, as the Court is aware, the Fourth Circuit expressly left open the possibility of the apex depositions, saying that we needed to pursue other avenues of discovery and exhaust the alternative means. At this point we have taken five depositions; the two 30(b)(6) depositions today will be six and seven. If we are limited to the ten depositions which, of course, is only presumptive; it's not a hard and fast limitation, and the rules expressly allow the Court to adjust that number and even say that the Court must adjust that number where it meets the needs of Rule 26. But if we do not expand the number of ten, that means we can't take any more depositions because we have to reserve the three for Mr. Marocco, Mr. Lewin, Mr. Musk.

We've asked for five additional depositions in total. We have two additional planned already of two individuals who

were -- I mean, I can give the Court their positions if Your Honor wants it.  One individual is a former Chief of Staff, one was a former Director of Employee and Labor Relations. But as the Court knows, we have not been out on some wild good chase looking to depose the mascots and custodians.

The plaintiffs have been focused on the witnesses who were involved in the decision-making, following the guidance in this Court's granting of the preliminary injunction and other relevant orders, to try to focus on the decision-makers, the people who were in the room at the time decisions were made, the people who spoke with those who were making the decisions, and we know that all roads lead us back to the three so-called apex witnesses in this case.

But the Fourth Circuit which has accepted the Government's position is that we have not done enough to exhaust discovery.  If we're not granted leave to go beyond the ten, we won't be able to do so to follow the Fourth Circuit's orders to exhaust other witnesses who may have information.  That would end up essentially converting the presumptive numerical limit on depositions into an absolute bar inconsistent with other Fourth Circuit rule.

The other points that I would just make is that exhausting other means of discovery is not merely to delay taking apex depositions but to demonstrate that those apex witnesses have unique and personal knowledge.  We can't do so without deposing

other people who were involved at the lower rungs of USAID.

This Court had meticulously documented in its denial of the protective order that the depositions we had, as well as the other written discovery, did not satisfactorily answer questions about who was in charge when certain critical decisions were made.  So we need to now go take additional depositions to completely exhaust those avenues before reseeking permission to take the three apex depositions.

THE COURT:  All right.  So, Mr. Lynch, I know you've provided the letter.  Obviously -- well, I mean, I think -- I don't know if we can quarrel over the specifics, but it certainly seems to me that if the plaintiff has to try to demonstrate there's nobody else who has this knowledge, they pretty much have to get information from anybody who possibly could have knowledge.  So at least some expansion seems warranted.

Are you opposed to any expansion or just the proposed expansion that the plaintiffs have outlined?

MR. LYNCH:  Both, Your Honor.  I think that, you know, there are a couple of issues here.  First of all, I mean, the plaintiffs have -- there is a presumptive limit on the number of depositions under Rule 30, and it's on the plaintiffs to choose the depositions they want to take carefully.  They have had multiple depositions of building security officials that they didn't necessarily need to do.

There are 30 -- they are doing two 30(b)(6) depositions in the next two days which could obviate the need for any of these depositions of the apex witnesses.  You know, they may very well like to have these other individuals' depositions, but the question is whether there's an actual need for that to get the information that is material to this litigation.  It's not just because they would like to put someone in a room and ask questions of them that they get to do that.

The issue is what are the issues that will advance this litigation.  These are primarily legal claims where very limited discovery is necessary or appropriate.  We've, you know, produced 9,100 pages of documents.

Mr. Warren referred earlier to the interrogatory responses which were not before Your Honor at the time you made a decision on our motion for protective order because plaintiffs didn't submit them to the Court.  So I don't think there's, you know, a finding that they were -- there could be a finding that they were inadequate.  Plaintiffs have had all [indiscernible] now at 27 interrogatory responses they've already had where they're effectively done with written documents discovery, except for a few responses that are due early next week because the time period hasn't passed.

The concern here is that plaintiffs have represented repeatedly they don't need much discovery -- and, frankly, they don't -- and now this case is expanding again and again

in scope.  You know, again, I think the 30(b)(6) depositions should be sufficient for plaintiffs to get anything they need and, you know, they don't have -- they certainly don't have a right to the deposition of Mr. Musk and Mr. Lewin and Mr. Marocco.  That's the point of the doctrine and the Fourth Circuit's ruling.

The last thing I'll just say is we're not trying to jam them up here with some artificial deadline.  The parties have agreed to -- if there's no expansion in the discovery period -- take a few depositions out of time.  It's just we really need to sort of wrap this up and move on.

THE COURT:  So can I just ask clarification?  Is it your position that any other witness so far or an interrogatory or the 30(b)(6) witnesses will answer all the questions that they had for the three witnesses that they cannot depose at this point?  Is there any basis to conclude that they have answered these questions or they will answer these questions as to who specifically made the decisions, particularly -- as one example, there may be others -- but as to the shutdown at the USAID headquarters, who made the decision, when and so forth?  Are they prepared to provide that, have you already provided that information or is it coming out today?

MR. LYNCH:  Those are 30(b)(6) topics.  Those should be in the scope of today.  If plaintiffs choose not to ask

those questions, that's a different story.  I can't speak to that but --

THE COURT:  Well, you know -- you know who these witnesses are.  Are they going to say anything on that or no?

