IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J. DOE 4 *et al.*, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiffs*,<br><br>v.<br><br>ELON MUSK *et al.*,<br><br>*Defendants*. | Case No. 8:25-cv-00462-TDC |

**PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs respectfully move to compel Defendants the United States Department of State, Marco Rubio, and the United States Agency for International Development to provide complete responses to Plaintiffs' interrogatories and to produce in full two emails that Defendants have partially redacted based on improper claims of privilege. In accordance with Federal Rule of Civil Procedure 37(a) and this Court's May 22, 2026 Order (ECF No. 223) Plaintiffs have conducted ongoing conferrals with Defendants, via phone calls and email, which resulted in substantially narrowing the issues that now require court action to resolve. In support of their Motion, Plaintiffs show as follows:

**INTRODUCTION**

The central factual questions underlying Plaintiffs' Appointments Clause claim are who made the decision to dismantle USAID, when, and under whose authority. Plaintiffs have sought these answers from Defendants through depositions, written discovery, and document productions.

1

Yet, although the answers should be readily available to the government, Defendants have avoided or refused to answer them for over a year. Plaintiffs therefore must seek relief from this Court.

As the Court acknowledged in denying Defendants' motion for a protective order, Defendants "have not responded adequately or at all" to interrogatories about "certain key decisions, including the decision to shut down USAID headquarters and to shut down the USAID website." *Does v. Musk*, No. 8:25-cv-00462-TDC, 2026 WL 295364, at *3 (D. Md. Feb. 4, 2026). Although Defendants have "effectively acknowledged that these orders were given orally, with no documentary record, such that the only evidence on these questions would be the oral testimony of the officials present when the decisions were made," *id.* at *4, the Fourth Circuit directed Plaintiffs to exhaust all avenues of written discovery before seeking testimony from key officials, *In re Musk*, 169 F.4th 445, 449 (4th Cir. 2026). The Fourth Circuit expressly stated that where "discovery responses are inadequate," as they are here, "motions to compel appropriate responses and sanctions for noncompliance" are the appropriate vehicles to remedy the inadequacies. *Id.*

Defendants' discovery responses are inadequate and insufficient to answer the questions at the heart of this litigation. Specifically, Plaintiffs seek to compel responses to five interrogatories and full production of two redacted documents. The interrogatories at issue, directed to the U.S. Department of State and Marco Rubio (collectively, the "State Department" or "State") ask who *decided* to take five specific actions to dismantle USAID, when each decision was made, and how it was memorialized. Though the State Department carefully named officials who helped *effectuate* the decisions, it did not answer who *made* the underlying decisions. The State Department also failed to address the "when" and "how," disregarding those aspects of the interrogatories entirely. If the State Department does not know the answers, it must state so under oath so that Plaintiffs can either pursue the depositions they have been temporarily blocked from taking to obtain these

answers or so that the ultimate factfinder can draw reasonable inferences from Defendants' stated lack of knowledge. Regarding the documents, Defendants produced two heavily redacted emails based on improper deliberative process and presidential communications privilege claims. The redactions conceal the very information that makes the documents relevant and responsive: communications about *who* was directing USAID's dismantling. The privilege claims fail both procedurally and substantively, but even if they were otherwise valid, Plaintiffs' need for the information overcomes Defendants' interest in confidentiality.

## BACKGROUND

### I.    The State Department's responses to Interrogatories 1 through 5.

Plaintiffs served the State Defendants with 19 interrogatories on October 7, 2025. Ex. 1 (Pls.' Interrogs. to State). Interrogatories 1 through 5 ask for the same three pieces of information—*who* made the decision, *when* the decision was made, and *how* the decision was memorialized and communicated to those who effectuated it—regarding five particular actions taken to dismantle USAID: (1) shutting down the USAID website on or about February 1, 2025; (2) placing approximately 57 USAID employees on administrative leave on or about February 1, 2025; (3) the takeover of USAID headquarters by U.S. Customs and Border Protection, including the removal of USAID's seal and name from the building in late January and early February; (4) sending DOGE personnel to USAID headquarters between January 27 and February 1, 2025 to seek access to USAID data security systems and physical access to highly restricted areas; and (5) granting DOGE personnel access to USAID data systems between January 20 and March 31, 2025. Yet, in their November 12, 2025 responses, the State Department identified only individuals who implemented some part of each action without identifying who *made the decision*, and failed

3

to provide information regarding when the decision was made and how it was memorialized and communicated. Ex. 2 (Def. State's Resps.).

