**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| J. DOE 4, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>ELON MUSK, *in his official capacity*, et *al.*,<br><br>    *Defendants*. | Case No. 8:25-cv-00462-TDC |

**<u>DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS UNITED STATES DEPARTMENT OF STATE AND MARCO RUBIO</u>**

Defendants United States Department of State and Marco Rubio (hereinafter, "State")

hereby respond to Plaintiffs' First Set of Interrogatories to Defendants United States Department

of State and Marco Rubio as follows:

**Objections to Instructions**

1.      Defendants object to all Plaintiffs' instructions, and Instruction No. 1 in particular,

to the extent they purport to impose obligations beyond those imposed by the Federal Rules of

Civil Procedure.

2.      Defendants object to Instruction No. 7 to the extent that it is both inconsistent

with the dates set forth in specific interrogatories and to the extent the phrase "complete

responses" is vague and ambiguous.  Unless otherwise indicated, Defendants will specify the

dates relevant to each response to a particular interrogatory in any response to that interrogatory.

1

**Objections to Definitions**

1.      Defendants object to Definition No. 1 as vague and ambiguous, as it refers to "operations" and "functions" without qualification, as well as referencing "any . . . action mandated by federal statute, including, but not limited to" certain statutes or categories of statutes, without purporting to identify each and every statute intended or statutory provision at issue.

2.      Defendants object to Definition No. 5 as vague and ambiguous and as purporting to impose obligations beyond those established by the Federal Rules of Civil Procedure to the extent it refers to a "general course of action the specifics of which can be determined later." Defendants will identify specific decisions to formally approve the Defendant agency to take any specific actions in their responses to particular interrogatories.

3.      Defendants object to Definition No. 6 as purporting to impose obligations beyond those established by the Federal Rules of Civil Procedure.

4.      Defendants object to Definition No. 8 to the extent it refers it incorrectly identifies the U.S. DOGE Service Temporary Organization as the "U.S. DOGE Temporary Service." Defendants will construe the term "DOGE" to include the U.S. DOGE Service Temporary Organization.

5.      Defendants object to Definition No. 9 as vague and ambiguous, as it refers to any individual who "otherwise works or worked for DOGE." Defendants will construe the term to include any individual who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization, whether in a paid or unpaid capacity.

6.      Defendants object to Definition No. 11 as purporting to impose obligations beyond those established by the Federal Rules of Civil Procedure.

2

7.    Defendants object to Definition No. 15 on the ground that it is overbroad and not proportional to the needs of the case because it includes, among other individuals, all of Defendants' thousands of current and former employees regardless of their position and regardless of their involvement in the events giving rise to the claims or defenses in these cases. Defendants will construe this definition, and the requests generally, to be limited to seek information from persons who are reasonably likely to have information relevant to the claims or defenses in these cases and responsive to Plaintiffs' interrogatories.

**Objections to All Interrogatories**

1.    Defendants object to Plaintiffs' interrogatories because discovery is inappropriate at this time in light of Defendants' pending motion to stay discovery during the pendency of any interlocutory appeal, ECF No. 166.  Defendants further object to being obligated to respond to discovery requests during the ongoing lapse in appropriations for most federal agencies. Defendants are prejudiced by being required to respond to discovery during a lapse of appropriations, during which certain personnel necessary to facilitate Defendants' responses are unavailable.  In addition, discovery is inappropriate, inefficient, and unduly burdensome, because for the reasons set forth in Defendants' motion to dismiss and Motion for Certification, the court has no jurisdiction over Plaintiffs' claims and the material facts are undisputed and Plaintiffs' claims thus present pure questions of law.  *See also* Pls. Request for Leave to File Mot. for Partial Summ. J. at 2, ECF No. 159.

2.    Defendants object to Plaintiffs' interrogatories to the extent that they seek information protected against disclosure by: (a) the attorney work product doctrine; (b) the attorney-client privilege; (c) the deliberative process privilege, the joint defense privilege, the common interest privilege, the law enforcement privilege, or the state secrets privilege; (d) any

other form of executive privilege; or (e) any other applicable privilege or protection.

3. Defendants do not waive, and hereby expressly reserve their rights to assert any and all objections to the admissibility of such responses into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, and privilege. Further, Defendants make the responses herein without in any manner implying or admitting that the discovery requests are relevant or material to the subject matter of this action.

4. Defendants object to these interrogatories to the extent that they seek information protected against disclosure by the Privacy Act, *see* 5 U.S.C. § 552a, and the privacy interests and expectations of persons not party to this litigation.

