**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

J. DOE 4 *et al.*, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

ELON MUSK *et al.*,

Defendants.

Civil Action No. 25-0462-TDC

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

## INTRODUCTION

After months of meet-and-confer efforts aimed at minimizing court intervention, Plaintiffs seek to compel Defendants to provide legally adequate answers to five interrogatories and produce two documents that Defendants have improperly redacted based on unfounded privilege claims. In opposing this relief, Defendants do not defend their original interrogatory responses or prior privilege assertions. Instead, they creatively recast those responses, invoke after-the-fact document productions, and add new explanations of privilege—confirming that the answers were unresponsive and the privilege claims improper from the outset. Rule 33 requires clear, complete, and responsive answers—or an admission, after reasonable inquiry, that the party cannot answer. It does not permit a party to "answer" by pointing to later-produced documents or deposition testimony that might, if cobbled together, approximate information that the interrogatory squarely requested.

Here, the inadequacy of Defendants' responses is apparent on the face of their answers. Plaintiffs asked them to identify the individuals who made key decisions, when those decisions were made, and how the decisions were memorialized and communicated. Defendants answered different questions, failed to identify the individuals, and did not address the "when" and "how" components of the interrogatories. The Court already found that Defendants did not adequately respond to interrogatories in this case, *Does v. Musk*, No. 8:25-cv-00462-TDC, 2026 WL 295364, at *3-4 (D. Md. Feb. 4, 2026), and observed that Defendants' responses "sound[] like an answer that didn't answer the question." ECF No. 238, Ex. 6 (Tr. of May 21, 2026 Conference) at 44:12-24. Nothing material has changed. Plaintiffs' motion to compel should therefore be granted.

**DISCUSSION**

**I. Plaintiffs' Motion Is Timely**

Defendants' untimeliness argument ignores the Court-directed process that produced this focused motion. Plaintiffs promptly raised deficiencies in Defendants' interrogatory responses, continued to confer as required by the Local Rules, sought a pre-motion conference when the disputes persisted, and filed this motion only after the Court ordered further conferral and granted leave to move to compel.

On November 14, 2025, two days after receiving the State Defendants' interrogatory responses, Plaintiffs identified eight deficient responses in writing—including three at issue here—and requested supplementation. Ex. 21. Plaintiffs again raised Defendants' inadequate discovery responses in opposing the protective order barring senior-official depositions. ECF No. 190 at 5. The Court later found that Defendants "have not responded adequately or at all" to interrogatories concerning, among other things, the shutdown of USAID headquarters and website. *Does,* 2026 WL 295364, at *3–4.

Over the next several months the parties continued to confer while Plaintiffs pursued the written-discovery avenues the Fourth Circuit identified as prerequisites to certain senior-official depositions. When a few issues remained unresolved, Plaintiffs notified Defendants on May 6, 2026, that they had reached an impasse and intended to seek leave to file a motion to compel. Ex. 22. Plaintiffs then sought a pre-motion conference. ECF No. 221.

At the conference, Defendants did not assert untimeliness. The Court directed the parties to continue meeting and conferring to narrow the issues and granted Plaintiffs leave to file a motion to compel if necessary. ECF No. 223 at 2. Plaintiffs complied. The ensuing conferral narrowed the motion to five interrogatories and two redacted documents, rather than the broader

set of disputes initially presented. Defendants now attempt to fault Plaintiffs for following that order, characterizing the resulting focused motion as evidence of delay. Opp. at 6 (criticizing Plaintiffs for filing the motion two months after the conference).

The Local Rules do not make rejection automatic. Guideline 1.f provides that failure to promptly bring an unresolved dispute to the Court's attention "may" result in a determination of untimeliness. D. Md. Loc. R. App. A, Guideline 1.f. Courts may decline to find a motion untimely where the delay resulted from negotiations encouraged by the Rules, and they retain the inherent authority to manage their dockets toward the efficient and expedient resolution of cases. *See Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 225 (N.D.W. Va. 2007); *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Plaintiffs brought these disputes to Defendants' and the Court's attention, actively conferred, and followed the Court's direction. Nor do Defendants identify concrete prejudice from a targeted order requiring complete responses to five interrogatories and production of two documents. Denial, however, would prejudice Plaintiffs given that the Fourth Circuit required them to exhaust available written-discovery remedies before seeking certain senior-official depositions. *In re Musk*, 169 F.4th 445, 449 (4th Cir. 2026).

