Democracy Defenders Fund

October 7, 2026

The Honorable Theodore D. Chuang, U.S. District Judge
6500 Cherrywood Lane, Suite 245
Greenbelt, MD 20770
(301) 344-3982

**Re: *Doe v. Musk,* 25-CV-00462, Joint letter regarding post-briefing development in connection with Plaintiffs' Motion for Leave to Depose Kenneth Jackson and Steven Davis**

Dear Judge Chuang:

In connection with Plaintiffs' Motion for Leave to Depose Kenneth Jackson and Steven Davis, ECF No. 226, the parties respectfully submit this joint letter following Defendants' Supplemental Objections and Responses to Plaintiffs' Interrogatories Numbered 1-5 to Defendants United States Department of State and Marco Rubio (the "Supplemental Responses"), ECF No. 252-1. The parties completed briefing that Motion on June 17, 2026. However, Defendants' Supplemental Responses, submitted on September 17, 2026, and mandated by the Court's September 3 Order granting in part Plaintiffs' motion to compel, ECF. No. 250, raise additional facts that the parties now bring to the Court's attention. The parties do not believe that a court conference or surreply memoranda is necessary to resolve this issue but defer to the Court's judgment.

**Plaintiffs' Position**

As detailed below, Defendants' Supplemental Responses and recently produced documents confirm that Jackson and Davis possess personal knowledge of material events that cannot be obtained through other forms of discovery, making their depositions necessary.

*Jackson's deposition is necessary.* Defendants' Supplemental Response No. 1 does not clearly answer who decided to shut down USAID's website on February 1, 2025. Defendants state it was a "group decision" involving Peter Marocco and other members of USAID's leadership team, but that Jackson—like DOGE members Jeremy Lewin and Luke Farritor, and the State Department and USAID Rule 30(b)(6) designee—cannot recall who made the final decision. ECF No. 252-1 at 3-4. Furthermore, Defendants admit there is no contemporaneous documentation of the decision. *Id.* at 4. Previous evidence identified DOGE member Gavin Kliger as having "effectuated" taking down the website in consultation with Jackson, but Kliger provided no further detail. ECF No. 226 at 11-12 of 27. Jackson remains the only witness—other than Marocco or Lewin—who can provide additional and critical information about shutting down USAID's website.

Defendants' Supplemental Response No. 2 states Jackson made the decision to place 57 USAID employees on administrative leave on February 1, 2025, after consulting with Marocco "who all involved understood *would be* performing the duties of Deputy USAID admin." ECF No. 252-1 at 5-6 (emphasis added). This admission—that Marocco did not hold that position or possess that authority as of January 31—further demonstrates the need to depose Jackson concerning his understanding of Marocco's authority, the basis for placing employees on administrative leave, and the relationship between that decision and Lewin's January 30, 2025, demand that then-Acting Administrator Jason Gray and Chief of Staff Matt Hopson shut down the entire agency. *See* ECF No. 226 at 9-10 of 27. Other than Lewin and Marocco, Jackson is the only witness able to provide additional and critical information about the decision to place USAID employees on leave.

Defendants' Supplemental Response No. 3 states that the U.S. General Services Administration ("GSA") decided to terminate USAID's occupancies of its headquarters and corresponded with Jackson about that decision. ECF No 252-1 at 7-8. Defendants further state that they are unaware of who decided to remove USAID's name and official seals from the building. *Id.* at 9. Thus, Defendants' response appears to suggest that GSA independently determined that U.S. Customs and Border Protection would assume control of USAID's headquarters, without first consulting either USAID or State Department leadership, and with Secretary Rubio informed only afterward. *Id.* Even accepting that account to be credible—which it is not—Jackson is the only identified witness who can shed light on this decision through his communications with GSA. His testimony is further necessary because the designee for both the State Department and USAID testified that Jackson said DOGE canceled the lease. *See* ECF No. 235 at 13 of 18, citing Korzeniewski Dep. (ECF No. 229, Ex. 10) at 249:17-20. Additionally, Kliger testified that he could not recall who instructed him to send the February 3, 2025, email informing all USAID staff that headquarters were closed, but that he recalled discussing the closure with Lewin, Marocco and "possibl[y]" Jackson. *See* ECF No. 226 at 13-14 of 27. With Plaintiffs presently unable to depose Lewin or Marocco, Jackson is the only available witness to provide information absent from the current record about those decisions.