MR. LYNCH:  Yes.  If asked, they will.

THE COURT:  What will they tell us?  Just to cut to the chase so I know.

MR. LYNCH:  Well, I'm not sure that I'm going to represent what the witnesses say before he's saying it in the other room right now, Your Honor.

THE COURT:  Well, I mean, they're your clients.  Again, obviously your statements are not, you know, evidence for the trial.  It's just so you can help me rule on this motion, if you can.

MR. LYNCH:  My expectation would be that they would say that GSA made the decision to close the building which is what the documentation that we submitted to the Court previously shows, and our interrogatory responses --

THE COURT:  Who directed GSA to do that?  Who directed GSA to do that?

MR. LYNCH:  Well, that's not within the scope of the 30(b)(6) depositions of the State Department or USAID.

THE COURT:  Okay, I understand.  So here's what we're going to do.  I'm going to grant the motion -- or I'm going to grant the extension that's requested to expand the number of

deposition hours to -- let's see... 15 depositions, up to 50 deposition hours, and a deadline of June 30th.

The reasons are, first off, as to the number, I agree with the Government that a party ordinarily needs to plan ahead and try to decide which depositions to take and which ones not to take.  In this instance, they did not know until March 4th of this year, well after many of those decisions had to be made and those depositions had to occur, that there would be not just a limitation on three people which, in some ways, reduces the number required but, frankly, a requirement that all possible avenues for the information those witnesses provide would be exhausted, and it's unclear exactly what needs to be done to do that.  But it certainly is an unanticipated -- or at least not something that one could predict for sure would happen -- development.  So having some expansion is certainly warranted in terms of addressing that need.

And I'd also note that given that it's unclear what's required -- and I don't think the Court of Appeals really knew because they don't know the facts on the ground, but they need a showing of there's really no one else who can provide this information.  And to do that, additional depositions are required and the requested number is within the range of what might be needed to do that.

What I don't want to see is a situation in which because

there's some artificial limit on the number of depositions, the plaintiffs are put in a position where they say, "Well, we only have one or two extra depositions, we talked to two people we thought might know something, they don't know anything.  We're going to try to make -- we're going to move to say that there's enough here to say that there's no other source, we should be able to depose these three witnesses." If I were to rule that was okay because they had a limit, another Court could say:  Well, no, they could have tried these other three people.

I don't know what that limit is so I'm not going to artificially impose one, but I will make the expansion out to 15 as requested.  The hours I would think correspond with that.

There's really been no showing to date that the information sought from those witnesses are better obtained from elsewhere.  If the 30(b)(6) witnesses' position is to basically just parrot back the documents that we already have which, frankly, are not credible that GSA decided on their own to shut the building down with no direction from anyone from the agency, that tells me that these witnesses are not going to provide information that meets one of the key issues in the case.

So for better or for worse, those depositions are not designed or unlikely to lead to that result.  So the fact that

those are existing or other depositions have occurred doesn't obviate the need for further exploration to see if the information they seek can be obtained and, if not, whether they can make a case to these other witnesses.

My hope is that the information will be obtained, and we won't need to go back to these other three witnesses because that's complicating litigation.  My hope is that this information won't be elicited and we won't have need, but we don't know that at this point.  So I think the expansion both as to time and number and hours is warranted for those reasons.

Again, some of these delays in this process, whether it's this Court making a decision on the original protective order and then obviously there had to be some delay for the Fourth Circuit to rule.  If I had moved faster on this, that could have been figured out earlier, but that delay, which is obviously in my view justified by the needs of all the various other cases, is not something that can be put at the feet of the plaintiffs.  It's not their fault that that process didn't reach a resolution soon enough so they could plan their deposition accordingly.

So for those reasons, I'm going to grant the extension that's requested and will issue an order to that effect.  As I said, we're also going to issue an order on the motion for alternative service as agreed upon.  It seems like the parties

worked out the issues on the 30(b)(6) depositions.

Is there anything else that we should be discussing today?

MR. WARREN:  Your Honor, this is Mr. Warren.  I only want to inform the Court that we may end up filing a motion to compel to address discovery deficiencies as the Fourth Circuit suggested.  We'll need to go through the meet-and-confer process with government counsel on that.  The delay in filing that so far is only because the document productions continue to come in.  Just last week we received a production that's responsive to document requests that were issued back in October.  So we continue to evaluate the documents that we've received to identify deficiencies, and we will promptly meet with government counsel to discuss those deficiencies to see if we can avoid filing a motion to compel.

The other issue I'd just like to raise for Your Honor is that we intend to challenge redactions that the Government has made based on claims of privilege.  I won't get into the specifics now because we're not ready to make the argument, but I just did want to preview for the Court that there have been disagreements over the application of privilege.  We have figured out a process, as the Court knows, to handle that during depositions, but the plaintiffs believe that documents are being improperly withheld under claims of privilege, and that is prohibiting us from actually seeing information that

we need to address the Court's questions and to make our points and claims.

THE COURT:  Okay.  Obviously I prefer you to work it all out, and hopefully both sides will.  Do you have a timeline for when that dispute might come to a head if it doesn't?

MR. WARREN:  Your Honor, I don't off the top of my head.  I don't want to speculate, but we will continue to proceed expeditiously as we have, working with government counsel to identify and resolve the issues.  The 30(b)(6) depositions being an example of how eventually we were able to come to an agreement on things without the Court's intervention.