For example, for Interrogatory 1, the State Department responded that Gavin Kliger "effectuated the changes to the USAID website on or about February 1, 2025, in consultation with USAID leadership including Kenneth Jackson." Ex. 2 at 5-6 (Def. State's Resps.). The response does not state that Kliger or Jackson made the decision and does not identify who did, nor does it state when the *decision* was made (as opposed to when the action was taken) or how it was memorialized and communicated to Kliger or anyone else.

Similarly, in response to Interrogatory 2, Defendants stated that Kenneth Jackson "authorized the transmittal of administrative leave notices to 57 USAID employees in the Bureau of Legislative and Public Affairs on January 31, 2025." Ex. 2 at 6 (Def. State's Resps.). But, again, this does not identify who made the decision, just who authorized the transmittal of a notification of the decision. As to the timing and memorialization, Defendants merely pointed to the administrative leave notice itself (ECF No. 70-2), which provides no information about when the underlying termination decision was made or how it was communicated for purposes of then sending out the notices.

For Interrogatory 3, the State Department responded only that a GSA official "notified USAID that GSA was terminating USAID's occupancies" and "[t]hat same day, GSA and the U.S. Customs and Border Protection entered into a temporary license to occupy government space." Ex. 2 at 6-7 (Def. State's Resps.). It pointed to the notice letter itself (ECF No. 69-3) and the new

4

license to CBP (ECF No. 69-4), but failed to answer who made the underlying decision, when it was made, or how it was memorialized.

For Interrogatory 4, the State Department responded that then-Acting Administrator Jason Gray "invite[d] the listed individuals to access USAID physical spaces and unclassified data systems . . . consistent with the provisions of [the DOGE] Executive Order 14,158." Ex. 2 at 7-8 (Def. State's Resps.). It did not answer the timing or memorialization portion of the interrogatory.

For Interrogatory 5, the State Department identified who granted DOGE personnel access to USAID data systems but failed to answer the timing or memorialization portions of the interrogatory. *Id.* at 9.

## II.    Defendants' redactions of DOE4vUSDS_009108 and DOE4vUSDS_009109.

On March 20, 2026, as part of the eighth round in a series of rolling productions which continues to date, Defendants produced two redacted emails. At that time, Defendants did not include either document in their privilege log, nor did they update the privilege log to include them until May 1, 2026. Neither the production nor the privilege log specifies which Defendant agency (e.g., USAID or the State Department) produced the documents or is asserting the privilege.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

### III.    This Motion to Compel.

On May 18, 2026, Plaintiffs filed a request for a case management conference to address "(1) Defendants' deficient written discovery responses and (2) Defendants' improper assertions of privilege during depositions and in document productions." ECF No. 221. On May 22, 2026, the Court ordered the parties to "meet and confer to narrow the issues discussed in" the Request for Conference and granted Plaintiffs "leave to file a Motion to Compel if necessary." ECF No. 223 at 2. Since then, the parties have conferred by telephone and email on multiple occasions and have narrowed the remaining issues to the interrogatory responses and privilege redactions described above.[1] Plaintiffs note that though these are the issues that are currently ripe for court resolution,

---

[1] Although the default Local Rule 104.8 ordinarily requires a motion to compel within thirty days after receipt of production, this Court's Order (ECF No. 223) and the parties' continued conferral to narrow the issues in accordance with that Order make this motion timely.

there is one interrogatory and seven requests for production outstanding about which the parties continue to confer, as well as assertions of privilege over other redacted documents that may present a further need for court resolution.