5. Defendants object to any discovery taking place in this case to the extent Plaintiffs assert cognizable claims seeking review of governmental agency action, including claims under Administrative Procedure Act, because resolution of any such claims should be based upon the "administrative record" in this case. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). That said, Defendants understand that the Court has allowed discovery to proceed. Thus, while preserving their broad objection to any and all discovery, Defendants make further specific objections stated below.

5. Defendants incorporate all of the foregoing objections in each of the responses below regardless of whether a specific objection is reasserted with respect to a specific interrogatory. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that interrogatory. Moreover, the assertion of the same, similar, or additional

4

objections in response to a specific interrogatory does not waive, limit, or modify any of Defendants' general objections or similar or separate specific objections raised in response to an interrogatory.

6.      Defendants expressly reserve the right to supplement, clarify, review, or correct any or all of the responses and objections here, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

**Objections      and      Responses      to      Specific      Interrogatories**

**INTERROGATORY NO. 1:** Identify the individual(s) who made the decision to shut down USAID's website, which occurred on or about February 1, 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants further object that this request is unduly burdensome and not proportional to the needs of this case, insofar as Plaintiffs claims are limited to the Appointments Clause and the separation of powers, neither of which are implicated by the decision whether to maintain a website in operation. In keeping with those objections, State will construe this interrogatory as requesting the identity of the individual who formally authorized USAID to shut down its website on or about February 1, 2025.

**Response**: Gavin Kliger effectuated the changes to the USAID website on or about February 1, 2025, in consultation with USAID leadership including Kenneth Jackson, who was then performing the duties of Assistant to the Administrator for Management and Resources.

Since that time, both Secretary of State Rubio and Director of the Office of Management and Budget Russell Vought have been notified that the USAID website has been down and have not taken action to restore it.

**INTERROGATORY NO. 2:** Identify the individual(s) who made the decision to place approximately 57 USAID employees on administrative leave on or about February 1, 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). State further objects to this interrogatory as vague and ambiguous, as it does not identify the specific individuals placed on administrative leave by name or office. In keeping with those objections, State will interpret this interrogatory as requesting the identity of the individual who formally approved the placement of approximately 57 USAID employees on administrative leave on or about February 1, 2025.

**Response**: Kenneth Jackson, then performing the duties of Assistant to the Administrator for Management and Resources, authorized the transmittal of administrative leave notices to 57 USAID employees in the Bureau of Legislative and Public Affairs on January 31, 2025. The decision was memorialized and communicated by the documents previously disclosed to the Court. *See* ECF No. 70-2.

**INTERROGATORY NO. 3:** Identify the individual(s) who made the decision for U.S.

6

Customs and Border Protection to take control of USAID headquarters, including the removal of plaques with USAID's official seal from USAID headquarters on or about January 31, 2025, and the removal of the words "U.S. Agency for International Development" from above the main entrance of USAID headquarters on or about February 7, 2025, when the decision(s) was made, and how the decision(s) was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants further object to this interrogatory because it requests information outside the custody or control of any Defendant.

**Response**: On February 7, 2025, Michael Peters, Commissioner of Public Buildings Service, U.S. General Services Administration ("GSA"), notified USAID that GSA was terminating USAID's occupancies at the Ronald Reagan Building and International Trade Center in Washington, D.C. That same day, GSA and the U.S. Customs and Border Protection entered into a temporary license to occupy government space. These decisions were officially memorialized and communicated by the documents previously submitted to the Court. *See* ECF Nos. 69-3, 69-4. Consistent with these developments, USAID then undertook actions to vacate its office space.

**INTERROGATORY NO. 4:** Identify the individual(s) who made the decision to have DOGE personnel, including Steve Davis, Gavin Kliger, Luke Farritor, Noah Peters, and Clayton Cromer, arrive at USAID headquarters between on or about January 27 and February 1, 2025

7

seeking access to USAID data security systems and physical access to highly restricted areas, including sensitive compartmented information facilities, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Defendants object to describing all the listed individuals as "DOGE personnel," insofar as certain of those individuals are not and were not employed by the United States DOGE Service or the U.S. DOGE Service Temporary Organization. If the term "DOGE personnel" is construed to include individuals who are not or were not at relevant times employed by the United States DOGE Service or the U.S. DOGE Service Temporary Organization, Defendants object to that term as vague and ambiguous. Defendants further object to this interrogatory to the extent it assumes without evidence that the listed individuals sought "access" to "sensitive compartmented information facilities." Defendants incorporate their objection to definition No. 5. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

State will construe this interrogatory to request the identity of the individual who authorized the listed individuals to obtain access to USAID data security systems and physical access to USAID spaces.