## II. Defendants Have Failed to Adequately Answer the Interrogatories

### A. Defendants' Opposition Confirms, Rather Than Refutes, the Deficiencies in Their Interrogatory Responses

Defendants' responses to Interrogatories 1 through 5 never identify who *made* the decisions at issue nor do they address when or how those decisions were memorialized and communicated. In their opposition, Defendants do not attempt to refute these facts. A summary of the deficiencies as to each interrogatory follows, *see* ECF No. 238-3:

| Interrogatory | Information Requested | Defs.' Response | Deficiency |
|---|---|---|---|
| No. 1 (Website) | Who decided to change/shut down USAID's website; | Kliger "effectuated the changes . . . in | Identifies who implemented the decision, not who made it; |

| Interrogatory | Information Requested | Defs.' Response | Deficiency |
|---|---|---|---|
| | when the decision was made; and how it was memorialized and communicated. | consultation with USAID leadership including Ken Jackson." | no answer on timing, memorialization, or communication. |
| No. 2 (Admin. leave) | Who decided to place 57 employees on leave; when the decision was made; and how it was memorialized and communicated. | Jackson "authorized the transmittal" of leave notices. | Identifies who implemented the decision, not who made it; no answer on timing, memorialization, or communication. |
| No. 3 (HQ takeover) | Who decided that CBP would take over USAID headquarters and remove USAID's official seal and name from the building; when the decision was made; and how it was memorialized and communicated. | GSA "notified" USAID of lease termination; new license issued to CBP. | Identifies who communicated the decision, not who made it; ignores the removal decisions; no answer on timing or memorialization. |
| No. 4 (DOGE physical access) | Who decided to send DOGE personnel to USAID headquarters and grant them access; when the decision was made; and how it was memorialized and communicated. | Gray "invite[d]" the individuals to access USAID spaces "consistent with" Executive Order 14,158. | Identifies who approved entry upon arrival, not who decided personnel would be sent or granted access; no answer on timing, memorialization, or communication. |
| No. 5 (DOGE data access) | Who decided to grant DOGE personnel access to USAID data systems; when the decision was made; and how it was memorialized and communicated. | Gray and Jackson "approved" access. | Identifies who approved access, not who decided that access should be granted; no answer on timing, memorialization, or communication. |

While each of the five interrogatories asks who "made the decision" to take a specific action, the responses substitute a synonym for implementation or ratification: Gavin Kliger "effectuated" the website changes, ECF No. 238-3 at 5; Kenneth Jackson "authorized the transmittal" of leave notices, *id.* at 6; a GSA official "notified" USAID of the lease termination, *id.* at 7; and Jason Gray "invite[d]" DOGE personnel's physical and data access, *id.* at 8. These words describe carrying out or communicating a decision, not making it.

Defendants' unilateral redefinition of "decision" does not discharge their Rule 33 obligation. Plaintiffs defined "decision" as "a definitive choice to commit to a particular course of action or inaction, including a general course of action the specifics of which can be determined later." ECF No. 238-2 at 4. Rather than using the definition provided—or the word's everyday meaning—Defendants substituted their own narrower construction to define the term as "specific decisions to formally approve the Defendant agency to take any specific actions." ECF No. 238-3 at 2; Opp. at 9. A party cannot satisfy Rule 33 by answering its own narrower question in place of the one asked. Fed. R. Civ. P. 33(b)(3). This maneuver does not provide cover for the deficiency; it *is* the deficiency, as this Court already recognized: Defendants' response that Kliger "effectuated" changes to the website "sounds like an answer that didn't answer the question. . . . [T]he issue is not—who made the decision not [wh]o effectuated it." ECF No. 238, Ex. 6 (Tr. of May 21, 2026 Conference) at 44:12–24.