Defendants' Supplemental Responses Nos. 4-5 confirm that Jackson granted certain DOGE personnel access to USAID's physical offices and data systems. Jackson and Marocco granted Davis (and two other individuals) access to the Ronald Reagan Building. ECF No. 252-1 at 12. Jackson granted Farritor access to USAID's C-CURE system, which controlled physical-badging access. *Id.* at 14. And Jackson and Marocco approved granting Farritor and Kliger "elevated access to USAID data systems." *Id.* at 15. In light of Kliger's vague and evasive testimony regarding the putative need for access to those systems, *see* ECF No. 226 at 17-18 of 27, Jackson is the only available witness to provide information absent from the current record about the purpose of that access.

Additionally, on September 29, 2026, as part of their ongoing document production, Defendants produced multiple early February 2025 emails among Jackson, Lewin, Marocco, Davis, and others discussing the termination of billions of dollars in USAID grants. Although heavily redacted, these communications confirm that Lewin was the driving force behind the grant terminations—a key component of USAID's dismantling. *See* Third. Am. Class Action Compl. ¶¶ ECF 99, 117 (ECF No. 207). At that time, Lewin served as a DOGE team leader lacking official USAID authority, while Jackson was, by Defendants' own account, "performing the duties of Assistant to the Administrator for Management and Resources." ECF No. 226 at 17. Because Plaintiffs are currently unable to depose Lewin, Marocco, or Davis, Jackson is the only available witness to provide critical information missing from the current record regarding the grant terminations.

*Davis's deposition is necessary*. Defendants' Supplemental Response to Interrogatory No. 4 broadly summarizes former USAID Chief of Staff Hopson's testimony concerning Davis's role in inviting DOGE personnel to USAID and facilitating their access. Defendants further state that the State Department "does not dispute the validity of Mr. Hopson's account but is unable to verify it." ECF No. 252-1 at 11. That response has implications beyond the discrete issue of DOGE personnel's access. Hopson testified that Davis was "in the leadership role" and "the person that was in charge" of the DOGE team, and that Davis "led the discussions or drove the agenda." *See* ECF No. 226 at 24 of 27. Other testimony similarly establishes Davis's authority within DOGE, his involvement in securing systems access for DOGE personnel, and his role shutting down USAID's website and social media accounts. *See* ECF No. at 21-26 of 27. Thus, apart from Elon Musk, Davis is the only DOGE official to provide information absent from the current record about DOGE's actions that resulted in the dismantling of USAID.

Additionally, as noted above, Defendants' September 29, 2026, document production includes multiple early February 2025 emails received by Davis concerning USAID grant terminations. That production also revealed emails involving Davis regarding DOGE's investigation into alleged violations of the USAID funding freeze—the assertion used as a pretext to place 57 senior officials on administrative leave. *See* Third. Am. Class Action Compl. ¶¶ 63-66 (ECF No. 207). Furthermore, the production contained heavily redacted emails approximately January 26, 2025, in which Davis and others discussed a "Next DEI wave" in connection with terminating contracts or and spending. These communications provide additional evidence of Davis's direct involvement in key decisions underlying USAID's dismantling, for which no other available witness exists.

Defendants' position below restates their prior arguments in opposition to the depositions, *see* ECF No. 246, and mischaracterizes Plaintiffs' position herein as an "entirely new argument" related to grant terminations which "have nothing to do with this case." As noted above, the grant terminations are an important aspect of USAID's dismantling, and Plaintiffs' initial motion argues that given the present unavailability of Lewin, Marocco and Musk, Jackson and Davis are

necessary witnesses because they were involved in critical decisions underlying the agency's dismantling. ECF No. 226 at 7, 21 of 27.

**Defendants' Position**

Under binding Fourth Circuit law established in this very case, the "fact that plaintiffs may need" certain "information and that" high-ranking government personnel "may have firsthand information about the identity of decisionmakers and the timing of decisions is not, by itself" sufficient to compel their deposition. *In re Musk*, 169 F.4th 445, 448–49 (4th Cir. 2026). Rather, what Plaintiffs must show is that the high-ranking personnel "have firsthand information that is relevant and material to plaintiffs' claims and that cannot be reasonably obtained from other sources or modes of discovery." *Id.* at 448. The Fourth Circuit's order barring the deposition of a White House employee and two individuals who performed the duties of Deputy Administrator of USAID applies equally to Steven Davis, a White House employee, and Kenneth Jackson, another individual who performed the duties of Deputy Administrator. *See* ECF No. 230 at 4–7.