THE COURT:  Okay.  Well, obviously one of the things that you should do before you tee up anything through the standard process is to exhaust all ways to resolve it otherwise.  That could include if you wanted to have a mediator assist with that.  So see what you can do.

I would also just note while we are here -- it never hurts to ask again; the posture is always different.  Is there any potential way the parties could negotiate a resolution to this case, and would having a mediator assist you in any way in that regard?

MR. WARREN:  Understood, Your Honor.  We'll take the Court's guidance and discuss internally and then speak with

the government counsel about it.

THE COURT:  Okay.  I mean, it does seem as if -- well, I mean, there's I guess probably a couple issues here. One is the individual plaintiff's situation which I don't know what those are, but I imagine they shift around over time and then there's the broader issues.  Sometimes there's a way, even in a case like this, where the parties can reach an understanding on how to resolve it which meets at least some interest, if not all, for both sides.  Again, unfortunately we're in this lengthy litigation that maybe the parties hadn't anticipated, I hadn't necessarily anticipated, but I think we are where we are and there's a lot of disputes on process issues like discovery.

But if there's a way to get to a point where everyone can be reasonably satisfied, sometimes that's a good result.  So I would certainly encourage both sides to continue to think that way.

Anything else to discuss today?

MR. WARREN:  Not from the plaintiffs, Your Honor.

MR. LYNCH:  No, Your Honor.  The items that Mr. Warren just brought up are news to me.  He's not raised them with us before, so we'll look forward to hearing what he actually has to say.

THE COURT:  He didn't really raise them with me either, he just said there are some issues.  I assumed he was

going to bring them up with you more specifically anyway, and I think that's probably the plan.

Thank you very much, and we'll issue an order on the decisions today.  Thank you very much.

MR. LYNCH:  Thank you.

MR. WARREN:  Thank you, Your Honor.

(Proceedings concluded at 11:25 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Patricia G. Mitchell, RMR, CRR, do hereby certify that the foregoing is a correct transcript of the audio-recorded proceedings in the above-entitled matter, audio recorded via FTR Gold on March 26, 2026, and transcribed from the audio recording to the best of my ability and that said transcript has been compared with the audio recording.

Dated this 9th day of April 2026.

*Patricia G. Mitchell*
_____
         Patricia G. Mitchell
         Official Court Reporter

< Dates >
9th day of April 2026. 18:23 .
June  12:2 .
March 26, 2026  1:16 .
March 26, 2026,  18:19 .
March 4th of  12:7 .
#15180 1:28 .
.
.
< 0 > .
02 2:2 .
.
.
< 1 > .
100 9:12 .
11 2:2, 18:7 .
1100 1:45 .
15 12:1, 13:13 .
1900 1:33 .
.
.
< 2 > .
20003 1:29 .
20005 1:46 .
25 18:7 .
25-0462-TDC 2:3 .
26 6:21 .
27 9:19 .
275 1:38 .
29th 1:38 .
2nd 1:33 .
.
.
< 3 > .
30 8:22, 9:1 .
30(b)(6 4:25, 5:2, 5:5, 5:8, 6:16,
    9:1, 10:1, 10:14, 10:24, 11:22,
    13:17, 15:1, 16:10 .
30th 12:2 .
.
.
< 4 > .
4 1:5, 2:3 .
.
.
< 5 > .
5-cv-00462-tdc 1:9 .
50 12:1 .
500 1:33 .
.

.
< 6 > .
600 1:28 .
.
.
< 7 > .
78701 1:34 .
.
.
< 8 > .
8: 1:9 .
.
.
< 9 > .
9 9:12 .
94111 1:39 .
[indiscernible] 9:19 .
.
.
< A > .
a.m. 2:2, 18:7 .
ability 18:20 .
able 7:17, 13:7, 16:11 .
above-entitled 18:18 .
absolute 7:20 .
absolutely 3:3 .
accepted 7:14 .
accordingly 14:21 .
actual 9:5 .
actually 3:8, 5:6, 15:25,
    17:23 .
additional 5:21, 6:24, 6:25, 8:6,
    12:22 .
address 15:6, 16:1 .
addressing 12:16 .
adjust 5:25, 6:19, 6:20 .
advance 9:9 .
agency 13:21 .
agree 12:3 .
agreeable 3:11 .
agreed 10:9, 14:25 .
agreement 16:12 .
ahead 12:5 .
al 1:5, 1:10, 2:4 .
allow 6:19 .
allowance 5:20 .
already 5:17, 6:25, 9:20, 10:22,
    13:18 .
alternate 3:18 .
alternative 2:25, 3:10, 6:14,