## LEGAL STANDARD

Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Rule 33 requires a party to answer each interrogatory "fully." Fed. R. Civ. P. 33(b)(3). If a party "lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information." *Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238 (W.D.N.C. 2010) (citation omitted); *accord Ogunsula v. Warrenfeltz*, No. CV ELH-20-2568, 2024 WL 298984, at *17 (D. Md. Jan. 25, 2024) ("To the extent that plaintiff claims that certain information is unknown or unavailable to her, she must describe, in detail, the efforts she made to obtain that information.").

A party may move to compel when the responding party "fails to answer an interrogatory" or "fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). And "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

## ARGUMENT

**I.    The State Department must fully answer Interrogatories 1 through 5, including, if applicable, by stating under oath that it is unable to answer.**

The State Department's answers to Interrogatories 1 through 5 are evasive and incomplete. *See* Ex. 2 at 5-9. Thus, under Rule 37, Defendants' purported responses "must be treated as a

failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). After the parties engaged in significant conferral to narrow the disputes presented herein, as ordered by this Court (ECF No. 223 at 2), the adequacy of these five responses is ripe for resolution.

The core of Plaintiffs' Appointments Clause claim is that an unlawfully appointed officer or officers directed actions by other federal employees. *See New Mexico v. Musk*, 784 F. Supp. 3d 174, 204 (D.D.C. 2025) (rejecting the Government's argument that the Appointments Clause does not extend to circumstances in which "an individual who has not been duly appointed may direct the actions of appointed officials"). To determine liability in this case, the factfinder will have to determine who directed each significant act, meaning who made the decision that the action be taken, not who implemented decisions made by others.

The State Department's purported responses to each of the five interrogatories follow a consistent pattern: substitute the identity of the person who *implemented* the action for the person who *decided* it. For the website shutdown, the State Department said only that Gavin Kliger "effectuated the changes"—clearly describing implementation rather than decision-making. Ex. 2 at 5 (Def. State's Resps.). For the administrative leave notices, it said Kenneth Jackson "authorized the transmittal" of the notices. *Id.* at 6. Authorizing the transmittal of notices is the act of executing a decision, not making it. For the headquarters takeover, State described a notification and action but failed to address the underlying decision. *Id.* at 7. It also ignored the removal of USAID's seal on January 31, an action the interrogatory expressly identified. *Id.* Finally, for the arrival of DOGE personnel, State named Jason Gray as the official who approved or "invited" them to access the

systems upon their arrival but failed to identify who decided to send them in the first place or the official who directed they be granted access.

The Court has already recognized the problem with Defendants' answers. At the May 21, 2026 case management conference, Plaintiffs' counsel highlighted that "[t]he answer we're given is Mr. Kliger effectuated the changes in consultation with Mr. Jackson," to which the Court responded, "[w]ell, that sounds like an answer that didn't answer the question. That's what it sounds like. Again, assuming that's what it says. I mean, the issue is not—who made the decision not [wh]o effectuated it." Ex. 6 (Tr. of May 21, 2026 Conference) at 44:12-24. Previously, the Court found that Defendants "have not responded adequately or at all" to interrogatories about these very decisions. *Does*, 2026 WL 295364, at *3–4.

Defendants also failed to adequately answer the timing, memorialization, and communication portions of the interrogatories. For Interrogatories 1 through 3, they provided only the dates on which the effectuating actions were taken and referred only to documents evidencing that the actions were in fact taken. They did not answer when the underlying decisions were made to take the specified actions or how those decisions were memorialized or communicated to the individuals who then implemented them. Defendants have represented to Plaintiffs that many, if not all, of these decisions were communicated only verbally, so they do not know when the decisions were made or how they were memorialized and communicated. If the State Department truly does not know who made decisions, when those decisions were made, or how they were memorialized and communicated (or if they were only communicated verbally), then the State Department must "so state under oath." *Nat'l Fire Ins. Co. of Hartford*, 264 F.R.D. at 238.