**Response**: State denies that any unauthorized individual accessed any sensitive compartmented information facility or otherwise accessed classified information. The decision to invite the listed individuals to access USAID physical spaces and unclassified data systems was made by then-Acting Administrator Jason Gray, consistent with the provisions of Executive Order 14,158.

**INTERROGATORY NO. 5:** Identify the individual(s) who made the decision to give DOGE personnel access to USAID data systems between on or about January 20 and March 31, 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**:  Defendants incorporate by reference the above objections. Defendants object to the term "DOGE personnel" as vague and ambiguous if it is construed to include individuals who are not or were not at relevant times employed by the United States DOGE Service or the U.S. DOGE Service Temporary Organization. Defendants further incorporate their objection to definition No. 5.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

State will construe this interrogatory to request the identity of the individual who authorized any of Steve Davis, Gavin Kliger, Luke Farritor, Noah Peters, or Clayton Cromer to obtain access to USAID data security systems and physical access to USAID spaces.

**Response**:  Jason Gray, who was then Acting Administrator of USAID, and Kenneth Jackson, Assistant to the Administrator for Management and Resources, consistent with the provisions of Executive Order 14,158.

**INTERROGATORY NO. 6:** Identify the individual(s) who made the decision to systematically block access to USAID data systems by USAID personnel between on or about January 20 and March 31, 2025, including cutting off access to email and other government computer systems for thousands of USAID employees and personal service contractors

9

("PSCs"), when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants further object to this interrogatory to the extent it takes as established that all USAID personnel were systematically blocked from access to USAID data systems.

**Response**: State denies that "USAID personnel" were "systematically block[ed from] access to USAID data systems" outside of specific changes to their employment status. Instead, USAID employees and PSCs who were placed on administrative leave, subject to a reduction-in-force, or had their personal service contract terminated would have relevant account access suspended during the term of that action. Such access restrictions were authorized by the individual who authorized USAID to take the underlying employment action, as reflected in the documents previously submitted to the Court. *See, e.g.,* ECF No. 70-1 at 4; ECF No. 70-2 at 2; ECF No. 70-6 at 2; ECF No. 70-7 at 2.

**INTERROGATORY NO. 7:** Identify the individual(s) who made the decision to place USAID Director of Security John Vorhees and USAID Deputy Director Brian McGill on administrative leave in February of 2025, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**:  On or about February 1–2, 2025, Kenneth Jackson, Assistant to the Administrator for Management and Resources, authorized the placement of John Voorhees and Brian McGill on administrative leave.  On February 11, 2025, Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, authorized the issuance of administrative leave notices to John Voorhees and Brian McGill.  The notices were then issued to Mr. Voorhees and Mr. McGill the next day.  The decision was officially memorialized and communicated to those responsible for implementation by email.

**INTERROGATORY NO. 8:** Identify the individual(s) who made the decision to terminate approximately 791 PSCs who were informed that their contracts had been terminated on or about February 2, 2025, when the decision was made, and how the decision was officially memorialized.

**Objections**: Defendants incorporate by reference the above objections.  Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**:  On February 2, 2025, Secretary of State Marco Rubio, who was then also performing the duties and functions of the Administrator of USAID, authorized the termination of approximately 791 Personal Service Contracts in high-income and medium-income countries as defined by the World Bank.  The decision was memorialized and communicated by the documents previously disclosed to the Court.  *See* ECF No. 70-9.

**INTERROGATORY NO. 9:** Identify the individual(s) who made the decision to place

approximately 2,140 USAID employees on administrative leave between on or about February 3-7, 2025, when the decision was made, and how the decision was officially memorialized.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**: Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, made the decision to place approximately 2,140 USAID employees on administrative leave. The decision was made on February 4, 2025, as memorialized and communicated by the documents previously disclosed to the Court. *See* ECF No. 70-8.

**INTERROGATORY NO. 10:** Identify the individual(s) who made the decision to send an email from "USAID Press" to all USAID staff, on or about February 3, 2025, telling them to work remotely for the day, as USAID headquarters would be closed, when the decision was made, and how the decision was officially memorialized.

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**: Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, verbally authorized the closure of the USAID building and directed Gavin Kliger to send the described email communication.

12

**INTERROGATORY NO. 11:** On or about February 4, 2025, an internal communications notice was sent to USAID employees stating that, effective February 7, 2025 at 11:59 P.M., "all USAID direct hire personnel will be placed on administrative leave globally, with the exception of designated personnel responsible for mission-critical functions, core leadership and specially designated programs," affecting approximately 2,104 additional USAID employees. Identify the individual(s) who made this decision to place these employees on administrative leave, when the decision was made, how the decision was officially memorialized, as well as the individual(s) responsible for determining the excepted "designated personnel responsible for mission-critical functions, core leadership, and specially designated programs."