If any doubt remained that Defendants answered different questions than those Plaintiffs asked, their opposition removes it. Defendants contend that Plaintiffs now seek not the person who made the decisions at issue but "who induced or influenced the agency" to make them. Opp. at 1. They similarly argue that the person who "influenced or instigated" a decision is "a separate question from who made the final decision," and that Plaintiffs seek the person who "directed" or "gave the order" for the challenged actions. *Id*. at 13 (citing Mot. at 10).

But that argument rests on Defendants' own narrowed definition of "decision-maker": the agency official who formally approved, effectuated, or authorized an action. Plaintiffs asked who "made the decision" that USAID take each identified action. Defendants' distinction between the person who gave the order and the person who formally approved or implemented it confirms Plaintiffs' point: Defendants identified only the latter.

Defendants do not even attempt to defend their failure to answer when the decisions were made or how they were memorialized and communicated. Instead, they rely on having “cited relevant documents communicating or memorializing those decisions that were available as of the date of the response." Opp. at 3. That is an admission that the responses are incomplete. Pointing to a document showing that an action was taken does not answer when the decision was made, how it was memorialized, or how it was communicated for implementation.

Defendants also argue that agencies routinely receive “guidance and recommendations” from White House personnel who function merely as advisors, and that Plaintiffs therefore cannot infer that Musk, Davis, or others were decision-makers. Opp. at 14. That merits argument does not address the adequacy of Defendants’ responses. Whether those individuals exercised authority or merely offered advice is precisely the factual question the interrogatories seek to illuminate. *See* Mot. at 10 (“the factfinder will have to determine who directed each significant act”).

Defendants’ advisor versus decision-maker argument assumes the answer to that question. It does not explain why Defendants cannot identify the person(s) within “leadership” or elsewhere who decided that USAID take each challenged action. A merits dispute over the role of Musk, Davis, or other White House and USDS personnel does not excuse Defendants’ failure to provide complete discovery responses.

**B. Defendants’ Post-Response Discovery Materials Do Not Relieve Their Obligation**

Unable to defend the interrogatory responses as written, Defendants contend that “extensive testimony, document productions, and other written disclosures” produced in the eight months since the responses were served have supplemented and cured any deficiency. Opp. at 10–13. That argument fails for three reasons.

First, Rule 26(e) does not excuse a party from providing a complete, sworn interrogatory answer by scattering pieces of the answer across document productions and deposition testimony, requiring Plaintiffs to piece them together. Rule 33 requires a party to "specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them." Fed. R. Civ. P. 33(d)(1). Defendants have produced documents randomly en masse without identifying which requests they answered; none was identified as a supplement to interrogatory responses. Plaintiffs need not comb through 10,000 pages of documents and dispersed deposition testimony to decipher an answer that Defendants were obligated to provide directly. *See id.*; Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond").

Second, even accepting Defendants' invitation to look beyond the responses, the supplemental materials repeat the original defect: they identify who executed or authorized each action, not who decided to undertake it. For example, regarding Interrogatory 1, Defendants cite Kliger's testimony that "in consultation with senior agency leadership I was asked to take the website down," and he "did not recall the specific person within USAID senior leadership who asked him." Opp. at 11 (citing Ex. 10 at 118:8–14). That answer is hardly an answer. Instead, it confirms Defendants still have not identified the decision-maker. Likewise, to address deficiencies in their responses to Interrogatories 4 and 5, Defendants rely on Jason Gray's testimony that he approved DOGE's personnel access after being asked to do so. Opp. at 13 (quoting Ex. 17 at 158:15–17). But that testimony shows the request originated elsewhere without identifying who decided DOGE should receive access in the first place. In any event, snippets of testimony and scattered documents are not sworn agency answers required by Rule 33.

Third, if an agency genuinely lacks information to answer an interrogatory, it must say so under oath and describe in detail the steps it took to obtain the information. *See Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238 (W.D.N.C. 2010). Defendants' reliance on later-filed declarations confirms the deficiency of their original responses. For Interrogatory 3, Defendants now cite a declaration stating that aside from people identified in previously-filed documents, State and USAID are unaware who participated in GSA's decision. Opp. at 12 (quoting Ex. 13 ¶ 24). But that assertion addresses only one aspect of the interrogatory; it does not address when the decision was made, how it was memorialized or communicated, or the removal of USAID's seal and name. Nor was it provided in a verified supplemental response.