After the State Department has supplemented five of its interrogatory responses, Plaintiffs now vaguely cite the need for additional "information" about the decisions that were the subject of those responses, such as "the basis" for certain actions. The reason *why* any person took an official action, however, is immaterial to the claims at issue here. Of the two claims Plaintiffs asserted in their Third Amended Complaint, Plaintiffs seek these depositions only in support of their Appointments Clause claim. *See* ECF No. 226 at 1. But the basis underpinning any official action—whether good policy or bad, supported by reason or not—has no bearing on the Appointments Clause analysis. As this Court has explained, "the Appointments Clause is not violated when a duly appointed Officer authorizes or ratifies an exercise of significant authority that was otherwise initiated or first approved by a non-Officer." *Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 662 (D. Md. 2025); *cf.* ECF No. 150 at 41 (concluding that Plaintiffs' allegations were sufficient to overcome Rule 12(b) motion because they supported "inference that Musk directed the actions to shut down USAID *without authorization from any USAID official*" (emphasis added)). Thus, all that matters for Plaintiffs' Appointments Clause claim is whether a duly authorized USAID individual approved or ratified any exercise of significant authority. Plaintiffs' statement above fails to make any showing that their proposed depositions are necessary in light of that standard.

Even if some additional information were within the scope of Rule 26, Plaintiffs' explanations for why Jackson or Davis must in their view be deposed do not demonstrate need. Plaintiffs first argue that Jackson is the "only witness" available to provide additional "information about shutting down USAID's website." *Supra* at 1. But Defendants have already provided a declaration on behalf of the State Department and USAID that "Mr. Jackson reports that he cannot provide additional details about any February 1, 2025, changes to USAID's website." ECF No. 230-1 at 80. Either

way, Plaintiffs now have Defendants' best answer to how the decision was made and who was party to it, and in any event the website was changed again, shortly thereafter, undisputedly with the knowledge of the then-Acting Administrator and official performing the duties of Deputy Administrator. *See* ECF No. 252-1 at 4. That defeats Plaintiffs' Appointments Clause claim regardless of whether Mr. Jackson had more to say about it—which sworn testimony establishes that he does not. *See Does 1-26*, 771 F. Supp. 3d 662.

Plaintiffs next argue that they need to depose Mr. Jackson in relation to the decision to place 57 USAID employees on administrative leave on February 1, 2025, including "his understanding of Marocco's authority" and "the basis for placing employees on administrative leave." But Mr. Gray has already testified about USAID officials' understanding of Mr. Marocco's role during that time. ECF No. 248 at 341 (Gray Dep. Tr. at 143:14–145:14). And facts about the administrative leave decision and the basis for it have already been provided. *See* ECF No. 252-1 at 6 (citing DOE4vUSDS_000592-601); *see also* ECF No. 246-1 at 108–15 (reproducing portion of that email chain). Once again, that takes any question of whether such action could form the basis for an Appointments Clause claim off the table.

Regarding GSA's decision to terminate USAID's occupancies to the Ronald Reagan Building, Defendants have produced communications between Mr. Jackson and GSA communicating the decision to USAID, *see* ECF No. 252-1 at 8, provided a sworn declaration outlining the extent of Mr. Jackson's knowledge, *see* ECF No. 230-1 at 79, and USAID has separately responded to an interrogatory describing "all communications" USAID officials, including Mr. Jackson, had with GSA prior to that termination. Plaintiffs disbelieve that information but cite nothing to support that disbelief. Plaintiffs furthermore conflate USAID's February 3, 2025 email *temporarily* closing USAID's office space with the separate GSA decision on February 7, 2025, to *permanently* terminate USAID's occupancies in the Ronald Reagan Building. *See supra* at 3. Plaintiffs had a year of discovery in which Defendants have consistently explained that the termination of USAID's lease was a GSA decision. *See* ECF No. 238-3 at 7. There is nothing Mr. Jackson can add to the abundant record through interrogatory responses and documents that encompass, but cover more than, Mr. Jackson's knowledge and are already in Plaintiffs' possession.