    14:25 .
amount 4:22 .
Andrew 1:26, 2:8, 5:4 .
angle 4:16 .
answer 8:4, 10:14, 10:17 .
answered 10:17 .
anticipated 17:11 .
anybody 8:14 .
anyway 18:1 .
apex 6:13, 7:13, 7:23, 7:24, 8:8,
    9:3 .
apologize 2:21 .
Appeals 12:19 .
application 15:21 .
approach 3:6, 3:13 .
appropriate 9:11 .
argument 15:19 .
around 17:5 .
artificial 10:8, 13:1 .
artificially 13:12 .
assist 16:18, 16:22 .
assume 4:17 .
assumed 17:25 .
attempt 3:18 .
Audio 1:48, 18:18, 18:20,
    18:21 .
audio-recorded 18:18 .
Austin 1:34 .
Avenue 1:28 .
avenues 6:14, 8:7, 12:11 .
avoid 15:15 .
aware 6:12 .
.
.
< B > .
back 7:12, 13:18, 14:6,
    15:11 .
bar 7:21 .
based 15:18 .
basically 13:18 .
basis 10:16 .
Battery 1:38 .
becomes 3:3 .
Beginning 2:5 .
behalf 2:9, 2:12, 2:15, 2:17,
    5:9 .
believe 15:23 .
Bernstein 1:37 .
best 18:20 .
better 6:5, 6:9, 13:16, 13:24 .

beyond 7:16 .
Branch 1:45 .
bring 18:1 .
broader 17:6 .
brought 17:21 .
building 8:24, 11:16, 13:20 .
.
.
< C > .
CA 1:39 .
Cabraser 1:37 .
carefully 8:24 .
Case 1:19, 2:3, 2:5, 2:19, 7:13,
    9:25, 13:23, 14:4, 16:22,
    17:7 .
cases 14:18 .
category 3:4 .
certain 8:5 .
certainly 4:20, 8:12, 10:3, 12:13,
    12:16, 17:16 .
CERTIFICATE 18:14 .
certify 18:16 .
challenge 15:17 .
charge 8:5 .
chase 7:5, 11:7 .
Chief 7:2 .
choose 8:23, 10:25 .
Christopher 1:43, 2:11 .
CHUANG 1:20 .
Circuit 5:21, 6:12, 7:14, 7:18,
    7:21, 10:6, 14:15, 15:6 .
Civil 1:8, 1:44 .
claims 9:10, 15:18, 15:24,
    16:2 .
clarification 10:12 .
clear 3:8 .
CLERK 2:3 .
clients 11:11 .
close 3:23, 11:16 .
colleagues 4:5 .
comes 4:4 .
coming 10:23 .
compared 18:21 .
compel 15:6, 15:15 .
completely 8:7 .
complicating 14:7 .
Computer-aided 1:50 .
concern 9:23 .
conclude 10:16 .
concluded 18:7 .

**CONFERENCE** 1:19, 2:5, 2:19, 5:7, 6:7 .
**conferences** 4:6, 5:1 .
**confirming** 2:24 .
**conflict** 5:12 .
**continue** 4:15, 15:9, 15:12, 16:8, 17:16 .
**converting** 7:19 .
**correct** 18:17 .
**correspond** 13:13 .
**counsel** 2:6, 15:8, 15:14, 16:10, 17:1 .
**couple** 8:20, 17:3 .
**course** 6:17 .
**created** 5:12 .
**credible** 13:19 .
**critical** 8:5 .
**cropped** 2:21 .
**CRR** 18:16 .
**custodians** 7:5 .
**cut** 11:6 .

.

**< D >** .
**D.** 1:20 .
**date** 13:15 .
**Dated** 18:23 .
**days** 9:2 .
**DC** 1:29, 1:46 .
**deadline** 4:1, 10:8, 12:2 .
**decide** 12:5 .
**decided** 13:19 .
**decision** 9:15, 10:21, 11:16, 14:13 .
**decision-makers** 7:9 .
**decision-making** 7:7 .
**decisions** 7:10, 7:12, 8:6, 10:18, 12:7, 18:4 .
**Defendants** 1:12, 1:41, 2:12 .
**Defenders** 1:27 .
**deficiencies** 15:6, 15:13, 15:14 .
**delay** 2:21, 7:23, 14:14, 14:16, 15:8 .
**delays** 14:12 .
**Democracy** 1:27 .
**demonstrate** 7:24, 8:13 .
**denial** 8:2 .
**Department** 1:44, 5:10, 11:22 .

**depose** 7:5, 10:16, 13:7 .
**deposing** 7:25 .
**deposition** 3:1, 3:9, 4:25, 5:2, 5:7, 5:8, 10:4, 12:1, 12:2, 14:21 .
**designed** 13:25 .
**development** 12:15 .
**different** 11:1, 16:20 .
**directed** 11:19, 11:20 .
**direction** 13:20 .
**directly** 3:18 .
**Director** 7:3 .
**disagreements** 15:21 .
**discovery** 2:20, 4:1, 4:4, 6:14, 7:16, 7:23, 8:4, 9:11, 9:21, 9:24, 10:9, 15:6, 17:13 .
**discuss** 15:14, 16:25, 17:18 .
**discussing** 15:2 .
**discussion** 5:1 .
**dispute** 16:5 .
**disputes** 17:12 .
**DISTRICT** 1:1, 1:2 .
**Division** 1:3, 1:44 .
**doctrine** 10:5 .
**document** 15:9, 15:11 .
**documentation** 11:17 .
**documented** 8:2 .
**documents** 9:12, 9:21, 13:18, 15:12, 15:23 .
**Doe** 1:5, 2:3 .
**doing** 9:1 .
**done** 7:15, 9:20, 12:13 .
**down** 13:20 .
**due** 9:21 .
**during** 15:23 .