The information omitted from Defendants' responses is not a mere technicality. The identity of the decision-maker is *the material information at the heart* of the Appointments Clause

claim. Plaintiffs allege that Musk and DOGE, who were not properly appointed officers, exercised the significant authority that dismantled USAID. *See* Third Am. Compl. ¶¶ 128–132, ECF No. 207. A response that names the official who pressed the button, while concealing the official who gave the order, leaves the central question unanswered. *Cf. New Mexico v. Musk*, No. 25-cv-429 (TSC), 2026 WL 799635, at *12 (D.D.C. Mar. 23, 2026) (holding Appointments Clause violation was adequately alleged where Plaintiffs alleged that "the head of DOGE is ordering agency officials to carry out his plans"). As the Court acknowledged, "determining the identity of the actual decisionmakers for any exercises of significant authority" is necessary to assess the Appointments Clause claim. ECF No. 150 at 43.

The Court should compel the State Department to state, for each of Interrogatories 1 through 5, who made the actual decision to take the identified action, when the decision was made, and how it was memorialized and communicated to those responsible for implementation. To the extent that the State Department does not know an answer, the Court should require that they admit as much under oath and "set forth in detail the efforts made to obtain the information." *Nat'l Fire Ins. Co. of Hartford*, 264 F.R.D. at 238.

## II.   Defendants' deliberative process redactions are not supportable.

Defendants redacted portions of two emails based on claims of deliberative process privilege, but their claims fail for three independent reasons. First, Defendants did not properly invoke the privilege. Second, the redacted content is not subject to the privilege. Third, even if the privilege was properly asserted and applicable, Plaintiffs' need overcomes it.

The deliberative process privilege is a "qualified" privilege. *CASA, Inc. v. Noem*, No. CV 25-1484-TDC, 2025 WL 3514378, at *10 (D. Md. Dec. 8, 2025). It has both "procedural" and

"substantive" requirements. Russell L. Weaver & James T.R. Jones, *The Deliberative Process Privilege*, 54 Mo. L. Rev. 279, 290–312 (1989).

First, to invoke the privilege, "the party resisting discovery must meet several procedural requirements." *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 134 (Fed. Cl. 2006) (quoting *Reino De Espana v. Am. Bureau of Shipping*, No. 03CIV3573, 2005 WL 1813017, at *12 (S.D.N.Y. Aug. 1, 2005)). In particular, the government must: "a) Invoke [the privilege] through an agency head or her subordinate who is personally knowledgeable about the information sought to be protected; b) Identify the specific information that is protected by the privilege; c) Give reasons for maintaining the confidentiality of the information." *Estate of LeRoux v. Montgomery Cnty.*, No. 8:22-CV-00856-AAQ, 2024 WL 1703939, at *5 (D. Md. Apr. 19, 2024) (quoting *Holt v. City of Harrisburg*, No. 1:19-CV-01986, 2021 WL 5233317, at *3 (M.D. Pa. Nov. 10, 2021)); *see also Hugler v. Bat Masonry Co., Inc.*, No. 6:15-CV-28, 2017 WL 1207847, at *3 (W.D. Va. Mar. 31, 2017); *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000) ("(1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege.").

To meet the privilege's substantive requirements, the government must "[d]emonstrate that the privileged information is both pre-decisional and deliberative." *Estate of LeRoux*, 2024 WL 1703939, at *5; *accord City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253–54 (4th Cir. 1993). Pre-decisional material is "prepared in order to assist an agency decisionmaker in arriving at his decision." *City of Virginia Beach*, 995 F.2d at 1253 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). Deliberative material "reflects the

11

give-and-take of the consultative process" and reveals "the manner in which the agency evaluates possible alternative policies or outcomes." *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Even if a document is considered "pre-decisional," the deliberative process privilege does not protect all of the underlying information in the document. It does not protect "factual findings and conclusions, as opposed to opinions and recommendations." *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 133–34 (2006). And it does not protect material that merely states or explains a decision already made. *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