**Objections**: Defendants incorporate by reference the above objections. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

**Response**: Peter Marocco, who was then performing the duties of Deputy Administrator for Policy and Programming and Management and Resources of USAID, made the decision to place the described employees on administrative leave. That decision was memorialized in the documents previously submitted to the Court. *See* ECF No. 70-8. Mr. Marocco was also the individual responsible for determining the personnel who would be excepted from that action.


**INTERROGATORY NO. 12:** Identify who served as USAID Administrator between January 30 and February 2, 2025, the individual(s) who made that decision, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections.

13

**Response**:  On January 30, 2025, President Donald J. Trump designated Secretary of State Marco Rubio Acting Administrator of USAID, pursuant to the Federal Vacancies Reform Act.

**INTERROGATORY NO. 13:** Identify who served as USAID Deputy Administrator between January 30 and February 2, 2025, the individual(s) who made that decision, when the decision was made, and how the decision was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections.

**Response**:  Prior to the time Peter Marocco performed the duties of USAID Deputy Administrator, the duties of the Deputy Administrator for Management and Resources were performed by Kenneth Jackson.

**INTERROGATORY NO. 14:** Identify all meetings and discussions with government officials (including other Defendants) that Defendant Elon Musk attended or took part in between December 1, 2024 and May 31, 2025 concerning the dismantling, closing[], reorganizing, or restructuring of USAID, including terminating USAID employees or placing them on administrative leave, terminating PSCs, or terminating USAID contacts or grants.

**Objections**:  Defendants incorporate by reference the above objections. Defendants object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for the United States Department of State and Marco Rubio to identify "all meetings and discussions" that "Elon Musk attended or took part in." Defendants cannot comprehensively catalogue every conversation Mr. Musk had with any individual

14

connected to State or USAID, including every conversation Mr. Musk, then a Senior White House advisor, had with Secretary of State Rubio.  Mr. Musk is not and has never been within the control or employ of the parties to whom these requests are directed.  Defendants also object to the Interrogatory to the extent a response requires review of internal, deliberative documents discussing such communications, attorney client documents, or other privileged materials relating to communications. Defendants further object to this Interrogatory to the extent it seeks information protected by the deliberative process privilege, attorney-client privilege, presidential communications privilege or any other applicable privilege. Specifically, Defendants object to this Interrogatory's incorporation of the definition of "identify", which purports to require a "description of the facts and circumstances" of any communication that is subject to a relevant privilege. Defendants further object to the vague and ambiguous undefined term "dismantling," which is unclear in this context. Additionally, challenges to administrative agency action are ordinarily not subject to discovery outside any administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). Defendants also object to the time period of this request, which includes dates prior to Mr. Musk's commencement of government service.  Defendants object to the use of the undefined term "Meeting" in a manner incompatible with, and calculating to expand the obligations imposed by, the Government in the Sunshine Act, 5 U.S.C. 552b.

Consistent with the above-stated objections, Defendants will construe this Interrogatory as requesting identification of any meetings or non-privileged communications between Mr. Musk and anyone employed by or detailed to the Department of State "concerning the. . . closing[], reorganizing, or restructuring of USAID, including terminating USAID employees or placing them on administrative leave, terminating PSCs, or terminating USAID contacts or grants" between January 20, 2025 and May 31, 2025.

15

**Response**: To State's current knowledge, Mr. Musk had several conversations with Secretary of State Rubio, Jeremy Lewin, Michael A. Needham, Counselor of the Department and then Secretary Rubio's Chief of Staff, Tarak Maketcha, and Daniel Joseph Holler, Sr., Chief of Staff of the Department of State, during the time period covered by this request. State also currently understands that Mr. Musk spoke to Jason Gray and Peter Marocco on at least one occasion. State will update this response as further information is developed.

**INTERROGATORY NO. 15:** Identify any DOGE personnel who have been detailed to or otherwise worked at USAID, including providing a general description of their duties and responsibilities at USAID.

**Objections**: Defendants incorporate by reference the above objections. Defendants object to Interrogatory No. 15, as it incorporates the definition of DOGE that incorrectly identifies the U.S. DOGE Service Temporary Organization as the "U.S. DOGE Temporary Service." Defendants will construe the term "DOGE" to include the U.S. DOGE Service Temporary Organization. Defendants further object to Interrogatory No. 15 as vague and ambiguous, as it incorporates the definition of DOGE personnel that refers to any individual who "otherwise works or worked for DOGE." Defendants will construe the term to include any individual who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization, whether in a paid or unpaid capacity. Defendants also object to the phrase "detailed to or otherwise worked at USAID" as vague and ambiguous.