The same is true of Interrogatory 1. Defendants now rely on a declaration that USAID is unaware of any contemporaneous documentation of the decision to shut down its website. Opp. at 11. That assertion addresses just one component of the interrogatory but omits identifying the decision-maker, the date of the decision, or how it was communicated. To permit Defendants to cure incomplete interrogatory responses through isolated assertions in declarations filed months later in response to a motion to compel would undermine the purpose of discovery.

**C. The Information Sought Is Relevant to Plaintiffs' Appointments Clause Claims**

Defendants' final argument—that the challenged interrogatories seek irrelevant and immaterial information, Opp. at 14–16—is both procedurally improper and substantively wrong. The requested information is plainly relevant. This Court has already held that identifying "the actual decisionmakers for any exercises of significant authority" is necessary to assess Plaintiffs' Appointments Clause claim. ECF No. 150 at 43. Defendants' contrary assertions—that individual actions were insignificant or that Plaintiffs lack standing—repackage merits arguments this Court

rejected at the pleadings stage. Rule 26 indisputably permits discovery regarding the claims and defenses, and Defendants cannot avoid discovery by relitigating the merits of those claims.

## III. Defendants Have Not Established Deliberative Process Privilege

Defendants' newly submitted declaration, ECF No. 246-1, Ex. 20, does not establish that the redactions in the two emails are protected by the deliberative process privilege. The privilege applies only where the Government establishes that the specific withheld material is both predecisional and deliberative. Defendants' revised descriptions of the redactions do not make that showing. At most, they suggest the emails concern the implementation of decisions already made or being carried out. That is not enough to establish that the redacted material reflects the "give-and-take of the consultative process" in which an agency decision-maker evaluated alternatives and reached a decision. *City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253-54 (4th Cir. 1993).

### A. Defendants Have Not Established the Redacted Material Is Predecisional and Deliberative

Defendants have not shown that the particular redacted text—not merely the emails' general subject—is both predecisional and deliberative. The privilege does not protect factual accounts of decisions already made, communications to implement a decision, or material that does not reveal personal recommendations or agency evaluation of competing options. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *Malone v. United States Pat. & Trademark Off.*, 175 F.4th 262, 269 (4th Cir. 2026).

***The January 31, 2025 email.*** Defendants' privilege log describes the redacted material in the January 31, 2025 email, ECF No. 245-2, as concerning the "proposed timing of finalizing decisions, policies and or announcements" related to USAID. ECF No. 238, Ex. 4 at 3. In opposition, they now characterize it as protecting "the substance of recommendations about the

rollout of potential policies that have not yet been finalized." Opp. at 21. That revised description still fails to identify the decision that remained pending, the responsible decision-maker, the alternatives under consideration, or how the redacted material assisted the decision-maker in selecting among those alternatives. *City of Virginia Beach,* 995 F.2d at 1253 (deliberative material "reveal[s] the manner in which the agency evaluates possible alternative policies or outcomes").

Additionally, the email's available text reports what Steve Davis[1] reportedly agreed with Secretary Rubio about while the Secretary was attempting to reach Elon Musk. Defendants contend that the communication concerns "coordination" between senior State Department and White House personnel about possible policies. Opp. at 20-21. Coordination about a potential policy does not sufficiently establish that the particular statement reflects recommendations, evaluations, or the weighing of options. Nor do the cases Defendants cite establish that every discussion about the public rollout of a policy is deliberative. Opp. at 20-21. The question remains whether this particular redacted statement reflects actual consultation about a decision not yet made, rather than a factual report of what Davis said, an account of a decision already reached, or an effort to communicate or implement that decision.

***The February 1, 2025 email.*** Defendants similarly describe the redaction from the February 1, 2025 email, ECF No. 245-3, as "proposed considerations for implementation of" future personnel actions and "the formulation of a policy for the government." ECF No. 238 Ex. 4 at 3; Opp. at 21. But again, they fail to identify the relevant decision, decision-maker, options

[1] In attempting to establish Davis's role in deliberating policy, Defendants say that, as of January 31, 2025, he was a "senior advisor in EOP." Opp. at 4. In other contexts, they described him as a "USDS employee" who was "also detailed to GSA on January 28, 2025" and the "functional head" of USDS, ECF No. 226 at 19-20.

under consideration, or any deliberative role performed by Wong, Needham, or DOGE's General Counsel.