Plaintiffs mislead the Court as to the status of physical and logical access to USAID's building and systems. The initial decision to approve the listed individuals to access USAID space was made "by then Acting Administrator Jason Gray, consistent with the provisions of Executive Order 14,158." ECF No. 252-1 at 11. Matthew Hopson, then USAID Chief of Staff, testified about a phone call he had with Mr. Davis about that access, which Defendants cannot verify but do not dispute. *See id.* Both Mr. Gray and Mr. Hopson have been deposed; both testified that Mr. Gray had approved individuals to come in and investigate certain "transactions that happened that shouldn't have happened," ECF No. 248 at 326 (Gray Dep. Tr. 84:10-11), and pull "information and present[]" USAID "with data," *id.* at 426 (Hopson Dep. Tr. 39:12-13). Similarly, the

documentary evidence and written responses confirm that Mr. Jackson approved Luke Farritor obtaining read-only or "over-the-shoulder" access to USAID's C-CURE system "to verify the suspension of access control to individuals recently placed on administrative leave." ECF No. 230-1 at 47 (DOE4vUSDS_001776); *see also* ECF No. 252-1 at 14; ECF No. 230-1 at 78. Mr. Gray later "authorized Mr. Farritor and Mr. Kliger to have administrative access to all unclassified USAID information systems," which included the C-CURE system. ECF No. 252-1 at 14. Mr. Jackson and Mr. Marocco's later approval for those individuals to obtain "elevated access" to specified systems was to clarify that the added access was "consistent with the intent of Mr. Gray's original access decision" and "Executive Order 14,158." *Id.* at 15.

Finally, Plaintiffs present an entirely new argument that they need to depose Mr. Davis and Mr. Jackson because they were copied on or otherwise received emails related to USAID grant terminations. But grant terminations have nothing to do with this case; Plaintiffs and the class they represent are former USAID employees and contractors, not grant recipients. Termination of grants could not have harmed the Plaintiff class. Even if those terminations did have some relevance, the documents Plaintiffs refer to—which are not before the Court—are communications and memoranda between Lewin and other USAID and State Department personnel compiling grants to propose that Secretary Rubio terminate. Those same documents show that Secretary Rubio and other USAID and State officials took grants off the termination list, and that Secretary Rubio was the final decisionmaker on which grants to terminate. This information is nothing new in any case, as Plaintiffs received a similar memorandum and communications in May 2026 because they were responsive to a different request. And Plaintiffs get the timeline wrong: those communications are from *after* February 2, 2025, by which point Mr. Marocco was indisputably performing the duties of Deputy USAID Administrator, not Mr. Jackson. *See* ECF No. 230 at 2.

Despite these extensive disclosures from alternate sources, Plaintiffs assert that they need to depose Mr. Jackson and Mr. Davis because they were involved in certain decisions. But if that were the standard, White House and high-ranking agency personnel would be subject to deposition for any agency or policy decision on which they were consulted. As is well-established, this is plainly not the law.

Over the past year, Plaintiffs have obtained more than 10,000 pages of documents, 55 interrogatory responses across the State Department, USAID, and the U.S. DOGE Service (excluding the 5 supplemental interrogatories discussed herein), and taken nine depositions, including two days of 30(b)(6) testimony. Plaintiffs may wish they had conducted discovery differently, or that the facts were different, but enough is enough. Plaintiffs' motion for leave to depose Mr. Jackson and Mr. Davis should be denied.

Respectfully submitted,

*/s/ Andrew Warren*
Norman L. Eisen [09460]
Tianna J. Mays [21597]
Andrew H. Warren*
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Tianna@democracydefenders.org
Andrew@democracydefenders.org

Mimi Marziani*
Rebecca (Beth) Stevens*
Joaquin Gonzalez*
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (210) 343-5604
mmarziani@msgpllc.com
bstevens@msgpllc.com
jgonzalez@msgpllc.com

Richard M. Heimann*
Nicole M. Rubin [30711]
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
rheimann@lchb.com
nrubin@lchb.com

*Attorneys for Plaintiffs*
*Admitted pro hac vice

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director,
Federal Programs Branch

CHRISTOPHER M. LYNCH
Chief Litigation Counsel,
Federal Programs Branch

*/s/Jacob S. Siler*
JACOB S. SILER (D.C. Bar No. 1003383)
JAMES J. WEN (N.Y. Bar No. 5422126)
*By Special Appearance*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-4556
Email: Jacob.S.Siler@usdoj.gov

*Attorneys for Defendants*