.

.

**< E >** .
**earlier** 9:13, 14:16 .
**early** 9:22 .
**effect** 14:23 .
**effectively** 3:1, 9:20 .
**either** 17:25 .
**elicited** 14:8 .
**Elon** 1:10, 2:4 .
**elsewhere** 13:17 .
**Employee** 7:3 .
**encourage** 17:16 .
**end** 7:19, 15:5 .
**enough** 7:15, 13:6, 14:20 .

**Esquire** 1:26, 1:31, 1:36, 1:43 .
**essentially** 7:19 .
**et** 1:5, 1:10, 2:3, 2:4 .
**evaluate** 15:12 .
**eventually** 16:11 .
**everyone** 17:14 .
**evidence** 11:12 .
**exactly** 12:12 .
**example** 10:19, 16:11 .
**except** 9:21 .
**exhaust** 6:14, 7:16, 7:18, 8:7, 16:16 .
**exhausted** 12:12 .
**exhausting** 7:22 .
**existing** 14:1 .
**expand** 6:21, 11:25 .
**expanding** 9:25 .
**expansion** 8:15, 8:17, 8:18, 10:9, 12:16, 13:12, 14:9 .
**expectation** 11:15 .
**expeditiously** 16:9 .
**experience** 6:8 .
**exploration** 14:2 .
**expressly** 5:22, 6:12, 6:19 .
**extend** 4:1 .
**extension** 11:25, 14:22 .
**extra** 13:3 .

.

.

**< F >** .
**fact** 13:25 .
**facts** 12:20 .
**far** 10:13, 15:9 .
**Farritor** 3:4, 3:6 .
**fast** 6:18 .
**faster** 14:15 .
**fault** 14:19 .
**Federal** 1:45 .
**feedback** 5:23, 5:24 .
**feet** 14:18 .
**few** 9:21, 10:10 .
**figured** 14:16, 15:22 .
**filing** 15:5, 15:8, 15:15 .
**finding** 9:17, 9:18 .
**fine** 3:12, 6:10 .
**First** 8:20, 12:3 .
**five** 6:15, 6:24 .
**Floor** 1:38 .
**focus** 7:9 .

**focused** 7:6 .
**follow** 7:17 .
**following** 7:7 .
**foregoing** 18:17 .
**formal** 4:5 .
**former** 7:2, 7:3 .
**forth** 10:21 .
**forward** 5:15, 17:22 .
**Fourth** 5:21, 6:12, 7:14, 7:17, 7:21, 10:5, 14:14, 15:6 .
**Francisco** 1:39 .
**frankly** 2:19, 9:24, 12:10, 13:19 .
**FTR** 18:19 .
**fully** 4:24 .
**Fund** 1:27 .
**funny** 6:6 .

.

.

**< G >** .
**G.** 18:16, 18:29 .
**gathered** 4:3 .
**getting** 2:21 .
**give** 7:1 .
**given** 12:18 .
**Gold** 18:19 .
**Gonzalez** 1:32 .
**Government** 3:11, 4:8, 7:15, 12:4, 15:8, 15:14, 15:17, 16:9, 17:1 .
**grant** 3:16, 3:21, 11:24, 11:25, 14:22 .
**granted** 7:16 .
**granting** 3:5, 7:8 .
**Greenbelt** 1:15 .
**ground** 12:20 .
**GSA** 11:16, 11:19, 11:20, 13:19 .
**guess** 17:3 .
**guidance** 7:7, 16:25 .

.

.

**< H >** .
**H.** 1:26 .
**handle** 15:22 .
**happen** 12:15 .
**happens** 5:18 .
**hard** 6:18 .
**head** 16:5, 16:8 .
**headquarters** 10:20 .

**hearing** 17:22 .
**Heimann** 1:37 .
**help** 11:13 .
**hereby** 18:16 .
**hold** 3:7 .
**Honor** 2:8, 2:11, 2:14, 2:16, 3:12, 3:15, 3:24, 5:4, 5:19, 6:5, 6:11, 7:2, 8:19, 9:14, 11:10, 15:4, 15:16, 16:7, 16:24, 17:19, 17:20, 18:6 .
**HONORABLE** 1:20 .
**hope** 14:5, 14:7 .
**Hopefully** 6:5, 6:9, 16:4 .
**hours** 4:2, 12:1, 12:2, 13:13, 14:10 .
**hurts** 16:20 .

.

.

**< I >.**
**identify** 2:6, 15:13, 16:10 .
**imagine** 17:5 .
**impose** 13:12 .
**improperly** 15:24 .
**in.** 15:10 .
**inadequate** 9:18 .
**include** 4:11, 16:17 .
**inconsistent** 7:21 .
**increase** 4:1, 4:7 .
**individual** 7:2, 17:4 .
**individuals** 6:25, 9:4 .
**inform** 5:15, 15:5 .
**information** 4:13, 7:19, 8:14, 9:6, 10:22, 12:11, 12:22, 13:16, 13:22, 14:3, 14:5, 14:8, 15:25 .
**injunction** 7:8 .
**instance** 12:6 .
**intend** 15:17 .
**interest** 17:9 .
**interesting** 5:11 .
**internally** 16:25 .
**interrogatory** 9:13, 9:19, 10:14, 11:18 .
**intervention** 16:13 .
**involved** 7:7, 8:1 .
**issue** 3:23, 4:22, 9:9, 14:23, 14:24, 15:16, 18:3 .
**issued** 15:11 .
**issues** 2:20, 4:4, 8:20, 9:9, 13:22, 15:1, 16:10, 17:3, 17:6, 17:13,

17:25 .