### A. Defendants did not properly invoke the privilege.

Defendants' privilege claim fails first as a procedural matter. The deliberative process privilege must be asserted by the "head" of the withholding agency, or a specifically delegated subordinate, "after personal consideration," and Defendants are required to "state with particularity the information subject to the privilege [and] aver precise and certain reasons for preserving the confidentiality of the requested documents." *Hugler*, 2017 WL 1207847, at *3; *see also Landry*, 204 F.3d at 1135; *United States v. Berkeley Heartlab, Inc.*, No. 9:11-CV-1593-RMG, 2017 WL 2633500, at *3 (D.S.C. June 19, 2017). Neither of these requirements is satisfied.

"The requirement that the head of an agency be the deciding authority [to assert the privilege] rests on the notion that the decisionmaker is in the best position to know what documents were prepared to assist a decision, what documents express deliberative opinions, and what documents must be protected in order to maintain internal candor." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009). Accordingly, although "[c]ourts frequently allow delegation of authority to invoke the deliberative process" to "supervisory personnel . . . of sufficient rank," *Berkeley Heartlab, Inc.*, 2017 WL 2633500, at *3

(quoting *Landry*, 204 F.3d at 1136), "[m]any courts have found that the deliberative process privilege may not be asserted by government counsel" alone. *Pac. Gas & Elec. Co.*, 70 Fed. Cl. at 135; *see also, e.g.*, *MTBE Products Liab. Litig.*, 643 F. Supp. 2d at 443 ("The assertion of the privilege by an attorney is therefore improper.").

Here, the only assertion of deliberative process privilege is from non-agency DOJ counsel in the form of a redaction and summary privilege log entry. Even if it were possible for an agency head to delegate authority to non-agency counsel in litigation, there is no evidence that delegation occurred or that any agency officials personally considered the application of the privilege. Rather, the government counsel does not even identify *which agency* made the production or *which agency* is claiming the privilege. *See supra,* p. 5; Ex. 4 (Defs.' Priv. Log).

Further, the privilege log entries fail to "state with particularity the information subject to the privilege" or "aver precise and certain reasons for preserving the confidentiality of the requested documents." *Hugler*, 2017 WL 1207847, at \*3. The entry for the January 31, 2025 email describes the redacted line merely as a summary of a conversation about "the proposed timing of finalizing decisions, policies, and or announcements." Ex. 4 (Defs.' Priv. Log). That Defendants cannot even identify whether this single line of redacted text deals with decisions, policies, or announcements themselves (as opposed to timing) demonstrates that the entry lacks the required precision. A privilege log that hedges across three distinct categories of subject matter does not identify the deliberation at issue or the role the redacted text played in it. Courts overrule privilege claims that rest on such generic descriptions. *See Damus v. Nielsen*, 328 F.R.D. 1, 6 (D.D.C. 2018)

(rejecting privilege claims where the agency had "not invoked either privilege with sufficient specificity").

The procedural deficiency in Defendants' privilege assertions is sufficient ground to overrule them.

### B.    The redacted content is not pre-decisional and deliberative.

The deliberative process privilege protects the "give-and-take" of agency policy deliberation, but it does not protect facts or statements that report or implement a decision already made. *City of Virginia Beach*, 995 F.2d at 1253; *Pac. Gas & Elec.*, 70 Fed. Cl. at 133–34; *In re Sealed Case*, 121 F.3d at 737. A "factual account of a decision already rendered" is "a recitation that is not privileged." *Damus*, 328 F.R.D. at 6 (citing *In re Sealed Case*, 121 F.3d at 737). Defendants' privilege log entries for the two documents do not provide any facts to show that the information was "pre-decisional" and "deliberative," *Estate of LeRoux*, 2024 WL 1703939, at *5, and Defendants' conclusory assertion that the information is deliberative is not adequate. The visible text of both emails indicates that, at most, the redactions conceal facts about decisions that had already been made, meaning the communication was neither pre-decisional nor deliberative.