State will construe that phrase to include any individual who was detailed to or employed by USAID who has or had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization.

16

**Response**: Subject to and without waiving the foregoing objections, State is unaware of any individual who was detailed to or employed by USAID who had a primary employment relationship with the U.S. DOGE Service or U.S. DOGE Service Temporary Organization.

**INTERROGATORY NO. 16:** Describe the current operations of USAID by bureau, office, division or component, including the total number of employees and PSCs, current contracts and grants, operational computer systems, and other information relevant to whether USAID is performing its Core Functions and other statutorily required activities.

**Objections**: Defendants incorporate by reference the above objections. Defendants further object to this interrogatory as vague and ambiguous to the extent it requests unspecified "other information" which Plaintiffs may deem "relevant," which is unknown to Defendants at this time. Defendants also object to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case. This Interrogatory calls for a description of the current operations of every office of USAID, every computer system, and compliance with an unknown number of functions and statutorily required activities, whether or not related to the facts and circumstances alleged in Plaintiffs' Second Amended Complaint. State will construe this Interrogatory as limited to the total number of employees currently employed by USAID and a description of their functions.

**Response**: USAID currently employs approximately 74 direct-hire employees, in addition to other appointees and contract support staff. Those personnel support five lines of effort for USAID functions: legal, financial management, human capital, closeout of contracts and grants that are not transferring to State, and remaining general operations, including statutory mandated functions. USAID also continues to fulfill its statutorily mandated functions as an

17

independent agency until such time as Congress adopts legislation to allow the Secretary of State to transfer those functions to appropriate portions of State.

**INTERROGATORY NO. 17:** Describe any dismantling, closing, reorganizing, or restructuring of USAID, including the closing, downsizing, or combining of any USAID bureau, office, division, or component, and how that information concerning such dismantling, closing, reorganizing, or restructuring was officially memorialized and communicated to those responsible for implementation.

**Objections**: Defendants incorporate by reference the above objections.  Defendants further object to the vague and ambiguous undefined term "dismantling," which is unclear in this context.

**Response**:  Pursuant to Federal Rule of Civil Procedure 33(d), please see the attached documents.

**INTERROGATORY NO. 18:** State USAID's total actual or projected spending for Fiscal Years 2024 (October 1, 2024 through September 30, 2025) and 2025 (October 1, 2025 through September 30, 2026), broken down and itemized by each subordinate bureau, office, division, or component. For each amount of spending, identify the authorizing statutory appropriation.

**Objections**: Defendants incorporate by reference the above objections.  Defendants further object to this interrogatory as overly burdensome and disproportionate to the needs of this case, as it would require detailed accounting of each expenditure by portion of a federal agency and the identification of legal authority for each amount of spending.  Defendants further object

to the undefined term "spending," which is vague, ambiguous, and inconsistent with relevant appropriations laws. Defendants will construe the term to mean "obligation of funds."

**Response**: Pursuant to Federal Rule of Civil Procedure 33(d), please see the attached documents.

**INTERROGATORY NO. 19:** Describe the manner(s) that USAID has used or presently uses to ensure that any and all USAID spending for Fiscal Years 2024 or 2025 complied or complies with the relevant statutory appropriations authorizing such spending.

**Objections**: Defendants incorporate by reference the above objections. Defendants further object to the undefined term "spending," which is vague, ambiguous, and inconsistent with relevant appropriations laws. Defendants will construe the term to mean "obligation of funds."

**Response**: Pursuant to Federal Rule of Civil Procedure 33(d), please see the attached documents.

Dated: November 12, 2025              Respectfully submitted,

                                      BRETT A. SHUMATE
                                      Assistant Attorney General, Civil Division

                                      DIANE KELLEHER
                                      Director, Federal Programs Branch

                                      CHRISTOPHER R. HALL
                                      Assistant Branch Director, Federal Programs Branch

                                      */s/ Jacob S. Siler*
                                      CHRISTOPHER M. LYNCH
                                      (DC Bar No. 1049152)
                                      JACOB S. SILER (DC Bar No. 1003383)

                                      19

JAMES J. WEN (NY Bar No. 5422126)
*By Special Appearance*
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-4556
Email: jacob.s.siler@usdoj.gov

*Attorneys for Defendants*

20

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing interrogatory responses of the United States Department of State and Marco Rubio to Plaintiffs' First Set of Interrogatories, dated October 7, 2025, are true and correct, to the best of my knowledge based solely on information that was made known to me in the course of my official duties.

Dated: November 12, 2025

/s/ _____