The email's subject line, "FYI: Impending USAID personnel actions," undermines that it was deliberative. The word "impending" suggests that the email communicates information about actions already decided, rather than solicits or provides advice to assist a decision-maker in choosing among alternatives. And "F[or] Y[our] I[nformation]" indicates that the email conveys information about a decision already made, rather than reflecting the "give-and-take of the consultative process." *City of Va. Beach*, 995 F.2d at 1253.

That Wong was relaying information received from DOGE's counsel further emphasizes the need for a more particularized showing. Information transmitted from one official to another is not privileged merely because the subject concerns government policy. The privilege protects deliberative opinions and recommendations, not a factual account of what another person said, a decision already made, or instruction for implementing it. *See Malone*, 175 F.4th at 269; *In re Sealed Case*, 121 F.3d at 737. Additionally, Wong's merely relaying what DOGE's counsel told him undermines the privilege because the redaction does not reflect "the personal opinions of the writer" rather than the agency's position. *Malone,* 175 F.4th at 269 (quoting *Solers v. IRS*, 827 F.3d 323, 329 (4th Cir. 2016)).

Finally, even if some part of either redaction is predecisional and deliberative, Defendants may withhold only that portion. Any segregable factual or directive material must be produced.

**B. Plaintiffs' Need Outweighs Defendants' Qualified Privilege**

Even if Defendants had established that some portion of the redacted material is privileged, Plaintiffs' particularized need for the limited material sought outweighs the Government's interest in withholding it. The four relevant considerations—relevance, the

availability of alternative evidence, the Government's role in the litigation, and the effect of disclosure on deliberation—favor disclosure. *See Cipollone v. Liggett Group Inc.*, 812 F.2d 1400 (4th Cir. 1987) (unpublished).

**1. The redacted material is highly relevant**

The timing of the emails— Friday, January 31 and Saturday, February 1, 2025—indicates their importance, as they were sent during the critical period of USAID's initial dismantling. *See* Third Am. Compl., ECF No. 207, ¶¶ 74-87. The known portions of the emails also establish their relevance. The January 31 email refers to conversations between Davis, Rubio, White House personnel, and Musk about USAID-related "decisions, policies, and or announcements." ECF No. 238, Ex. 4 at 3. The February 1 email concerns impending USAID personnel actions and information transmitted through DOGE's general counsel. *Id.* These are not remote or collateral conversations but contemporaneous communications involving senior officials associated with actions at the heart of this case that raise core factual questions of who made critical decisions at USAID and through what chain of command.

Plaintiffs do not need to define the exact context to establish relevance; indeed, they cannot because relevant information has been withheld. But the available context establishes a substantial likelihood that the redactions contain information material to the Appointments Clause claim.

**2. Equivalent evidence is not available from other sources**

The question is whether Plaintiffs can obtain equivalent evidence concerning the communications reflected in the two emails. They cannot. Defendants focus on the amount of discovery available to Plaintiffs, but volume is not a substitute for access to the specific information at issue. Defendants' witnesses, including their Rule 30(b)(6) designee have

repeatedly been unable to identify who directed key actions involving USAID. *See generally* Pls.' Mot. for Leave to Depose Kenneth Jackson and Steve Davis, ECF No. 226. Gavin Kliger, for example, did not recall who instructed him to take down USAID's website or send the email closing its headquarters, and the State Department and USAID designee could not provide any detail on the subjects. *Id.* at 9-12. The redacted emails are among the few contemporaneous written sources that may identify different individuals' roles in key decisions.

**3. The Government's exercise of authority is central to this case**

The government agencies and officials involved in the redacted emails are not peripheral participants in this case. Plaintiffs' Appointments Clause claim turns on whether individuals not properly appointed or otherwise authorized exercised significant authority over USAID. Defendants respond that Plaintiffs' claim does not concern the officials' "subjective motivations." Opp. at 24. That is beside the point. Plaintiffs are not seeking information to shed light on the officials' views and positions on USAID's dismantling but rather to identify who exercised the authority, what decisions they made, and how those decisions were implemented. The withheld communications may illuminate this information in the context of important decisions regarding the dismantling of USAID.