.

.

**< J >.**
**J.** 1:5, 2:3 .
**jam** 10:7 .
**jumps** 4:23 .
**Justice** 1:44 .
**justified** 14:17 .

.

.

**< K >.**
**key** 13:22 .
**knowledge** 7:25, 8:13, 8:15 .
**knows** 7:4, 15:22 .

.

.

**< L >.**
**Labor** 7:3 .
**laid** 4:10 .
**last** 10:7, 15:10 .
**later** 3:10 .
**lead** 7:12, 13:25 .
**least** 8:15, 12:14, 17:8 .
**leave** 7:16 .
**left** 5:22, 6:12 .
**legal** 9:10 .
**lengthy** 17:10 .
**less** 4:9 .
**letter** 4:2, 4:10, 8:10 .
**letters** 4:3 .
**Lewin** 6:23, 10:4 .
**Lieff** 1:37 .
**limit** 7:20, 8:21, 13:1, 13:8, 13:11 .
**limitation** 6:18, 12:9 .
**limited** 6:17, 9:11 .
**lines** 6:3 .
**litigation** 9:6, 9:10, 14:7, 17:10 .
**little** 4:9, 5:23, 5:24 .
**LLP** 1:37 .
**look** 17:22 .
**looking** 7:5 .
**lot** 17:12 .
**lower** 8:1 .
**LYNCH** 1:43, 2:11, 2:12, 3:5, 3:12, 5:6, 6:1, 6:5, 8:9, 8:19, 10:24, 11:5, 11:8, 11:15, 11:21, 17:20,

18:5 .

.

.

**< M >.**
**M.** 1:36, 1:43 .
**MANAGEMENT** 1:19, 2:5, 2:19 .
**mandamus** 4:14 .
**Marocco** 6:23, 10:5 .
**Maryland** 1:2, 1:15 .
**Marziani** 1:31, 1:32, 2:14 .
**mascots** 7:5 .
**material** 9:6 .
**matter** 18:18 .
**mean** 4:6, 7:1, 8:10, 8:21, 11:11, 17:2, 17:3 .
**means** 3:18, 4:12, 6:15, 6:22, 7:23 .
**mediator** 16:18, 16:22 .
**meet** 15:13 .
**meet-and-confer** 15:7 .
**meets** 6:20, 13:22, 17:8 .
**merely** 7:23 .
**meticulously** 8:2 .
**microphone** 5:25 .
**Mimi** 1:31, 2:14 .
**mind** 4:23 .
**Mitchell** 18:16, 18:29 .
**morning** 2:8, 2:10, 2:11, 2:13, 2:16, 2:18 .
**motion** 2:24, 3:5, 3:10, 3:16, 3:21, 9:15, 11:14, 11:24, 14:24, 15:5, 15:15 .
**motions** 4:6 .
**move** 10:11, 13:5 .
**moved** 14:15 .
**MS.** 2:14, 2:16 .
**multiple** 8:24 .
**Musk** 1:10, 2:4, 3:1, 3:2, 3:8, 3:17, 3:22, 6:23, 10:4 .

.

.

**< N >.**
**necessarily** 8:25, 17:11 .
**necessary** 3:3, 5:17, 5:20, 9:11 .
**need** 4:16, 5:16, 8:6, 8:25, 9:2, 9:5, 9:24, 10:2, 10:11, 12:17, 12:20, 14:2, 14:6, 14:8, 15:7, 16:1 .

**needed** 5:14, 6:13, 12:24 .
**needing** 4:11 .
**needs** 6:21, 12:4, 12:13, 14:17 .
**negotiate** 16:21 .
**news** 17:21 .
**next** 9:2, 9:22 .
**Nicole** 1:36, 2:16 .
**NO.** 1:8 .
**nobody** 8:13 .
**note** 12:18, 16:19 .
**Number** 2:3, 4:21, 6:19, 6:20, 6:21, 8:22, 11:25, 12:3, 12:10, 12:23, 13:1, 14:10 .
**numbers** 4:2 .
**numerical** 7:20 .
**NW** 1:45 .

.

.

**< O >.**
**objection** 3:5 .
**obtained** 13:16, 14:3, 14:5 .
**obviate** 9:2, 14:2 .
**Obviously** 2:25, 8:10, 11:12, 14:14, 14:17, 16:3, 16:14 .
**occur** 12:8 .
**occurred** 14:1 .
**occurring** 5:8 .
**October** 15:12 .
**Official** 18:14, 18:30 .
**officials** 8:25 .
**Okay** 3:13, 3:23, 3:25, 4:18, 5:11, 6:4, 6:10, 11:23, 13:8, 16:3, 16:14, 17:2 .
**One** 4:3, 4:6, 4:17, 4:22, 7:2, 7:3, 10:19, 12:14, 12:21, 13:3, 13:12, 13:22, 16:14, 17:4 .
**ones** 12:6 .
**open** 5:22, 6:12 .
**opportunity** 4:9, 4:15, 4:20 .
**opposed** 8:17 .
**order** 3:20, 3:22, 8:3, 9:15, 14:13, 14:23, 14:24, 18:3 .
**orders** 7:9, 7:18 .
**ordinarily** 12:4 .
**original** 14:13 .
**others** 10:19 .
**otherwise** 16:17 .

outlined 8:18 .
own 13:19 .