14



At minimum, these documents should be produced to the Court to review *in camera* to determine whether the privilege applies because the redactions and log descriptions are insufficient to determine that the information is truly pre-decisional and deliberative. *See, e.g.*, *Campbell v. Mbah*, 350 F.R.D. 600 (D. Md. 2025) (ordering in camera review to resolve dispute over deliberative process privilege); *Am. Fed'n of Gov't Emps. v. Trump*, 782 F. Supp. 3d 872, 876 (N.D. Cal. 2025) (same).

### C.    Plaintiffs' need for the redacted information overcomes the privilege.

Even if the Court finds that Defendants properly invoked the deliberative process privilege, and even if the Court finds the privilege to be applicable to the redacted information, that information still must be produced where, as here, the requesting party's need outweighs the government's interest in non-disclosure. The deliberative process privilege "is a qualified privilege, and a 'litigant may obtain deliberative materials if his or her need for the materials and

the need for accurate fact-finding override the government's interest in non-disclosure.'" *CASA, Inc. v. Noem*, No. CV 25-1484-TDC, 2025 WL 3514378, at *10 (D. Md. Dec. 8, 2025) (quoting *Fed. Trade Comm'n v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)). In balancing the parties' interests, courts often weigh four factors: (1) "the relevance of the evidence to the lawsuit," (2) "the availability of alternative evidence on the same matters," (3) "the government's role (if any) in the litigation," and (4) "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Cipollone v. Liggett Group Inc.*, 812 F.2d 1400 (4th Cir. 1987) (unpublished); *accord Stone v. Trump*, 402 F. Supp. 3d 153, 157 (D. Md. 2019). And the privilege "disappears altogether when there is any reason to believe government misconduct occurred." *In re Sealed Case*, 121 F.3d at 746. Here, all four factors weigh in favor of disclosure.

*First*, the redacted material is highly relevant. ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ They concern the Executive Branch's unprecedented dismantling of an agency that Congress created and the possibility that the dismantling was directed by unconstitutionally installed officers. *See Does v. Musk*, No. 8:25-cv-00462-TDC, 2025 WL 840574, at *14 (D. Md. Mar. 18, 2025) (finding at the preliminary injunction stage that "the only individuals known to be associated with the decisions to initiate a shutdown of USAID by permanently closing USAID headquarters and taking down its website are Musk and DOGE Team Members").

*Second*, as Defendants' inability to provide written answers about these decisions demonstrates, this information is not available from other sources. The Court has already found Defendants have not sufficiently answered key questions in the case. 2026 WL 295364, at *3–4.

Depositions of the lower-level individuals involved in implementing these actions likewise failed to reveal who made them. For example, when asked who directed the removal of the USAID website and when, Gavin Kliger testified repeatedly that he "d[id] not recall." Kliger Dep. 118:12–120:19, Jan. 6, 2026, ECF No. 229, Ex. 14, at 599. Even USAID and the State Department's own 30(b)(6) designees could not identify the decision-makers. The designee testified, for instance, that the decision to remove the seal "was coming from some portion of the leadership team," though he did not know "who specifically gave the order," other than that "it would have been at least Ken Jackson's level." Korzeniewski (USAID/State) Dep. 150:5–11, Mar. 26–27, 2026, ECF No. 229, Ex. 10, at 108. He was additionally unable to provide any information about whether Davis was involved in, or even discussed with DOGE team members, their ability to obtain physical access to the building. *Id.* at 156:23–157:3.

Moreover, the Fourth Circuit has directed that Plaintiffs may not depose the senior officials who could answer these questions (Musk, Marocco, and Lewin) until they exhaust written discovery, *In re Musk*, No. 26-1160, slip op. at 5–6, and Defendants now also seek to block depositions of Davis and Jackson, a dispute currently pending before the Court, *see* Pls.' Mot. to Take Dep. of Kenneth Jackson & Steve Davis (ECF No. 226); Defs.' Opp'n (ECF No. 230); Pls.' Corrected Reply (ECF No. 235). These two contemporaneous emails are among the few written sources of this information, which makes them more valuable, not less.