**4. Limited disclosure would not chill deliberation**

Defendants contend that revealing the withheld information would chill the government's ability to have candid discussions regarding proposed actions simply because they involve personnel at the "highest level" of the State Department and White House advisors. Opp. at 26. For such a generic, speculative assertion to satisfy the fourth element would nullify the qualified deliberative process privilege whenever senior government officials are involved. The requested relief is narrow: production of two emails, not broad discovery into policy discussions at USAID,

the State Department, or the White House. The Court may further protect any genuinely deliberative material through in camera review.

**C. Defendants' Post-Motion Declaration Does Not Cure the Original Failure to Properly Invoke Privilege**

Defendants assert that they have satisfied the procedural requirements of asserting privilege through a new declaration by Deputy Secretary of State Michael Rigas. Opp. at 18-19. This declaration merely confirms that Defendants previously failed to provide the necessary information to determine a proper invocation of privilege. Plaintiffs recognize there is disagreement amongst courts as to when the agency official needs to establish a formal claim of privilege. However, had Defendants identified the agency and individual who were asserting the privilege at any time over the past several months, the parties could have avoided this argument about the procedural sufficiency of the invocation of privilege.

**D. Defendants Have Not Established Presidential Communications Privilege**

Defendants have not established that the February 1 email's redacted material falls within the presidential communications privilege. That privilege protects confidential communications reflecting presidential decision-making and deliberations, including communications authored, solicited, or received by immediate White House advisers while advising the President. But it does not apply merely because a communication concerns a matter involving the President. It "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decision making by the President." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997).

Defendants' own account establishes relevance but not privilege. Defendants say that Wong relayed information from DOGE's general counsel concerning USAID personnel actions, including a "description of communication attributed to the President" and "proposed

considerations for implementation" of those actions. Opp. at 30. Defendants further explained that the purpose of the email was to allow Needham to inform Secretary Rubio how asserted presidential deliberations would affect USAID. *Id.* Thus, as Defendants describe it, the email conveyed information from the White House to the State Department concerning agency action and implementation. That does not establish that the specific redacted text was created to advise the President or that it reveals presidential deliberations, as opposed to reporting a decision, conveying an instruction, or describing how an action would be implemented.

The Lawkowski declaration does not supply the necessary factual bridge. It simply asserts that the redacted material "reflects presidential decision-making and was made in connection with presidential decision-making." ECF No. 246-1, Ex. 7 ¶ 10. It does not identify a presidential decision then under consideration, advice being developed for the President, or how the withheld text constitutes deliberations rather than facts or directives. *See In re Sealed Case*, 121 F.3d at 752; *Campaign Legal Ctr. v. DOJ*, No. 18-1771, 2020 WL 2849909, at *5–6 (D.D.C. June 1, 2020) (requiring a factual showing connecting the communication to presidential decision-making).

At a minimum, the Court should conduct in camera review of the single disputed redaction. Plaintiffs are not seeking a broad inquiry into presidential communications but a targeted determination whether this one email contains protected deliberations or nonprivileged factual, directive, or implementation material. For the reasons explained above, Plaintiffs' particularized need for evidence concerning the chain of decision-making supports disclosure even if a qualified privilege applies.

**CONCLUSION**

For the reasons provided herein, the Court should grant Plaintiffs' Motion to Compel.

Respectfully submitted,

*/s/ Andrew H. Warren*
Norman L. Eisen, [9112170186]
Tianna J. Mays, [1112140221]
Andrew H. Warren*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Tianna@democracydefenders.org
Andrew@democracydefenders.org

Mimi Marziani*
Rebecca (Beth) Stevens*
Joaquin Gonzalez*
**MARZIANI, STEVENS &**
**GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604
mmarziani@msgpllc.com
bstevens@msgpllc.com
jgonzalez@msgpllc.com

Richard M. Heimann*
Nicole M. Rubin [30711]
Lucas E. Issacharoff*
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
rheimann@lchb.com
nrubin@lchb.com
lissacharoff@lchb.com

*Attorneys for Plaintiffs*
*Admitted pro hac vice