.

.

**< P > .**
pages 9:12 .
parrot 13:18 .
particularly 10:19 .
parties 6:7, 10:8, 14:25, 16:21, 17:7, 17:10 .
party 12:4 .
passed 9:22 .
Patricia 18:16, 18:29 .
pending 3:19 .
Pennsylvania 1:28 .
people 7:10, 7:11, 8:1, 12:9, 13:4, 13:10 .
period 9:22, 10:10 .
permission 3:19, 8:8 .
personal 7:25 .
phone 6:3 .
piece 5:2 .
Plaintiff 1:24, 2:15, 2:17, 4:15, 8:12, 17:4 .
Plaintiffs 1:7, 2:6, 2:9, 3:17, 5:5, 7:6, 8:18, 8:21, 8:23, 9:16, 9:18, 9:23, 10:2, 10:25, 13:2, 14:19, 15:23, 17:19 .
plan 12:4, 14:20, 18:2 .
planned 6:25 .
please 2:6 .
PLLC 1:32 .
point 6:15, 10:5, 10:16, 14:9, 17:14 .
points 7:22, 16:2 .
position 5:14, 7:15, 10:13, 13:2, 13:17 .
positions 7:1 .
possibility 6:13 .
possible 12:11 .
possibly 8:14 .
posture 16:20 .
potential 16:21 .
predict 12:15 .
prefer 16:3 .
preliminary 7:8 .
prepared 10:21 .
Presumably 4:14 .
presumptive 6:18, 7:20, 8:21 .

pretty 8:14 .
preview 15:20 .
previously 11:18 .
primarily 9:10 .
prior 5:1 .
privilege 15:18, 15:21, 15:24 .
probably 17:3, 18:2 .
problem 3:13 .
proceed 16:9 .
proceeding 5:6 .
Proceedings 1:18, 1:48, 18:7, 18:18 .
process 4:18, 14:12, 14:19, 15:8, 15:22, 16:16, 17:12 .
Produced 1:49, 9:12 .
production 15:10 .
productions 15:9 .
Programs 1:45 .
prohibiting 15:25 .
promptly 15:13 .
proposal 3:25, 4:7, 4:11 .
proposed 8:17 .
protective 3:20, 8:3, 9:15, 14:13 .
provide 10:21, 12:12, 12:21, 13:22 .
provided 8:10, 10:22 .
purpose 2:5 .
pursue 4:16, 6:14 .
pursuing 4:12 .
put 9:7, 13:2, 14:18 .

.

.

**< Q > .**
quarrel 8:11 .
question 9:5 .
questions 8:5, 9:8, 10:15, 10:17, 10:18, 11:1, 16:1 .

.

.

**< R > .**
raise 15:16, 17:24 .
raised 17:21 .
range 12:23 .
reach 14:20, 17:7 .
ready 15:19 .
really 5:13, 5:14, 10:11, 12:19, 12:21, 13:15, 17:24 .
reasonably 17:15 .

reasons 4:10, 5:13, 12:3, 14:11, 14:22 .
received 15:10, 15:13 .
record 2:7 .
Recorded 1:48, 18:19 .
Recording 1:48, 18:20, 18:21 .
redactions 15:17 .
reduces 12:10 .
referred 9:13 .
refile 3:9 .
regard 3:17, 5:5, 5:9, 16:23 .
regardless 5:18 .
Relations 7:3 .
relevant 7:9 .
repeatedly 9:24 .
Reporter 18:14, 18:30 .
represent 11:9 .
represented 9:23 .
request 3:16 .
requested 11:25, 12:23, 13:13, 14:23 .
requests 15:11 .
required 12:10, 12:19, 12:23 .
requirement 12:10 .
reseeking 8:8 .
reserve 6:23 .
resolution 3:19, 14:20, 16:21 .
resolve 2:20, 16:10, 16:16, 17:8 .
responding 4:8 .
responses 9:14, 9:19, 9:21, 11:18 .
responsive 15:11 .
result 13:25, 17:15 .
RMR 18:16 .
roads 7:12 .
room 6:2, 6:7, 7:10, 9:7, 11:10 .
Rubin 1:36, 2:16 .
Rule 4:25, 6:21, 7:21, 8:22, 11:13, 13:8, 14:15 .
rules 6:19 .
ruling 10:6 .
rungs 8:1 .

.

.