*Third*, the role of the government in this litigation cuts in favor of disclosure because "the government—the Executive—is a party to and the focus of the litigation." *See Am. Fed'n of Gov't Emps.*, 791 F. Supp. 3d at 1073 (quoting *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019)). The concern that animates the privilege, internal deliberation about future policy, is at its weakest where the decisionmaking process is "*the* issue" to be decided. *In re Subpoena Duces Tecum*

17

*Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), *revised on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998). Here, the documents evidencing the decisionmaking process are "by no means collateral to the litigation; indeed, the decisionmaking process is not swept up into the case, it is the case." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1124 (N.D. Cal. 2003) (internal quotation marks and citation omitted). Further, the privilege is unavailable altogether "where the cause of action is directed at the agency's subjective motivation." *Landry*, 204 F.3d at 1136 (quoting *In re Subpoena Duces Tecum Served on Off. of Comptroller of the Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998)). The privilege "disappears altogether" where there is reason to believe government misconduct occurred. *In re Sealed Case*, 121 F.3d at 746. Plaintiffs allege a constitutional violation in the dismantling of USAID, an allegation that has already survived a motion to dismiss and supported a preliminary injunction. Order on Mot. to Dismiss (ECF No. 151), Order on Prelim. Inj. (ECF No. 74). That is reason enough to override the privilege, to the extent applicable.

*Finally*, Defendants have made no showing that disclosure would hinder frank and independent discussion of contemplated policies. Of course, Plaintiffs' ability to fully evaluate this factor is hindered by Defendants' refusal to produce an agency head declaration actually explaining the basis for the withholdings. Nevertheless, Defendants' own log describes the redactions as concerning the timing and implementation of planned actions, not candid personal recommendations. And they have offered no evidence of any chilling effect. *Cf. Am. Fed'n of Gov't Employees*, 155 F.4th at 1092–93 (fourth factor favored disclosure where the government "offer[ed] no evidentiary support" for a claimed chilling effect). Disclosure of who directed an allegedly unconstitutional reorganization will not chill the routine, good-faith policy deliberations

18

the privilege exists to protect. Each factor therefore favors disclosure, and the Court should order production of the unredacted documents.

### III.    The presidential communications privilege does not shield the redacted email.

Defendants' presidential communications privilege claim over the February 1, 2025 email fails as well. The President can invoke the presidential communications privilege "when asked to produce documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential." *In re Sealed Case*, 121 F.3d at 744. The "privilege is limited to communications in performance of a President's responsibilities of his office, and made in the process of shaping policies and making decisions." *Nixon v. Adm'r of Gen. Services*, 433 U.S. 425, 449 (1977) (cleaned up) (quoting *United States v. Nixon*, 418 U.S. 683, 711 (1974)).

The privilege does "not extend to staff outside the White House in executive branch agencies," and applies only to communications "authored or solicited and received" by those members of an immediate White House adviser's staff who have "broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *In re Sealed Case*, 121 F.3d at 752. There is, "in effect, a hierarchy of presidential advisers such that the demands of the privilege become more attenuated the further away the advisers are from the President operationally." *Judicial Watch, Inc. v. Dep't of Justice,* 365 F.3d 1108, 1115 (D.C. Cir. 2004). The privilege "only applies to communications that these advisers and their staff author or solicit and receive in the course of performing their function of advising the President on official government matters," and "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3d at 752.

Additionally, the White House "waive[s] its claims of privilege in regard to the specific documents that it voluntarily revealed to third parties outside the White House." *In re Sealed Case*, 121 F.3d at 741–42 (D.C. Cir. 1997).