**< S > .**

San 1:39 .
satisfactorily 8:4 .
satisfied 17:15 .
saying 6:11, 6:13, 11:9 .
scheduled 5:8 .
scope 10:1, 10:25, 11:21 .
SE 1:28 .
security 8:25 .
seeing 15:25 .
seek 14:3 .
seem 17:2 .
seems 8:12, 8:15, 14:25 .
separate 6:3 .
serve 3:18 .
served 3:6 .
service 2:25, 3:8, 3:10, 3:22, 14:25 .
set 4:19 .
seven 6:16 .
shift 5:12, 17:5 .
short 5:21 .
showing 3:2, 12:21, 13:15 .
shows 11:18 .
shut 13:20 .
shutdown 10:20 .
side 4:4, 4:8 .
sides 16:4, 17:9, 17:16 .
situation 6:6, 12:25, 17:4 .
six 6:16 .
so-called 7:13 .
someone 9:7 .
Sometimes 4:4, 17:6, 17:15 .
soon 14:20 .
Sorry 5:12, 6:6 .
sort 10:11 .
sought 13:16 .
sound 3:23 .
Sounds 2:18 .
source 13:7 .
SOUTHERN 1:3 .
speaker 6:3 .
specifically 10:18, 18:1 .
specifics 8:11, 15:19 .
speculate 16:8 .
spoke 7:11 .
Staff 7:2 .
standard 16:16 .
start 2:24, 4:11 .
State 5:10, 11:22 .
statements 11:12 .

3/26/2026 Case Management Conference

**States** 1:1, 1:44 .
**status** 5:2 .
**stay** 3:1, 3:22 .
**Stenographic** 1:49 .
**step** 6:2 .
**stepped** 5:6 .
**steps** 4:17 .
**Stevens** 1:32 .
**story** 11:1 .
**straight** 4:17 .
**Street** 1:33, 1:38, 1:45 .
**subject** 4:14 .
**submit** 9:16 .
**submitted** 11:17 .
**sufficient** 10:2 .
**suggest** 3:7 .
**suggested** 3:16, 15:7 .
**Suite** 1:33 .
.
.
**< T >** .
**table** 2:23 .
**talked** 13:3 .
**tee** 16:15 .
**Teleconference** 1:21 .
**telephone** 6:6 .
**tells** 13:21 .
**ten** 6:17, 6:21, 7:17 .
**terms** 3:7, 12:16 .
**THEODORE** 1:20 .
**they've** 9:19 .
**three** 4:13, 6:23, 7:13, 8:8, 10:15, 12:9, 13:7, 13:10, 14:6 .
**timeline** 16:5 .
**today** 2:4, 5:9, 5:14, 6:16, 10:23, 10:25, 15:3, 17:18, 18:4 .
**tomorrow** 5:9 .
**top** 16:7 .
**topics** 10:24 .
**total** 6:24 .
**transcribed** 18:19 .
**Transcript** 1:18, 1:49, 18:17, 18:21 .
**Transcription** 1:50 .
**trial** 11:13 .
**tried** 13:9 .
**try** 4:5, 7:9, 8:12, 12:5, 13:5 .
**trying** 10:7 .
**two** 5:8, 6:15, 6:25, 9:1, 9:2, 13:3 .

**TX** 1:34 .
.
.
**< U >** .
**unanticipated** 12:14 .
**unclear** 12:12, 12:18 .
**understand** 3:4, 4:25, 5:14, 11:23 .
**understanding** 17:8 .
**Understood** 16:24 .
**unexpected** 5:13 .
**unfortunately** 17:9 .
**unique** 7:25 .
**United** 1:1, 1:44 .
**unless** 3:2 .
**unlikely** 13:25 .
**unopposed** 2:25 .
**until** 3:2, 3:8, 3:18, 3:22, 12:6 .
**USAID** 5:9, 8:1, 10:20, 11:22 .
.
.
**< V >** .
**various** 14:17 .
**versus** 2:4 .
**Via** 1:21, 18:19 .
**view** 14:17 .
**vs** 1:8 .
.
.
**< W >** .
**W.** 1:33 .
**wanted** 16:17 .
**wants** 7:2 .
**warranted** 4:21, 8:16, 12:16, 14:10 .
**WARREN** 1:26, 2:8, 2:9, 3:14, 3:15, 3:24, 5:3, 5:4, 5:5, 5:19, 5:23, 6:1, 6:10, 6:11, 9:13, 15:4, 16:7, 16:24, 17:19, 17:21, 18:6 .
**Washington** 1:29, 1:46 .
**ways** 12:10, 16:16 .
**week** 9:22, 15:10 .
**whatever** 4:12, 5:17 .
**Whether** 4:21, 9:5, 14:3, 14:12 .
**wild** 7:4 .
**will** 3:17, 6:16, 9:9, 10:14, 10:17, 11:5, 11:6, 13:12, 14:5, 14:23,

15:13, 16:4, 16:8 .
**withheld** 15:24 .
**within** 11:21, 12:23 .
**without** 4:5, 7:25, 16:12 .
**witness** 10:13 .
**witnesses** 4:14, 4:18, 5:16, 7:6, 7:13, 7:18, 7:24, 9:3, 10:14, 10:15, 11:4, 11:9, 12:11, 13:16, 13:17, 13:21, 14:4, 14:6 .
**witnesses.** 13:7 .
**work** 16:3 .
**worked** 15:1 .
**working** 16:9 .
**worse** 13:24 .
**wrap** 10:11 .
**writ** 4:14 .
**written** 8:4, 9:20 .
.
.
**< Y >** .
**year** 12:7 .
**yourselves** 2:6 .