Like the deliberative process privilege, the presidential communications privilege "is qualified, not absolute, and can be overcome by an adequate showing of need." *In re Sealed Case*, 121 F.3d at 745. However, unlike the deliberative process privilege, "a party seeking to overcome the presidential privilege seemingly must always provide a focused demonstration of need, even when there are allegations of misconduct by high-level officials." *Id.* at 746.

Here, the presidential communications privilege claim fails because: (1) the claim is not properly invoked; (2) any claim as to the underlying content was waived in the document itself wherein the White House official communicates the information to a party outside of the White House; (3) the communication is not within the scope of the privilege; and (4) even if the privilege applied, Plaintiffs' need overcomes it.

*First*, the privilege was never invoked by the party holding the privilege. The presidential communications privilege belongs to the President, who may invoke it as to materials "that the President believes should remain confidential." *In re Sealed Case*, 121 F.3d at 744. Here, there is no indication that the President, or any White House official authorized to act for him, has asserted the privilege over this email or has even considered it. The only assertion comes from non-agency DOJ counsel through a one-line privilege log entry generically on behalf of "Defendants." *See* Ex. 4 (Defs.' Priv. Log). Even the common law executive privileges require a formal claim by a responsible official based on actual personal consideration. *See Landry*, 204 F.3d at 1135; *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). And courts have been "more insistent on assertion at the highest level" for more sensitive privileges. *Landry*, 204 F.3d at 1136 (discussing

the state secrets privilege). A privilege rooted in the President's Article II functions demands more formality than a common law privilege, not less. An unsigned log entry supplies none.

*Second*, the face of the email defeats the claim. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

     ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

21

███████████████████████████████████████████████████

███████████████████████████████████

*Finally*, even if the presidential communications privilege applied, it is qualified and yields to need. *Nixon*, 418 U.S. at 713. For the reasons given in Part II.C, Plaintiffs' need is substantial, and the information is not available elsewhere, thereby overcoming any privilege. Additionally, the limited scope of the requested information favors disclosure. Plaintiffs seek one identified redaction in one short email, not sweeping discovery into presidential deliberations. *Cf. Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 387 (2004) (the specificity of a request "serves as an important safeguard against unnecessary intrusion into the operation of the Office of the President"). Therefore, the privilege does not shield the information in the email.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant this motion and enter an order requiring the following relief.

1.   The State Department and Secretary Rubio shall serve complete answers to Interrogatories 1 through 5 that identify, for each, the individual who made the decision, when the decision was made, and how it was memorialized and communicated to those responsible for implementation. To the extent the State Department and Secretary Rubio cannot answer

every aspect of an interrogatory, it shall state under oath and set forth in detail the efforts made to obtain the information.

2. Defendants shall produce DOE4vUSDS_009108 and DOE4vUSDS_009109 without the deliberative process and presidential communications redactions.

Dated: July 22, 2026

Respectfully submitted,

Norman L. Eisen, [9112170186]
Andrew H. Warren*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Andrew@democracydefenders.org

Mimi Marziani*
Rebecca (Beth) Stevens*
Joaquin Gonzalez*
**MARZIANI, STEVENS &**
**GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604
mmarziani@msgpllc.com
bstevens@msgpllc.com
jgonzalez@msgpllc.com

Richard M. Heimann*
Nicole M. Rubin [30711]
Lucas E. Issacharoff*
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
rheimann@lchb.com
nrubin@lchb.com
lissacharoff@lchb.com

23

*Attorneys for Plaintiffs*
*Admitted pro hac vice


CERTIFICATE OF CONFERENCE


   I hereby certify that my co-counsel and I conferred with Defendants' counsel by telephone and email in good faith in an effort to obtain the requested information without court action but were unable to resolve the matter.


           /s/ Andrew Warren
           Andrew H. Warren
           **DEMOCRACY DEFENDERS FUND**
           600 Pennsylvania Avenue SE, Suite 15180
           Washington, DC 20003
           Tel: (202) 594-9958
           Andrew@democracydefenders.org